Nos. 24-5374, 24-5375, 24-5376

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

―――――――――

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SCOTT SPEAR

*Defendant-Appellant.*

―――――――――

On Appeal from the United States District Court for the District of
Arizona, The Honorable Diane J. Humetewa, Presiding.
CR No. 2:18-cr-00422-DJH

―――――――――

**APPELLANTS' EXCERPTS OF RECORD
VOLUME 53 OF 55**

―――――――――

Gary S. Lincenberg
Gopi K. Panchapakesan
Michael C. Landman
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM,
LLP
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
glincenberg@birdmarella.com
gpanchapakesan@birdmarella.com
mlandman@birdmarella.com

*Attorneys for Defendant-Appellant John
("Jed") Brunst*

Alyssa D. Bell
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
abell@cohen-williams.com

*Attorneys for Defendant-Appellant Scott
Spear*

Erin McCampbell Paris
MAURICE WUTSCHER, LLP
50 Fountain Pl., Suite 1400
Buffalo, NY 14202
Telephone: (716) 261-4703
eparis@mauricewutscher.com

*Attorneys for Defendant-Appellant*
*Michael Lacey*

Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA,
LLP
42 Delaware Avenue
Buffalo, NY 14202
Telephone: (716) 849-1333
pcambria@lglaw.com

*Attorneys for Defendant-Appellant*
*Michael Lacey*

1

1

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 7, 2023 |
| Michael Lacey, et al. | ) | 9:11 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TRIAL - DAY 29 - A.M. SESSION

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

1                    **A P P E A R A N C E S**

2

   For the Government:
3      UNITED STATES ATTORNEY'S OFFICE
       By:  **Mr. Kevin M. Rapp, Esq.**
4           **Mr. Peter S. Kozinets, Esq.**
            **Mr. Andrew C. Stone, Esq.**
5           **Ms. Margaret Wu Perlmeter, Esq.**
            **Mr. Daniel G. Boyle, Esq.** - Appears by Zoom
6      40 North Central Avenue, Suite 1200
       Phoenix, Arizona 85004
7      kevin.rapp@usdoj.gov
       peter.kozinets@usdoj.gov
8      andrew.stone@usdoj.gov
       margaret.perlmeter@usdoj.gov
9
   For the Government:
10     UNITED STATES DEPARTMENT OF JUSTICE
       By:  **Mr. Austin Berry, Esq.**
11     1301 New York Avenue, NW, 11th Floor
       Washington, DC 20005
12     austin.berry2@usdoj.gov

13 For the Defendant Michael Lacey:
       LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
14     By:  **Mr. Paul J. Cambria, Jr., Esq.**
       42 Delaware Avenue, Suite 120
15     Buffalo, NY 14202
       pcambria@lglaw.com
16
   For the Defendant Scott Spear:
17     FEDER LAW OFFICE, P.A.
       By:  **Mr. Bruce S. Feder, Esq.**
18     2930 East Camelback Road, Suite 160
       Phoenix, AZ 85016
19     bf@federlawpa.com
       - and -
20     KESSLER LAW OFFICE
       By:  **Mr. Eric Walter Kessler, Esq.**
21     6720 N. Scottsdale Road, Suite 210
       Scottsdale, AZ 85253
22     eric.kesslerlaw@gmail.com

23

24

25

                    UNITED STATES DISTRICT COURT

3

```
 1    For the Defendant John Brunst:
           BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2         LINCENBERG & RHOW, P.C.
           By:  Mr. Gopi K. Panchapakesan, Esq.
 3              Mr. Gary S. Lincenberg, Esq. - Appears by telephone
           1875 Century Park E, Suite 2300
 4         Los Angeles, CA 90067
           gpanchapakesan@birdmarella.com
 5         glincenberg@birdmarella.com

 6    For the Defendant Andrew Padilla:
           DAVID EISENBERG, P.L.C.
 7         By:  Mr. David S. Eisenberg, Esq.
           3550 North Central Avenue, Suite 1155
 8         Phoenix, AZ 85012
           david@deisenbergplc.com
 9
      For the Defendant Joye Vaught:
10         JOY BERTRAND, ESQ., L.L.C.
           By:  Ms. Joy M. Bertrand, Esq. - Appears by Zoom
11         P.O. Box 2734
           Scottsdale, AZ 85252
12         joy@joybertrandlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

4

```
 1                    P R O C E E D I N G S

 2

 3             THE COURT:  All right.  Please be seated.

 4        (Proceedings commence at 9:11 a.m.)

 5             THE COURT:  I was told that Mr. Kessler wanted to      09:11:17

 6    speak with me about something.

 7             MR. KESSLER:  Good morning, Your Honor.  If you can

 8    bear with me for a moment.  Yesterday during our call

 9    Mr. Cambria raised an issue having to do with Mr. Berry's

10    closing argument, and I wanted to address that in more detail  09:11:46

11    this morning, about five minutes, if that's okay.

12             THE COURT:  What is the form and fashion?  Is this a

13    motion?  Is this an objection?  What is the procedural posture

14    that we are in?

15             MR. KESSLER:  This is an oral --                      09:12:08

16             THE COURT:  We've had numerous opportunities.  I've

17    given the parties numerous opportunities after the closing

18    arguments to make argument or objection, so I want to know

19    procedurally how is it that you're raising this now?

20             MR. KESSLER:  Well, this is an oral motion to         09:12:24

21    reinstruct the jury on a couple points at a minimum.

22             THE COURT:  You may make your record, but at this

23    juncture, the jury having been instructed, the parties having

24    relied on all of the instructions, including the First

25    Amendment, I'm not going to change any of the jury instructions 09:12:49
```

UNITED STATES DISTRICT COURT

ER 14945

5

```
 1   unless you can present me with some sufficient case law that
 2   tells me otherwise.
 3           MR. KESSLER:  I'm --
 4           THE COURT:  You may make your record, Mr. Kessler.
 5           MR. KESSLER:  One of the offending statements in
 6   Mr. Berry's closing rebuttal is found at page 50 on the
 7   November 1st transcript, Day 28, where he states, "Next, the
 8   defendants argue, well, they had new" -- and I think the
 9   reporter meant to put "no" -- "knowledge of these specific 50
10   ads.  Ladies and gentlemen, these ads are just a sample.  We're
11   not going to charge them with a million counts based upon the
12   millions of ads.  That's why there's a conspiracy charge
13   covering the statute, covering the 14-year life of the
14   conspiracy.  What I am not -- what I'm not going to show
15   you" --
16           THE COURT:  One second, Mr. Kessler.  My Livenote has
17   timed out.
18           (A break was taken to address technical difficulties)
19           THE COURT:  Okay.  All right.  Mr. Kessler, you may
20   continue.                                                    09:22:35
21           MR. KESSLER:  Thank you.  Picking up pretty much where
22   I left off, which is in the middle of that paragraph, Mr. Berry
23   said, "What I am not -- what I am not going to show you is a
24   jury instruction that says we must prove that any defendant has
25   specific knowledge of these particular ads because it isn't in  09:22:59
```

UNITED STATES DISTRICT COURT

6

```
 1    there.  We don't have to do that.  You won't see that
 2    instruction."
 3           The problem with that, Judge, is that it conflicts
 4    with other instructions you've given this jury and does nothing
 5    but misstate the law and confuse the jury.                      09:23:20
 6           For example, the Court's Travel Act instruction, which
 7    I think is on page 30 of the jury instructions, is expressly
 8    tied to the 50 charged acts.  It says:  Second, after doing so,
 9    the defendant performed an act that did promote or -- or
10    facilitate the promotion of any business enterprise involving   09:23:50
11    prostitution offenses specifically by publishing on
12    Backpage.com the ads listed in Counts 2 through 51 of the
13    indictment.
14           That same instruction goes on to say:  To prove
15    specific intent, the government must establish that each        09:24:15
16    defendant in some significant manner associated himself or
17    herself with the purpose of promoting or facilitating the
18    promotion of any business enterprise involving prostitution
19    offenses that the defendant knew to be unlawful under the
20    state -- under the state law, which then begs the question, if  09:24:40
21    Mr. Berry was correct in his argument, if not to any business
22    enterprise involving prostitution offenses in the 50 ads, with
23    whom are defendants significantly associating themselves?
24           The Court also instructed the jury on the Travel Act
25    conspiracy charge that says:  First, beginning on or around     09:25:17
```

UNITED STATES DISTRICT COURT

7

1    2004 and ending on or about April 2018, there was an agreement

2    between two or more persons to commit at least one Travel Act

3    offense as charged in Counts 2 through 51 of the indictment.

4         So even the conspiracy instruction that the Court has

5    provided to the jury ties this case to the 50 charged ads, not    09:25:49

6    to the millions that came before it.  Some time ago when Judge

7    Brnovich had this case, this issue was raised, and I am

8    referring to Document 946.

9         THE COURT:  Yes, I read that.

10        MR. KESSLER:  The important part of that is Judge    09:26:14

11   Brnovich said there, meaning the defendants, "main concern is

12   summed up in a question they pose to the Court:  'How could one

13   specifically intend to promote/facilitate a business enterprise

14   one does not know to exist?'"  To answer defendants' question

15   posed to the Court, one cannot intend to promote or facilitate    09:26:40

16   a business enterprise one does not know exists.

17        What Mr. Berry's argument suggests is that the

18   defendants can be convicted absent any knowledge of the 50 ads

19   or any knowledge of the persons posting those ads, or what they

20   were doing simply is -- is inconsistent with the Court's ruling    09:27:05

21   in Document 946, as I just quoted, and the Court's jury

22   instructions that I have just quoted.  I think it's fair to

23   characterize Mr. Berry's argument to mean that the government

24   believes that the defendants can be convicted based on general

25   intent as opposed to specific intent, and I believe it's fair    09:27:34

UNITED STATES DISTRICT COURT

8

```
1    or reasonable to say that this is the prosecution's call for
2    jury nullification; in other words, an invitation to convict
3    where there is no basis to do so.
4          So what, on behalf of Mr. Spear, I am asking this
5    Court to do this morning, not to change any of your                09:28:02
6    instructions, but to address the Court and inform the Court
7    that Mr. Berry's statement that they don't need to prove
8    knowledge by these defendants of the 50 charged ads is legally
9    erroneous, and the jury should refer to this Court's
10   instructions both with respect to the Travel Act and with         09:28:32
11   respect to the Travel Act conspiracy charge.
12         THE COURT:  Well, I guess I don't -- I don't recall
13   specifically, but I don't know whether or not at the time that
14   Mr. Berry made that statement there was an objection.  And if
15   there was not, then you've missed the opportunity.  But in any    09:28:53
16   event, what I have consistently told this jury at this juncture
17   in the closing argument is that simply that, summation is
18   summation, it's not evidence, and that they are to follow the
19   instructions that the Court gave them.
20         And in my view, that's sufficient cure for that sort        09:29:15
21   of statement.  And so you've made your record, Mr. Kessler, and
22   so I'll hear from the government.
23         MR. KESSLER:  Your Honor, I need to address one point
24   regarding your comments.  I did make the objection.  I showed
25   Mr. Berry the courtesy of allowing him to complete his            09:29:35
```

UNITED STATES DISTRICT COURT

9

```
 1    rebuttal, his closing rebuttal.  I immediately came to the
 2    podium afterwards and lodged this objection and indicated that
 3    it would be addressed in more detail at a later time.  I made
 4    the objection to preserve my ability to make this oral request
 5    at this time.                                              09:30:03
 6         I don't agree -- I can't imagine how telling the jury,
 7    well, you know, read the instructions, disregard what they say
 8    if you think they don't -- what the prosecutor says, if you
 9    think it doesn't apply, or whatever --
10         THE COURT:  Mr. Kessler, it happens all the time in   09:30:24
11    almost every trial that I've had.
12         MR. KESSLER:  But this is such -- this is a statement
13    by the prosecution on the law that is a 180 degrees different
14    than not only what the law is, but the law of this case and the
15    other instructions that you have given this jury.  How does a  09:30:45
16    jury reconcile that?
17         THE COURT:  Well, they do it as I've instructed, to
18    read the instructions and apply the instructions to the facts.
19         MR. KESSLER:  Well, my request is that the jury be
20    informed that Mr. Berry's statement of the law in that respect  09:31:06
21    was erroneous and simply refer the jury back to the early
22    instructions.  It's such a big issue.  I can't see a jury
23    working through this.
24         THE COURT:  Well, the jury doesn't have a transcript.
25    The jury doesn't have a transcript of anyone's summation    09:31:29
```

UNITED STATES DISTRICT COURT

10

```
 1   argument, and I think we've given enough information to this
 2   jury that my sense is that not all of them are going to
 3   remember your summations, whether or not you agree with that or
 4   not.  My goodness sake, that happened almost a week ago.
 5              So in any event, I'll hear from the government and      09:31:52
 6   then we'll bring the jury in.
 7              MR. KESSLER:  Thank you, Your Honor.
 8              MR. STONE:  Your Honor, respectfully, Mr. Kessler is
 9   wrong with that argument.  This is an issue that has been
10   litigated in this case time and time again.                       09:32:10
11              I cited to the Court, Judge Brnovich's order 793 where
12   she went through all of the allegations in the superseding
13   indictment.  Those allegations laid out what the evidence, the
14   evidence that's now been presented to this jury, which is
15   strategies that these defendants had to build their website and   09:32:37
16   strategies they had to maintain their website.
17              The same argument about this general intent versus
18   specific intent was made before and is now law of the case.
19   This Court has ruled in 793, 946, and in Your Honor's order on
20   the motions in limine 1643, that this case involves the          09:33:02
21   policies and the implementation of those policies by these
22   defendants which created this marketplace for promoting
23   business enterprises that were involved in prostitution
24   offenses.
25              There was no misstatement by Mr. Berry in his          09:33:22
```

UNITED STATES DISTRICT COURT

1    summation.  We agree with Your Honor that, as you've told the

2    jury now probably a half dozen times, summation is just that,

3    and they need to analyze the evidence and the instructions, and

4    so we agree with that.

5         Similarly, we think that there were misstatements of          09:33:45

6    the law made by the defense, and Your Honor has rectified that

7    with the admonition to the jury.  But this issue about the

8    defendants needing to know specifically about these 50 ads has

9    been asked and answered.

10        Doc 793 where Judge Brnovich says:  Based on the             09:34:04

11   allegations, if those are proven true, then the defendants

12   could be found guilty of promoting prostitution business

13   enterprises.

14        So this is not a new issue.  This is an issue that the

15   defense continually raises, and it's been put to bed, Your      09:34:21

16   Honor.

17        THE COURT:  All right.  Let's go ahead and have the

18   jury in.  She is going to double-check.  We had one that was

19   tardy, so anticipated being here at 9:30.

20        MS. BERTRAND:  Your Honor, is the Court going to --         09:34:47

21   hi, this is Joy Bertrand.  Good morning.  Is the Court going to

22   tell the jury why I am appearing by Zoom?

23        THE COURT:  I had --

24        MS. BERTRAND:  Pressing on my --

25        THE COURT:  Did you hear me?  I had intended to.  Are       09:35:04

UNITED STATES DISTRICT COURT

12

```
 1    you on mute?  Okay.
 2             MS. BERTRAND:  No.
 3             THE COURT:  We are still waiting for the arrival of
 4    one of our jurors, and as soon as that juror comes in we will
 5    proceed.                                                        09:35:22
 6             COURTROOM DEPUTY:  All rise.
 7             (Recess was taken at 9:37 a.m.)
 8         (Proceedings reconvened at 9:42 a.m.)
 9             THE COURT:  Please be seated.  It appears all of our
10    jurors are now present, and so we will have them come in.      09:42:27
11                          (Jury is present)
12             THE COURT:  All right.  Please be seated.  And the
13    record will reflect the presence of the jury, the presence of
14    government counsel, defense counsel.
15             Members of the jury, as you can see, we are joined by  09:43:58
16    Ms. Bertrand through Zoom.  She too fell prey to illness during
17    the weekend, and so in an abundance of caution she is
18    isolating, but she is here this morning and will participate,
19    although her client is also present in the courtroom.
20             Now, members of the jury, when we last met the parties 09:44:22
21    had given you their closing arguments and so it has been some
22    time since you have been instructed.  And as I mentioned
23    previously, you will have copies of the final jury instructions
24    in the jury deliberation room to guide you in your
25    deliberations.                                                  09:44:47
```

13

| | |
|---|---|
| 1 | I do want to just remind you of two instructions. And |
| 2 | so if you will bear with me, I think this will help you get |
| 3 | started in your deliberations. I am going to read you an |
| 4 | instruction on your deliberations. |
| 5 | Now, members of the jury, "When you begin your |
| 6 | deliberations, elect one member of the jury as your foreperson |
| 7 | who will preside over the deliberations and speak for you here |
| 8 | in court. |
| 9 | You will then discuss the case with your fellow jurors |
| 10 | to reach agreement if you can do so. Your verdict, whether |
| 11 | guilty or not guilty, must be unanimous. |
| 12 | Each of you must decide the case for yourself, but you |
| 13 | should do so only after you have considered all of the |
| 14 | evidence, discussed it fully with the other jurors, and |
| 15 | listened to the views of your fellow jurors. |
| 16 | Do not be afraid to change your opinion if the |
| 17 | discussion persuades you that you should. But do not come to a |
| 18 | decision simply because other jurors think it is right. |
| 19 | It is important that you attempt to reach a unanimous |
| 20 | verdict but, of course, only if each of you can do so after |
| 21 | having made your own conscientious decision. Do not change an |
| 22 | honest belief about the weight and effect of the evidence |
| 23 | simply to reach a verdict. |
| 24 | Perform these duties fairly and impartially. You |
| 25 | should also not be influenced by any person's race, color, |

09:45:04

09:45:20

09:45:36

09:45:54

09:46:12

UNITED STATES DISTRICT COURT

ER 14954

14

```
 1    religious beliefs, national ancestry, sexual orientation,
 2    gender identity, gender, or economic circumstances.  Also, do
 3    not allow yourself to be influenced by personal likes or
 4    dislikes, sympathy, prejudice, fear, public opinion, or biases,
 5    including unconscious biases.  Unconscious biases are           09:46:33
 6    stereotypes, attitudes, or preferences that people may
 7    conscientiously reject, but may be expressed without conscious
 8    awareness, control or intention.
 9         It is your duty as jurors to consult with one another
10    and to deliberate with one another with a view towards reaching 09:46:53
11    an agreement if you can do so.  During your deliberations, you
12    should not hesitate to" reconsider "your own views and change
13    your opinion if you become persuaded that it is wrong.
14         If it becomes necessary during your deliberations to
15    communicate with me, you may send a note through the Courtroom  09:47:16
16    Deputy signed by any one or more of you.  No member of the jury
17    should ever attempt to communicate with me except by a signed
18    writing, and I will respond to the jury concerning the case
19    only in writing or here in open court.  If you send out a
20    question, I will consult with the lawyers before answering it,  09:47:39
21    which may take some time.  You may continue your deliberations
22    while waiting for the answer to any question.  Remember that
23    you are not to tell anyone -- including me -- how the jury
24    stands, numerically or otherwise, on any question submitted to
25    you, including the question of the guilt of the defendant,      09:47:55
```

UNITED STATES DISTRICT COURT

15

```
 1    until after you have reached a unanimous verdict or have been

 2    discharged."

 3           Now, I want to raise one final matter with you,

 4    members of the jury, as you know and as you will recall, we

 5    have had to postpone trial September 5th through the 8th for        09:48:15

 6    illness, then again essentially two days last week for those

 7    same reasons.  So though you were informed that your service

 8    was to have ended on Thursday, November the 9th, and remember

 9    that Friday November the 10th is a federal holiday, so the

10    building will be closed, I have determined to extending your        09:48:36

11    service Tuesday, November 14th through next Friday,

12    November 17th.  That in no way suggests that your deliberations

13    are subject to any time limit.  It is only meant to give you

14    the time needed to carefully consider the matters that are

15    before you.                                                          09:49:00

16           So at this time I would like to hear from any of you

17    who may have a reason that you feel might prevent you, if

18    necessary, from deliberating, excuse me, from Tuesday

19    November 14th through November 17th, if necessary.  Is there

20    any one of you who has a conflict?                                   09:49:21

21           And I will also remind you that it is generally

22    important that you adhere to the trial schedule; in other

23    words, when you deliberate, you should begin deliberations when

24    you are all present, and you should aim to be present at

25    9:00 a.m. and work through to at least 4:30.  Of course, giving     09:49:42
```

UNITED STATES DISTRICT COURT

16

```
 1   yourself breaks throughout the day and a lunch break, and we
 2   will have lunch brought in for you.
 3          I will issue then, having not heard of any, anything
 4   that will prevent any of you, I will issue an order so that you
 5   may, if you need to provide that to whomever may need to know       09:50:04
 6   about your service.
 7          Now, at this time I am going to select two of you as
 8   alternate jurors.  The law requires only 12 to deliberate and
 9   to return a unanimous verdict.  But as you have seen, a jury
10   trial with this length of time also comes with additional          09:50:28
11   issues that individuals confront, emergency situations at home,
12   illness or the like, and so it is necessary that we select two
13   alternates.
14          The two alternates who are going to be randomly
15   selected will not participate in the jury deliberations,           09:50:46
16   however, you will remain on standby if you are selected as an
17   alternate, and you are going to continue to adhere, all of you,
18   to the admonition not to discuss the case with anyone, not to
19   conduct any research.
20          There may come a time, for example, if a deliberating       09:51:05
21   juror gets called away, we will have to call one of you back
22   who is the named alternate by random selection, and then you
23   will begin deliberations with the jurors that have been
24   deliberating.
25          If you are selected as an alternate, please leave your      09:51:22
```

UNITED STATES DISTRICT COURT

17

```
 1   notebooks on your chairs.  We're going to gather those and keep
 2   them in a safe place in the event that you get called back.
 3          So at this time I'll have the Courtroom Deputy
 4   randomly draw the two alternate jurors.
 5          COURTROOM DEPUTY:  Juror No. 12, Juror No. 2.          09:51:43
 6          THE COURT:  Juror No. 12 and Juror No. 2, you are
 7   selected as the alternate jurors.  And again, I remind you not
 8   to discuss the case, not to do any research about the case,
 9   turn away if you hear something on the news, anything of the
10   sort, because again, there may come a time when you get called   09:52:17
11   back to join in the deliberations and we want to make sure that
12   you adhere to the admonition.
13          And at this time, if I could have my Career Law Clerk
14   and my Courtroom Deputy come forward.  Please raise your right
15   hand.                                                           09:52:43
16          (Career Law Clerk and Courtroom Deputy are sworn in.)
17          THE COURT:  All right.  With that, we will excuse the
18   alternates and we will excuse the jurors to begin your
19   deliberations.  Liliana will bring in lunch order forms for
20   you, and so you may get yourselves organized.  Again, take      09:53:20
21   breaks as needed, lunch break as needed.
22          All rise for the jury.
23                (Jury is not present.)
24          THE COURT:  All right.  Please be seated.  Now, I want
25   to make sure that everyone has provided to Liliana their        09:54:12
```

UNITED STATES DISTRICT COURT

18

```
 1    contact information so that she may readily reach you -- she
 2    may readily reach you if the jury does have a question.
 3          Well, the twists and turns continue.  Juror No. 16 has
 4    indicated illness, and she is inquiring as to whether or not
 5    she could be designated as an alternate.  Having had the random    09:55:15
 6    draw, I've never been in these waters before.  My sense is
 7    that, well, she's the individual at the very end who has the
 8    mask on, and she's been here everyday diligently, but I'm
 9    assuming that if she's reporting illness to the Court, that she
10    feels it necessary that she take care of herself and not         09:55:49
11    participate in deliberations.
12          We have Jurors 12 and 2 who are the alternates.
13          MS. PERLMETER:  Your Honor, if Juror 16 is now ill, we
14    have no objection to her becoming an alternate, and then
15    between the recently or the just designated alternates who are    09:57:08
16    Jurors No. 2 and 12, we suggest the Court flip a coin.
17          THE COURT:  Mr. Eisenberg.
18          MR. EISENBERG:  Your Honor, I'll speak for the
19    defendants.  We also have no objection to the release of 16.
20    As far as reselecting an alternate, rather than flip a coin, I    09:57:28
21    should think that the two -- two certificates or whatever they
22    are -- the coins, just be reselected at random.
23          THE COURT:  We will insert 12 and 2 back into the hat
24    and we will select the alternate along with Juror No. 16.
25          MR. EISENBERG:  Your Honor, I'm suggesting that one of      09:58:00
```

UNITED STATES DISTRICT COURT

19

```
 1   the two alternates be put back in as a juror by random
 2   selection.
 3           THE COURT:  Yes.
 4           MR. EISENBERG:  Oh, okay.
 5           MR. FEDER:  Judge, I don't want to throw a kink in it.   09:58:13
 6           THE COURT:  Why not, Mr. Feder?
 7           MR. FEDER:  I do have a coin just in case.  I thought
 8   yesterday we had -- you were going to designate 7, the woman
 9   who is sick, as an alternate.
10           THE COURT:  No.  The government asked that.  I did not   09:58:26
11   say that I would do that.
12           MR. FEDER:  Okay.  All right.
13           COURTROOM DEPUTY:  2.
14           THE COURT:  Juror No. 2 will replace Juror No. 16.
15           COURTROOM DEPUTY:  Bring them back out?                  09:58:52
16           THE COURT:  No.  I don't think so.
17           Well, all right, I wanted to address an issue related
18   to the forfeiture proceeding, and I do understand that
19   Mr. Boyle is going to join us through the technology.  We'll
20   have to wait for Liliana to come back in order for that to     09:59:38
21   occur, so we can stand in recess while we wait for that.
22           (Recess was taken at 9:59 a.m.)
23       (Proceedings reconvened at 10:25 a.m.)
24           THE COURT:  All right.  Let's move to -- I know I had
25   indicated -- please.  I'm sorry.  I indicated that I wanted to   10:25:59
```

20

```
 1    address the recent filings by the defendants regarding the
 2    forfeiture jury instructions and the form of verdict.  I have
 3    two, well, I have a couple of questions, but I think further
 4    briefing is going to be necessary because there's a particular
 5    issue that I'm not familiar with with respect to the two types      10:26:24
 6    of forfeiture that are potentially at issue, the property and
 7    the money.
 8            As I read the law, with regard to the property issues,
 9    there remains this issue of ancillary proceedings related to
10    any third-party interests.  My understanding of the procedure       10:26:50
11    is that, and Mr. Boyle, you can correct me if I'm wrong,
12    Mr. Panchapakesan, is that at a later time if the jury returns
13    a verdict that permits them to go back and look at the
14    forfeiture proceeding, that with regard to the property then
15    the Court later determines the ancillary interests.                 10:27:23
16            The question that I have that relates to,
17    Mr. Panchapakesan, your proposed form of verdict is the request
18    that the jury parse out specific amounts related to the money,
19    and I am not entirely clear that with regard to the money that
20    the procedure isn't the same for property; in other words,          10:28:01
21    wouldn't it be helpful then to have an ancillary proceeding to
22    determine what the interests in that money is?
23            The way that I read the statute, it assumes that the
24    money alleged in the forfeiture proceeding is to be forfeited,
25    and so that really is the question that I have.                     10:28:29
```

UNITED STATES DISTRICT COURT

21

```
 1        And this second part has to do with the procedural
 2   posture of any forfeiture trial.  Because it is a quasi-civil
 3   matter, my inclination is, I understand the government is only
 4   producing two witnesses, and my inclination is to limit the
 5   time in which you can examine that witness on direct much like    10:29:05
 6   I do in any civil trial, limit your examination, for example,
 7   to two hours, and a rebuttal exam to half an hour.  I won't
 8   limit cross-examination.
 9        The same would be true of the defendants who, by the
10   way, Mr. Panchapakesan, did you file your, or did you provide    10:29:29
11   the Court with your anticipated witness?
12        MR. PANCHAPAKESAN:  No, but I can do so now.
13        THE COURT:  And again, here's the question that I pose
14   to you.  We'll have to have that witness' name before the jury,
15   and was that a person that was listed on your original witness    10:29:46
16   list?
17        MR. PANCHAPAKESAN:  Neither of them were.  I can
18   provide the name.
19        THE COURT:  I can't hear you.
20        MR. PANCHAPAKESAN:  Neither of them were on the    10:29:56
21   original witness list, but I can provide those names now.
22        THE COURT:  All right.  Give me -- give Liliana the
23   witnesses.  I'm assuming you gave those over to the government.
24        MR. PANCHAPAKESAN:  I haven't yet, but I can do that
25   now.    10:30:12
```

UNITED STATES DISTRICT COURT

22

```
 1           THE COURT:  And so there's two questions, and if you
 2   need time to further brief the first, I understand that.  I too
 3   want to look at some matters.  And it would be helpful if you
 4   cite to Ninth Circuit case law, and so one having to do with
 5   the ancillary nature of I think what you're requesting in the      10:30:38
 6   verdict form, and the second being the Court's ability to limit
 7   your presentment in terms of time for your respective case in
 8   chief.
 9           Mr. Boyle, do you have any immediate thoughts with
10   regard to any of that?                                             10:31:01
11           MR. BOYLE:  With respect to the second issue raised,
12   Your Honor --
13           THE REPORTER:  I can't hear.
14           THE COURT:  You're very mute.  I don't know if it's
15   our audio or if it's yours.                                        10:31:15
16           MR. BOYLE:  Better, Your Honor?
17           Just wait one second.
18           MR. BOYLE:  Yes, Your Honor.
19           COURTROOM DEPUTY:  Speaking again.
20           MR. BOYLE:  Yes, Your Honor, hopefully this is better.     10:31:45
21           THE COURT:  Yes, it is.
22           MR. BOYLE:  Thank you, Your Honor.  With respect to
23   the second issue you raised as to timing, we would have no
24   objection to the time limits you suggested.  I suspect those
25   would be entirely reasonable for what we intend to present.        10:31:59
```

UNITED STATES DISTRICT COURT

```
 1            THE COURT:  All right.  So let me ask
 2    Mr. Panchapakesan with respect to that.
 3            MR. PANCHAPAKESAN:  We have no objection to the Court
 4    setting time lines.
 5            THE COURT:  All right.  So in your direct examination      10:32:14
 6    to our limit, no limit for cross-examine, 30 minutes for any
 7    redirect.
 8            And then with regard to the, I guess what I'll refer
 9    to as an ancillary proceeding, with regard to the money
10    forfeiture allegations, do you have any immediate thoughts,        10:32:40
11    Mr. Boyle?
12            MR. BOYLE:  I think Your Honor has accurately
13    described the procedure in that the question for the jury is
14    whether there's a connection between the asset and the offense.
15    Your Honor is correct, whether there are third-party interests,   10:32:58
16    that will be determined by the Court at a later date.  I am
17    aware of some case law saying the jury can assess how much of a
18    connection there is, but I agree that is a complicated
19    question.
20            And in particular with respect to something like real     10:33:14
21    property, I don't think it's appropriate to have the jury try
22    to parse out the equity in that.
23            THE COURT:  And I think, as I have read the case law,
24    that with respect to property, that's the procedure.  I'm more
25    focused on the money assets and whether or not those are to be    10:33:34
```

24

```
 1    treated the same in terms of a later ancillary proceeding.

 2            MR. BOYLE:  I believe there would be a later ancillary

 3    proceeding, Your Honor, to the extent a third party -- well, if

 4    I might back up briefly.  To the extent this issue goes before

 5    the jury, the jury would render a verdict.  The government, if      10:33:59

 6    that verdict said there was a nexus, the government would then

 7    file a preliminary application of forfeiture with Your Honor

 8    and that would trigger the ancillary proceeding for any third

 9    party that claims they have an interest to show up.

10            So that would be the procedure, Your Honor, jury            10:34:15

11    verdict, application that Your Honor, the Court, would

12    consider, and then an ancillary proceeding.

13            THE COURT:  All right.  Let me hear from

14    Mr. Panchapakesan.

15            MR. PANCHAPAKESAN:  So my understanding, Your Honor,        10:34:26

16    with respect to the ancillary proceeding, is that it's a

17    proceeding to determine whether some third party not present in

18    the courtroom has an interest in one of the bank accounts or

19    pieces of real property that's forfeited, which I think is

20    distinct from the interests that is forfeited as to a              10:34:43

21    defendant; right?

22            So for example, if you have, let's say, a million

23    dollars in a bank account, and the government is seeking to

24    forfeit that, let's assume nobody else is in interest except

25    for, say my client, then what we're asking is a jury to           10:34:59
```

UNITED STATES DISTRICT COURT

25

```
 1    determine what amount of assets be forfeited.

 2            And I think the ancillary proceedings deals with a

 3    second question, which is a bank account with a million dollars

 4    and there is two other owners of it, then the ancillary

 5    proceeding will determine to what extent do those third parties   10:35:16

 6    have an interest, should they be able to retain those

 7    interests, which I think is distinct from the defendant who is

 8    on trial and they own bank account and are the only ones who

 9    own it, and what portion or percentage of that should be

10    forfeited.                                                        10:35:33

11            THE COURT:  All right.  Well, I'll give you 24 hours.

12    If you want to give me something in terms of a briefing, I'll

13    look at what I can to determine how these matters have

14    proceeded with regard to any sort of money forfeiture and a

15    defendants' specific interest in the percentage.                 10:36:06

16            I frankly think that it's a very difficult question to

17    put before the jury in terms of the individual accounts.  There

18    are, I think I recall something in the neighborhood of 41 total

19    pieces of property and bank accounts.

20            And so I'll give you until tomorrow, I would say close   10:36:37

21    of business, to provide me any sort of additional briefing or

22    guidance that you may have on it.

23            In the meantime, I'll look through your proposed jury

24    instructions and let you know if I have any questions or issues

25    with regard to that.                                             10:37:04
```

UNITED STATES DISTRICT COURT

26

```
 1          Is there anything further to be taken up by the
 2    government?
 3          MR. RAPP:  No, Your Honor.
 4          MR. BOYLE:  From the government, Your Honor.  My
 5    apologies, Your Honor, the Court directed the government and          10:37:15
 6    defendants to meet and confer and to think about what we would
 7    do if the jury can't be retained.  My understanding from
 8    speaking to co-counsel is it sounds like the jury is available
 9    next week, but we're still prepared to make a filing this
10    afternoon if the Court wishes that.                                   10:37:32
11          THE COURT:  Yes, I think you should.  You know, we've
12    lost another juror yet to illness, so you don't know what's
13    going to happen.  I certainly can't predict what's going to
14    happen, and so I think you should do that, in any event.
15          And one of the things that I hope you thought about,          10:37:51
16    because I thought about this, because, again, this is a
17    quasi-civil proceeding, that I don't know that it's necessary
18    to retain all 12.  I think we can certainly have 11 jurors
19    deliberate on something like this, and possibly even six, but
20    hopefully we won't have to make that determination, but I'll        10:38:16
21    appreciate any guidance you could provide me.
22          All right.  Anything further from defense?
23    Mr. Cambria?
24          MR. CAMBRIA:  No, Your Honor.  No, Your Honor.
25          THE COURT:  I assume, Ms. Vaught -- sorry,                    10:38:30
```

UNITED STATES DISTRICT COURT

27

```
 1   Ms. Bertrand.  I am looking at Ms. Vaught and I am calling
 2   her -- looking at Ms. Bertrand and calling her Ms. Vaught.
 3          MS. BERTRAND:  Nothing from me.  Thank you.
 4          THE COURT:  I hope you're feeling better.
 5          MS. BERTRAND:  Thank you.  I'm working on it.        10:38:45
 6          THE COURT:  Mr. Panchapakesan?
 7          MR. PANCHAPAKESAN:  No, Your Honor.
 8          THE COURT:  Mr. Kessler?
 9          MR. KESSLER:  No.
10          THE COURT:  Mr. Eisenberg?                           10:38:50
11          MR. EISENBERG:  No, Your Honor.
12          THE COURT:  We will stand in adjournment.  As I
13   mentioned, please do give Liliana your contact information and
14   don't leave town.  All right.  Thank you.  We will stand in
15   adjournment.                                                10:39:03
16          (Recess was taken at 10:39 a.m.)
17
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT

28

1

2                    **C E R T I F I C A T E**

3

4        I, HILDA E. LOPEZ, do hereby certify that I am duly

5    appointed and qualified to act as Official Court Reporter for

6    the United States District Court for the District of Arizona.

7        I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12        DATED at Phoenix, Arizona, this 8th day of November,

13   2023.

14

15

16

                            s/Hilda E. Lopez_____
17                          HILDA E. LOPEZ, RMR, FCRR

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 8, 2023 |
| Michael Lacey, et al. | ) | 1:33 p.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 30 - JURY QUESTION**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

```
 1                        A P P E A R A N C E S

 2
     For the Government:
 3       UNITED STATES ATTORNEY'S OFFICE
         By:  Mr. Kevin M. Rapp, Esq.
 4            Mr. Peter S. Kozinets, Esq.
              Mr. Andrew C. Stone, Esq.
 5            Ms. Margaret Wu Perlmeter, Esq.
         40 North Central Avenue, Suite 1200
 6       Phoenix, Arizona 85004
         kevin.rapp@usdoj.gov
 7       peter.kozinets@usdoj.gov
         andrew.stone@usdoj.gov
 8       margaret.perlmeter@usdoj.gov

 9   For the Government:
         UNITED STATES DEPARTMENT OF JUSTICE
10       By:  Mr. Austin Berry, Esq.
         1301 New York Avenue, NW, 11th Floor
11       Washington, DC 20005
         austin.berry2@usdoj.gov
12
     For the Defendant Michael Lacey:
13       LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
         By:  Mr. Paul J. Cambria, Jr., Esq.
14       42 Delaware Avenue, Suite 120
         Buffalo, NY 14202
15       pcambria@lglaw.com

16   For the Defendant Scott Spear:
         FEDER LAW OFFICE, P.A.
17       By:  Mr. Bruce S. Feder, Esq.
         2930 East Camelback Road, Suite 160
18       Phoenix, AZ 85016
         bf@federlawpa.com
19       - and -
         KESSLER LAW OFFICE
20       By:  Mr. Eric Walter Kessler, Esq.  - Appeared by Zoom
         6720 N. Scottsdale Road, Suite 210
21       Scottsdale, AZ 85253
         eric.kesslerlaw@gmail.com
22

23

24

25
```

UNITED STATES DISTRICT COURT

3

```
 1    For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2        LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq. - Appears by Zoom
 3            Mr. Gary S. Lincenberg, Esq.
          1875 Century Park E, Suite 2300
 4        Los Angeles, CA 90067
          gpanchapakesan@birdmarella.com
 5        glincenberg@birdmarella.com

 6    For the Defendant Andrew Padilla:
          DAVID EISENBERG, P.L.C.
 7        By:  Mr. David S. Eisenberg, Esq.
          3550 North Central Avenue, Suite 1155
 8        Phoenix, AZ 85012
          david@deisenbergplc.com
 9
      For the Defendant Joye Vaught:
10        JOY BERTRAND, ESQ., L.L.C.
          By:  Ms. Joy M. Bertrand, Esq.
11        P.O. Box 2734
          Scottsdale, AZ 85252
12        joy@joybertrandlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

ER 14972

4

# P R O C E E D I N G S

1

2
        (Proceedings commence at 1:33 p.m.)
3

4       THE COURT:  Please be seated.  And I'm glad to see you

5  back, Ms. Bertrand.                                          13:33:09

6       MS. BERTRAND:  Thank you, Your Honor.

7       THE COURT:  All right.  We do have a jury question

8  that was submitted to the Court today, and the question is,

9  "What happens if we are unable to reach an unanimous agreement

10 on a count," and it's signed by Juror No. 2.                  13:33:31

11      You've been provided a copy of that question; is that

12 correct?

13      MS. BERTRAND:  Yes.

14      THE COURT:  Okay.  After considering this a bit,

15 because there are numerous counts that the jury is going      13:33:46

16 through, it's sort of a posture where I don't think we

17 necessarily give a pre-Allen charge, but I also -- but I do

18 think that part of that charge might be helpful -- but I also

19 looked back at what I have as page 16 of the jury instructions

20 that perhaps we could refer them to.                          13:34:20

21      I took a stab at modifying an answer to that, and my

22 law clerk is handing that out now, but for the benefit of those

23 who are appearing by video -- I think, is it only Mr. Kessler

24 or someone -- oh, Mr. Panchapakesan perhaps -- I will read what

25 my draft answer is.                                           13:34:50

UNITED STATES DISTRICT COURT

5

```
 1           "I remind you" -- oh, let me wait until this gets
 2    handed out.  "I remind you that it is important that you
 3    attempt to reach a unanimous verdict on each count, but, of
 4    course, only if each of you can do so after having made your
 5    own conscientious decision.  Your verdict on any count as to      13:35:25
 6    any defendant should not control your verdict on any other
 7    count or as to any other defendant."
 8           And so the first sentence is the Ninth Circuit's
 9    proposed, at least one sentence out of the proposed pre-Allen
10    charge, and the second, as I mentioned, is a portion of that      13:35:53
11    jury instruction that they have been given as to their
12    consideration of each count separately.
13           MR. LINCENBERG:  Your Honor, can the defense have a
14    few minutes to discuss this amongst ourselves?
15           THE COURT:  Yes, certainly.                                13:36:21
16           MS. BERTRAND:  May we step outside?
17           THE COURT:  Oh, certainly.  Yes, whatever you feel
18    comfortable doing.
19           (A recess was taken at 1:36 p.m.)
20           (Proceedings reconvened at 1:40 p.m.)                      13:40:34
21           THE COURT:  All right.  Who wishes to be heard from
22    the government?
23           MR. RAPP:  I will, Judge.  We find this instruction to
24    be acceptable and appropriate.
25           THE COURT:  And who is speaking for the defendants?        13:40:42
```

UNITED STATES DISTRICT COURT

6

```
 1          MR. EISENBERG:  I will, Your Honor.
 2          THE COURT:  Thank you, Mr. Eisenberg.
 3          MR. EISENBERG:  I'll speak from over here where I can
 4     see the Court.
 5          Your Honor, the defendants prefer what is on page 18      13:41:04
 6     of the jury instructions, and I am going to refer to
 7     paragraphs, of that paragraphs three, four and five.  But I'll
 8     say preliminarily, I don't think it's necessary, we don't think
 9     it's necessary to give anything like an Allen charge or even a
10     pre-Allen charge.  At this point the jury has been deliberating   13:41:27
11     about 24, well, a little more than a day.  So we think that's
12     premature.
13          The paragraphs that are important would remind them as
14     follows, quote, "Each of you must decide the case for yourself,
15     but you should do so only after you have considered all of the    13:41:47
16     evidence, discussed it fully with the other jurors, and
17     listened to the views of your fellow jurors.
18          Do not be afraid to change your opinion if the
19     discussion persuades you that you should.  But do not come to a
20     decision simply because other jurors think it is right.           13:42:04
21          It is important that you attempt to reach a unanimous
22     verdict but, of course, only if each of you can do so after
23     having made your own conscientious decision.  Do not change an
24     honest belief about the weight and effect of the evidence
25     simply to reach a verdict."                                       13:42:24
```

UNITED STATES DISTRICT COURT

7

```
 1          And that is certainly a good way to answering this
 2   question.  The other part of the question is:  What happens if
 3   you don't reach a unanimous verdict?  I'm not quite sure how
 4   that should be answered, and at this point it may not -- it may
 5   not be necessary to even give a direct answer to that part of      13:42:41
 6   the question, Your Honor.
 7          THE COURT:  Well, I think, not trying to read into the
 8   question, I think it's simply a way that if they are deadlocked
 9   as to one of the numerous counts that are charged, that they
10   continue to work through the others essentially.                   13:43:01
11          MR. EISENBERG:  I would agree with that.
12          THE COURT:  So that's the reason I added that last
13   sentence in.
14          So your proposal is essentially just reminding them of
15   the paragraphs on page 18 that begin with, "Each of you must       13:43:18
16   decide," "Do not be afraid to change your opinion," and "It is
17   important that you attempt to reach a unanimous verdict."
18          MR. EISENBERG:  Your Honor, also, I just noticed way
19   down at the bottom, the Court reminds the jury of, "It is your
20   duty as jurors to consult with one another and to deliberate      13:43:43
21   with one another with a view towards reaching an agreement if
22   you can do so."
23          THE COURT:  I need a -- excuse me, I need a break.
24          COURTROOM DEPUTY:  All rise.
25          (Recess was taken at 1:44 p.m.)                             13:44:06
```

8

```
 1            MS. RICHTER:  Judge probably needs another five
 2    minutes just to make sure her voice comes back.
 3            MR. EISENBERG:  I hope it wasn't anything I said.
 4            MS. RICHTER:  She proposes, though, that if the
 5    parties can talk together about Mr. Eisenberg's proposal and      13:48:28
 6    what she has proposed, and if you guys can reach a consensus on
 7    that, that might be helpful.  She'll be back in five.
 8            (A recess was taken at 1:48 p.m.)
 9         (Proceedings reconvened at 1:53 p.m.)
10            THE COURT:  All right.  Thank you.  I've been fighting   13:53:30
11    a little bit of a throat issue, but I assure you it's not
12    COVID.
13            At any event, what have you come to determine?
14            MR. RAPP:  I think the parties have reached an
15    agreement that the jury should be just referred back to page 18  13:53:52
16    of the jury instructions.
17            MR. EISENBERG:  And we agree with that, Your Honor,
18    can be referred back in its entirety.
19            THE COURT:  Do you have any thought as to also
20    referring them back to page 16, which is the separate            13:54:27
21    consideration of each count?
22            MR. RAPP:  We don't have an objection to that as well.
23            MR. EISENBERG:  Excuse me, Your Honor, we do object to
24    that because we believe that it could put an emphasis on, an
25    overemphasis on trying to come to a decision with respect to,    13:54:49
```

UNITED STATES DISTRICT COURT

9

```
 1   let's say, a conspiracy count.  I'm not sure it's even
 2   necessary at this point, and it's -- I think going to page 18
 3   in its entirety is exactly what the jury should hear.
 4          MR. LINCENBERG:  And Your Honor, I think our view is
 5   the Court doesn't need to reread it.  Just send a note back or      13:55:16
 6   something referring them to page 18.
 7          THE COURT:  Well, I guess, the only reason I think
 8   referring them also to page 16 is because the question is as to
 9   "on a count."
10          MR. EISENBERG:  You know, Your Honor, that's the way        13:55:40
11   you could read it initially, but then, and I am not being
12   critical of syntax or anything like that, it could also be read
13   to read to reach "on any count" and not "a count," or "a lot of
14   counts" or "very few counts."  That's partly where the
15   confusion comes in.  And the juror, of course, doesn't           13:56:00
16   reference a particular count.  It's just what do you do when
17   you can't reach a verdict on counts, and I think it's premature
18   to go beyond page 18.
19          MR. RAPP:  Well --
20          THE COURT:  But I guess I'm a little bit, I guess,         13:56:19
21   confused because the jury instructions are as they are, and 16
22   is part of that as to the individual counts.
23          Mr. Rapp, you wanted to say something?
24          MR. RAPP:  We really do think that they should be
25   referred to 16.  Now even in light of what defense says, 16      13:56:40
```

UNITED STATES DISTRICT COURT

ER 14978

10

```
 1    actually answers their question under any interpretation of the
 2    juror question, or not answers it, but gives them guidance on
 3    it.  So we think if you refer page 16 and 18 without overly
 4    emphasizing any portion of the instructions on those pages,
 5    that should answer their question holistically.          13:57:06
 6         MR. EISENBERG:  If that is the case then, Your Honor,
 7    it shouldn't be read to the jury 'cause it stands out.  If
 8    that's what the Court is going to do, I don't think it's
 9    necessary, then referring them simply to pages 16 and --
10         THE COURT:  Oh, yes, that's what I intended to do   13:57:24
11    because I have to handwrite this.  I'm not going to rewrite the
12    instruction.  I would just refer to them back to the jury
13    instructions at page 16 and 18, and that's all I would say.
14         MR. EISENBERG:  Is that -- we may have another view on
15    this, Your Honor, from a different counsel.               13:57:49
16         MR. LINCENBERG:  Your Honor, just reporting from the
17    group, we still object to rereading 16.  We don't think it's
18    appropriate.  It's -- we just don't know what this note means,
19    and we think it could just unduly emphasize one thing over
20    another as to whether it's Count 1, go on to Count 2, or if  13:58:26
21    they reached a verdict on every count except one.  So for that
22    reason we object to referring them to page 16 again.
23         THE COURT:  All right.  Well, I'm going to refer them
24    to page -- jury instructions at page 16 and 18 because I do
25    think it's important for them to be reminded that their verdict  13:58:52
```

11

```
 1    on any count as to any defendant should not control their

 2    verdict on any other count, and so I'll refer them back to 16,

 3    page 16 and 18 of the jury instructions.

 4         So my answer will read:  The Court refers you to pages

 5    16 and 18 -- refers you back to pages 16 and 18 of the jury      13:59:17

 6    instructions.

 7         And that will be the entirety of the answer.  All

 8    right.  Let me just inquire, I think, is Mr. Panchapakesan

 9    still on the call?

10         MR. PANCHAPAKESAN:  I am, Your Honor.                       13:59:45

11         THE COURT:  And I know we don't possibly have

12    Mr. Boyle, but have those filings been entered or have you

13    submitted anything to my chambers?

14         MR. PANCHAPAKESAN:  My understanding, Your Honor, is

15    that the government yesterday submitted their position on the    14:00:01

16    retention of the jury.  They shared a draft with us yesterday

17    evening and then we responded this morning with our position.

18         And then with respect to the verdict form, we intend

19    on -- and what that verdict form entails -- we intend to file

20    something on that by the close of business today.               14:00:26

21         THE COURT:  All right.  Why don't we, just because I

22    don't know how quickly or deliberately they will be working,

23    why don't we set a tentative time to meet, and we can do that

24    virtually by tomorrow at 10:00 so that I'll have some ability

25    to review whatever it is that you filed.  I think I've come to   14:00:49
```

UNITED STATES DISTRICT COURT

12

```
 1   some understanding of how we should proceed, but I want to make

 2   sure that I get your views on that with regard to forfeiture,

 3   should that occur.

 4        I think we have the ability to do a 10:00?  Okay.  All

 5   right.  We'll set that up for you.                          14:01:11

 6        MR. PANCHAPAKESAN:  Thank you.

 7        THE COURT:  Okay.  There being nothing further, would

 8   you please return the questions back to my law clerk?  And I

 9   will submit this to the jury.

10        (Recess was taken at 2:01 p.m.)                        14:01:46

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

13

1

2

3                    **C E R T I F I C A T E**

4

5          I, HILDA E. LOPEZ, do hereby certify that I am duly

6    appointed and qualified to act as Official Court Reporter for

7    the United States District Court for the District of Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion of

10   the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13         DATED at Phoenix, Arizona, this 9th day of November,

14   2023.

15

16

17                            s/Hilda E. Lopez_____

18                            HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

## 1

**1** [1] - 10:20
**10:00** [2] - 11:24, 12:4
**1155** [1] - 3:7
**11th** [1] - 2:10
**120** [1] - 2:14
**1200** [1] - 2:5
**1301** [1] - 2:10
**14202** [1] - 2:14
**16** [16] - 4:19, 8:20, 9:8, 9:21, 9:25, 10:3, 10:9, 10:13, 10:17, 10:22, 10:24, 11:2, 11:3, 11:5
**160** [1] - 2:17
**18** [12] - 6:5, 7:15, 8:15, 9:2, 9:6, 9:18, 10:3, 10:13, 10:24, 11:3, 11:5
**1875** [1] - 3:3
**1:33** [2] - 1:8, 4:2
**1:36** [1] - 5:19
**1:40** [1] - 5:20
**1:44** [1] - 7:25
**1:48** [1] - 8:8
**1:53** [1] - 8:9

## 2

**2** [2] - 4:10, 10:20
**20005** [1] - 2:11
**2023** [2] - 1:7, 13:14
**210** [1] - 2:20
**2300** [1] - 3:3
**24** [1] - 6:11
**2734** [1] - 3:11
**2930** [1] - 2:17
**2:01** [1] - 12:10
**2:18-cr-00422-DJH** [1] - 1:5

## 3

**30** [2] - 1:15, 1:22
**312** [1] - 1:21
**322-7256** [1] - 1:23
**3550** [1] - 3:7

## 4

**40** [1] - 2:5
**401** [1] - 1:22
**42** [1] - 2:14

## 6

**602** [1] - 1:23
**6720** [1] - 2:20

## 8

**8** [1] - 1:7
**85003-2151** [1] - 1:22
**85004** [1] - 2:6
**85012** [1] - 3:8
**85016** [1] - 2:18
**85252** [1] - 3:11
**85253** [1] - 2:21

## 9

**90067** [1] - 3:4
**9th** [1] - 13:13

## A

**ability** [2] - 11:24, 12:4
**above-entitled** [1] - 13:10
**acceptable** [1] - 5:24
**accurate** [1] - 13:9
**act** [1] - 13:6
**added** [1] - 7:12
**afraid** [2] - 6:18, 7:16
**agree** [2] - 7:11, 8:17
**agreement** [3] - 4:9, 7:21, 8:15
**Aided** [1] - 1:24
**al** [1] - 1:8
**Allen** [4] - 4:17, 5:9, 6:9, 6:10
**America** [1] - 1:5
**Andrew** [2] - 2:4, 3:6
**andrew.stone@ usdoj.gov** [1] - 2:7
**Angeles** [1] - 3:4
**answer** [4] - 4:21, 4:25, 7:5, 10:5, 11:4, 11:7
**answered** [1] - 7:4
**answering** [1] - 7:1
**answers** [2] - 10:1, 10:2
**Appeared** [1] - 2:20
**appearing** [1] - 4:23
**appointed** [1] - 13:6
**appropriate** [2] - 5:24, 10:18
**ARIZONA** [1] - 1:2
**Arizona** [5] - 1:7, 1:22, 2:6, 13:7, 13:13
**assure** [1] - 8:11
**attempt** [3] - 5:3, 6:21, 7:17
**ATTORNEY'S** [1] - 2:3
**Austin** [1] - 2:10
**austin.berry2@ usdoj.gov** [1] - 2:11
**Avenue** [4] - 2:5, 2:10,

2:14, 3:7
**AZ** [4] - 2:18, 2:21, 3:8, 3:11

## B

**BEFORE** [1] - 1:12
**begin** [1] - 7:15
**belief** [1] - 6:24
**benefit** [1] - 4:22
**Berry** [1] - 2:10
**BERTRAND** [4] - 3:10, 4:6, 4:13, 5:16
**Bertrand** [2] - 3:10, 4:5
**beyond** [1] - 9:18
**bf@federalpwa.com** [1] - 2:18
**BIRD** [1] - 3:1
**bit** [3] - 4:14, 8:11, 9:20
**bottom** [1] - 7:19
**Box** [1] - 3:11
**BOXER** [1] - 3:1
**Boyle** [1] - 11:12
**break** [1] - 7:23
**Bruce** [1] - 2:17
**Brunst** [1] - 3:1
**Buffalo** [1] - 2:14
**business** [1] - 11:20

## C

**CA** [1] - 3:4
**CAMBRIA** [1] - 2:13
**Cambria** [1] - 2:13
**Camelback** [1] - 2:17
**case** [2] - 6:14, 10:6
**Central** [2] - 2:5, 3:7
**Century** [1] - 3:3
**certainly** [3] - 5:15, 5:17, 7:1
**certify** [1] - 13:5
**CERTIFY** [1] - 13:8
**chambers** [1] - 11:13
**change** [3] - 6:18, 6:23, 7:16
**charge** [5] - 4:17, 4:18, 5:10, 6:9, 6:10
**charged** [1] - 7:9
**Circuit's** [1] - 5:8
**clerk** [2] - 4:22, 12:8
**close** [1] - 11:20
**comfortable** [1] - 5:18
**commence** [1] - 4:2
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**confused** [1] - 9:21
**confusion** [1] - 9:15

**conscientious** [2] - 5:5, 6:23
**consensus** [1] - 8:6
**consideration** [2] - 5:12, 8:21
**considered** [1] - 6:15
**considering** [1] - 4:14
**conspiracy** [1] - 9:1
**constitute** [1] - 13:8
**consult** [1] - 7:20
**contained** [1] - 13:10
**continue** [1] - 7:10
**control** [3] - 5:6, 11:1, 13:12
**copy** [1] - 4:11
**correct** [1] - 4:12
**counsel** [1] - 10:15
**count** [14] - 4:10, 5:3, 5:5, 5:7, 5:12, 8:21, 9:1, 9:9, 9:13, 9:16, 10:21, 11:1, 11:2
**Count** [1] - 10:20
**counts** [6] - 4:15, 7:9, 9:14, 9:17, 9:22
**course** [3] - 5:4, 6:22, 9:15
**COURT** [21] - 1:1, 4:4, 4:7, 4:14, 5:15, 5:17, 5:21, 5:25, 6:2, 7:7, 7:12, 7:23, 8:10, 8:19, 9:7, 9:20, 10:10, 10:23, 11:11, 11:21, 12:7
**Court** [10] - 1:20, 1:24, 4:8, 6:4, 7:19, 9:5, 10:8, 11:4, 13:6, 13:7
**Courthouse** [1] - 1:21
**COURTROOM** [1] - 7:24
**COVID** [1] - 8:12
**critical** [1] - 9:12

## D

**date** [1] - 13:11
**DATED** [1] - 13:13
**DAVID** [1] - 3:6
**David** [1] - 3:7
**david@ deisenbergplc.com** [1] - 3:8
**DAY** [1] - 1:15
**DC** [1] - 2:11
**deadlocked** [1] - 7:8
**decide** [2] - 6:14, 7:16
**decision** [4] - 5:5, 6:20, 6:23, 8:25
**Defendant** [5] - 2:12, 2:16, 3:1, 3:6, 3:9

**defendant** [3] - 5:6, 5:7, 11:1
**Defendants** [1] - 1:9
**defendants** [2] - 5:25, 6:5
**defense** [2] - 5:13, 9:25
**Delaware** [1] - 2:14
**deliberate** [1] - 7:20
**deliberately** [1] - 11:22
**deliberating** [1] - 6:10
**DEPARTMENT** [1] - 2:9
**DEPUTY** [1] - 7:24
**determine** [1] - 8:13
**DIANE** [1] - 1:12
**different** [1] - 10:15
**direct** [1] - 7:5
**direction** [1] - 13:12
**discuss** [1] - 5:14
**discussed** [1] - 6:16
**discussion** [1] - 6:19
**District** [1] - 13:7
**DISTRICT** [2] - 1:1, 1:2
**down** [1] - 7:5
**draft** [2] - 4:25, 11:16
**DROOKS** [1] - 3:1
**duly** [1] - 13:5
**duty** [1] - 7:20

## E

**East** [1] - 2:17
**effect** [1] - 6:24
**EISENBERG** [11] - 3:6, 6:1, 6:3, 7:11, 7:18, 8:3, 8:17, 8:23, 9:10, 10:6, 10:14
**Eisenberg** [2] - 3:7, 6:2
**Eisenberg's** [1] - 8:5
**Elizabeth** [1] - 1:21
**emphasis** [1] - 8:24
**emphasize** [1] - 10:19
**emphasizing** [1] - 10:4
**entails** [1] - 11:19
**entered** [1] - 11:12
**entirety** [3] - 8:18, 9:3, 11:7
**entitled** [1] - 13:10
**Eric** [1] - 2:20
**eric.kesslerlaw@ gmail.com** [1] - 2:21
**Esq** [12] - 2:3, 2:4, 2:4, 2:5, 2:10, 2:13, 2:17, 2:20, 3:2, 3:3, 3:7, 3:10
**ESQ** [1] - 3:10

essentially [2] - 7:10, 7:14
et [1] - 1:8
evening [1] - 11:17
event [1] - 8:13
evidence [2] - 6:16, 6:24
exactly [1] - 9:3
except [1] - 10:21
excuse [2] - 7:23, 8:23

**F**

FCRR [2] - 1:21, 13:18
FEDER [2] - 2:16
Feder [1] - 2:17
fellow [1] - 6:17
few [2] - 5:14, 9:14
fighting [1] - 8:10
file [1] - 11:19
filed [1] - 11:25
filings [1] - 11:12
first [1] - 5:8
five [3] - 6:7, 8:1, 8:7
Floor [1] - 2:10
follows [1] - 6:14
FOR [1] - 1:2
foregoing [1] - 13:8
forfeiture [1] - 12:2
form [2] - 11:18, 11:19
four [1] - 6:7
full [1] - 13:9
fully [1] - 6:16
FURTHER [1] - 13:8

**G**

Gary [1] - 3:3
given [1] - 5:11
glad [1] - 4:4
glincenberg@
  birdmarella.com [1]
  - 3:5
Gopi [1] - 3:2
Government [2] - 2:2, 2:9
government [2] - 5:22, 11:15
gpanchapakesan@
  birdmarella.com [1]
  - 3:4
GREEN [1] - 2:13
group [1] - 10:17
guess [3] - 9:7, 9:20
guidance [1] - 10:2
guys [1] - 8:6

**H**

handed [1] - 5:2

handing [1] - 4:22
handwrite [1] - 10:11
hear [1] - 9:3
heard [1] - 5:21
helpful [2] - 4:18, 8:7
hereby [1] - 13:5
herein [1] - 13:10
Hilda [1] - 1:21
HILDA [2] - 13:5, 13:18
holistically [1] - 10:5
honest [1] - 6:24
Honor [15] - 4:6, 5:13, 6:1, 6:5, 7:6, 7:18, 8:17, 8:23, 9:4, 9:10, 10:6, 10:15, 10:16, 11:10, 11:14
HONORABLE [1] - 1:12
hope [1] - 8:3
HUMETEWA [1] - 1:12

**I**

important [5] - 5:2, 6:13, 6:21, 7:17, 10:25
individual [1] - 9:22
inquire [1] - 11:8
instruction [3] - 5:11, 5:23, 10:12
instructions [9] - 4:19, 6:6, 8:16, 9:21, 10:4, 10:13, 10:24, 11:3, 11:6
intend [2] - 11:18, 11:19
intended [1] - 10:10
interpretation [1] - 10:1
issue [1] - 8:11

**J**

John [1] - 3:1
JOY [1] - 3:10
Joy [1] - 3:10
joy@joybertrandlaw.
  com [1] - 3:12
Joye [1] - 3:9
Jr [1] - 2:13
JUDGE [1] - 1:12
Judge [2] - 5:23, 8:1
Juror [1] - 4:10
juror [2] - 9:15, 10:2
jurors [4] - 6:16, 6:17, 6:20, 7:20
JURY [1] - 1:15
jury [18] - 4:7, 4:15, 4:19, 5:11, 6:6, 6:10,

7:19, 8:15, 8:16, 9:3, 9:21, 10:7, 10:12, 10:24, 11:3, 11:5, 11:16, 12:9
JUSTICE [1] - 2:9

**K**

KESSLER [1] - 2:19
Kessler [2] - 2:20, 4:23
Kevin [1] - 2:3
kevin.rapp@usdoj.
  gov [1] - 2:6
Kozinets [1] - 2:4

**L**

L.L.C [1] - 3:10
L.L.P [1] - 2:13
Lacey [2] - 1:8, 2:12
last [1] - 7:12
law [2] - 4:22, 12:8
LAW [2] - 2:16, 2:19
least [1] - 5:9
light [1] - 9:25
LINCENBERG [4] - 3:2, 5:13, 9:4, 10:16
Lincenberg [1] - 3:3
LIPSITZ [1] - 2:13
listened [1] - 6:17
looked [1] - 4:19
LOPEZ [1] - 13:5, 13:18
Lopez [2] - 1:21, 13:17
Los [1] - 3:4

**M**

MARELLA [1] - 3:1
Margaret [1] - 2:5
margaret.perlmeter
  @usdoj.gov [1] - 2:8
means [1] - 10:18
meet [1] - 11:23
mentioned [1] - 5:10
Michael [2] - 1:8, 2:12
might [2] - 4:18, 8:7
minutes [2] - 5:14, 8:2
modifying [1] - 4:21
morning [1] - 11:17
MR [21] - 5:13, 5:23, 6:1, 6:3, 7:11, 7:18, 8:3, 8:14, 8:17, 8:22, 8:23, 9:4, 9:10, 9:19, 9:24, 10:6, 10:14, 10:16, 11:10, 11:14, 12:6
MS [4] - 4:6, 4:13, 5:16, 8:4

must [2] - 6:14, 7:15

**N**

necessarily [1] - 4:17
necessary [5] - 6:8, 6:9, 7:5, 9:2, 10:9
need [3] - 7:23, 9:5
needs [1] - 8:1
NESSIM [1] - 3:1
New [1] - 2:10
Ninth [1] - 5:8
North [2] - 2:5, 3:7
note [2] - 9:5, 10:18
nothing [1] - 12:7
noticed [1] - 7:18
November [2] - 1:7, 13:13
numerous [2] - 4:15, 7:9
NW [1] - 2:10
NY [1] - 2:14

**O**

O'Connor [1] - 1:21
object [3] - 8:23, 10:17, 10:22
objection [1] - 8:22
occur [1] - 12:3
OF [3] - 1:2, 1:14, 2:9
OFFICE [3] - 2:3, 2:16, 2:19
Official [2] - 1:20, 13:6
one [6] - 5:9, 7:9, 7:20, 7:21, 10:19, 10:21
opinion [2] - 6:18, 7:16
ourselves [1] - 5:14
outside [1] - 5:16
overemphasis [1] - 8:25
overly [1] - 10:3
own [2] - 5:5, 6:23

**P**

P.A [1] - 2:16
P.C [1] - 3:2
P.L.C [1] - 3:6
p.m [8] - 1:8, 4:2, 5:19, 5:20, 7:25, 8:8, 8:9, 12:10
P.O [1] - 3:11
Padilla [1] - 3:6
page [5] - 4:19, 6:5, 7:15, 8:15, 8:20, 9:2, 9:6, 9:8, 9:18, 10:3, 10:13, 10:22, 10:24, 11:3

pages [5] - 10:4, 10:9, 11:4, 11:5, 13:8
Panchapakesan [3] - 3:2, 4:24, 11:8
PANCHAPAKESAN [3] - 11:10, 11:14, 12:6
paragraphs [4] - 6:7, 6:13, 7:15
Park [1] - 3:3
part [4] - 4:18, 7:2, 7:5, 9:22
particular [1] - 9:16
parties [2] - 8:5, 8:14
partly [1] - 9:14
Paul [1] - 2:13
pcambria@lglaw.
  com [1] - 2:15
perhaps [2] - 4:20, 4:24
Perlmeter [1] - 2:5
persuades [1] - 6:19
Peter [1] - 2:4
peter.kozinets@
  usdoj.gov [1] - 2:7
Phoenix [6] - 1:7, 1:22, 2:6, 2:18, 3:8, 3:13
Plaintiff [1] - 1:6
point [3] - 6:10, 7:4, 9:2
portion [1] - 5:10, 10:4, 13:9
position [2] - 11:15, 11:17
possibly [1] - 11:11
posture [1] - 4:16
pre [3] - 4:17, 5:9, 6:10
pre-Allen [3] - 4:17, 5:9, 6:10
prefer [1] - 6:5
preliminarily [1] - 6:8
premature [2] - 6:12, 9:17
prepared [1] - 13:12
Prepared [1] - 1:24
proceed [1] - 12:1
PROCEEDINGS [1] - 1:14
proceedings [1] - 13:10
Proceedings [1] - 1:24, 4:2, 5:20, 8:9
proposal [2] - 7:14, 8:5
proposed [3] - 5:9, 8:6
proposes [1] - 8:4
provided [1] - 4:11

3

**put** [1] - 8:24

## Q

**qualified** [1] - 13:6
**QUESTION** [1] - 1:15
**questions** [1] - 12:8
**quickly** [1] - 11:22
**quite** [1] - 7:3
**quote** [1] - 6:14

## R

**Rapp** [2] - 2:3, 9:23
**RAPP** [5] - 5:23, 8:14, 8:22, 9:19, 9:24
**reach** [9] - 4:9, 5:3, 6:21, 6:25, 7:3, 7:17, 8:6, 9:13, 9:17
**reached** [2] - 8:14, 10:21
**reaching** [1] - 7:21
**read** [7] - 4:24, 7:7, 9:11, 9:12, 9:13, 10:7, 11:4
**really** [1] - 9:24
**reason** [3] - 7:12, 9:7, 10:22
**recess** [4] - 5:19, 7:25, 8:8, 12:10
**reconvened** [2] - 5:20, 8:9
**refer** [6] - 4:20, 6:6, 10:3, 10:12, 10:23, 11:2
**reference** [1] - 9:16
**referred** [3] - 8:15, 8:18, 9:25
**referring** [5] - 8:20, 9:6, 9:8, 10:9, 10:22
**refers** [2] - 11:4, 11:5
**regard** [1] - 12:2
**remind** [3] - 5:1, 5:2, 6:13
**reminded** [1] - 10:25
**reminding** [1] - 7:14
**reminds** [1] - 7:19
**Reported** [1] - 1:24
**Reporter** [3] - 1:20, 1:24, 13:6
**REPORTER'S** [1] - 1:14
**reporting** [1] - 10:16
**reread** [1] - 9:5
**rereading** [1] - 10:17
**respect** [2] - 8:25, 11:18
**responded** [1] - 11:17
**retention** [1] - 11:16
**return** [1] - 12:8

**review** [1] - 11:25
**rewrite** [1] - 10:11
**RHOW** [1] - 3:2
**RICHTER** [2] - 8:1, 8:4
**rise** [1] - 7:24
**RMR** [2] - 1:21, 13:18
**Road** [2] - 2:17, 2:20

## S

**s/Hilda** [1] - 13:17
**Sandra** [1] - 1:21
**SCIME** [1] - 2:13
**Scott** [1] - 2:16
**Scottsdale** [3] - 2:20, 2:21, 3:11
**seated** [1] - 4:4
**second** [1] - 5:10
**see** [2] - 4:4, 6:4
**send** [1] - 9:5
**sentence** [3] - 5:8, 5:9, 7:13
**separate** [1] - 8:20
**separately** [1] - 5:12
**set** [2] - 11:23, 12:5
**shared** [1] - 11:16
**signed** [1] - 4:10
**simply** [4] - 6:20, 6:25, 7:8, 10:9
**someone** [1] - 4:24
**sort** [1] - 4:16
**Spc** [1] - 1:22
**speaking** [1] - 5:25
**Spear** [1] - 2:16
**specified** [1] - 13:11
**stab** [1] - 4:21
**stands** [1] - 10:7
**STATES** [3] - 1:1, 2:3, 2:9
**States** [2] - 1:5, 13:7
**Stenographic** [1] - 1:24
**step** [1] - 5:16
**still** [2] - 10:17, 11:9
**Stone** [1] - 2:4
**Street** [1] - 1:22
**submit** [1] - 12:9
**submitted** [3] - 4:8, 11:13, 11:15
**Suite** [7] - 1:21, 2:5, 2:14, 2:17, 2:20, 3:3, 3:7
**syntax** [1] - 9:12

## T

**tentative** [1] - 11:23
**THE** [22] - 1:2, 1:12, 4:4, 4:7, 4:14, 5:15, 5:17, 5:21, 5:25, 6:2,

7:7, 7:12, 7:23, 8:10, 8:19, 9:7, 9:20, 10:10, 10:23, 11:11, 11:21, 12:7
**therein** [1] - 13:11
**three** [1] - 6:7
**throat** [1] - 8:11
**today** [2] - 4:8, 11:20
**together** [1] - 8:5
**tomorrow** [1] - 11:24
**took** [1] - 4:21
**towards** [1] - 7:21
**TRANSCRIPT** [1] - 1:14
**Transcript** [1] - 1:24
**transcript** [2] - 13:9, 13:11
**Transcription** [1] - 1:24
**TRIAL** [1] - 1:15
**true** [1] - 13:9
**trying** [2] - 7:7, 8:25

## U

**U.S** [1] - 1:21
**unable** [1] - 4:9
**unanimous** [5] - 4:9, 5:3, 6:21, 7:3, 7:17
**under** [2] - 10:1, 13:12
**unduly** [1] - 10:19
**UNITED** [3] - 1:1, 2:3, 2:9
**United** [2] - 1:5, 13:7
**up** [1] - 12:5

## V

**Vaught** [1] - 3:9
**verdict** [13] - 5:3, 5:5, 5:6, 6:22, 6:25, 7:3, 7:17, 9:17, 10:21, 10:25, 11:2, 11:18, 11:19
**video** [1] - 4:23
**view** [3] - 7:21, 9:4, 10:14
**views** [2] - 6:17, 12:2
**virtually** [1] - 11:24
**voice** [1] - 8:2
**vs** [1] - 1:7

## W

**wait** [1] - 5:1
**Walter** [1] - 2:20
**Washington** [2] - 1:22, 2:11
**weight** [1] - 6:24
**West** [1] - 1:22

**wishes** [1] - 5:21
**WOLPERT** [1] - 3:1
**Wu** [1] - 2:5

## Y

**yesterday** [2] - 11:15, 11:16
**York** [1] - 2:10
**yourself** [1] - 6:14

## Z

**Zoom** [2] - 2:20, 3:2

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

———————————

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 9, 2023 |
| Michael Lacey, et al. | ) | 10:00 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |


**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 31 - A.M. SESSION**

**IN-COURT HEARING**


Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

```
 1                    A P P E A R A N C E S

 2
     For the Government:
 3       UNITED STATES ATTORNEY'S OFFICE
         By:  Mr. Kevin M. Rapp, Esq.
 4            Mr. Peter S. Kozinets, Esq.
              Mr. Andrew C. Stone, Esq.
 5            Ms. Margaret Wu Perlmeter, Esq.
              Mr. Daniel Boyle, Esq. - Appears by Zoom
 6            Mr. Joseph Bozdech, Esq.
         40 North Central Avenue, Suite 1200
 7       Phoenix, Arizona 85004
         kevin.rapp@usdoj.gov
 8       peter.kozinets@usdoj.gov
         andrew.stone@usdoj.gov
 9       margaret.perlmeter@usdoj.gov

10   For the Government:
         UNITED STATES DEPARTMENT OF JUSTICE
11       By:  Mr. Austin Berry, Esq.
         1301 New York Avenue, NW, 11th Floor
12       Washington, DC 20005
         austin.berry2@usdoj.gov
13
     For the Defendant Michael Lacey:
14       LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
         By:  Mr. Paul J. Cambria, Jr., Esq.
15       42 Delaware Avenue, Suite 120
         Buffalo, NY 14202
16       pcambria@lglaw.com

17   For the Defendant Scott Spear:
         FEDER LAW OFFICE, P.A.
18       By:  Mr. Bruce S. Feder, Esq.
         2930 East Camelback Road, Suite 160
19       Phoenix, AZ 85016
         bf@federlawpa.com
20       - and -
         KESSLER LAW OFFICE
21       By:  Mr. Eric Walter Kessler, Esq.
         6720 N. Scottsdale Road, Suite 210
22       Scottsdale, AZ 85253
         eric.kesslerlaw@gmail.com

23

24

25
```

UNITED STATES DISTRICT COURT

3

```
1    For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
2         LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq. - Appears by Zoo
3              Mr. Gary S. Lincenberg, Esq.
          1875 Century Park E, Suite 2300
4         Los Angeles, CA 90067
          gpanchapakesan@birdmarella.com
5         glincenberg@birdmarella.com

6    For the Defendant Joye Vaught:
          JOY BERTRAND, ESQ., L.L.C.
7         By:  Ms. Joy M. Bertrand, Esq.
          P.O. Box 2734
8         Scottsdale, AZ 85252
          joy@joybertrandlaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

**ER 14988**

4

**P R O C E E D I N G S**

1

2

3       (Proceedings commence at 10:00 a.m.)

4       THE COURT:  Please be seated.  All right.  It appears

5  we have some clients, but not all.  Is there any waiver of     10:00:29

6  client presence?

7       MS. BERTRAND:  Your Honor, I waive my client's

8  presence.  If the Court needs her, she's in our workroom.

9       THE COURT:  All right.  Who else?  Mr. Eisenberg is

10  not present.  Neither is his client.  I'm assuming that's     10:00:50

11  because the allegations aren't impacting him.

12       I see Mr. Feder.  The screen is blocking you, so I

13  know that you're here.

14       I'm going to try to make you do all of the talking so

15  I can preserve my voice.     10:01:14

16       First, let me ask, why do we have Notice of Appearance

17  today, a change?

18       MR. BOZDECH:  Your Honor, AUSA Joseph Bozdech for the

19  United States.  I entered an appearance in the eventuality that

20  Mr. Boyle would not be able to appear.  I am the forfeiture     10:01:31

21  attorney here in the Phoenix office.

22       MR. FEDER:  I'm sorry.  I can't hear the gentleman.

23       MR. BOZDECH:  I am the forfeiture AUSA here in the

24  Phoenix office.  I entered an appearance just in case Mr. Boyle

25  was unable to appear this morning, in an abundance of caution,     10:01:48

UNITED STATES DISTRICT COURT

5

```
 1   but I see we have Mr. Boyle by Zoom.
 2          THE COURT:  And who is the lead trial counsel on the
 3   matter?
 4          MR. BOYLE:  That would be me, Your Honor, Mr. Boyle.     10:02:05
 5   My apologies.  I'm on the east coast for a family matter.
 6   Mr. Bozdech volunteered and entered an appearance in case there
 7   was a forfeiture matter I was not able to appear for.  My
 8   apologies, Your Honor.  I will be back in court on Tuesday.
 9          THE COURT:  I want to first turn to the briefing that
10   I received last evening from Mr. Panchapakesan, as well as the   10:02:34
11   government, related to the issue of third-party interests.  And
12   I did have a chance to look at the Ninth Circuit case that you
13   cited in your briefing, the Thompson case, and I don't find it
14   to be helpful or instructive on the procedural posture of how
15   the forfeiture proceeding should go because it doesn't tell me   10:03:15
16   that the jury was made to make the distribution determination
17   of the assets.  It simply refers to the District Court having
18   made the finding.
19          And so I'm not persuaded by the District Court
20   decisions that you previously provided me in the Eastern         10:03:43
21   District of Louisiana, that was the Mefford case, because my
22   reading of the statute is that the determination for the jury
23   is a nexus determination.  The rule clearly states that the
24   jury is to determine the nexus between the specific property
25   and the offense of conviction.                                   10:04:22
```

UNITED STATES DISTRICT COURT

6

```
 1          In reading the statute in its totality, all parts
 2   together, the eventual distribution or parsing out of
 3   third-party interests or commingling of assets is in the
 4   ancillary proceeding, and that would be the Court's
 5   determination.  So that's the way that I intend to proceed.  So   10:04:51
 6   the jury will only make the nexus determination as to any
 7   counts that they come back on in terms of the forfeiture
 8   allegation, and then we will set that aside and have the
 9   ancillary proceeding to determine whether or not there are
10   other interests, including percentage interests of assets that   10:05:20
11   may be commingled by any of the defendants, and that's how we
12   will proceed.
13          There really is, we hunted high and low, really no
14   particularized guidance in the circuit, but again, my plain
15   reading of the statute is my guidepost, and so that's how we   10:05:50
16   will proceed.
17          Now --
18          MR. PANCHAPAKESAN:  Your Honor, may I ask a clarifying
19   question on the process?  So I understand the Court's ruling to
20   be that, for example, if there's a bank account worth a million   10:06:11
21   dollars in it and the government proves a nexus to like a
22   Travel Act conviction, for example, that the Court in the
23   ancillary proceeding would hear evidence as to the extent to
24   which there's a connection.
25          So for example, for example, the defendants would be   10:06:37
```

UNITED STATES DISTRICT COURT

7

```
 1    permitted in that proceeding to make the argument that, well,
 2    let's say hypothetically $10,000 of the account are proceeds
 3    traceable to a crime of conviction, as I understand it, the
 4    Court's view is that that determination that would be made at
 5    that stage as opposed to the jury making it?                    10:06:58
 6            THE COURT:  Yes.
 7            MR. PANCHAPAKESAN:  Okay.  And just to make a record
 8    on this, I know we filed briefing on this, and I understand the
 9    Court's ruling, our position, Your Honor, is that this comes
10    down to what the word "nexus" means.  And you know, that's not  10:07:18
11    defined in the statute, but there is, of course, case law, for
12    example, the *Tyson Foods* case we cite, which I think makes for
13    a common sense finding that if a jury is deciding nexus, that
14    we necessarily have to decide before finding a nexus that there
15    is some -- some quantum of connection, and so that's why we     10:07:48
16    think the jury ought to decide that issue.
17            There's a case, for example, we didn't cite this, it's
18    the District of Nevada case.  It's a Ninth Circuit case, 2023
19    Westlaw, 426, 0922, U.S. vs. Hurdace, H-U-R-D-A-C-E.  It's a
20    money judgement case and, of course, the money judgment, that's 10:08:12
21    something that will go to the Court, but it's a case where
22    Court notes that the government seeks criminal forfeiture of a
23    certain amount.  And then the Court says, well, because the
24    government is only showing nexus on a lesser amount, that the
25    money judgement is for that lesser amount.                      10:08:31
```

8

```
 1         And so my concern is here that where we're going with
 2   the jury instead of a money judgment that would go to a judge,
 3   I mean, it's logical that the jury would make that
 4   determination of, has the government proved the full extent of
 5   the nexus essentially that they are seeking to forfeit?
 6         And then last note, Your Honor, is just appears that
 7   the government in the first instance did not object to our
 8   proposal.  In the verdict form, for example, in some instances
 9   in the jury instructions we included language like, "and if so,
10   to what extent should be forfeited," and the government had no
11   objection to that language.  And so we assessed the bank
12   accounts where there is, I think, sort of a cleaner argument
13   about what proceeds are traceable, at a minimum the bank
14   accounts we think the jury is capable of making that
15   determination.
16         So that's our position, Your Honor.
17         THE COURT:  Well, my recollection is I thought
18   Mr. Boyle did make an oral objection to it, the verdict form.
19   But in any event, you've made the record.  And so I'll look at
20   that case, but I at this point am not persuaded that that is --
21   well, I'm persuaded that my procedure meets the contours of the
22   entire statute, and so that's how we will proceed.
23         Let me go through the proposed instructions, and I
24   think I sent you back, I may have sent you back the sort of
25   track change version, but I'm going to look at and use as my
```

10:08:49

10:09:08

10:09:28

10:09:45

10:10:17

UNITED STATES DISTRICT COURT

ER 14993

9

```
 1    guidepost the government's 1935 filing because I, that's where
 2    I made my notes, and you'll hopefully be able to follow along.
 3          The first instruction is, of course, I removed
 4    reference to the superseding indictment and Bill of
 5    Particulars.  There were none of those here.  I removed the      10:10:55
 6    last paragraph, "A copy of the forfeiture allegation," so on
 7    and so forth, "will be given to you."  And of course, in the
 8    first paragraph we will have to potentially modify if there are
 9    different verdicts that come out with regard to any of the
10    forfeiture allegations, the count references, in other words.    10:11:41
11    So we'll reserve that.
12          Is there any issue with regard to that?
13          MR. BOYLE:  No, Your Honor.
14          MR. PANCHAPAKESAN:  No, Your Honor, and obviously we
15    propose the redlines, which I know the Court will get to, but    10:11:59
16    we have no issues with respect to that.
17          THE COURT:  We are keeping what is the government's
18    Proposed Instruction 2.
19          Any objection, Mr. Boyle?
20          MR. BOYLE:  No, Your Honor.                                10:12:39
21          MR. PANCHAPAKESAN:  Your Honor, on 2, I think in our
22    redline we add a redline that says, "separate consideration to
23    defendant," and I don't think there was an objection to that
24    from the government.
25          THE COURT:  I actually think the reason I did not          10:12:57
```

UNITED STATES DISTRICT COURT

10

```
 1    adopt that is because it's referenced elsewhere.

 2         MR. PANCHAPAKESAN:  Okay.  The only thing I would add,

 3    Your Honor, on Instruction 1, is we included a reference to the

 4    scope of Count 1 I believe that's a quote from the prior jury

 5    instructions, and that's our request in that respect, and I        10:13:19

 6    think that's my redline.

 7         THE COURT:  The only concern I had about that is it

 8    references the scope of Count 1 but it doesn't for the other

 9    counts.  So my sense is if you're going to do that with one

10    count, it should also -- there should also be similar phrasing   10:13:40

11    for the other counts, and so that's why I took it out.

12         MR. PANCHAPAKESAN:  And this may depend obviously to

13    what extent there are convictions.  My understanding from

14    Mr. Boyle is that their forfeiture will proceed as to the -- as

15    to Count 1 so far as Travel Act is concerned.  In other words,   10:14:04

16    if they are not getting a conspiracy conviction but were to get

17    on conviction on Counts 2 through 51, I think that might change

18    their approach.  Mr. Boyle can speak to that.

19         For example, if the Court looks at sort of the

20    preamble of the first instruction, the only Travel Act count is  10:14:22

21    Count 1, and then 52, of course, is the money laundering

22    conspiracy, and then there are substantive money laundering

23    counts that I think apply to Mr. Lacey in property, so I think

24    that's how they parsed it out.

25         THE COURT:  Well, again, here --                            10:14:42
```

UNITED STATES DISTRICT COURT

11

```
 1         MR. BOYLE:  That's correct, Your Honor, and that's
 2    reflected in the verdict form as well.  It's largely the
 3    conspiracies and then select subset of the substantive
 4    transactional money laundering counts.  So if there were not
 5    convictions on the conspiracies, I think there would be          10:14:57
 6    substantial modifications.
 7         THE COURT:  And I will leave you to do that.  But
 8    again, in these instructions it tells them to refer back to the
 9    prior instructions, so they'll have those instructions as well.
10    So I don't want to encumber them with redundant instructions.    10:15:13
11    And so to the extent you think a preamble is necessary for a
12    description of Count 1, make it very brief, or for the other
13    substantive forfeiture counts.
14         MR. PANCHAPAKESAN:  And as I understand Your Honor's
15    ruling, there will be no issue with us referring back to the     10:15:36
16    prior instructions then in dealing with the phase of the trial,
17    you know, in summation, for example, that there will be no
18    issue of referring back to --
19         THE COURT:  Right.  That's correct.
20         MR. PANCHAPAKESAN:  -- what was instructed on.           10:15:58
21         THE COURT:  All right.  Now, with regard to the scope
22    here, consistent with my ruling, and then throughout I'm going
23    to remove references related to "and if so how much of that
24    property should be forfeited," and so --
25         MR. BOYLE:  No objection, Your Honor.                    10:16:28
```

UNITED STATES DISTRICT COURT

12

| | |
|---|---|
| 1 | THE COURT: Yes. I'm going to adopt the Scope of |
| 2 | Jury's Determination as proposed by the government. |
| 3 | MR. PANCHAPAKESAN: Your Honor, and I would just note |
| 4 | objection on that, which I think I made already. |
| 5 | THE COURT: Yes. The Standard of Proof Instruction |
| 6 | Proposed 4, yours were the same, so I'm adopting that. |
| 7 | MR. PANCHAPAKESAN: Again, for the record, I would |
| 8 | note my objection again to the question. |
| 9 | THE COURT: Yes. Your reference to the amount of |
| 10 | property is removed, but otherwise the Standard of Proof is the |
| 11 | same as the government's. |
| 12 | The Preponderance of the Evidence I'm going to keep as |
| 13 | separate, and that is the government's proposed at |
| 14 | Document 1935, page 9. |
| 15 | MR. PANCHAPAKESAN: On this, Your Honor, the only |
| 16 | reason we included a new instruction is I think the Ninth |
| 17 | Circuit instruction is more generic preponderance instruction. |
| 18 | We pulled this out in certain instruction, which is specific to |
| 19 | forfeiture, sort of a follow-up on forfeiture trials. We |
| 20 | thought it was a little more accurate in our respect. |
| 21 | THE COURT: The Instruction 6 is the same, so I'll |
| 22 | adopt that. Reliance on Evidence Presented During Guilt Phase. |
| 23 | With regard to the proposed, government's Proposed |
| 24 | Instruction No. 7, again, removing references to the |
| 25 | superseding indictment, and so I'm going to adopt the |

10:16:49

10:17:13

10:17:44

10:17:59

10:18:44

UNITED STATES DISTRICT COURT

13

```
 1   defendants' at page 13.
 2        MR. BOYLE:  No objection, Your Honor.
 3        THE COURT:  Instruction No. 8, Multiple Bases, I'm
 4   keeping that instruction.  As I review it, it is the same as
 5   defendants' Proposed No. 10.                              10:19:30
 6        MR. PANCHAPAKESAN:  I think that's right, Your Honor,
 7   then in our redline there were two instructions we proposed
 8   before that.  One was Separate Consideration and one was
 9   Multiple Defendants, and I think the government had objection
10   to those.                                                 10:19:53
11        MR. BOYLE:  I think counsel is correct.  We didn't
12   object, although I think the Court has already noted that the
13   defendants' issue is resolved in other instructions, but
14   neither of those instructions were objectionable by themselves.
15        THE COURT:  All right.  The proposed, government's    10:20:09
16   Proposed Instruction No. 9 at page 13, I feel like this is the
17   preamble that should perhaps go into that first instruction.
18        MR. BOYLE:  We have no objection moving it, Your
19   Honor.  We simply feel it's helpful to have an instruction that
20   gives them a basic instruction of what is forfeitable, but it   10:20:53
21   could be an instruction here or in the preamble, Your Honor.
22   Both would be perfectly acceptable.
23        MR. PANCHAPAKESAN:  Our view on this, Your Honor, some
24   of these, some language I take issue with what is "shall
25   forfeit."  I don't know that that's exactly right.  I think it   10:21:09
```

UNITED STATES DISTRICT COURT

14

```
 1    should say something like "may be required to forfeit."  Like
 2    the "shall" implies that, you know, a nexus, however, might be
 3    requires forfeiture of the entire asset.  And then this also, I
 4    think, lacks the traceability language that's contained in the
 5    relevant forfeiture statute.                                      10:21:32
 6         THE COURT:  Well, I'll get to that.  So you would
 7    prefer that it read, "may forfeit," or just "forfeit"?
 8         MR. PANCHAPAKESAN:  "May be required to forfeit to the
 9    government."
10         THE COURT:  Is there objection, Mr. Boyle?               10:21:51
11         MR. BOYLE:  Your Honor, forfeiture is mandatory,
12    however, the nexus determination is the jury's question.  So I
13    believe counsel's proposal of "may be required to forfeit" is
14    probably more accurate.
15         THE COURT:  We will adopt that language.                 10:22:11
16         And then as to defendants' No. 10, the Proceeds
17    Defined.  So I removed all after the first sentence.  And it
18    seems to be fairly cumbersome, and I think the rest of the
19    instructions cover that, and I don't know why those two
20    paragraphs are necessary.                                     10:23:44
21         Mr. Boyle.
22         MR. BOYLE:  Your Honor, with respect to the last
23    paragraph, we do think it is necessary because the question of
24    an Eighth Amendment issue, whether something is the value of
25    property is greater than the -- than the excessive fines,      10:24:01
```

UNITED STATES DISTRICT COURT

15

```
 1   that's explicitly a question for the Court.  So we are trying
 2   to make clear to the jury with this instruction.  The question
 3   for that is nexus.  It's not a question of comparing the value
 4   of a property to, say, what nexus they see.  That's the sole
 5   reason to avoid asking the jury to make a determination that is    10:24:20
 6   squarely within the Court's jurisdiction.
 7          THE COURT:  Okay.  Let me see if I understood what you
 8   said.  So you suggest keeping the last paragraph?
 9          MR. BOYLE:  Yes, Your Honor, the paragraph regarding
10   the present value.  Because comparing the value to the amount,    10:24:39
11   I suggest goes towards an Eighth Amendment question for the
12   Court.
13          THE COURT:  All right.  We will keep the last
14   paragraph and remove the paragraph that begins, "Proceeds
15   remain proceeds."                                                 10:24:57
16          Mr. Panchapakesan.
17          MR. PANCHAPAKESAN:  Just so I understand, how does the
18   instruction read now?
19          THE COURT:  So it will read, "Property subject to
20   forfeiture as proceeds of a Travel Act conspiracy means          10:25:10
21   property of any kind obtained directly or indirectly, as the
22   result of the commission of the offense giving rise to
23   forfeiture, and any property traceable thereto, and is not
24   limited to the net gain or profit realized from the offense.
25          The question of the present value of any property that    10:25:37
```

UNITED STATES DISTRICT COURT

16

1    constitutes proceeds, or was obtained with proceeds, is not

2    before you.  If the property has the required connection to an

3    offense, it is subject to forfeiture whether or not its value

4    has changed."

5            MR. PANCHAPAKESAN:  I think it would be, Your Honor,        10:25:56

6    you know, appears the government's support for this instruction

7    is like Seventh Circuit cases, Eighth Circuit cases.  The

8    instruction we propose is actually the Seventh Circuit Model on

9    what "proceeds" means.  It's not limited to the Travel Act or

10   any particular offense.  "Proceeds" has sort of a wide          10:26:13

11   applicability.  We think it's a simpler instruction as to what

12   proceeds are.  And again, the amendment question I don't see as

13   a significant issue.  I find it confusing.

14           THE COURT:  So what I understand that you propose is

15   just taking out "of a Travel Act conspiracy" because then it    10:26:35

16   will read, "property subject to forfeiture means property of

17   any kind."

18           MR. PANCHAPAKESAN:  Right.  I think that's right,

19   because there may be multiple offenses.  I mean, of course, it

20   depends if there's conviction, what it's on.  If we are just    10:27:02

21   talking about Travel Act conspiracy, then it may make sense to

22   use that language, but if there's money laundering --

23           THE COURT:  Well, I don't think there's a distinction

24   in either of the counts anyway, so I'm going to go ahead and

25   remove "of a Travel Act conspiracy."                            10:27:20

UNITED STATES DISTRICT COURT

17

```
 1          MR. PANCHAPAKESAN:  Your Honor, I think we had a prior
 2    instruction definition of "traceable to."  It was our 11.  I
 3    think comes before this one.
 4          THE COURT:  Yes.  I will talk to you about that in a
 5    little bit.  And I think I actually, well, I moved it in        10:27:35
 6    placement.  That's why I am not getting to it yet.  But what I
 7    did with regard to your Forfeiture based on Travel Act
 8    Conspiracy, the proposed, government's Proposed Instruction 11,
 9    is, and the defendants' is their Proposed Instruction 13, what
10    I did was -- it's not this one -- I thought I did that.  Let's   10:28:10
11    see.  I moved -- after the listing of property, it then
12    instructs the jury beginning to find any of the property
13    subject to forfeiture.  What I did was I moved that to the
14    beginning in terms of the elements, the two elements that were
15    outlined by the defendants, and then I inserted the listing of  10:29:25
16    the property beginning with:  As to Mr. Lacey.  And so I think
17    it just reads better, gives them the instruction, tells them
18    the property to consider.
19          Is there an objection to that?
20          MR. BOYLE:  No objection, Your Honor.                      10:29:52
21          THE COURT:  And I will note that the defendants'
22    redlines "seized from or restrained in," and there is no
23    objection to that?  Mr. Boyle.
24          MR. BOYLE:  My apologies, Your Honor, I didn't quite
25    understand.  Is the Court's question, do we object to the       10:30:14
```

ER 15002

18

1   removal of the "seized from or restrained in" language?  We

2   won't object to that no objection, Your Honor.

3          THE COURT:  So we have adopted those strikeouts as

4   well.

5          So your preamble, again, government's 12, Property          10:30:48

6   Subject to Forfeiture for Money Laundering Convictions, I mean,

7   I think you can do it one of two ways.  You can have the

8   conspiracy on the Travel Act description proceed this

9   substantive property listing, and I think that probably would

10  be the better way, and then this money laundering paragraph      10:31:19

11  could proceed the substantive listing of the properties.

12         Does that make sense?

13         MR. BOYLE:  Yes, Your Honor, I think that does make

14  sense and works, Your Honor.

15         THE COURT:  And there was a scope, The Scope of          10:31:55

16  18 U.S.C. 982(a)(1) proposed by the government, was there

17  something similar to that by the defense, Mr. Panchapakesan?

18         MR. PANCHAPAKESAN:  No, Your Honor.  We objected to

19  this instruction in its entirety, and there were some

20  objections that we filed and included in the redline as well.     10:32:18

21  I mean, the short version of it is we think the "facilitation"

22  language is problematic because the statute does not use the

23  term "facilitate."  It uses the term "involved in," and I'm not

24  familiar with the Ninth Circuit case that really defines

25  "involvement" in that manner.                                    10:32:41

UNITED STATES DISTRICT COURT

19

```
 1        We cited a case, the Bital case, B-I-T-A-L, 76 F.
 2   Supp. 2d 1063, which I think is a C.D. Cal case, it calls into
 3   question the facilitation theory the government is pursuing.
 4   My understanding of "involved in" would be an account that is
 5   involved in the money laundering offense that has been charged.    10:33:02
 6   And as to my client, for example, investment accounts he holds
 7   or bank account he holds, those are not accounts that the
 8   government included in the money laundering offenses as being
 9   involved in the offense.
10        There's also some language about fees or commissions     10:33:20
11   paid to a money launderer.  That's kind of confusing.  I don't
12   know what that refers to.  I don't think there's been evidence
13   of that, and so our view is this is just unnecessary and
14   confusing.
15        MR. BOYLE:  From the government, Your Honor, the      10:33:36
16   statutory language says "property involved in such an offense
17   is forfeitable," and we believe the jury needs that term
18   "involved in" defined for them.  This is our proposed
19   definition of "involved in," and the defendants haven't
20   proposed a competing definition.  So I don't know how we can      10:33:51
21   give the jury no instruction as to what it means that property
22   is involved in a money laundering offense.  It may have -- they
23   could have proposed edits to this or a competing instruction,
24   but they did not, so the jury is going to be, I submit, quite
25   confused as to what "involved in" means.      10:34:09
```

UNITED STATES DISTRICT COURT

20

```
 1        MR. PANCHAPAKESAN:  Your Honor, the first then is
 2   "Money laundering property that was the subject to the
 3   financial transaction that constituted the money laundering
 4   violation," I don't think we have an objection to that.  I
 5   think that's essentially what "involved in" means.  That's the      10:34:25
 6   first line of their instruction.
 7        MR. BOYLE:  And Your Honor, I think we strongly
 8   disagree with that.  But again, there has to be a definition
 9   for the jury as to what "involved in" means.  Courts have held
10   that "involved in" is broader than "proceeds."  So we submitted     10:34:42
11   briefing on this I think as well, but there is only one
12   instruction for the Court right now.
13        THE COURT:  Is there evidence of "fees or commissions
14   paid," or are you going to present that?
15        MR. BOYLE:  I don't believe so, Your Honor.  This is          10:34:57
16   just a definition drawn from -- I believe this comes from
17   Mr. Cassella's treatise on the topic.  If the Court is
18   concerned about that specific language "fees or commissions," I
19   wouldn't object to removing that language, Your Honor.
20        THE COURT:  I don't think it's necessary to keep that        10:35:41
21   last paragraph in because there is going to be a separate
22   "traceable" definition, and this sort of characterized what
23   "traceable" means in a different way.
24        MR. BOYLE:  Understood, Your Honor.  We did not
25   originally include a "traceable to" definition.  We included it    10:36:06
```

UNITED STATES DISTRICT COURT

21

```
 1    in instructions like this.  So if the Court is inclined to
 2    include a separate "tracing" definition, I think the Court
 3    could reasonably remove this paragraph.  That's just not how we
 4    laid out our instructions.  So long as the jury is instructed
 5    on "tracing," we wouldn't object to that.                        10:36:22
 6          THE COURT:  And what about the last paragraph?  It
 7    seems redundant to another instruction.
 8          MR. BOYLE:  I think that's correct, Your Honor.  It is
 9    reflected in other instructions.
10          THE COURT:  All right.  So I will remove No. 3.  I        10:36:39
11    will remove "the property that's traceable," and all after
12    that.
13          MR. BOYLE:  No objection, Your Honor.
14          MR. PANCHAPAKESAN:  I think I noted my objection with
15    the "facilitation" language.                                    10:37:05
16          THE COURT:  The last instruction, the Forfeiture based
17    on Money Laundering Offenses, 982(a)(1), I'm going to do the
18    same thing that I did with the previous Travel Act forfeiture
19    instructions; that is, I'm going to move the paragraph at
20    Defendants' Proposed in Document 1940, page 27, at line 7, "In  10:38:02
21    order for you to find," and put that at the top followed by the
22    listing of the property and assets.  So it will match the
23    previous one.
24          Is there an objection?
25          MR. BOYLE:  If I may ask a question, Your Honor,          10:38:26
```

UNITED STATES DISTRICT COURT

22

```
 1   'cause I am trying to follow along, I believe the defendants'
 2   modified instructions specifically refer to a nexus.  Is the
 3   Court intending to include the specific "nexus" term?  To be
 4   clear, we don't object to moving the instruction.  The nature
 5   of my objection is simply because, as we noted in briefing, the      10:39:01
 6   defendants drew their Model instructions from the Seventh
 7   Circuit all instructions; however, they left out the Seventh
 8   Circuit Model Instruction defining a nexus.  So if we are going
 9   to use the term "nexus" for the jury, we should include that
10   definition, because otherwise I think the jury is left without      10:39:18
11   instruction as to what a nexus is.
12        The government's instruction simply called it a
13   connection with, which I think is somewhat self-evident, but I
14   would object to giving them the term "nexus" without defining
15   it, Your Honor.                                                      10:39:33
16        MR. PANCHAPAKESAN:  Your Honor, I don't think we have
17   an objection to using the term "connection."
18        THE COURT:  I'm not following where you're at.
19        MR. BOYLE:  My apologies, Your Honor.  I'm trying to
20   follow along.                                                       10:39:49
21        THE COURT:  In terms of, sorry, counsel.  Let me -- so
22   I'm looking at your Proposed Instruction No. 14, beginning at
23   page 23, and I'm looking at page 26 and you say, "The
24   government contends that the property described above was
25   involved in, or traceable to, the money laundering violations      10:40:21
```

UNITED STATES DISTRICT COURT

23

```
 1    for which one or more defendants were found guilty, and it is
 2    therefore subject to forfeiture."
 3          Then you are go on to say, "If you conclude that the
 4    government has proved by a preponderance of the evidence that
 5    the property listed above was involved in such offense, or      10:40:38
 6    traceable to the violations, you must find that the property is
 7    forfeitable."
 8          I don't know in the Defendants' Proposed 1940 what
 9    you're referring to in terms of their "nexus" reference.  I
10    don't see it, unless I'm not reading from the same thing you    10:41:01
11    are.
12          MR. BOYLE:  My apologies, Your Honor, it's possible I
13    got the wrong spot on the redline.  Then I withdraw that
14    objection, Your Honor.
15          THE COURT:  And so let me just be clear, you don't        10:41:14
16    object to the insertion of the language, "If you find from your
17    consideration," or, I'm sorry, it would start at line 7 of the
18    Defendants' Proposed Document 1940 at page 27, "In order for
19    you to find that the property is subject to forfeiture."  I'll
20    say, "the following property," and then all after that, then    10:42:02
21    list the property.
22          Mr. Boyle.
23          MR. BOYLE:  No objection, Your Honor.  I just looked
24    at the language.
25          THE COURT:  And the Special Verdict Form I'll keep.       10:42:24
```

UNITED STATES DISTRICT COURT

24

| | |
|---|---|
| 1 | The "traceable" definition, I know I saw it in here, and I |
| 2 | intend to include it.  I just -- I might have just moved it in |
| 3 | the redline, but I do intend to include the "traceable" |
| 4 | definition.  I just can't find it off the bat, and it's a |
| 5 | fairly short definition. |

10:42:59

6    MR. BOYLE:  No objection, Your Honor.  We are fine
7  with that instruction.

8    THE COURT:  Oh, okay.  So it would just state, "The
9  term 'traceable to' means that the acquisition of the property
10 is attributable to the offenses charged in," and we would have
11 to delineate the counts, as opposed to sources other than these
12 offenses.

10:43:26

13    MR. BOYLE:  Yes, Your Honor.  My only suggestion, I
14 believe this should probably go after the "proceeds"
15 definition, and it should refer only to Count 1 because
16 "traceable to," that language is used in the "proceeds"
17 definition.  With respect to the money laundering counts, they
18 use the "involved in" language, which is different.  So I
19 wouldn't want to confuse the jury as to which is "proceeds"
20 versus "involved in," but the language in the instruction is
21 not objectionable.

10:43:50

10:44:07

22    THE COURT:  Do you agree with that, Mr. Panchapakesan?
23    MR. PANCHAPAKESAN:  I think it should apply to both.
24 For example, 18 U.S.C. 982(a)(1), which is the forfeiture
25 statute tied to money laundering, says, "The Court, in imposing

10:44:21

25

1   sentence on a person convicted of an offense in violation of

2   section 1956, 1957 or 1960 of this title, shall order that the

3   person forfeit to the United States any property, real or

4   personal, involved in such offense, or any property traceable

5   to such property."                                              10:44:45

6           And so there is traceability language in the

7   applicable money laundering forfeiture statute, so I think it

8   applies to both.

9           MR. BOYLE:  That's a fair point, Your Honor.  I agree

10  with counsel.  That makes sense.                               10:44:59

11          THE COURT:  So why don't I do this:  I'll include in

12  that in the money laundering instruction, "The real or personal

13  property was involved in or traceable to."

14          All right.  That's all I have on the instructions.

15  Was there anything I missed?                                   10:45:34

16          MR. PANCHAPAKESAN:  Your Honor, we proposed a First

17  Amendment instruction at the end, and the basis for that

18  instruction is it appears that the government's theory here on

19  forfeiture is that every adult ad on Backpage was in fact an

20  act for prostitution, and it's, therefore, all the proceeds are 10:45:49

21  tied to an offense, and we argue there is a First Amendment

22  presumption in that respect, and that the government has a

23  burden on overcome it, and that -- so we are trying to do so is

24  to discern the ads as opposed to the millions with respect to

25  which they are seeking forfeiture, and so we think that there's 10:46:13

UNITED STATES DISTRICT COURT

26

```
 1  value in having that instruction here in the context of

 2  forfeiture.

 3          THE COURT:  Mr. Boyle.

 4          MR. BOYLE:  Your Honor, we my apologies, Your Honor,

 5  we object to that instruction.  I think that was Document 1943    10:46:28

 6  at page 9, but our summary is the jury has already been

 7  instructed on the First Amendment, and there's no need for any

 8  further instructions here.  We also cited some case law that

 9  their instruction, the case law underlying their instruction

10  was not applicable, and I -- we have a fairly lengthy response.    10:46:50

11  I refer the Court to that.  Again, that's 1943 at 9, 10, 11,

12  but we don't believe this instruction is necessary.

13          To the extent the jury has already found the

14  defendants guilty of the relevant charges, the First Amendment

15  would not apply here.                                              10:47:11

16          THE COURT:  And that's the way that I view it; that

17  they are looking at the particular counts, and they already

18  have a jury instruction on the First Amendment.  And if there

19  is a conviction on any of those Travel Act counts, then they

20  have found that the First Amendment does not apply.  And so to    10:47:27

21  insert a First Amendment instruction as to the totality of the

22  forfeiture, I think it would just confuse things, so I'm not

23  going to give it.

24          All right.  Anything other that I missed with regard

25  to those jury instructions?                                        10:47:47
```

27

```
 1              MR. PANCHAPAKESAN:  On my end, no, Your Honor.

 2              THE COURT:  Mr. Boyle.

 3              MR. BOYLE:  Nothing from the government.  No, Your

 4      Honor.  Thank you.

 5              THE COURT:  All right.  We will endeavor to perfect     10:47:56

 6      those instructions and send the modified final draft to you.

 7      We'll leave the spaces open where the respective potential

 8      counts would be returned and that way we can insert those

 9      immediately, and I think that's all I have with regard to it.

10              Oh, I did get the names of the two individuals you     10:48:24

11      intend to call, Mr. Panchapakesan.  And I'm sorry if this is a

12      repeat question, those individuals were not on your original

13      witness list; correct?

14              MR. PANCHAPAKESAN:  They were not, Your Honor, no.

15              THE COURT:  Well, I'll have to then question the jury  10:48:45

16      at least as to those proposed witnesses in order to just get a

17      record whether or not anybody is familiar with them.  Are they

18      local?

19              MR. PANCHAPAKESAN:  They are both local, yes, Your

20      Honor.                                                         10:49:00

21              THE COURT:  All right.

22              MR. STONE:  And --

23              MR. LINCENBERG:  I had another point.

24              MR. BOYLE:  Your Honor --

25              THE COURT:  Wait.  Mr. Boyle, go ahead.                10:49:11
```

28

```
 1        MR. BOYLE:  Your Honor, those, as you noted, were not
 2   disclosed.  One of those witnesses has been in court for
 3   virtually the entire trial, that will be Mr. Quigley.  So we've
 4   notified the defense that we may be raising an objection under
 5   Rule 615 to having a witness testify whose watched the entire      10:49:28
 6   case.  We've notified them of that objection, and I think will
 7   raise it if we do proceed to a forfeiture phase, Your Honor.
 8        THE COURT:  Is Mr. Quigley present?
 9        MR. LINCENBERG:  No.  He has COVID.
10        THE COURT:  All right.  All right.  Yes, well, raise        10:49:45
11   the objection sooner rather than later so I don't have to delay
12   proceedings.
13        MR. BOYLE:  Will do so immediately, Your Honor.
14        THE COURT:  All right.  Mr. Stone.
15        MR. STONE:  No, just that I think we're raising it.  I      10:50:02
16   don't know if we need to do anything else.  This is a witness
17   who has been here for the whole trial.  The defense invoked
18   Rule 615, the rule of exclusion.  It doesn't seem right that he
19   now should be testifying in trial.
20        MR. LINCENBERG:  Well, if we call him, he is going to       10:50:18
21   be in the nature of a summary witness somewhat like government
22   agents, but the Court can address it at the time.  We may not
23   need to call him, so we can deal with it.
24        THE COURT:  Well, since the rule was invoked, I would
25   agree that it's improper to call somebody whose been sitting      10:50:32
```

UNITED STATES DISTRICT COURT

29

| | |
|---|---|
| 1 | through the duration of the trial.  And in particular, I notice |
| 2 | a number of people have been not only just attending the trial, |
| 3 | but also the arguments and rulings on the law, and so on and so |
| 4 | forth, and so I think it's entirely improper, and so that's my |
| 5 | preliminary ruling unless you give me some compelling reason. |
| 6 | But so as far as I can see, Mr. Quigley should not appear. |

10:50:54

           MR. LINCENBERG:  I don't think we'll argue it right
now, Your Honor.  If we feel the need to, then we'll argue it
later.  We had a different issue we wanted to raise.

           THE COURT:  And what is that?

10:51:14

           MR. LINCENBERG:  Your Honor, we received last night
Jencks material from involving witness Quoc Thai.  We had a
copy printed out.  Perhaps I can provide it to the clerk and
maybe we can mark it for the record next in order so the Court
has a copy while I discuss it.

10:51:35

           Do you have an exhibit number we can --

           THE COURT:  Do we have an alphabet particular exhibit
like A?

           COURTROOM DEPUTY:  Oh, the next number?

           THE COURT:  We can just temporarily assign it --

10:53:25

           MR. LINCENBERG:  We can even --

           THE COURT:  -- Exhibit A.

           MR. LINCENBERG:  So Your Honor, with regard to Exhibit
A, Exhibit A first consists of an e-mail from Mr. Stone
providing this to us yesterday at 5:30 p.m.  The e-mail behind

10:53:42

30

1    it is an e-mail from Quoc Thai discussing -- forwarding a copy

2    of this, and then there's a 91-page report which he and

3    apparently a Mr. Verzosa prepared, which is an asset tracing

4    document.  This is clearly Jencks material that related to

5    Mr. Thai's testimony that was never provided, in violation of          10:54:16

6    Jencks, in violation of the Court's order at Docket 730 about

7    dates for disclosures and so forth.

8         And just to give the Court a brief overview of the

9    document, the document discusses several issues with respect to

10   creation of foreign entities with respect to purposes for the         10:54:46

11   foreign entities.  There are statements by Mr. Ferrer to

12   Mr. Thai that are in there.  This is a document that we would

13   have used in cross-examination both of Mr. Thai as well as of

14   Mr. Ferrer.

15        Just a couple of quick examples; for example, right          10:55:08

16   from the beginning Mr. Thai discusses this company, Posting

17   Solutions, and Mr. Ferrer's discussion of Posting Solutions

18   being a company that was created in, I think it was 2017.  And

19   just as an example, if the Court recalls, a large part of the

20   government's argument was to talk about Mr. Brunst having this        10:55:35

21   big role in creating various entities, and being the officer,

22   the president of various entities and the like, part of our

23   response was talking about how his role -- that there were CFOs

24   at Backpage involved.  Mr. Gage, for example, in the post-2015

25   period, and I think the Court recalls some of the arguments we        10:56:01

UNITED STATES DISTRICT COURT

ER 15015

31

```
 1    gave in that regard.

 2           The document from paragraph one talks about how

 3    Posting Solutions, Michael Gage was the president, was involved

 4    in the creation, was the sole signatory on the account.  It's a

 5    document we would have used probably with both witnesses to          10:56:20

 6    explore that.  There's other detail on Posting Solutions that's

 7    discussed in both -- I went back and looked at the transcript

 8    of Mr. Ferrer's testimony as well as this document, I won't go

 9    through all the detail with the Court right now, but it's

10    relevant.                                                            10:56:36

11           There is other issues, for example, there is

12    discussion about the credit card issues and the company

13    shutting them out because of bad press, and Mr. Ferrer's view

14    about this.  This background testimony document would have been

15    relevant in our cross-examinations of these witnesses right on       10:56:58

16    point, and frankly also contradictory to some of the

17    statements --

18           THE COURT:  Well, let me ask you, in your review of

19    that with regard to his view on the credit card issue, what was

20    it that he said that you thought is substantially different          10:57:15

21    than what he testified to?

22           MR. LINCENBERG:  Well, some of it is not substantially

23    different from what he testified to.  You know, you have to --

24    it has to be parsed out.  But for example, Mr. Ferrer, it

25    contradicts some of the testimony he gave on cross.  It would        10:57:36
```

UNITED STATES DISTRICT COURT

32

```
 1   have allowed me to better establish that.

 2             Also, when the Court precluded me from --

 3             THE COURT:  Like what?  I just want an example.

 4             MR. LINCENBERG:  Okay.  Let me give you an example I

 5   was going to use.  It happens to be popping into my mind.  When    10:57:48

 6   I was attempting to impeach Mr. Ferrer on document GLCF37, and

 7   that document, if the Court may recall, was when the government

 8   objected to as privileged, and we said this is material that

 9   under the joint defense agreement was permissible for us to

10   use.  The Court made -- the Court precluded me from getting        10:58:11

11   into that document.  One of the bases is the Court said not

12   impeachment.  Some of what is in this document is directly

13   contradictory to what Mr. Ferrer said in that.

14             There is testimony that this document has discussions

15   in it about Mr. Ferrer being the UBO, the ultimate beneficial      10:58:31

16   owner, of foreign entities, like Ad Tech BV, in connection with

17   Bank Frick, you know.  The government tried to convey the

18   flavor that this was all a creation of the owners and so forth.

19   Certainly, you know, part of my cross-examination of Ferrer was

20   talking about how there were other reasons, reasons for these      10:58:55

21   foreign entities such as that were beneficial to him, such as

22   tax benefits, and the fact that you needed foreign entities in

23   order to get foreign bank accounts and the like.

24             It all relates to this:  You know, we can do some

25   follow-up briefing on this if the Court is inclined to receive     10:59:17
```

UNITED STATES DISTRICT COURT

33

1    it.  We got this last night in the middle of when we were going

2    through other things, but it certainly -- you know, Jencks is

3    not -- the issue of whether there's a Jencks violation seems to

4    me it's crystal clear with regard to Quoc Thai.

5          The issue as to whether this is also material that        10:59:37

6    should have been turned over because it was relevant

7    impeachment material, Ferrer, and potentially prior statements

8    required to be produced by Ferrer, might require further

9    evidentiary hearing.  If the government comes back and says:

10   Well, you know, it's not technically required under 3500        10:59:55

11   because there is no reference to him adopting them.  It's clear

12   from this document that Mr. Ferrer was working closely with

13   government agents in putting together tracing analyses, working

14   with them on their money laundering forfeiture analyses.

15         And very, very little that I can recall, barely           11:00:16

16   anything from the interviews we received from Mr. Ferrer, got

17   into any of this stuff, and yet it's clear that there is

18   lengthy documents of statements from Mr. Ferrer that are

19   relevant there.

20         So I can go on with other examples in here.  I think      11:00:36

21   that obviously we're presenting to the Court a 91-page document

22   that the Court obviously hasn't had a chance to look at yet

23   that is a clear Jencks violation, and we believe there's other

24   discovery violations and some of which to flesh out.  We might

25   need an evidentiary hearing.                                    11:01:02

UNITED STATES DISTRICT COURT

34

```
 1        So as a remedy for this, Your Honor, first and
 2   foremost we ask for a dismissal of the case.  This is an
 3   important discovery violation, and we believe that remedy is
 4   appropriate.  If and only if the Court doesn't give that
 5   remedy, it should at a minimum completely strike the testimony    11:01:19
 6   of Quoc Thai and any testimony that Ferrer gave relating to
 7   wire transfers and money flow and the like.
 8        And obviously the result of striking Quoc Thai's
 9   testimony would clearly mean a dismissal of all of the money
10   laundering and forfeiture counts.  There was zero evidence of    11:01:44
11   money flow or particular wire transfers other than the summary
12   documents that were introduced through Mr. Thai.
13        So that's what we would present to the Court and ask
14   for that relief.
15        MR. STONE:  Your Honor, we disclosed this because    11:02:03
16   Quoc Thai is a potential witness and this was an e-mail that he
17   sent October 18th after he testified at trial.
18        With respect to the attachment, this was primarily
19   authored by Special Agent Lyndon Versoza.  It is -- there's --
20   Mr. Thai contributed to it.  That's stated in the e-mail, but    11:02:34
21   the primary author was Special Agent Versoza.  It's listed as a
22   draft.  It is analyzing primarily the bank docs, all of which
23   have been disclosed, and most of these 91 pages just trace bank
24   transactions that are from the underlying bank records that the
25   defendants have had for years.    11:02:57
```

UNITED STATES DISTRICT COURT

35

```
1        It really looks -- they basically are draft summary
2   exhibits.  It's in similar format to the summary exhibits that
3   were used by Mr. Thai and that were produced that relate to
4   money laundering counts which, again, have been produced for
5   years.                                                          11:03:19
6        These transactions relate more to forfeiture, relate
7   more to the seizure of the assets, and that's why, because it
8   was shared by Mr. Thai, it would fall under Jencks because it
9   might relate to his testimony related to forfeiture and all of
10  the tracing that relates to the seizure of these assets, but    11:03:37
11  because it was -- with respect to Mr. Ferrer, there's nothing
12  that would make this a statement adopted by Mr. Ferrer, so
13  that's not the case whatsoever.
14       In addition, much of the information that's here has
15  been included in seizure warrants and other warrants that have  11:04:04
16  been produced.  So this is information that has been produced
17  previously within this case and within the litigation which
18  would include the civil forfeiture in CDC A.
19       So there's nothing new here.  It's information related
20  to underlying bank records that defendants have had.  It        11:04:26
21  primarily just traces those transactions.  It was authored
22  primarily by a nonwitness, and it relates primarily to the
23  forfeiture aspect, which is why, because Mr. Thai sent the
24  e-mail because it relates to his potential testimony which
25  could come in the next week or so.  That's why it was produced, 11:04:48
```

UNITED STATES DISTRICT COURT

36

1    Your Honor.

2            THE COURT:  Very brief reply, please.

3            MR. LINCENBERG:  Your Honor, first, counsel is looking

4    to downplay Mr. Thai's role in this.  I mean, Mr. Thai's e-mail

5    says -- talks about this being a document that Lyndon, I      11:05:09

6    believe Lyndon is this guy, Versoza, Lyndon and I put together

7    years ago.  The idea whether somebody was the main author or

8    not, this is Mr. Stone's representation, the two of them put it

9    together.  It's Quoc Thai's document.  He's their tracing guy.

10   This is a document from him.                                  11:05:30

11           You know, the fact that they have a draft stamp on it

12   doesn't make it any less a statement.  They can keep a draft on

13   whatever they want.  This is a document that was -- this is the

14   updated version of 11-4-2021.  If there's a later version, we

15   should get that as well.  This is a document.  This is prior   11:05:51

16   statement from Mr. Thai.

17           And the last thing I would say is that this clearly

18   does contain Ferrer's statement.  I will give the Court one

19   more example.  This is at page 47 of the report where Ferrer is

20   talking about credit cards, cutting out because of the bad     11:06:11

21   press and so forth.  He says that the entities, and he's

22   referring to entities that were created I think at the time of

23   the sale in 2015, said the entities existed for the sole

24   purpose of funneling to Backpage accounts otherwise prohibited

25   credit card payments for Backpage ads.  I think he's also      11:06:36

UNITED STATES DISTRICT COURT

37

1    referring to Posting Solutions and Website Technologies, so not

2    just entities that were created then.

3         These are statements that Ferrer is making that were

4    the subject of a lot of cross-examination and testimony, and

5    this is their main witness.  You have direct Jencks on                11:06:54

6    Quoc Thai.  I believe it's Jencks with regard to Ferrer, and

7    clearly it's impeachment material.  It's a discovery violation

8    and it's a very important one.  And so we submit to the Court

9    that it's important for the Court to make such a finding.  And

10   then if the Court needs further evidentiary hearing, we can do       11:07:18

11   that, but there should be a remedy with some teeth here.

12         THE COURT:  Well, I am going to ask for further

13   briefing because it's a 91-page document, and the briefing is

14   going to do two things:  Number one, the government is going to

15   point out what is it that was previously disclosed that is           11:07:39

16   referenced in here?  As you say, if it was in warrants or other

17   documents that have been previously disclosed, then I want to

18   know that.  That's related to the Jencks allegation.

19         Number two, if as you say there are statements that

20   contradict or could have been used as impeachment material, I        11:08:07

21   want you to point that out.  I want you to bring to me whatever

22   the witness testimony was, whether it be Quoc Thai or

23   Mr. Ferrer, and I want you to then go through this 91-page

24   document and tell me how it is that it is impeachment and how

25   it would have made any potential outcome any different, and          11:08:30

UNITED STATES DISTRICT COURT

38

```
 1    then I'll take a look at it and determine whether or not I need
 2    an evidentiary hearing.
 3           I think in terms of producing, I'm reminded that both
 4    sides have late produced material throughout the course of the
 5    proceedings.  I have witnesses that appeared that weren't even      11:08:53
 6    on our witness list from the defense.  I mean, it really is one
 7    of the most frustrating aspects of this entire case.  No one
 8    seems to adhere to deadlines, the rule as it's stated in the
 9    federal rules, or my orders.  So this really doesn't come as a
10    surprise, although it should be.  Counsel of your caliber          11:09:24
11    should not be handing me documents late.  There should be no
12    surprises.  That's what disclosure is all about.
13           So your briefing will provide all of that, and --
14           MR. LINCENBERG:  Your Honor, can I ask that the third
15    point be discovered in the briefing, which is that counsel         11:09:45
16    produce all e-mails between Quoc Thai and Ferrer or his counsel
17    and government counsel, as well as notes or e-mails summarizing
18    statements made to him by Ferrer?
19           THE COURT:  On what basis?
20           MR. LINCENBERG:  On the basis that it's relevant to         11:10:07
21    this Jencks material that was withheld.
22           THE COURT:  Well, we don't know that.  I don't know
23    it.
24           MR. LINCENBERG:  Well, that's --
25           THE COURT:  Unless you parse through it and looked at       11:10:19
```

UNITED STATES DISTRICT COURT

39

```
 1    the record.
 2              MR. LINCENBERG:  That's why I asked that it be
 3    produced in discovery.  We know from the document that Ferrer
 4    is talking to these agents about these issues --
 5              THE COURT:  I am not going to do that.  I am not going     11:10:30
 6    to do that at this juncture.  If in your briefing I see some
 7    reason for that to happen -- and I am not going to ask them to
 8    duplicate what they've already produced to you.  What I'm
 9    asking for them to do is list out where it was it was produced,
10    what was relevant to whatever is in here, what they produced     11:10:47
11    that you already have notice of, and but I'm not going to do
12    that.
13              So what I would ask is no more than 20 pages each, and
14    you'll get that to me -- I would hope to have it by Monday,
15    Monday at noon, and I will look at it and see what happens     11:11:13
16    next.  And that's all I'll take right now.  All right.  We are
17    adjourned.
18              I will note for the record that since Mr. Eisenberg is
19    the only counsel not present, that I will essentially make a
20    note that he's joining in on everything that we've discussed.     11:11:44
21    Unless there is an objection that he wishes to raise separate,
22    I will give him the ability to do that.
23              (Recess was taken at 11:11 a.m.)
24
25
```

40

1

2

3                          **C E R T I F I C A T E**

4

5              I, HILDA E. LOPEZ, do hereby certify that I am duly

6    appointed and qualified to act as Official Court Reporter for

7    the United States District Court for the District of Arizona.

8              I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion of

10   the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13             DATED at Phoenix, Arizona, this 10th day of November,

14   2023.

15

16

17                               s/Hilda E. Lopez_____

18                               HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 14, 2023 |
| Michael Lacey, et al. | ) | 9:45 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**TRIAL - DAY 32 - A.M. SESSION**</u>

**(JUROR QUESTION/EVIDENTIARY HEARING)**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

```
 1                    A P P E A R A N C E S

 2

     For the Government:
 3       UNITED STATES ATTORNEY'S OFFICE
         By:  Mr. Kevin M. Rapp, Esq.
 4            Mr. Peter S. Kozinets, Esq.
              Mr. Andrew C. Stone, Esq.
 5            Ms. Margaret Wu Perlmeter, Esq.
              Mr. Daniel Boyle, Esq.
 6       40 North Central Avenue, Suite 1200
         Phoenix, Arizona 85004
 7       kevin.rapp@usdoj.gov
         peter.kozinets@usdoj.gov
 8       andrew.stone@usdoj.gov
         margaret.perlmeter@usdoj.gov
 9
     For the Government:
10       UNITED STATES DEPARTMENT OF JUSTICE
         By:  Mr. Austin Berry, Esq.
11       1301 New York Avenue, NW, 11th Floor
         Washington, DC 20005
12       austin.berry2@usdoj.gov

13   For the Defendant Michael Lacey:
         LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
14       By:  Mr. Paul J. Cambria, Jr., Esq.
         42 Delaware Avenue, Suite 120
15       Buffalo, NY 14202
         pcambria@lglaw.com

16

17   For the Defendant Scott Spear:
         FEDER LAW OFFICE, P.A.
18       By:  Mr. Bruce S. Feder, Esq.
         2930 East Camelback Road, Suite 160
19       Phoenix, AZ 85016
         bf@federlawpa.com
20       - and -
         KESSLER LAW OFFICE
21       By:  Mr. Eric Walter Kessler, Esq.
         6720 N. Scottsdale Road, Suite 210
22       Scottsdale, AZ 85253
         eric.kesslerlaw@gmail.com

23

24

25
```

UNITED STATES DISTRICT COURT

3

```
 1
    For the Defendant John Brunst:
 2      BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
        LINCENBERG & RHOW, P.C.
 3      By:  Mr. Gopi K. Panchapakesan, Esq.
        1875 Century Park E, Suite 2300
 4      Los Angeles, CA 90067
        gpanchapakesan@birdmarella.com
 5      glincenberg@birdmarella.com

 6
    For the Defendant Andrew Padilla:
 7      DAVID EISENBERG, P.L.C.
        By:  Mr. David S. Eisenberg, Esq.
 8      3550 North Central Avenue, Suite 1155
        Phoenix, AZ 85012
 9      david@deisenbergplc.com

10
    For the Defendant Joye Vaught:
11      JOY BERTRAND, ESQ., L.L.C.
        By:  Ms. Joy M. Bertrand, Esq.
12      P.O. Box 2734
        Scottsdale, AZ 85252
13      joy@joybertrandlaw.com

14

15                      I N D E X

16
    PLAINTIFF WITNESS:        DIRECT    CROSS    REDIRECT   RECROSS
17
    QUOC THAI                 35
18
    By the Court              45        47
19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

ER 15028

4

## P R O C E E D I N G S

1
2
3          (Proceedings commence at 9:45 a.m.)
4          THE COURT:  Please be seated.
5          (All counsel present except for Mr. Kessler and        09:46:04
6    Mr. Berry.)
7          THE COURT:  All right.  Do we have all clients
8    present?  All defendants are present; all counsel.
9          COURTROOM DEPUTY:  I don't see Mr. Kessler.
10         MR. FEDER:  Mr. Kessler just called me, but I haven't   09:46:29
11   had a chance to call him back.  Yesterday he indicated he would
12   be in another court situation until 10:30.
13         THE COURT:  Can you speak into the microphone?
14         MR. FEDER:  Mr. Kessler just called me.  I am not sure
15   if he is going to be able to make it.  We talked last night.   09:46:46
16   He said he would be busy on something else until 10:30.
17         THE COURT:  All right.  All counsel, all defendants
18   are present.  Government's counsel is present.  We do have a
19   question from the jury.  My law clerk has provided you a copy
20   of it.  The question is dated today.  It reads:              09:47:07
21         "If a defendant is found not guilty in charge #1, but
22   found guilty in charges #2-51, can the defendant be charged in
23   counts # 2-51."
24         The second question is, or statement is:
25         "The question was a concern due to page #27 lines      09:47:35

UNITED STATES DISTRICT COURT

5

```
 1    10-11.  Please provide clarity if allowed," or "permitted."
 2    And it's signed Juror 15.
 3              Page 27 is the Pinkerton instruction, and I'm assuming
 4    they are referring to the second element that, "Second, that
 5    person was a member of the conspiracy charged in Count 1 of the    09:48:11
 6    indictment."  The -- obviously the question probably meant to
 7    ask, "Can the defendant be convicted in Counts 2 through 51?"
 8    And that's the way that I intend to read it.  The obvious
 9    answer is yes, and I'm inclined only just to indicate that as
10    the answer.                                                        09:48:45
11              I also considered referring them back to page 16,
12    which is related to the separate crime as charged in each
13    count.
14              I'll let you mull that over.  Does the government wish
15    to give me their thoughts?                                         09:49:06
16              MR. STONE:  Yes, Your Honor, I think "Yes" is the
17    perfectly fine answer here.  It is the correct answer.
18    Pinkerton, my ability, is a separate theory of liability for
19    the jury to consider with these defendants in these charges.
20    The only other suggestion that we came up with was to point the    09:49:23
21    jury to page 30, which is the instruction on the Travel Act.
22    Defendants are charged in Counts 2 through 51, and it has the
23    elements there on what the jury would need to find has been
24    proven beyond a reasonable doubt to find any of the individual
25    defendants guilty of Counts 2 through 51.  But "Yes" is clearly    09:49:49
```

ER 15030

6

```
 1   the answer here, Your Honor.  Thank you.
 2          THE COURT:  Thank you.  Who wishes to be heard from
 3   the defense?
 4          MR. EISENBERG:  I'll go first, Your Honor.  Thank you.
 5          I disagree respectfully, Your Honor, with just simply          09:50:02
 6   saying, "Yes."  To me, the answer to this is found in the two
 7   lines that the jury has quoted or, well, the note quotes, which
 8   is 10 and 11, and it says, "Second, that person was a member of
 9   the conspiracy."
10          So this is a bit, I wouldn't say, convoluted, but I          09:50:26
11   don't think the answer can merely be "Yes."  I think we ought
12   to be -- to be referring them back to the very lines that they
13   are apparently concerned with, and that is, you have to be, or
14   whoever the defendant is, has to be a member of the conspiracy
15   charged in Count 1.                                                 09:50:47
16          And with respect to the Travel Act, that's on page 30,
17   that Mr. Stone referenced.  If -- to me, there again, on line
18   12, there's a reference to proving specific intent, and it
19   says:  The government must establish that each defendant in
20   some significant manner associated himself or herself, so on       09:51:11
21   and so forth, and that really carries it back to the conspiracy
22   charge.
23          But I don't think that's really the relevant part
24   here.  The relevant part is that very jury instruction they are
25   quoting.  And I think to say "Yes" is not right, Your Honor,       09:51:31
```

UNITED STATES DISTRICT COURT

7

1    respectfully.

2           THE COURT:  And it's not right why?  I guess I am

3    missing that point.

4           MR. EISENBERG:  Because there is an element in there

5    saying that person was a member of the conspiracy.  So if they       09:51:47

6    find a person was not a member of the conspiracy as charged in

7    Count 1, then there is no -- that second element cannot be

8    fulfilled and, therefore, Counts 2 through 51 are not -- not a

9    part of the approach that they can take with respect to finding

10   a defendant or defendants guilty.  You have to be a member of       09:52:16

11   the conspiracy as charged in Count 1.

12          MR. LINCENBERG:  Your Honor, I would just add one

13   point.

14          THE COURT:  Well, if you look at the first and second

15   elements taken together, I think the answer is "Yes."  It's not     09:53:53

16   a prohibited conclusion certainly.

17          MR. EISENBERG:  If -- may I speak, Your Honor?

18          THE COURT:  Yes.

19          MR. EISENBERG:  Fourth element says, "A defendant was

20   a member of the same conspiracy at the time the Travel Act was      09:54:34

21   committed."

22          Now, that would appear to me to be that the defendant

23   under consideration, whether it is whomever of our clients is

24   under consideration, that also underscores the idea that the

25   defendant or a defendant was a member of the same conspiracy.       09:54:53

UNITED STATES DISTRICT COURT

8

| 1 | So I think it's unescapable. You have to be a member of the |
|---|---|

1   So I think it's unescapable.  You have to be a member of the
2   conspiracy to be convicted, found to be a member of the
3   conspiracy before you can be found to be convicted of one of
4   the substantive acts in 2 through 51.
5           MR. STONE:  Your Honor, if I may.                    09:55:15
6           THE COURT:  Yes.
7           MR. STONE:  That's only if they are moving down the
8   *Pinkerton* theory of liability.  That's a separate theory.
9   Instruction 30 and, you know, goes through, let's see, page 38,
10  the Travel Act, is the Travel Act instruction.  And certainly  09:55:34
11  if the question was:  If defendant is found guilty in charge
12  one, must he be found guilty in charges 2 through 51?  I mean,
13  the answer is no.  It's a separate evaluation for each count.
14  And the jury's determination as to Count 1 for one defendant
15  does not necessarily affect their decisions for Counts 2       09:56:00
16  through 51.
17          (Mr. Kessler is present.)
18          THE COURT:  And that's the way that I read the
19  instructions and the superseding indictment, and the jury
20  instructions with respect to each of the counts being          09:56:18
21  separately considered.  That's how I have always read those
22  instructions.  And so I still believe the appropriate answer is
23  "Yes," and certainly I can refer them back to the Travel Act
24  elements, as well as the separate charge per separate defendant
25  requiring separate consideration.                              09:56:57

UNITED STATES DISTRICT COURT

9

```
 1          I think all of those things taken together would add

 2   the most clarity.  I'm not whetted to providing them the Travel

 3   Act instruction.  I think actually it's essential that they

 4   understand that each count is a separate considered count.

 5          Yes, Mr. Lincenberg.                                      09:57:31

 6          MR. LINCENBERG:  Thank you, Your Honor.  Your Honor, I

 7   think there's a second argument that supports what

 8   Mr. Eisenberg is saying, which is that if a jury were to find

 9   somebody not guilty on Count 1 and guilty on Count 2, it would

10   create an inconsistent verdict because of the way the          09:57:45

11   government presented this case.  So the government did not put

12   on any evidence that --

13          THE COURT:  Well, let me get to the point of the

14   answer.  You're making an argument that probably can be made

15   later, but I'm only dealing with getting the jury the answer.  09:58:03

16          MR. LINCENBERG:  Well, I'm --

17          THE COURT:  Unless you have something to offer in that

18   regard.

19          MR. LINCENBERG:  Well, my argument is in support of

20   Mr. Eisenberg's position that the Court should not direct the  09:58:16

21   jury's attention to page 16 or 30 because doing so presumes

22   that they could reach an inconsistent verdict because the proof

23   did not involve, for example, my client having seen any ads or

24   anything.  It's based on a *Pinkerton* liability theory.

25          THE COURT:  Well, that ship has sailed in terms of      09:58:43
```

UNITED STATES DISTRICT COURT

10

```
 1    what the jury has in front of them.  They have the

 2    instructions.

 3              MR. LINCENBERG:  Right.

 4              THE COURT:  And so I don't necessarily find it harmful

 5    for them to be redirected to those particular instructions that    09:58:53

 6    tell them that they are to consider a separate charge per

 7    separate defendant.  It's basically what they've been told to

 8    do.

 9              All right.  Anything further?

10              MR. FEDER:  Judge, I don't think the Court can or         09:59:12

11    anybody else can presume to say that charges in Counts 2

12    through 51 meant to say "convicted."  I think we have to tell

13    them that we can't understand the question or can't answer it,

14    or be consistent with what Mr. Eisenberg has said.  I don't

15    think it's proper.                                                  09:59:33

16              THE COURT:  Well, you can't have it both ways,

17    Mr. Feder.

18              MR. FEDER:  It's not proper to make an assumption on

19    what a question means by essentially changing the word that you

20    think they intended and then improperly focusing on other          09:59:44

21    instructions that follow that new interpretation.

22              THE COURT:  Well, then under that interpretation my

23    answer would be "Yes," reading it clearly, "Can the defendant

24    be charged in Counts 2 through 51?"  Yes, and indeed they are.

25              MR. FEDER:  The "charged" changes the -- the "charge"     10:00:05
```

UNITED STATES DISTRICT COURT

11

1    in the second question changes the question, the first

2    question, to make it incomprehensible.

3              THE COURT:  It's not incomprehensible, Mr. Feder.

4              MR. FEDER:  Okay.  Objection made.

5              (Mr. Berry is present.)                              10:00:19

6              THE COURT:  All right.  So my inclination then --

7              MS. BERTRAND:  Your Honor, I'd like to be heard.  It

8    will be short.  My suggestion would be not to answer yes or no

9    because this question is -- we are filling in what we don't

10   know with what we think we know, but we may be wrong.  I would   10:00:35

11   suggest the Court, instead of answering yes or no, simply refer

12   the jury to specific instructions, such as the *Pinkerton*

13   instruction and the specific Travel Act instruction.  I think

14   that avoids us getting into any speculation about what's going

15   on.  It is -- the referral back to the instructions is a proper   10:00:57

16   statement of law.

17             And if they have another question, they can ask us.

18   But I think if we're going to do anything, it has to be simply

19   send them back to the instructions and not give them an

20   affirmative yes or no answer on something that is ultimately      10:01:14

21   their decision.

22             THE COURT:  Well, they already have the *Pinkerton*

23   instruction in mind in asking the question, so what I'm

24   inclined to do then is I will simply refer them back to jury

25   instructions at page 16 as well as the Travel Act instruction     10:01:50

UNITED STATES DISTRICT COURT

12

```
 1    at page 30, and that's how we will resolve that.
 2           MR. STONE:  Your Honor, just a point of clarification,
 3    are you going to answer the question "Yes" and then point them
 4    to those instructions?
 5           THE COURT:  No.                                          10:02:16
 6           MR. STONE:  Okay.  'Cause I think your first
 7    inclination is the correct one.  This is a clear question with
 8    a clear answer, and they are asking for clarity, and I do think
 9    "Yes" would help them here.  The instructions suggests that
10    each count is a separate consideration.  And it is clear, as   10:02:32
11    the defendants, if the shoe were on the other foot here, would
12    certainly be arguing that the answer should be "Yes" if it was
13    the other way.  So I think it really should be "Yes," and then
14    point them to the instructions.  That's our position.
15           THE COURT:  Well, on reconsideration, I do think        10:02:51
16    that's appropriate because there is a question that starts with
17    "Can," and the instructions clearly permit them to make that
18    decision.  And so I will answer the question to begin with,
19    "Yes."  And then refer them back to jury instructions at
20    page 16 and 30.  And that's how it will be resolved.           10:03:16
21           All right.  Can --
22           MR. EISENBERG:  Your Honor, I am sorry, I do have a
23    question in how this was phrased by the juror.  He or she says,
24    "Can the defendant be charged in Counts 2-51?"  And perhaps
25    what that person meant is found guilty.  Charged, yes, I        10:03:41
```

UNITED STATES DISTRICT COURT

13

```
 1  suppose you could be charged, but this is where I think we are

 2  confused.  We don't really know what No. 15 meant by that.  And

 3  they are charged in -- everyone is charged in Counts 2 through

 4  51.

 5          THE COURT:  Well, as I said before, I interpreted it      10:04:06

 6  to mean convicted.

 7          MR. EISENBERG:  And I understand that, Your Honor.

 8          THE COURT:  And the answer, either way, would be the

 9  same, "Yes."

10          MR. EISENBERG:  Well, I would tend to agree with         10:04:27

11  Ms. Bertrand.  We don't want to send a signal to them in terms

12  of what they should be considering or doing or emphasizing

13  anything in any way, and I think that by saying, "Yes," that

14  puts them down the road towards conviction.

15          THE COURT:  In any event, because it's a responsive      10:04:55

16  answer to the question and because I think the answer, either

17  way, whether or not it be phrased "charged" or "convicted"

18  would be yes, it's a straightforward answer, something which

19  they are seeking.  And so I will again respond:  Yes.  I refer

20  you to -- I refer you back to jury instructions on page 16 and   10:05:32

21  30.

22          All right.  Anything further from the government?

23          MR. STONE:  No, Your Honor.

24          THE COURT:  Anything further from defense?

25          MR. EISENBERG:  Not from me, Your Honor.  Thank you.      10:05:56
```

UNITED STATES DISTRICT COURT

14

```
 1          MR. FEDER:  Over our objection -- I assume this is
 2    noted over our objection that you're answering this?
 3          THE COURT:  You made a record.  Yes, Mr. Feder, all of
 4    the objections are on the transcript.
 5          MR. STONE:  Are we adjourned?                    10:06:19
 6          THE COURT:  Yes.
 7          Just to clarify, this afternoons proceedings are going
 8    to be in my courtroom upstairs.
 9          (Recess was taken at 10:06 a.m.)
10       (Proceedings commence at 2:50 p.m.)                 14:50:55
11          THE COURT:  Please be seated.  We have all counsel
12    present from defense counsel.  Where are they?  No one is here.
13    Well, now the record will reflect the presence of defense
14    counsel.  Government's counsel are all present as well.
15          We have provided to you two questions that the jury   14:52:05
16    submitted.  In my review of the first question, which I will
17    refer to is the question on concealment.  I also did some
18    research in terms of Ninth Circuit precedent, and there wasn't
19    any single sort of definition of concealment that I could find
20    that would be of any sort of use or clarity.  I provided to    14:52:41
21    you, therefore, a Black's Law Dictionary definition of
22    concealment as well as a Webster's dictionary definition of
23    concealment.  They seem to be the same.
24          MR. CAMBRIA:  I have one.
25          MR. LINCENBERG:  I haven't seen that, Your Honor.    14:53:03
```

UNITED STATES DISTRICT COURT

15

1          THE COURT:  You haven't seen what?

2          MR. LINCENBERG:  Your Honor indicated that you

3     provided us a Black's Law Dictionary definition.

4          THE COURT:  Somebody has seen it.

5          MR. CAMBRIA:  I haven't seen it.                    14:53:15

6          MS. BERTRAND:  I think it was a misunderstanding where

7     the source was.

8          MR. LINCENBERG:  I just didn't get a copy of this.

9          THE COURT:  Well, in any event, you have a Black's Law

10    definition and a Webster definition.  They seem to be the same.   14:53:43

11    What I'm inclined to do is answer the question relating to the

12    Black's Law Dictionary term of concealment, "The act of

13    preventing disclosure or refraining from disclosing."

14         MS. BERTRAND:  I only have the Black's Law Dictionary

15    printout.  That's what I received from the Court's clerk and   14:54:31

16    handed out to my colleagues, and the proposed Allen charge.

17         THE COURT:  I will read to you the Webster's

18    dictionary definition, "To prevent disclosure or recognition

19    of."  I'll read it again, "To prevent disclosure or recognition

20    of."                                                      14:54:54

21         Mr. Berry.

22         MR. BERRY:  Yes, Your Honor.  Sounds like what Your

23    Honor is suggesting is from the Black's Law just number one up

24    until it says:  Especially.

25         That's what you're suggesting?                       14:55:23

UNITED STATES DISTRICT COURT

16

```
 1              THE COURT:  Yes.
 2              MR. BERRY:  Okay.  Yes, our suggestion was going to be
 3    to go with Webster's, the first one, just because it was the
 4    simplest, but I thought as much as I liked Mr. Garner, I was a
 5    little bit worried about getting all of them, but I think the      14:55:40
 6    one that you're suggesting is a simplified version of that, and
 7    would be sufficient for the jury and would have no objection to
 8    that being the instruction.
 9              MR. LINCENBERG:  Your Honor, the defense apologizes,
10    but we haven't considered this.  We now have it.  I am getting     14:55:57
11    handed one copy, but we just haven't looked at this.
12              THE COURT:  At what?
13              MR. LINCENBERG:  At the Court's proposed definitions,
14    and we'd like a little time to review it and compare it to the
15    jury instructions and so forth.                                    14:56:15
16              THE COURT:  There is no jury instructions that defines
17    concealment.  That's the dilemma.  So they are asking for some
18    guidance on what "concealment" means.  So that's the question.
19    So look at the definition.  The -- they are very short.  Take a
20    moment to look at them.                                            14:56:33
21              MR. LINCENBERG:  I think we should discuss this.
22    Well, and Your Honor -- I think we should discuss it.
23              MS. BERTRAND:  Your Honor, may I make a suggestion?
24              THE COURT:  Yes.  Sorry.
25              MS. BERTRAND:  That's all right.  My suggestion would     14:57:05
```

UNITED STATES DISTRICT COURT

17

```
 1   be this:  Perhaps we could address the Allen charge issue while
 2   my colleagues look at the concealment language so we make the
 3   most of our time.  I think the more urgent question seems to be
 4   the deadlock jury issue.
 5            THE COURT:  I'm happy to do that.  My inclination,        14:57:29
 6   because of the detailed statement of Juror No. 15, and I'll
 7   read the question for the record, "It is unfortunate that we
 8   have been in deliberations for days now and I feel that
 9   people's personal feelings, emotions & what if opinions have
10   brought us to a standstill.  There has only been (1) charge      14:58:03
11   that we have finally gotten all members of the jury to agree
12   on.  I feel that this has become a hung jury & we were not able
13   to perform our required duties as jurors."
14            It's signed actually by Juror No. 15 and 3.
15            MR. LINCENBERG:  13.                                     14:58:25
16            THE COURT:  Sorry, No. 13, yes.  My inclination is to
17   give them the Allen charge, and the only modification to the
18   Allen charge that I would give them is to delineate, it begins,
19   "Members of the jury, you have advised that you've been unable
20   to agree upon a verdict," and I would insert, "on one or more    14:58:49
21   counts in this case."  I would then include a pluralized
22   "verdicts" in the second sentence, or the, I guess it would be
23   the first sentence of the first paragraph.  I would insert, "on
24   one or more counts" at the end of that paragraph after
25   "verdicts," and that's the only modification that I would make.   14:59:18
```

UNITED STATES DISTRICT COURT

18

```
 1              All right.  I will hear from the government.
 2              MR. BERRY:  Yes, Your Honor.  On the Allen charge, it
 3     appears that the current Ninth Circuit Model instruction on
 4     that is 6.25, and it has a little bit different language than
 5     what Your Honor is proposing here, and we --                    14:59:37
 6              THE COURT:  I went into my historic Way Back Machine
 7     for this.
 8              MR. BERRY:  I suspect there might have been a bench
 9     book that might have been in the past knowing how this works.
10     Yes, it's very similar.  I don't want to suggest that what      14:59:53
11     you've proposed is completely off base, but we would just
12     encourage the Court and request that the Court utilize the most
13     current Model instruction from the Ninth Circuit, which is 6.25
14     called Deadlocked Jury.
15              THE COURT:  I'll have to get my --                      15:00:16
16              MS. BERTRAND:  Would the Court like a copy?
17              THE COURT:  Yes.  This is 6.25.
18              MS. BERTRAND:  Yes, ma'am.
19              THE COURT:  Yes.
20              MS. BERTRAND:  Mr. Berry, sorry, I should have showed   15:00:36
21     that to you before I gave it to the Court.
22              MR. BERRY:  I got it right here.  Thank you.
23              THE COURT:  Apparently they omitted the "equally
24     honest and conscientious juror" language.
25              MR. BERRY:  I noticed that, Judge.                      15:01:44
```

UNITED STATES DISTRICT COURT

19

```
 1          THE COURT:  We will have to explore that further.  In

 2   any event, is there an objection to giving the 6.25, Deadlocked

 3   Jury, with the modification that I outlined indicating one or

 4   more counts?

 5          MR. LINCENBERG:  Yes, Your Honor.  Your Honor, the        15:01:58

 6   commentary to 6.25 notes that the Court should not give an

 7   Allen charge, it's inappropriate, where holdouts know or

 8   believe that their identity is known to the Court, and it cites

 9   to the case of U.S. vs. Williams, 547 F.3d 1187, Ninth Circuit

10   2008.  Here we have a note in which it is signed by Jurors 15   15:02:25

11   and 13.  And if Jurors 15 and 13, for example, are the

12   holdouts, then this is going to have an unduly coercive effect.

13          And the law, if the Court looks at the commentary, and

14   doesn't have to be black and white that it's absolutely clear

15   who the jurors are, but if the -- if they could interpret the   15:02:58

16   charge, quoting from Williams, if they could interpret the

17   charge as directed at them, then the instruction should not be

18   given.

19          I would also note a couple of other reasons why the

20   Allen charge is not appropriate here.  Second argument is that  15:03:18

21   the jurors give pretty direct and strong language that they

22   have a hung jury, and it's their wording, and I think that that

23   would also suggest a coercive effect of an Allen charge.

24   Jurors have advised the Court where they stand.  Judge is

25   saying, in the way they would view it as, I am not buying that; 15:03:42
```

20

```
 1    I am not accepting that.

 2              Third, I think that where the note -- the note also

 3    suggests potential juror misconduct.  The juror is noting that

 4    there are jurors in the room who are using "what if" opinions

 5    and so forth, which would be inappropriate.                      15:04:05

 6              And fourth, in this case where the jurors have lived

 7    with this case for 12 weeks, they have deliberated now 14 days,

 8    it's some 13 days since they finished closing, they know this

 9    case, they've had it for a long time, and I think we should

10    respect the note that they have been deadlocked on all counts   15:04:24

11    but one.

12              THE COURT:  I don't know how you arrive at a

13    conclusion of holdouts or coerciveness from the note.  I think

14    that's a bit of a stretch.  And the commentary also instructs

15    the Court to look at the instructions in total, the duration of 15:05:08

16    the trial, the duration of time that they have been

17    deliberating, and they've been deliberating since last Tuesday

18    from 9:00 roughly to 4:30, although they left a little bit

19    early on Thursday, and we had a holiday on Friday.  They

20    returned again this morning.  We had the question.            15:05:35

21              Their questions have been thoughtful to this point,

22    and so I don't know how you arrive at this conclusion that

23    there is the indicia of coerciveness.  I don't find that to be

24    present on the face of the note.  And to be silent in the face

25    of this note, I think would not help them in their             15:06:03
```

UNITED STATES DISTRICT COURT

21

```
 1   deliberations.  I think it is appropriate at this juncture to
 2   give them the charge.
 3            Sorry, Mr. Berry, I didn't give you an opportunity.
 4            MR. BERRY:  You made my point for me.  I would just
 5   put a few things on the record here.  I think Mr. Lincenberg is      15:06:27
 6   certainly making some inferential leaps by suggesting that we
 7   know that 15 and 13 are the holdouts.  It could just as easily
 8   be that 15 and 13, you know, very much in favor one direction
 9   and that there's some others that they can't seem to persuade
10   that are the holdouts.  There is absolutely nothing from the        15:06:45
11   face of this that would give this Court or any other any
12   indication that we know the identity of the holdout jurors, and
13   so Williams is completely inapplicable in that regard.
14            MR. LINCENBERG:  Well, I would just respond with this:
15   We don't know that they are the holdouts.  We don't even know        15:07:04
16   who the foreperson is.  Our guess is probably No. 2 since we
17   now had two notes from No. 2.  But if 15 and 13 are the
18   holdouts, and I think there's reasons to suspect that since
19   they jointly signed on to this note, they are going to
20   interpret the Allen charge as being directed at them, and this      15:07:26
21   is what I think the Ninth Circuit in cases like Williams are
22   concerned about is the coercive effect.
23            THE COURT:  All right.  I will give the Allen charge.
24   And let's move to the second note.  I've heard the government's
25   position.  They have agreed to give the Black's Law Dictionary,     15:07:54
```

UNITED STATES DISTRICT COURT

22

```
 1    "The act of preventing disclosure or refraining from

 2    disclosing."  What is the collective agreement of the

 3    defendants, if there's one?  Ms. Bertrand.

 4         MS. BERTRAND:  Your Honor, I don't know that I'm the

 5    proper person to comment on concealment because my client is      15:08:23

 6    not contained in those charges.

 7         THE COURT:  Point taken.

 8         MR. LINCENBERG:  Your Honor, I would just ask for five

 9    minutes to look at this because we just didn't have them.  It's

10    an important instruction.  I understand the Court is looking at   15:08:38

11    dictionary definitions.  Mr. Eisenberg passed me, you know, for

12    example, the instructions which talk about concealing and

13    disguising.  I'm not sure if it's appropriate to be giving a

14    definition of one versus the other.  We just need a few minutes

15    to look at this.                                                  15:09:03

16         THE COURT:  I am not going to include a definition of

17    "disguising."  It's not in the note.

18         MR. LINCENBERG:  No.  I'm just saying the Court

19    said --

20         THE COURT:  I'll give you ten minutes, Mr. Lincenberg.       15:09:12

21    You and your counsel can move out into the hallway or into the

22    conference room to discuss it.  We have a jury who is waiting

23    and we have other matters to attend to, so move forward,

24    please.

25         MR. LINCENBERG:  Thank you, Your Honor.                      15:09:27
```

UNITED STATES DISTRICT COURT

23

```
 1              (Recess was taken at 3:09 p.m.)
 2          (Proceedings reconvened at 3:16 p.m.)
 3              THE COURT:  All right.  The record will reflect the
 4    return of defense counsel.  Let me read into the record the
 5    jury questionnaire as it pertains to concealment.  The question    15:16:18
 6    reads:  "Can we get a definition for concealment as it relates
 7    to charges 53-62?"  And it is signed by Juror No. 2.  So what
 8    position does the defense take?
 9              MR. CAMBRIA:  Your Honor, we think that the -- on the
10    Black's Law Dictionary one, the bottom, the bottom phrase where    15:16:54
11    it says, "The affirmative suppression or hiding, with the
12    intent to deceive or defraud, of a material fact or
13    circumstance that one is legally bound to reveal."  I cut out
14    the language "(or sometimes morally,) I cut that part off, and
15    so that's what we would suggest.  We think it's simple.  This     15:17:17
16    is a specific intent crime.  It seems that this definition
17    would be an appropriate one.  So it would be, "The affirmative
18    suppression or hiding, with the intent to deceive or defraud,
19    of a material fact or circumstance that one is legally bound to
20    reveal."                                                           15:17:37
21              MR. BERRY:  Your Honor, if I could respond.
22              THE COURT:  Yes.  That's the definition of fraudulent
23    concealment per the Black's Law notation.
24              Yes, Mr. Berry.
25              MR. BERRY:  Yeah, you're spot on.  So those bottom      15:17:56
```

24

```
 1   definitions are sort of expounding on the idea of concealment
 2   itself into various forms of concealment, and they've picked
 3   the one that they find to be favorable to them.
 4           I would point the Court and note for the record that
 5   there are a couple of cases here in this circuit that support      15:18:12
 6   what Your Honor is suggesting that we use.  They actually use
 7   the Black's Law Dictionary definition.  One is in re:  Lockwood
 8   at 2007 Westlaw, 754 1005.  It's a bankruptcy appellate
 9   decision in the Ninth Circuit from August of 2007, and it uses
10   the definition Your Honor is suggesting.                           15:18:38
11           Then there's a second decision from the Southern
12   District of California in a published decision, United States
13   vs. Nunez 419 F.Supp.2d 1258, pincite 1263, and that is, as I
14   said, the Southern District of California from 2005.  Both of
15   those use the definition from Black's Law and specifically cite    15:19:03
16   to Black's Law for defining the term "conceal" or
17   "concealment."
18           And so we think that what Your Honor is suggesting by
19   saying, "The act of preventing disclosure or refraining from
20   disclosing" is the simpler and more used definition in terms of    15:19:19
21   cases in this circuit on that issue.
22           MR. CAMBRIA:  I think if you're going to use that, it
23   should include all the language that's in there.
24           MR. FEDER:  Those are money laundry cases, Mr. Berry?
25           THE COURT:  I don't know what -- what was that             15:19:38
```

UNITED STATES DISTRICT COURT

25

```
 1   question?

 2        MR. BERRY:  Mr. Feder is interrogating me.

 3        MR. FEDER:  Asking if these are money laundering cases

 4   versus other type of cases.

 5        THE COURT:  Who are you directing the question to?      15:19:47

 6        MR. FEDER:  To Mr. Berry.  We don't have the cases.

 7        THE COURT:  I think he mentioned one was a bankruptcy

 8   fraud case.  What was the nature of the case?

 9        MR. BERRY:  I honestly don't know, Your Honor.  I

10   could figure it out quick.                                  15:20:00

11        MR. CAMBRIA:  If you were going to use number one, I

12   would suggest that it include all the language of number one.

13        MR. BERRY:  Sorry, Your Honor.

14        THE COURT:  In response, when you say "all of the

15   language in number one," all the language in one includes "the  15:20:11

16   injurious or intentional suppression or nondisclosure of facts

17   that one is obligated to reveal."  Is that what you're

18   suggesting, Mr. Cambria?

19        MR. CAMBRIA:  Can I have a minute?

20        THE COURT:  Yes.                                       15:20:33

21        MR. BERRY:  Your Honor, *Nunez*, my quick read of it is

22   a bankruptcy fraud and money laundering case.  The District

23   Court dismissed money laundering charges and the government

24   moved for reconsideration, and so this was the Court assessing

25   issues related to that.                                     15:20:52
```

UNITED STATES DISTRICT COURT

26

```
1              THE COURT:  All right.  Well --
2         MR. CAMBRIA:  The answer is yes.  We think it should
3    include all the language that's listed under number one.
4              THE COURT:  And I will let you have the final word,
5    Mr. Berry, as to that.                                              15:21:24
6         MR. BERRY:  Sure.  So I think that the "especially"
7    part would be inappropriate to give to the jury here.  The
8    insurance definition under three would also be inappropriate to
9    give to this jury.  That's not what this case is about.  I
10   think if you want to give half here, you could read, "The act    15:21:43
11   of preventing disclosure or refraining from disclosing," or
12   "The act of removing from sight or notice."  That would be a
13   more fulsome definition that would give the defense a little
14   bit of what they are asking without giving sort of
15   inappropriate definitions that are irrelevant or not related to  15:22:06
16   this case.
17        MR. LINCENBERG:  But that leaves out, Your Honor, that
18   one is obliged to reveal, and the reason why the Black's Law
19   definitions are better is because they are looking at legal
20   situations as to whether one has a duty to reveal that.  And we  15:22:22
21   think that's important and relevant here because the
22   government's case, Mr. Ferrer's testimony, was a lot of, these
23   were accurate, but they could have included more.
24             THE COURT:  Well, what I'm inclined to do is I'm going
25   to give the concealment definition, "The act of preventing      15:22:44
```

UNITED STATES DISTRICT COURT

27

```
1    disclosure or refraining from disclosing" as the answer.

2             I will also proceed to the 6.25 instruction with the

3    modifications I made.  So we will reconvene in the ceremonial

4    courtroom at quarter to the hour.

5             While I have all parties here and on the record          15:23:10

6    relating to this afternoon's hearing, which is now delayed, I

7    have this Motion to Preclude from the government, and indeed

8    the motion relates to AUSA Stone and Boyle.  And quite frankly,

9    I was shocked to see their names listed on a defense witness

10   list.  Understanding that there's rules and obligations that     15:23:34

11   anybody who calls an Assistant U.S. Attorney to testify, these

12   are frankly officers of the court.  There's not a necessity to

13   list them on a witness list.  The Court can question them as it

14   does in all matters and proceedings.  What they say on the

15   record is an avowal to the Court, and so I frankly don't even    15:23:58

16   see the necessity to having filed this motion.  It should never

17   have had to happen.

18             In any event, they will, in the hearing this

19   afternoon, answer a couple of questions from myself, and so I

20   actually will deny the motion as moot in my point.               15:24:27

21             And so we will reconvene in the ceremonial courtroom

22   and then we will come back here and at least try to begin the

23   proceedings.  It's going to take some reorganization.  We'll

24   bring the jury up.

25             MS. BERTRAND:  To instruct them on 6.25?               15:25:38
```

UNITED STATES DISTRICT COURT

28

```
 1              THE COURT:  Yes, as well as provide them -- yes.
 2              MS. BERTRAND:  So we stay here?
 3              THE COURT:  Yes.
 4              (Recess was taken at 3:25 p.m.)
 5         (Proceedings reconvened at 3:41 p.m.)                    15:41:29
 6              THE COURT:  Please be seated.  And let's bring in the
 7    jury.
 8                        (Jury is present)
 9              THE COURT:  All right.  Please be seated.  Members of
10    the jury, I welcome you to what is my courtroom.              15:43:15
11              You have reported that you have been unable to reach a
12    unanimous verdict on one or more counts in this case.  I've
13    decided to suggest a few additional thoughts to you:
14              As jurors, you have a duty to discuss the case with
15    one another and to deliberate in an effort to reach a unanimous  15:43:41
16    verdict if each of you can do so without violating your
17    individual judgement and conscience.  Each of you must decide
18    the case for yourself, but only after you consider the evidence
19    impartially with your fellow jurors.  During your
20    deliberations, you should not hesitate to re-examine your own  15:44:04
21    views and change your opinion if you become persuaded that it
22    is wrong.  You should not, however, change an honest belief as
23    to the weight or effect solely because of the opinions of your
24    fellow jurors or for the mere purpose of returning a verdict on
25    one or more counts.                                           15:44:27
```

UNITED STATES DISTRICT COURT

29

```
1          I also remind you that in your deliberations you are
2    to consider the instructions that I have given you as a whole.
3    You should not single out any part of any instruction,
4    including this one, and ignore others.  They are all equally
5    important.                                                        15:44:47
6          What I have just said is not meant to rush you or to
7    pressure you into agreeing on a verdict.  Take as much time as
8    you need to discuss things.  There is no hurry.
9          I ask that you now return to the jury room and
10   continue your deliberations with these additional comments in    15:45:05
11   mind.
12         Please all rise for the jury.  Christine will escort
13   you back.
14                   (Jury is not present.)
15         THE COURT:  Please be seated.                               15:45:45
16         MR. LINCENBERG:  Your Honor, can I comment on the
17   instruction that the court just gave?
18         THE COURT:  Yes.
19         MR. LINCENBERG:  I thought Mr. Berry had noted that
20   the Court suggested instruction had been modified in 2023, and    15:45:57
21   I thought the Court was going to give the current instruction.
22   The Court included in what the Court stated to the jury the
23   part about what I have said is not meant to rush you.  And
24   unless I'm wrong, maybe I'm wrong, I thought that was in the
25   old instruction.                                                  15:46:22
```

UNITED STATES DISTRICT COURT

30

```
1            THE COURT:  I read 6.25 as it is revised with the
2     modification of --
3            MR. LINCENBERG:  Okay.
4            THE COURT:  -- one or more counts.
5            MR. LINCENBERG:  Sorry.  You're correct.          15:46:37
6            THE COURT:  All right.  Now, let's proceed to the
7     hearing.  And I, in my view -- and I will put on the record
8     that Christine will be delivering the definition of
9     "concealment" to the jury -- this is a very narrow focused
10    hearing.                                                 15:47:07
11           The question before the Court is whether or not the
12    information that was provided to defense counsel last week,
13    what we listed as Exhibit A, whether it's Jencks material.  And
14    so what I want is some information or testimony about whether
15    or not this falls under the definition of definition of       15:47:36
16    statement under Jencks, and a statement by a testifying
17    witness, and the only individuals that are contemplated here
18    are Quoc Thai and Carl Ferrer.
19           Second, whether it was adopted or approved by
20    Quoc Thai as an agent of the government.  I think there is a   15:48:00
21    subquestion about whether or not it was intended as a final
22    report.  Did Quoc Thai rely on this document, Exhibit A, and
23    what's included in it, for his testimony?  And I also want to
24    understand whether there are portions of it or background
25    material from which it is derived that was given over in       15:48:34
```

31

```
 1    discovery.  It's a very narrow inquiry.  And I am going to

 2    confine counsel to those points because that's the only

 3    question before the Court.

 4         The other question along those lines is whether or not

 5    it constitutes Brady or Giglio material.  So I want some          15:48:51

 6    testimony or examination about whether or not the information

 7    in here is exculpatory or favorable, and I want pincites to the

 8    pages where you think it's favorable information, or whether

 9    it's impeachment material.  There was some indication that

10    there was potential impeachment.                                  15:49:20

11         Certainly I'm going to look at, and I've already been

12    told about how the production was made, but I will certainly

13    examine whether or not this was a willful suppression, or if it

14    was, or portions of it or background from it, has been produced

15    as the government indicated last week.                            15:49:42

16         But really what I want to know in this analysis

17    regarding Brady is what part of it is exculpatory?  What part

18    of it is favorable?  And so that's how I intend to proceed.  I

19    certainly am interested because on the second page of this

20    exhibit, the communication by Mr. Quoc Thai in the second line   15:50:12

21    it says, "I wanted to share with you the latest draft of the

22    tracing document that Lyndon and I put together years ago."

23         So there's an inference that he had a hand in creating

24    the document.  So I want to know whether or not, therefore,

25    it's an adoption by him of what's in the document.  And I also    15:50:42
```

UNITED STATES DISTRICT COURT

32

```
 1    am interested in the qualifier "years ago."  How has the
 2    document changed, if it's changed?  And so those are the
 3    questions that I'm interested in.
 4            There's a reference in the defendants' motion
 5    regarding Prosperity Bank account, and there's an indication    15:51:11
 6    about Posting Solutions LLC.  I'm interested, Mr. Stone, in
 7    where that was in the testimony, how that came about, and so
 8    that's how we will proceed.  And so really the question is, I
 9    think, because Mr. Quoc Thai was the testifying agent, I need
10    to hear from him, his involvement in the development of this,   15:51:46
11    whether he adopted it and whether he relied on it in his
12    testimony.
13            MR. STONE:  Here's what I would recommend, Your Honor:
14    Mr. Thai is here.  I recommend, even though it's the
15    defendants' motion, we would put Quoc Thai on first and examine 15:51:58
16    him in the areas that you suggest, and so we would do that and
17    then, of course, the defense could cross-examine him.
18            MR. LINCENBERG:  We disagree.  This is our motion.  We
19    are the movant.  We should be able to examine Mr. Thai first,
20    Your Honor.                                                     15:52:15
21            THE COURT:  Well, it's an inquiry that's now in the
22    Court's hands, and I think procedurally it makes sense to lay
23    that foundation first and then you can examine him, and so
24    that's how we will proceed.
25            MR. STONE:  Other thing, Your Honor, I just want to be  15:52:27
```

UNITED STATES DISTRICT COURT

33

1    clear on this, really the most important exhibit that we

2    attached yesterday was Exhibit 8.  I don't know if Your Honor

3    has had an opportunity to go through it.

4              THE COURT:  I have not.  I have not go through all of

5    these exhibits.                                          15:52:47

6              MR. STONE:  It's a lot of papers and it's about

7    26 hours ago that it was filed.

8              THE COURT:  It's a small tree is what it is.  All

9    right.  I have Exhibit 8 before me, and you may --

10             MR. STONE:  So Exhibit 8, I think, really goes, well,  15:53:01

11   Exhibit 8 is most important for all of these because it goes to

12   prejudice, but it certainly goes to Brady and Giglio.  On the

13   left column, Your Honor, are all of the paragraphs that were

14   included in the document that was produced, the document that

15   was attached to Quoc Thai's e-mail on October 23rd.  On the    15:53:19

16   right is language from previously-disclosed documents of which

17   we attached three.  Two of them are civil seizure, I'm sorry,

18   seizure affidavits that were signed by Lyndon Versoza.  One of

19   them was the, sorry, the civil seizure complaint out of CDC A

20   that was filed in 2020, and which the defense attorneys for the  15:53:46

21   who represent the money laundering count defendants here have

22   appeared.

23             And we went through paragraph by paragraph to show

24   that the information that was disclosed on that document that

25   was attached to Mr. Thai's e-mail has already been produced in   15:54:03

UNITED STATES DISTRICT COURT

34

```
 1    many instances verbatim.  And so this is -- and it was produced
 2    in discovery with respect to the affidavits, and complaint, of
 3    course, was filed on the public record.  So this goes through
 4    the entire document, and I would say all of the Brady
 5    allegations in defense's motion are included here and are          15:54:24
 6    almost word for word included in something that's already been
 7    disclosed.  So there is no Brady and no Giglio violations
 8    because all of this information was previously disclosed.
 9          Then --
10          THE COURT:  Let me ask Mr. Lincenberg, who seems to be       15:54:47
11    the person who is leading the counsel on this, have you
12    received Exhibit 8?
13          MR. LINCENBERG:  Yes, we have, Your Honor.
14          THE COURT:  Have you examined it closely with regard
15    to the discovery that was produced?                                15:54:58
16          MR. LINCENBERG:  Somewhat.  It's lengthy.  There is a
17    lot of back and forth.  I certainly looked at it with respect
18    to, for example, the parts involving Mr. Brunst.  We think
19    Exhibit 8 is irrelevant to the point.
20          THE COURT:  Well, then why are we here?                      15:55:14
21          MR. LINCENBERG:  We're here -- what do you mean why
22    we're here?  Exhibit 8 --
23          THE COURT:  Did you say -- sorry, there is an 8?
24          MR. LINCENBERG:  Exhibit 8.  What Mr. Stone just noted
25    as Exhibit 8 is irrelevant.  Mr. Stone's point is to say, hey,     15:55:29
```

UNITED STATES DISTRICT COURT

35

```
 1   you guys --
 2           THE COURT:  You can make your summation argument.
 3           MR. LINCENBERG:  Just responding to his argument.
 4           THE COURT:  Well, you can make it in summation.  I am
 5   more interested in the time, and we have a witness, and I can        15:55:41
 6   continue your summation for tomorrow, but I was just inquiring
 7   whether or not you saw Exhibit 8.
 8           MR. LINCENBERG:  Yes, I did.
 9           THE COURT:  All right.  Let's bring the witness in.
10           All right.  Mr. Quoc Thai, for the necessity of this         15:56:06
11   hearing, I'm going to have you sworn in.  Please come forward
12   and be sworn.
13   QUOC THAI,
14   (Witness Sworn.)
15           THE COURT:  Mr. Stone, you may proceed when ready.           15:57:03
16           MR. STONE:  Liliana, am I connected here?
17                          DIRECT EXAMINATION
18   BY MR. STONE:
19   Q.  Good afternoon, sir.
20   A.  Good afternoon.                                                  15:57:34
21   Q.  Do you remember sending an e-mail on October 23rd, 2023
22   that relates to this case?
23   A.  Yes.
24   Q.  In that e-mail you attached a document?
25   A.  Yes.                                                             15:57:48
```

UNITED STATES DISTRICT COURT

36

```
 1    Q.  Are you familiar with that document?
 2    A.  Yes.
 3    Q.  How are you familiar with it?
 4    A.  It was a document that Inspector Versoza produced and, you
 5    know, wrote, and I assisted.                                      15:58:05
 6    Q.  Okay.  You said you assisted, what does that mean?
 7    A.   I helped formulate -- adjust some formatting, basically
 8    cosmetic changes.
 9    Q.  What do you mean by "formatting"?
10    A.  Oh, I helped to put together a table of contents and adjust  15:58:22
11    some of the indentations and margins and stuff.
12    Q.  Did you write any of that document?
13    A.  No.
14    Q.  Do you understand what the purpose of that document was?
15    A.  I do.                                                         15:58:40
16    Q.  What was it?
17    A.  To identify the assets for asset forfeiture.
18    Q.  Do you know if that document was a final product?
19    A.  It was not a final product.
20    Q.  What do you mean?                                             15:58:53
21    A.  It was a draft of the ongoing work that was being done by
22    Inspector Versoza.
23             MR. STONE:  Liliana, could you try?
24             COURTROOM DEPUTY:  Yes.
25    BY MR. STONE:                                                     15:59:16
```

UNITED STATES DISTRICT COURT

37

| | |
|---|---|
| 1 | Q.  All right.  And you just testified that the document wasn't |
| 2 | a final product? |
| 3 | A.  That's right. |
| 4 | MR. LINCENBERG:  Your Honor, we've marked this |
| 5 | document as Exhibit 6267 for purposes of this hearing and a |
| 6 | potential forfeiture trial.  If we want, we can refer to it by |
| 7 | that number. |
| 8 | MR. STONE:  We marked it as well.  I haven't gotten to |
| 9 | that yet. |
| 10 | THE COURT:  And I marked it as the original Exhibit A. |
| 11 | I think we will adopt my Exhibit A.  It's easier to refer to. |
| 12 | But thank you for the notation as to your exhibit number. |
| 13 | MR. STONE:  Liliana, could you take it off?  Could you |
| 14 | take it off? |
| 15 | Liliana, you can put that back on. |
| 16 | BY MR. STONE: |
| 17 | Q.  Okay.  It wasn't a final document, and what was -- what was |
| 18 | it for? |
| 19 | A.  It was just meant to be a sort of repository of our |
| 20 | information and our tracing work relating to the assets. |
| 21 | Q.  Do you have an understanding for what Inspector Versoza was |
| 22 | going to use the document for? |
| 23 | A.  It was the basis for some of his seizure warrants for the |
| 24 | assets. |
| 25 | Q.  You have this draft in your possession, the draft meaning |

15:59:28 (line 5)
15:59:52 (line 10)
16:00:45 (line 15)
16:00:57 (line 20)
16:01:14 (line 25)

UNITED STATES DISTRICT COURT

38

```
1    this Exhibit A, is it in your possession?

2    A.  Yes.

3    Q.  We're looking at an e-mail that we marked for

4    identification as Exhibit 4, and this is the e-mail that you

5    were testifying to earlier?                                    16:01:44

6    A.  Yes.

7    Q.  You wrote, "but I wanted to share with you the latest draft

8    of the tracing document that Lyndon and I put together years

9    ago," do you see that?

10   A.  Yeah.                                                       16:01:56

11   Q.  What does that mean?

12   A.  It was just -- when I say "put together," I mean Lyndon

13   wrote it and I helped to format it, and so we collaborated in

14   that way, but it was a document that was written in the past by

15   Lyndon and I helped to organize it.                            16:02:10

16   Q.  And "organize it" means what?

17   A.  Just to make sure that, you know, all the -- it was

18   basically to put together the table of contents, which is, you

19   know, cosmetic in nature.

20   Q.  And so organize, but through a table of comments to make it 16:02:31

21   easier for use?

22   A.  Yeah, easier to access, easier to review.

23   Q.  Do you have in your possession different versions of this

24   document?

25   A.  I do, yeah.                                                 16:02:46
```

UNITED STATES DISTRICT COURT

39

```
 1   Q.  Do you have an understanding of how many versions you have?
 2   A.  I think about seven or eight.
 3   Q.  This one that's attached, is this the latest version, is
 4   this the last version that you have in your possession?
 5   A.  This is the last version I have in my possession.          16:03:02
 6   Q.  Do you have an understanding that Inspector Versoza may
 7   have versions as well?
 8   A.  I think he does, yeah.
 9   Q.  And you also sent an e-mail to the prosecution attaching an
10   earlier version of this document in 2019; is that correct?      16:03:21
11   A.  Yes, that's correct.
12   Q.  And this is marked for identification as Exhibit 12, and
13   that's your e-mail down there?
14   A.  It is, yes.
15   Q.  "Hello Andrew.  Jane, Lyndon and I previously put together  16:03:44
16   flow charts and notes for the seizure warrants."
17         Who is Lyndon?
18   A.  Lyndon is Inspector Versoza.
19   Q.  The inspector who wrote this document?
20   A.  Yes.                                                        16:03:57
21   Q.  This draft?
22   A.  Yes.
23   Q.  Who is Jane?
24   A.  Jane is an analyst at the JRIC, the Joint Regional
25   Intelligence Center.                                            16:04:05
```

UNITED STATES DISTRICT COURT

40

```
1    Q.  Again, I think you used similar language, "put together,"
2    what does that mean?
3    A.  You know, we collaborated in putting, like combining our
4    efforts to put together this document.
5    Q.  And what was your role in putting it together?              16:04:20
6    A.  My role was primarily just reviewing the documents for any
7    kind of grammatical issues and organizing the table of contents
8    and other things.
9    Q.  You also wrote in this e-mail, "I thought those items would
10   be good to use as a basis for the summary charts," what do you  16:04:41
11   mean by summary charts?
12   A.  Summary charts, my thinking was they would be future charts
13   used for trial and other things.
14   Q.  And this is in 2019?
15   A.  Yes.                                                        16:04:53
16   Q.  Do you have an understanding -- what was your role in the
17   investigation, in this investigation, compared to Inspector
18   Versoza's role?
19   A.  Well, my role was focused on building out and proving up
20   the money laundering charges, charges 53 through 100.          16:05:08
21   Q.  What about Inspector Versoza?
22   A.  He was primarily focused on the asset forfeiture.
23   Q.  This draft document that you attached, what did that refer
24   to or what did that relate to?
25   A.  It was related to the asset forfeiture.                    16:05:23
```

UNITED STATES DISTRICT COURT

41

```
 1    Q.  You write here, "but I wanted to format that material to
 2    whatever you think would flow best," my question was, did you
 3    actually use this draft document as a basis for the summary
 4    charts?
 5    A.  No, I didn't.                                              16:05:42
 6    Q.  What did you use instead?
 7    A.  I went back and used the source material and built it up
 8    from scratch, and then I identified the records I used and put
 9    it into my own Master Table Excel spreadsheet.
10    Q.  You see this spreadsheet I put on your screen, this is     16:05:59
11    identified as Exhibit 10a on the government's exhibit list?
12    A.  Yes.
13    Q.  What is this document?
14    A.  This identifies the source documents and the sort of
15    underlying records that support all the flowcharts that I      16:06:34
16    created for the trial.
17    Q.  Okay.  This is a document you created?
18    A.  Yes.
19    Q.  And this is a document that Exhibit 10 reflects was
20    e-mailed to the defense counsel on February 11th, 2020.  What  16:06:47
21    are we looking at?  Just take us through what we are looking at
22    with this document, if you could?
23    A.  Okay.  So I wanted to organize everything as thoroughly as
24    I could, and so I initially started with the main tab, and that
25    tab identifies all the charges identified in the indictment,   16:07:09
```

UNITED STATES DISTRICT COURT

42

1   and then it identified the specific transactions.  If I could

2   find a send and receive record for that transaction, and then

3   it identifies the file name that came in from the subpoena

4   records, and then the page number in which that specific item

5   was located and the type of item it was.                          16:07:31

6           So for example, here with the BBT records, we find

7   that there's a signature card of Website Tech on page 1 and 2,

8   we have the bank statements which is, you know, a summary of

9   the bank records on pages 180, 181, and then we have the

10  specific item, which is the wire transfer on page 1274 of that   16:07:54

11  particular file.

12          I then subsequently identified the subpoena number

13  that I drew that file from, as well as the location of that

14  record on Relativity.

15  Q.  And you did this for each money laundering count?            16:08:09

16  A.  Yes, I did.  I went back and for Counts 53 through 100 I

17  would batch the counts together and then further sort of

18  identified and supported all of the supporting transactions

19  that flowed through to the identified count.

20  Q.  And then at the bottom here the counts are broken into       16:08:36

21  clumps?

22  A.  Yes, that's right.  That's right.

23  Q.  And that has similar information in the spreadsheet?

24  A.  Yes, that's right.

25  Q.  And you used this spreadsheet as the basis to prepare your   16:08:50

UNITED STATES DISTRICT COURT

43

```
 1   summary exhibits, which you testified at trial about; correct?
 2   A.  Yes, that's right.
 3   Q.  You testified that you didn't rely on Exhibit A, the draft
 4   document for your trial testimony, why not?
 5   A.  It wasn't thorough enough for my purposes, and it just -- I    16:09:20
 6   was focused on the money laundering charges, and that was kind
 7   of an asset forfeiture document.
 8   Q.  And who was heading up the investigation in the asset
 9   forfeiture?
10   A.  Inspector Versoza.                                             16:09:36
11   Q.  After your trial testimony in this trial several weeks ago,
12   did you begin to prep for asset your asset forfeiture
13   testimony, or your potential asset forfeiture testimony?
14   A.  Yes, that's right.
15   Q.  And when you sent that e-mail in October and attached the      16:10:03
16   draft asset forfeiture document, why did you -- why were you
17   referencing that at that time?
18   A.  Because that was the most recent version that I had of that
19   document.
20   Q.  And there's been -- we have talked about the e-mail you        16:10:23
21   sent in 2019 and the e-mail you sent in 2023, and those
22   attached different versions of the same document; is that
23   right?
24   A.  Yes.
25   Q.  And do you know if there were any changes that you made        16:10:38
```

UNITED STATES DISTRICT COURT

44

```
 1   from the version that you had in 2019 to the version in 2023?
 2   A.  The only change that I made was a notation at the front
 3   page of it that changed the date that said "latest version" and
 4   the new date, which was a date in 2021.
 5   Q.  When did you do that?                                    16:10:59
 6   A.  Around November of 2021 after the first trial.
 7   Q.  After the mistrial?
 8   A.  Yeah.
 9   Q.  Why did you make that change from the version?
10   A.  I was preparing to leave my work in the government and I    16:11:13
11   wanted to make sure that I notated to myself which version was
12   the latest version to reference back for myself in the event
13   that I would need to testify again.
14   Q.  Did you make any changes between November 2021 and October
15   of 2023 to that document?                                    16:11:34
16   A.  No.  No.
17   Q.  And did you rely on that when you were working to prepare
18   for your trial testimony?
19   A.  No.
20   Q.  Which document did you rely on?                           16:11:45
21   A.  This document here, my Master Table.
22          THE COURT:  Was that Exhibit 10a, is that what that
23   is?
24          MR. STONE:  Yes, Your Honor 10a, and I think we,
25   because it's too difficult to print out a spreadsheet, we have  16:12:08
```

UNITED STATES DISTRICT COURT

45

```
 1   it on a CD.
 2          THE COURT:  Yes, I received it.  Thank you.
 3   BY MR. STONE:
 4   Q.  On Exhibit A, which was the draft document that you've
 5   testified about, did you make any substantive changes to that      16:12:32
 6   document?
 7   A.  No.  No.
 8   Q.  Did you review all the language that Inspector Versoza put
 9   in to ensure that it was all correct?
10   A.  No.  I just reviewed it for grammatical errors and any kind     16:12:53
11   of flow issues.  I didn't go back into the record to review the
12   specific statements made in the record.
13   Q.  So if there's some sort of misstatement in there, you
14   wouldn't have known about it?
15   A.  No.                                                            16:13:11
16          MR. STONE:  That's all I have, Your Honor, unless Your
17   Honor has questions.  I was hoping to address everything you
18   said at the beginning of the hearing.
19                           EXAMINATION
20   BY THE COURT:                                                      16:13:24
21   Q.  I am -- if you know, because obviously there was another
22   individual involved, Mr. Versoza, in this e-mail communication
23   from you to Mr. Boyle and Mr. Stone is copied, I wanted just to
24   get clarification, it says, "but I wanted to share with you the
25   latest draft of the tracing document." When you say "the latest   16:13:58
```

46

```
 1   draft," what's your understanding of that time frame?
 2   A.  It was the -- I had previous drafts and it was my version
 3   of the latest draft that I had.  There, you know, there was a
 4   universe of other drafts, and I just wanted to specifically
 5   identify that that was the latest draft that I had.                16:14:31
 6           MR. STONE:  Could I ask a follow-up question, Your
 7   Honor?
 8   BY THE COURT:
 9   Q.  Yes.  I am just curious about -- and that's, I guess, and I
10   will ask you this question, is that what you mean when you        16:14:49
11   referenced "that Lyndon and I put together years ago"?
12   A.  Uh-huh.  Yes, ma'am.
13   Q.  If you know, do you know whether or not this what, we're
14   referring to as Exhibit A, what is called the Asset Tracing
15   Master Document Draft, was this -- was the content of it, to      16:15:20
16   your knowledge, if you know again, was it incorporated into any
17   other affidavits or warrants?
18   A.  I don't know, Your Honor.
19           THE COURT:  All right.
20           Yes, Mr. Stone, you had more.                             16:15:39
21               CONTINUED DIRECT EXAMINATION
22   BY MR. STONE:
23   Q.  You testified that you had sent this similar document to
24   prosecutors in 2019; correct?
25   A.  Yes.                                                          16:15:50
```

UNITED STATES DISTRICT COURT

47

```
 1   Q.  And the only difference between the version in 2019 and the
 2   version you sent in 2023, I believe, was you just changed the
 3   date; is that correct?
 4   A.  Yes, that's correct.
 5            MR. STONE:  Nothing further, Your Honor.                  16:16:01
 6            THE COURT:  All right.  I am assuming Mr. Lincenberg.
 7            MR. LINCENBERG:  Yes, Your Honor.
 8            I was discussing with Mr. Stone because we heard from
 9   the Court yesterday, we're working off of hard copies.  If the
10   Court or Mr. Thai wants to view one of the exhibits on the        16:16:40
11   screen, I was suggesting if the government wanted to put it up,
12   we could do that, otherwise we'll work off the hard copies.
13            THE COURT:  Does he have hard copies in front of him?
14            MR. LINCENBERG:  We supplied the copies of our
15   exhibits, and I think that he should.                             16:16:58
16            THE COURT:  There are files before him.
17            MR. LINCENBERG:  Okay.  Hi, Mr. Thai.
18                     CROSS-EXAMINATION
19   BY MR. LINCENBERG:
20   Q.  Mr. Thai, you testified a moment ago that you sent the copy   16:17:12
21   of Exhibit A, the 2021 report, to Mr. Stone when you began
22   prepping for the asset forfeiture testimony; is that right?
23   A.  That's right.
24   Q.  So you understood that you would be given that testimony,
25   not Mr. Versoza; is that right?                                   16:17:35
```

UNITED STATES DISTRICT COURT

48

```
 1    A.   That's right.
 2    Q.   And did you understand that there was a relationship
 3    between the money laundering counts and the asset forfeiture
 4    claims?
 5    A.   I mean, yeah.                                              16:17:50
 6    Q.   Okay.  And when you sent the report to Mr. Stone, you had
 7    reviewed it; correct?
 8    A.   Yeah.
 9    Q.   And when you reviewed it, you believed that it was accurate
10    as far as you understood; correct?                             16:18:10
11    A.   I reviewed it, but I, you know, didn't review it deeply.
12    Q.   And the goal was for you and Mr. Stone to be able to work
13    with each other in anticipation of further testimony, which you
14    would be giving, which would translate if there were
15    convictions on the forfeiture counts on the money laundering   16:18:31
16    counts into potential forfeitures; correct?
17    A.   Yes.
18    Q.   And when you mentioned that there was only one change from
19    the earlier versions, and as far as you understand, the
20    November 2021 report, which is Exhibit A for purposes of this  16:18:48
21    hearing, is the last final copy of that report; correct?
22    A.   That's the last filed copy of the report that I have in my
23    possession.
24    Q.   Okay.  Did anybody ever at the time that you sent it to
25    Mr. Stone, did anybody ever correct you on that?               16:19:06
```

UNITED STATES DISTRICT COURT

49

1    A.   No.

2    Q.   Okay.  And now, looking at the e-mails for a moment that

3    you sent over, so first you in 2019 sent an e-mail which I

4    believe the government has marked as Exhibit 12, the defense

5    has marked as 6270, so this is a 2019 e-mail, do you have it in        16:19:34

6    front of you?  I will read from it.  You should be okay, but if

7    you want to look at it, it's the government's Exhibit 12 there.

8    A.   Twelve.  Okay.

9    Q.   So this is an e-mail that you sent to Mr. Stone in 2019

10   where you say, "Jane, Lyndon and I previously put together flow        16:19:54

11   charts and notes for the seizure warrants."

12          Do you see that?

13   A.   Yes.

14   Q.   Is that true that you had previously put together

15   flowcharts and notes for the seizure warrants?                         16:20:10

16   A.   Yes.

17   Q.   And that related to the earlier version which sounds like

18   it's fairly identical to what's now Exhibit A; correct?

19   A.   Yes.

20   Q.   All right.  And then in 2023 in what the government has           16:20:25

21   marked as -- well, I am not sure if they had a different note

22   on it.  It may be part of Exhibit A.  It's the e-mail

23   transmitting the report, you write to Mr. Stone, "I wanted to

24   share with you the latest draft of the tracing document that

25   Lyndon and I put together years ago."                                  16:20:55

UNITED STATES DISTRICT COURT

50

```
1           Do you see that?
2    A.  I don't know which one it is, but I recall it, yes.
3    Q.  All right.  Well, we also had marked that.
4           MR. STONE:  It's Exhibit 4.
5           MR. LINCENBERG:  We also marked it as 6266.  Do you        16:21:10
6    have those documents?  Okay.
7    BY MR. LINCENBERG:
8    Q.  And is that true what you wrote that this was a document
9    that you and Lyndon put together years ago?
10   A.  Yes.                                                          16:21:31
11   Q.  Now, I want to take a look at -- well, let me go back and
12   focus on a couple of things that the Court was asking about.
13   First, sir, we've marked as 6269 a transcript of your trial
14   testimony, and you may or may not need to look along as I go
15   through a few points on it, but I want to make sure I have it    16:22:11
16   handy there.
17          So let me just ask as a general matter, sir, during
18   your testimony, do you recall testifying that you were the one
19   who identified key individuals and key accounts, and that you,
20   that you knew had funds that you were interested in              16:22:28
21   investigating?
22   A.  Yes.
23   Q.  All right.  And that you were the one who was trying to
24   link those accounts through transactions across the various
25   accounts, do you recall that?                                    16:22:41
```

UNITED STATES DISTRICT COURT

51

```
 1    A.  Yes.
 2    Q.  And that you were the one who ran searches through the
 3    various accounts; correct?
 4    A.  Yes.
 5    Q.  And that work you did, running searches through the various    16:22:52
 6    accounts, is work that showed up in both the Exhibit A as well
 7    as Exhibit 1479, which was your trial summary charts; right?
 8    A.  So that is incorrect.  My work, when it came to running
 9    searches, started after I worked on preparing the financial
10    documents received through subpoenas, I reorganized them         16:23:23
11    according to subpoenas, sent them through, and made sure that
12    they had 902(11) certifications.  I then sent them up to
13    Relativity, reorganized them with regard to the, you know, like
14    the text capture.
15    Q.  Right.                                                       16:23:47
16    A.  And from there I built up my Master Table.  So that work
17    was separate from Mr. Versoza, Inspector Versoza's work, which
18    was primarily focused on asset forfeiture.
19    Q.  I understand that, but the subpoenas and the documents that
20    you got from the subpoenas and looking at the different          16:24:03
21    transfers was work that made its way into both reports; right?
22    A.  No.  No, because Inspector Versoza and I started with
23    receiving the records from the various financial institutions.
24    Inspector Versoza had his own version, and then because I was
25    tasked with the job of certifying the 902(11)s, I copied and     16:24:27
```

UNITED STATES DISTRICT COURT

52

| | |
|---|---|
| 1 | made sure that I had my version.  And from that version I |
| 2 | reorganized it and I drew from the reorganized version that was |
| 3 | uploaded into Relativity.  That allowed for me to reference it |
| 4 | in the Master Table and allowed for me to identify the Bates |
| 5 | number on Relativity, which I also identified on the table. |
| 6 | Q.  Did you ensure that the work you were doing was consistent |
| 7 | with what was in Exhibit A? |
| 8 | A.  What?  Say again. |
| 9 | Q.  Did you ensure that the work that you were doing in tracing |
| 10 | through the accounts was consistent with what was in Exhibit A, |
| 11 | which is the 2021 tracing of assets document? |
| 12 | A.  No. |
| 13 | Q.  Completely independent? |
| 14 | A.  Independent. |
| 15 | Q.  Okay.  And so when you also testified that you were the one |
| 16 | who reviewed the financial records and made connections between |
| 17 | the various accounts and identified key financial transactions, |
| 18 | it's your testimony that there were two people who |
| 19 | independently did the same thing? |
| 20 | A.  Yes. |
| 21 | Q.  And were you working with Inspector Versoza during the time |
| 22 | period when the report was being prepared on those matters? |
| 23 | A.  The report, are you referring to the Master Table or your |
| 24 | Exhibit A? |
| 25 | Q.  Exhibit A. |

16:24:49

16:25:02

16:25:12

16:25:29

16:25:46

UNITED STATES DISTRICT COURT

53

```
 1   A.  No.  He -- at the time Inspector Versoza and Analyst Jane
 2   Chung, they were -- they had been on the case for quite a few
 3   months, and I was just transitioning in initially with
 4   reviewing the bitcoin records, but in that -- at that time when
 5   these, this Exhibit A was being produced, I was acquiring        16:26:08
 6   records for them by, you know, they would identify accounts
 7   that they needed.  I would write the subpoenas, I would reach
 8   out to the banks, serve up those subpoenas, acquire those
 9   records, digitize them, and provide Inspector Versoza with
10   those records.                                                   16:26:30
11        So Inspector Versoza was working on the asset
12   forfeiture matters separate from me at the time.  You know,
13   later on as I was working on the, you know, the counts relating
14   to the money laundering charges, I did what I said earlier that
15   I did, which was absorbed the body of money laundering records,  16:26:49
16   then reorganized them, Bates stamped them, uploaded them.  And
17   from that body, I reviewed -- so there were two separate bodies
18   of records.  They come from the same source.  But because I
19   reorganized them, I drew from my own because it was easier for
20   me to keep track of them.                                        16:27:14
21   Q.  So why did you send to Mr. Stone last month a copy of the
22   Exhibit A in anticipation of your testimony?
23   A.  Because it was the most convenient summary of financial
24   records relating to the asset forfeiture.
25   Q.  All right.  And the asset forfeiture was also related to     16:27:39
```

UNITED STATES DISTRICT COURT

54

```
 1    the money laundering; right?
 2    A.  Yeah, I guess.
 3    Q.  And Exhibit A was a document that you had fully reviewed
 4    and understood it to be accurate as best you knew; correct?
 5    A.  Well, see, that was a starting point for me.          16:27:56
 6    Q.  Let me just ask; is that correct?
 7    A.  So can you ask that again?
 8    Q.  Did you ever point out any errors to Inspector Versoza in
 9    Exhibit A?
10    A.  No, I didn't identify errors.                          16:28:12
11    Q.  Now, in -- let's take a look at Exhibit A.  So in Exhibit A
12    on page 1, for example, it talks about tracing for Prosperity
13    Bank account, and in connection with the tracing for Prosperity
14    Bank account, first you see in the first paragraph it notes
15    that the president, CEO and sole signatory of the account was   16:28:42
16    Michael Gage, do you see that?
17    A.  So let me just make sure.  Your reference to Exhibit A is
18    my item number 12 on my records?
19    Q.  It's --
20    A.  Exhibit 12.                                            16:28:58
21    Q.  It's what we're referring to as Exhibit A.
22    A.  I want to stay --
23    Q.  Government's Exhibit 5.  Do you have that?  It's also
24    defense 6267.
25    A.  Give me a second.  Exhibit 5, yes.                     16:29:17
```

UNITED STATES DISTRICT COURT

55

```
 1   Q.  Okay.  So focusing on -- let's focus on pages 1 and 2 for
 2   the moment, tracing for Prosperity, and this was an account,
 3   bank account involving for Posting Solutions; right?
 4   A.  Yes, it appears that way, yes.
 5   Q.  And it notes that M.G., Michael Gage, was the sole          16:29:47
 6   signatory and president, do you see that?
 7   A.  Yeah, I see it.
 8   Q.  And that the Posting Solutions listed Backpage for the P.O.
 9   Box application and listed the names of several of the Backpage
10   operators, including Ferrer, do you see that?                   16:30:08
11   A.  Yes.
12   Q.  And then it talks about records of wire transfers from
13   countries outside of the U.S. deposited into that account;
14   right?
15   A.  Yes.                                                        16:30:19
16   Q.  And so did you understand that there were actually foreign
17   wires being used to come into a Backpage affiliated entity,
18   Posting Solutions?
19   A.  You know, when I reviewed -- I separately reviewed the
20   Prosperity Bank account records and I did not focus on like     16:30:37
21   these international wires.
22   Q.  Well, let me ask you, did you focus on paragraph four on
23   page 2 where it says, "A substantial percentage of outgoing
24   payments from Prosperity account '7188 are payments for the
25   operation of Backpage"?                                         16:30:58
```

UNITED STATES DISTRICT COURT

56

```
 1   A.  One of the things I was trying to tell you earlier was
 2   that --
 3   Q.  Let me ask you if you focused on that?
 4   A.  No, I didn't.
 5   Q.  Do you recall testifying at trial that the Cereus        16:31:07
 6   Properties account was used, appeared to be an entity used to
 7   pay the various payroll expenses relating to Backpage, and I am
 8   looking at what we have marked as 6269, page 136, the
 9   transcript, but I can read it to you.
10   A.  Sure.                                                    16:31:32
11   Q.  "Cereus Properties appears to be an entity used to pay the
12   various payroll expenses of the -- of the activity relating to
13   the Backpage.com."
14   A.  Yeah.
15   Q.  And in fact, you understood, because you had, in your    16:31:41
16   words, at least reviewed the Exhibit A that the -- that the
17   account that was being used to pay some of these Backpage
18   operating expenses was a Posting Solutions Prosperity account;
19   right?
20   A.  Well, no, when it came to looking at the Cereus bank      16:32:03
21   accounts, I identified incoming transfers from Website Tech and
22   other similar spots and I noticed almost immediate outgoing
23   payments to the Backpage owners, and --
24   Q.  You mean to the Cereus owners?
25   A.  Well, to the defendants, yeah.  And I thought its function 16:32:22
```

UNITED STATES DISTRICT COURT

57

```
 1    seemed primarily as a payroll account.  And so I didn't rely on
 2    this at all.  I concluded that based on just looking at the
 3    financial records that that was functionally a payroll, you
 4    know, entity.
 5    Q.  Well, payroll for Cereus maybe, but not for Backpage;         16:32:45
 6    right?
 7    A.  Well, no, because like, you know, Website Tech money comes
 8    in, Cereus money goes out.  I think the records show that the
 9    funds come from Backpage.com, so...
10    Q.  Well, let me ask you this --                                  16:33:01
11         THE COURT:  Well, let me stop you there,
12    Mr. Lincenberg.  I want to remind you not to go too far afield.
13    The question before the Court is whether or not this is a
14    statement of the witness, whether it was adopted or approved by
15    him, whether it was material that he relied upon for his          16:33:20
16    testimony.  And what I've seen in the last couple of questions
17    that you've asked related to the document, he's struggling to
18    answer because he's not the author and he didn't create it.  So
19    I don't necessarily find that to be useful in my inquiry.
20         So if you would focus your questions related to the          16:33:43
21    Jencks question, that would be helpful.
22         MR. LINCENBERG:  Sure, but his statements in his
23    e-mails is that he did co-create it.  One of the things --
24         THE COURT:  His statement under oath in testimony is
25    that he formatted it and he --                                    16:33:58
```

UNITED STATES DISTRICT COURT

58

```
 1          MR. LINCENBERG:  Right.

 2          THE COURT:  -- put some cosmetic changes to it.

 3   That's what I'm basing my directive on.

 4          MR. LINCENBERG:  We understand that his testimony is

 5   different from the e-mails, but one of the areas the Court        16:34:10

 6   asked us to look into was relating to whether there's

 7   exculpatory or favorable or impeachment materials, and so the

 8   reason why I am going into this area is this is one area in

 9   which a prior report we believe was, as he stated in his

10   e-mails, prepared by Mr. Thai and Mr. Versoza.  But whether      16:34:34

11   it's that he prepared it, either way, he adopts it.  He's

12   sending it to Mr. Stone for use in the forfeiture part of the

13   case.

14          THE COURT:  Well, maybe --

15          MR. LINCENBERG:  There is contradictory information in    16:34:51

16   here from his testimony at trial.

17          THE COURT:  Well, maybe it's an issue of this is not

18   the appropriate witness to question about that.  Because if

19   you're going about it in terms of the document that he didn't

20   prepare, that he only cosmetically did some work on, and that    16:35:07

21   he had not seen since November of whenever it was, 2021, I

22   don't think it's a good use of time to question this witness

23   with regard to what might be or may not be exculpatory

24   information in an exhibit that he didn't prepare, nor did he

25   rely upon.  So perhaps this is a question of this is not the     16:35:35
```

UNITED STATES DISTRICT COURT

59

```
 1    appropriate witness.

 2           MR. LINCENBERG:  The Court has apparently concluded

 3    that he didn't prepare it.  We accept his e-mails that he was

 4    one of the people who prepared it, and we accept his testimony

 5    that he reviewed it and found no mistakes in it and sent it        16:35:50

 6    over to the prosecutor to use in helping to prepare his

 7    testimony, and we think that makes it Jencks material.

 8           I will, if the Court doesn't want me to go through

 9    further differences between his testimony and the report to

10    show why this is important impeachment material and            16:36:10

11    exculpatory, I can pass and just argue that later.

12           THE COURT:  Well, again, I am not foreclosing you from

13    bringing that forward.  I don't think this is the appropriate

14    witness in which to do so with this exhibit, because of the --

15    and I will agree with you, Mr. Lincenberg, what I've heard so      16:36:34

16    far is that he didn't adopt this Exhibit A.  He didn't rely

17    upon it in preparing for his testimony.  He in fact is

18    unfamiliar with some of the paragraphs in here that you've

19    questioned him about that further bolsters his testimony under

20    oath that he didn't rely on it, nor did he prepare for it, and     16:36:56

21    there were apparently two individuals who were tasked with two

22    very distinct things.

23           While they may have some overlap, it appears that this

24    Mr. Versoza was doing his own investigation and doing his own

25    linkages separate and apart from Mr. Quoc Thai here.               16:37:23
```

UNITED STATES DISTRICT COURT

60

```
 1          So I think if you wish to explore further, if there's
 2    exculpatory material in here that is inconsistent with what was
 3    in the record at trial, then I think you should probably call
 4    somebody else.
 5          MR. LINCENBERG:  Well, one of the government's
 6    argument as to why this is not Jencks material, and I looking
 7    at page 9 of the government's brief, they say:  Second, the
 8    draft didn't relate to Mr. Thai's trial testimony.  Did not
 9    relate to the money laundering counts that he testified about
10    at trial.
11          And so what I did to prepare for this hearing, Your
12    Honor, in response, was to go through and find many parts of
13    Exhibit A which related to his trial testimony, and so it's
14    Mr. Thai who gave the trial testimony and it relates to that.
15    If the Court doesn't want me to use Mr. Thai, ask him the
16    questions which point out those differences, then that's --
17    then the Court can indicate as much, but that is something that
18    I was intending to do is go through why the government's
19    argument is incorrect through Mr. Thai's testimony about what
20    he testified to.
21          I'll give the Court just one example that's pretty
22    obvious.  Take, for example, Count 100 --
23          THE COURT:  Well, let's be very clear about what the
24    government said.  You only took a portion of it, and I am
25    looking at page 9.  "The document as evidenced by its use
```

16:37:44

16:38:02

16:38:25

16:38:49

16:39:05

UNITED STATES DISTRICT COURT

61

```
1   exclusively in supporting the seizure warrants and civil
2   forfeiture complaint did not relate to the money laundering
3   counts." That's a different sentence than what you just said,
4   so let's be very clear in terms of the record and the
5   pleadings.                                                      16:39:28
6       MR. LINCENBERG:  Well, the point that the Court added
7   doesn't change the statement that the draft -- that the
8   government is saying the draft didn't relate to Thai's trial
9   testimony, period.  That's the first sentence.  That's what I
10  quoted for the Court, and that is incorrect.  And there's       16:39:45
11  numerous examples of Exhibit A relating to Mr. Thai's trial
12  testimony.
13      THE COURT:  Well, you listed those examples, some of
14  them in your motion, but I will say this:  That in my view it
15  blurs the lines.  This is, of course, a money laundering        16:40:08
16  indictment.  There are assets that are being traced for
17  potential seizure, but the question here is, again, I think we
18  all agree that all of this information was related to the
19  investigation that led to the charges in the superseding
20  indictment relating to money laundering, ultimately relating to 16:40:37
21  the complaints of seizing of assets.
22      However, here too, as Mr. Thai has just testified, he
23  did not rely on the information here.  He relied on what they
24  call a master document that he provided and that he was shown.
25  And so that's, I guess that's to me the fine point.             16:41:04
```

UNITED STATES DISTRICT COURT

62

```
 1          MR. LINCENBERG:  Well, look, with all due respect to
 2    Mr. Thai, if the Court seems to be reaching the conclusion
 3    different from common sense, in my opinion, respectfully, and
 4    different from what he puts in his e-mails --
 5          THE COURT:  Mr. Lincenberg, you try my patience on        16:41:25
 6    numerous occasions.  I have never, ever in my career on the
 7    bench been told I defy common sense, and I take umbrage.  And
 8    your reputation goes beyond these four walls.  You understand
 9    that?  And at some point I may ask Mr. Panchapakesan to take
10    over your representation as lead counsel or co-counsel.        16:41:55
11          And I ask for silence in the courtroom.
12          MR. CAMBRIA:  I didn't say anything.  I didn't say
13    anything.
14          THE COURT:  You will demean yourself as a professional
15    in my courtroom.  And I know you take umbrage with my rulings, 16:42:15
16    everyone does on both sides from time to time, but do not
17    disrespect the Court in that way.  It's not becoming,
18    Mr. Lincenberg, of a person of your caliber in litigation.
19          MR. LINCENBERG:  Your Honor, I do not mean any
20    disrespect to the Court, and I apologize for that.  I am making 16:42:40
21    an argument on common sense as counsel to my client, that
22    common sense would suggest that when -- when IRS agents are
23    working up a case dealing with money laundering and forfeiture
24    and they are working together, and Mr. Thai is sending e-mails
25    accurately stating that this is a document we prepared         16:43:08
```

63

```
 1   together, and Mr. Thai is present as part of Ferrer interviews.

 2   A lot of work went into this investigation.  Respectfully, my

 3   view is that as a matter of common sense, we know that they are

 4   working together; they are sharing information; they are

 5   relying on it; they are putting together reports.  Mr. Thai is      16:43:29

 6   sending over.

 7          I apologize to the Court.  This has been a vigorously

 8   fought case.  I know that the Court has not appreciated some of

 9   my arguments and so forth, and I apologize for that, but I do

10   think I should be able to just make an argument of what I          16:43:50

11   believe common sense would show here, and that's all I'm trying

12   to do.  I apologize for any disrespect that my comments have

13   shown to the Court.

14          THE COURT:  Do you wish to question the witness

15   further?                                                           16:44:11

16          MR. LINCENBERG:  Yes.  Before going further, if the

17   Court doesn't want me to be going through with this witness

18   further examples of inconsistencies between testimony in

19   Exhibit A, if the Court doesn't believe this is the appropriate

20   witness, then I won't pursue that further.                         16:44:30

21          THE COURT:  I don't find it to be a useful time

22   exercise.  Again, the reasons being, this witness under oath

23   indicates he did not draft the document.  He formatted it and

24   he did not rely on it in his testimony.  He's going to struggle

25   to look at the paragraphs, as he's done a few moments ago, not     16:45:02
```

UNITED STATES DISTRICT COURT

64

```
 1   understanding and not even knowing what those paragraphs are
 2   about.  It's not a valuable use of my time.  It's not going to
 3   aid in my decision.
 4         So if you have another witness that you wish to pursue
 5   this avenue of questioning, I would suggest we do that,          16:45:22
 6   Mr. Lincenberg, and I can make time for you to do that
 7   tomorrow.
 8         MR. LINCENBERG:  Okay.  I think, Your Honor, I have
 9   completed the examination of this witness.  Thank you.
10         THE COURT:  Who will be the witness that you would         16:45:35
11   call tomorrow?
12         MR. LINCENBERG:  Well, I need to discuss it with
13   counsel.  What we did is, I believe Mr. Cambria is going to
14   deal with Mr. Ferrer; Mr. Feder was going to deal with
15   Mr. Versoza, if we called him.                                   16:45:47
16         And so the Court's aware, we did not -- we put
17   Mr. Stone and Mr. Boyle on the witness list not because we
18   intended to call them, but because in light of the Court's
19   inquiry, and we were -- we weren't sure what the Court was
20   going to inquire about and we wanted to make sure that they      16:46:03
21   were in court so if the Court had questions for them.  We did
22   not intend to put them under oath.
23         THE COURT:  Well, I won't comment any further.  I
24   think my fuse is at an end, but it really defies
25   professionalism when you can't pick up the phone or e-mail       16:46:26
```

UNITED STATES DISTRICT COURT

65

```
 1    Mr. Stone and Mr. Boyle and say, "Hey, are you going to be

 2    there," rather than putting them on a public witness list.

 3            In any event, my chambers will be in contact with you.

 4    I have a hearing tomorrow morning, I believe, at 9:30, and we

 5    can resume after had hearing is complete.  So I would just ask      16:46:50

 6    counsel to be prepared, have your witnesses prepared to be here

 7    at least by -- we will pick up at 11:00 tomorrow.

 8            MR. STONE:  For the record, we don't have any further

 9    witnesses.

10            THE COURT:  All right.  Thank you.                          16:47:26

11            Sir, you may step down.

12            MR. BERRY:  Your Honor, could I ask if it would be

13    okay if I appeared telephonically tomorrow for any hearing or

14    questions from the jury?  If it's inconvenient to the Court, I

15    understand.  Obviously my colleagues are perfectly capable, but     16:47:42

16    I won't be here tomorrow.  I'd like to attend in whatever

17    format the Court would allow.

18            THE COURT:  We will try to find a Zoom link.  My sense

19    is we'll be here in the morning and will be otherwise down in

20    the SPC.                                                            16:48:01

21            MR. BERRY:  Even if it's just the phone, whatever is

22    most convenient for the Court.

23            THE COURT:  We will stand at recess.

24            MS. BERTRAND:  11:00 here tomorrow?

25            THE COURT:  Yes.                                            16:48:14
```

UNITED STATES DISTRICT COURT

66



1          (Proceedings concluded at 4:48 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

67

1

2

3                              **C E R T I F I C A T E**

4

5            I, HILDA E. LOPEZ, do hereby certify that I am duly

6    appointed and qualified to act as Official Court Reporter for

7    the United States District Court for the District of Arizona.

8            I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion of

10   the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13           DATED at Phoenix, Arizona, this 15th day of November,

14   2023.

15

16

17                              s/Hilda E. Lopez_____
18                              HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

## #

**#2-51** [1] - 4:22
**#27** [1] - 4:25

## '

**'7188** [1] - 55:24

## 1

**1** [11] - 4:21, 5:5, 6:15, 7:7, 7:11, 8:14, 9:9, 17:10, 42:7, 54:12, 55:1
**10** [2] - 6:8, 41:19
**10-11** [1] - 5:1
**100** [3] - 40:20, 42:16, 60:22
**1005** [1] - 24:8
**10:06** [1] - 14:9
**10:30** [2] - 4:12, 4:16
**10a** [3] - 41:11, 44:22, 44:24
**11** [1] - 6:8
**1155** [1] - 3:8
**1187** [1] - 19:9
**11:00** [2] - 65:7, 65:24
**11th** [2] - 2:11, 41:20
**12** [7] - 6:18, 20:7, 39:12, 49:4, 49:7, 54:18, 54:20
**120** [1] - 2:14
**1200** [1] - 2:6
**1258** [1] - 24:13
**1263** [1] - 24:13
**1274** [1] - 42:10
**13** [8] - 17:15, 17:16, 19:11, 20:8, 21:7, 21:8, 21:17
**1301** [1] - 2:11
**136** [1] - 56:8
**14** [2] - 1:8, 20:7
**14202** [1] - 2:15
**1479** [1] - 51:7
**15** [9] - 5:2, 13:2, 17:6, 17:14, 19:10, 19:11, 21:7, 21:8, 21:17
**15th** [1] - 67:13
**16** [5] - 5:11, 9:21, 11:25, 12:20, 13:20
**160** [1] - 2:18
**180** [1] - 42:9
**181** [1] - 42:9
**1875** [1] - 3:3

## 2

**2** [17] - 5:7, 5:22, 5:25, 7:8, 8:4, 8:12, 8:15,

9:9, 10:11, 10:24, 13:3, 21:16, 21:17, 23:7, 42:7, 55:1, 55:23
**2-51** [2] - 4:23, 12:24
**20005** [1] - 2:11
**2005** [1] - 24:14
**2007** [2] - 24:8, 24:9
**2008** [1] - 19:10
**2019** [9] - 39:10, 40:14, 43:21, 44:1, 46:24, 47:1, 49:3, 49:5, 49:9
**2020** [2] - 33:20, 41:20
**2021** [7] - 44:4, 44:6, 44:14, 47:21, 48:20, 52:11, 58:21
**2023** [9] - 1:8, 29:20, 35:21, 43:21, 44:1, 44:15, 47:2, 49:20, 67:14
**210** [1] - 2:21
**2300** [1] - 3:3
**23rd** [2] - 33:15, 35:21
**26** [1] - 33:7
**27** [1] - 5:3
**2734** [1] - 3:12
**2930** [1] - 2:18
**2:18-cr-00422-DJH** [1] - 1:6
**2:50** [1] - 14:10

## 3

**3** [1] - 17:14
**30** [8] - 1:22, 5:21, 6:16, 8:9, 9:21, 12:1, 12:20, 13:21
**312** [1] - 1:21
**32** [1] - 1:15
**322-7256** [1] - 1:23
**35** [1] - 3:17
**3550** [1] - 3:8
**38** [1] - 8:9
**3:09** [1] - 23:1
**3:16** [1] - 23:2
**3:25** [1] - 28:4
**3:41** [1] - 28:5

## 4

**4** [2] - 38:4, 50:4
**40** [1] - 2:6
**401** [1] - 1:22
**419** [1] - 24:13
**42** [1] - 2:14
**45** [1] - 3:18
**47** [1] - 3:18
**4:30** [1] - 20:18
**4:48** [1] - 66:1

## 5

**5** [2] - 54:23, 54:25
**51** [10] - 5:7, 5:22, 5:25, 7:8, 8:4, 8:12, 8:16, 10:12, 10:24, 13:4
**53** [2] - 40:20, 42:16
**53-62** [1] - 23:7
**547** [1] - 19:9

## 6

**6.25** [8] - 18:4, 18:13, 18:17, 19:2, 19:6, 27:2, 27:25, 30:1
**602** [1] - 1:23
**6266** [1] - 50:5
**6267** [2] - 37:5, 54:24
**6269** [2] - 50:13, 56:8
**6270** [1] - 49:5
**6720** [1] - 2:21

## 7

**754** [1] - 24:8

## 8

**8** [11] - 33:2, 33:9, 33:10, 33:11, 34:12, 34:19, 34:22, 34:23, 34:24, 34:25, 35:7
**85003-2151** [1] - 1:22
**85004** [1] - 2:6
**85012** [1] - 3:8
**85016** [1] - 2:19
**85252** [1] - 3:12
**85253** [1] - 2:22

## 9

**9** [2] - 60:7, 60:25
**90067** [1] - 3:4
**902(11** [1] - 51:12
**902(11)s** [1] - 51:25
**9:00** [1] - 20:18
**9:30** [1] - 65:4
**9:45** [2] - 1:8, 4:3

## A

**a.m** [3] - 1:8, 4:3, 14:9
**A.M** [1] - 1:15
**ability** [1] - 5:18
**able** [5] - 4:15, 17:12, 32:19, 48:12, 63:10
**above-entitled** [1] - 67:10
**absolutely** [2] - 19:14,

21:10
**absorbed** [1] - 53:15
**accept** [2] - 59:3, 59:4
**accepting** [1] - 20:1
**access** [1] - 38:22
**according** [1] - 51:11
**account** [13] - 32:5, 54:13, 54:14, 54:15, 55:2, 55:3, 55:13, 55:20, 55:24, 56:6, 56:17, 56:18, 57:1
**accounts** [9] - 50:19, 50:24, 50:25, 51:3, 51:6, 52:10, 52:17, 53:6, 56:21
**accurate** [4] - 26:23, 48:9, 54:4, 67:9
**accurately** [1] - 62:25
**acquire** [1] - 53:8
**acquiring** [1] - 53:5
**act** [7] - 15:12, 22:1, 24:19, 26:10, 26:12, 26:25, 67:6
**Act** [9] - 5:21, 6:16, 7:20, 8:10, 8:23, 9:3, 11:13, 11:25
**activity** [1] - 56:12
**acts** [1] - 8:4
**add** [2] - 7:12, 9:1
**added** [1] - 61:6
**additional** [2] - 28:13, 29:10
**address** [2] - 17:1, 45:17
**adjourned** [1] - 14:5
**adjust** [2] - 36:7, 36:10
**adopt** [2] - 37:11, 59:16
**adopted** [3] - 30:19, 32:11, 57:14
**adoption** [1] - 31:25
**adopts** [1] - 58:11
**ads** [1] - 9:23
**advised** [2] - 17:19, 19:24
**affect** [1] - 8:15
**affidavits** [3] - 33:18, 34:2, 46:17
**afield** [1] - 57:12
**afternoon** [3] - 27:19, 35:19, 35:20
**afternoon's** [1] - 27:6
**afternoons** [1] - 14:7
**agent** [2] - 30:20, 32:9
**agents** [1] - 62:22
**ago** [10] - 31:22, 32:1, 33:7, 38:9, 43:11, 46:11, 47:20, 49:25,

50:9, 63:25
**agree** [5] - 13:10, 17:11, 17:20, 59:15, 61:18
**agreed** [1] - 21:25
**agreeing** [1] - 29:7
**agreement** [1] - 22:2
**aid** [1] - 64:3
**Aided** [1] - 1:24
**al** [1] - 1:8
**allegations** [1] - 34:5
**Allen** [10] - 15:16, 17:1, 17:17, 17:18, 18:2, 19:7, 19:20, 19:23, 21:20, 21:23
**allow** [1] - 65:17
**allowed** [3] - 5:1, 52:3, 52:4
**almost** [2] - 34:6, 56:22
**America** [1] - 1:5
**analysis** [1] - 31:16
**analyst** [1] - 39:24
**Analyst** [1] - 53:1
**Andrew** [3] - 2:4, 3:6, 39:15
**andrew.stone@ usdoj.gov** [1] - 2:8
**Angeles** [1] - 3:4
**answer** [29] - 5:9, 5:10, 5:17, 6:1, 6:6, 6:11, 7:15, 8:13, 8:22, 9:14, 9:15, 10:13, 10:23, 11:8, 11:20, 12:3, 12:8, 12:12, 12:18, 13:8, 13:16, 13:18, 15:11, 26:2, 27:1, 27:19, 57:18
**answering** [2] - 11:11, 14:2
**anticipation** [2] - 48:13, 53:22
**apart** [1] - 59:25
**apologize** [4] - 62:20, 63:7, 63:9, 63:12
**apologizes** [1] - 16:9
**appear** [1] - 7:22
**appeared** [2] - 33:22, 56:6, 65:13
**appellate** [1] - 24:8
**application** [1] - 55:9
**appointed** [1] - 67:6
**appreciated** [1] - 63:8
**approach** [1] - 7:9
**appropriate** [10] - 8:22, 12:16, 19:20, 21:1, 22:13, 23:17, 58:18, 59:1, 59:13, 63:19

UNITED STATES DISTRICT COURT

**approved** [2] - 30:19, 57:14
**area** [1] - 58:8
**areas** [2] - 32:16, 58:5
**argue** [1] - 59:11
**arguing** [1] - 12:12
**argument** [10] - 9:7, 9:14, 9:19, 19:20, 35:2, 35:3, 60:6, 60:19, 62:21, 63:10
**arguments** [1] - 63:9
**ARIZONA** [1] - 1:3
**Arizona** [5] - 1:7, 1:22, 2:6, 67:7, 67:13
**arrive** [2] - 20:12, 20:22
**assessing** [1] - 25:24
**Asset** [1] - 46:14
**asset** [15] - 36:17, 40:22, 40:25, 43:7, 43:8, 43:12, 43:13, 43:16, 47:22, 48:3, 51:18, 53:11, 53:24, 53:25
**assets** [6] - 36:17, 37:20, 37:24, 52:11, 61:16, 61:21
**Assistant** [1] - 27:11
**assisted** [2] - 36:5, 36:6
**associated** [1] - 6:20
**assume** [1] - 14:1
**assuming** [2] - 5:3, 47:6
**assumption** [1] - 10:18
**attached** [9] - 33:2, 33:15, 33:17, 33:25, 35:24, 39:3, 40:23, 43:15, 43:22
**attaching** [1] - 39:9
**attend** [2] - 22:23, 65:16
**attention** [1] - 9:21
**Attorney** [1] - 27:11
**ATTORNEY'S** [1] - 2:3
**attorneys** [1] - 33:20
**August** [1] - 24:9
**AUSA** [1] - 27:8
**Austin** [1] - 2:10
**austin.berry2@ usdoj.gov** [1] - 2:12
**author** [1] - 57:18
**avenue** [1] - 64:5
**Avenue** [4] - 2:6, 2:11, 2:14, 3:8
**avoids** [1] - 11:14
**avowal** [1] - 27:15
**aware** [1] - 64:16
**AZ** [4] - 2:19, 2:22,

3:8, 3:12

**B**

**background** [2] - 30:24, 31:14
**Backpage** [8] - 55:8, 55:9, 55:17, 55:25, 56:7, 56:17, 56:23, 57:5
**Backpage.com** [2] - 56:13, 57:9
**bank** [4] - 42:8, 42:9, 55:3, 56:20
**Bank** [4] - 32:5, 54:13, 54:14, 55:20
**bankruptcy** [3] - 24:8, 25:7, 25:22
**banks** [1] - 53:8
**base** [1] - 18:11
**based** [2] - 9:24, 57:2
**basing** [1] - 58:3
**basis** [4] - 37:23, 40:10, 41:3, 42:25
**batch** [1] - 42:17
**Bates** [2] - 52:4, 53:16
**BBT** [1] - 42:6
**become** [2] - 17:12, 28:21
**becoming** [1] - 62:17
**BEFORE** [1] - 1:13
**began** [1] - 47:21
**begin** [3] - 12:18, 27:22, 43:12
**beginning** [1] - 45:18
**begins** [1] - 17:18
**belief** [1] - 28:22
**bench** [2] - 18:8, 62:7
**Berry** [11] - 2:10, 4:6, 11:5, 15:21, 18:20, 21:3, 23:24, 24:24, 25:6, 26:5, 29:19
**BERRY** [16] - 15:22, 16:2, 18:2, 18:8, 18:22, 18:25, 21:4, 23:21, 23:25, 25:2, 25:9, 25:13, 25:21, 26:6, 65:12, 65:21
**Bertrand** [3] - 3:11, 13:11, 22:3
**BERTRAND** [13] - 3:11, 11:7, 15:6, 15:14, 16:23, 16:25, 18:16, 18:18, 18:20, 22:4, 27:25, 28:2, 65:24
**best** [2] - 41:2, 54:4
**better** [1] - 26:19
**between** [6] - 44:14, 47:1, 48:3, 52:16,

59:9, 63:18
**beyond** [2] - 5:24, 62:8
**bf@federlawpa.com** [1] - 2:19
**BIRD** [1] - 3:2
**bit** [6] - 6:10, 16:5, 18:4, 20:14, 20:18, 26:14
**bitcoin** [1] - 53:4
**black** [1] - 19:14
**Black's** [13] - 14:21, 15:3, 15:9, 15:12, 15:14, 15:23, 21:25, 23:10, 23:23, 24:7, 24:15, 24:16, 26:18
**blurs** [1] - 61:15
**bodies** [1] - 53:17
**body** [2] - 53:15, 53:17
**bolsters** [1] - 59:19
**book** [1] - 18:9
**bottom** [4] - 23:10, 23:25, 42:20
**bound** [2] - 23:13, 23:19
**Box** [2] - 3:12, 55:9
**BOXER** [1] - 3:2
**Boyle** [5] - 2:5, 27:8, 45:23, 64:17, 65:1
**Brady** [5] - 31:5, 31:17, 33:12, 34:4, 34:7
**brief** [1] - 60:7
**bring** [5] - 27:24, 28:6, 35:9
**bringing** [1] - 59:13
**broken** [1] - 42:20
**brought** [1] - 17:10
**Bruce** [1] - 2:18
**Brunst** [2] - 3:1, 34:18
**Buffalo** [1] - 65:3
**building** [1] - 40:19
**built** [2] - 41:7, 51:16
**busy** [1] - 4:16
**buying** [1] - 19:25
**BY** [9] - 35:18, 36:25, 37:16, 45:3, 45:20, 46:8, 46:22, 47:19, 50:7

**C**

**CA** [1] - 3:4
**caliber** [1] - 62:18
**California** [2] - 24:12, 24:14
**CAMBRIA** [9] - 2:13, 14:24, 15:5, 23:9, 24:22, 25:11, 25:19, 26:2, 62:12

**Cambria** [3] - 2:14, 25:18, 64:13
**Camelback** [1] - 2:18
**cannot** [1] - 7:7
**capable** [1] - 65:15
**capture** [1] - 51:14
**card** [1] - 42:7
**career** [1] - 62:6
**Carl** [1] - 30:18
**carries** [1] - 6:21
**case** [20] - 9:11, 17:21, 19:9, 20:6, 20:7, 20:9, 25:8, 25:22, 26:9, 26:16, 26:22, 28:12, 28:14, 28:18, 35:22, 53:2, 58:13, 62:23, 63:8
**cases** [7] - 21:21, 24:5, 24:21, 24:24, 25:3, 25:4, 25:6
**CD** [1] - 45:1
**CDC** [1] - 33:19
**Center** [1] - 39:25
**Central** [2] - 2:6, 3:8
**Century** [1] - 3:3
**CEO** [1] - 54:15
**ceremonial** [2] - 27:3, 27:21
**Cereus** [6] - 56:5, 56:11, 56:20, 56:24, 57:5, 57:8
**certainly** [10] - 7:16, 8:10, 8:23, 12:12, 21:6, 31:11, 31:12, 31:19, 33:12, 34:17
**certifications** [1] - 51:12
**certify** [1] - 67:5
**CERTIFY** [1] - 67:8
**certifying** [1] - 51:25
**chambers** [1] - 65:3
**chance** [1] - 4:11
**change** [6] - 28:21, 28:22, 44:2, 44:9, 48:18, 61:7
**changed** [4] - 32:2, 44:3, 47:2
**changes** [7] - 10:25, 11:1, 36:8, 43:25, 44:14, 45:5, 58:2
**changing** [1] - 10:19
**charge** [20] - 4:21, 6:22, 8:11, 8:24, 10:6, 10:25, 15:16, 17:1, 17:10, 17:17, 17:18, 18:2, 19:7, 19:16, 19:17, 19:20, 19:23, 21:2, 21:20, 21:23
**charged** [15] - 4:22,

5:5, 5:12, 5:22, 6:15, 7:6, 7:11, 10:24, 10:25, 12:24, 12:25, 13:1, 13:3, 13:17
**charges** [13] - 4:22, 5:19, 8:12, 10:11, 22:6, 23:7, 25:23, 40:20, 41:25, 43:6, 53:14, 61:19
**charts** [8] - 39:16, 40:10, 40:11, 40:12, 41:4, 49:11, 51:7
**Christine** [2] - 29:12, 30:8
**Chung** [1] - 53:2
**Circuit** [6] - 14:18, 18:3, 18:13, 19:9, 21:21, 24:9
**circuit** [2] - 24:5, 24:21
**circumstance** [2] - 23:13, 23:19
**cite** [1] - 24:15
**cites** [1] - 19:8
**civil** [3] - 33:17, 33:19, 61:1
**claims** [1] - 48:4
**clarification** [2] - 12:2, 45:24
**clarify** [1] - 14:7
**clarity** [4] - 5:1, 9:2, 12:8, 14:20
**clear** [7] - 12:7, 12:8, 12:10, 19:14, 33:1, 60:23, 61:4
**clearly** [3] - 5:25, 10:23, 12:17
**clerk** [2] - 4:19, 15:15
**client** [3] - 9:23, 22:5, 62:21
**clients** [2] - 4:7, 7:23
**closely** [1] - 34:14
**closing** [1] - 20:8
**clumps** [1] - 42:21
**co** [1] - 57:23, 62:10
**co-counsel** [1] - 22:2
**co-create** [1] - 57:23
**coercive** [3] - 19:12, 19:23, 21:22
**coerciveness** [2] - 20:13, 20:23
**collaborated** [2] - 38:13, 40:3
**colleagues** [3] - 15:16, 17:2, 65:15
**collective** [1] - 22:2
**column** [1] - 33:13
**combining** [1] - 40:3
**commence** [2] - 4:3, 14:10

comment [3] - 22:5, 29:16, 64:23
commentary [3] - 19:6, 19:13, 20:14
comments [3] - 29:10, 38:20, 63:12
committed [1] - 7:21
common [6] - 62:3, 62:7, 62:21, 62:22, 63:3, 63:11
communication [2] - 31:20, 45:22
compare [1] - 16:14
compared [1] - 40:17
complaint [3] - 33:19, 34:2, 61:2
complaints [1] - 61:21
complete [1] - 65:5
completed [1] - 64:9
completely [3] - 18:11, 21:13, 52:13
Computer [1] - 1:24
Computer-Aided [1] - 1:24
conceal [1] - 24:16
concealing [1] - 22:12
concealment [17] - 14:17, 14:19, 14:22, 14:23, 15:12, 16:17, 16:18, 17:2, 22:5, 23:5, 23:6, 23:23, 24:1, 24:2, 24:17, 26:25, 30:9
concern [1] - 4:25
concerned [2] - 6:13, 21:22
concluded [3] - 57:2, 59:2, 66:1
conclusion [4] - 7:16, 20:13, 20:22, 62:2
conference [1] - 22:22
confine [1] - 31:2
confused [1] - 13:2
connected [1] - 35:16
connection [1] - 54:13
connections [1] - 52:16
conscience [1] - 28:17
conscientious [1] - 18:24
consider [4] - 5:19, 10:6, 28:18, 29:2
consideration [4] - 7:23, 7:24, 8:25, 12:10
considered [4] - 5:11, 8:21, 9:4, 16:10
considering [1] - 13:12

consistent [3] - 10:14, 52:6, 52:10
conspiracy [11] - 5:5, 6:9, 6:14, 6:21, 7:5, 7:6, 7:11, 7:20, 7:25, 8:2, 8:3
constitute [1] - 67:8
constitutes [1] - 31:5
contact [1] - 65:3
contained [2] - 22:6, 67:10
contemplated [1] - 30:17
content [1] - 46:15
contents [3] - 36:10, 38:18, 40:7
continue [2] - 29:10, 35:6
CONTINUED [1] - 46:21
contradictory [1] - 58:15
control [1] - 67:12
convenient [2] - 53:23, 65:22
convicted [6] - 5:7, 8:2, 8:3, 10:12, 13:6, 13:17
conviction [1] - 13:14
convictions [1] - 48:15
convoluted [1] - 6:10
copied [2] - 45:23, 51:25
copies [4] - 47:9, 47:12, 47:13, 47:14
copy [8] - 4:19, 15:8, 16:11, 18:16, 47:20, 48:21, 48:22, 53:21
correct [19] - 5:17, 12:7, 30:5, 39:10, 39:11, 43:1, 45:9, 46:24, 47:3, 47:4, 48:7, 48:10, 48:16, 48:21, 48:25, 49:18, 51:3, 54:4, 54:6
cosmetic [3] - 36:8, 38:19, 58:2
cosmetically [1] - 58:20
counsel [19] - 4:5, 4:8, 4:17, 4:18, 14:11, 14:12, 14:14, 22:21, 23:4, 30:12, 31:2, 34:11, 41:20, 62:10, 62:21, 64:13, 65:6
Count [8] - 5:5, 6:15, 7:7, 7:11, 8:14, 9:9, 60:22
count [8] - 5:13, 8:13,

9:4, 12:10, 33:21, 42:15, 42:19
countries [1] - 55:13
counts [17] - 4:23, 8:20, 17:21, 17:24, 19:4, 20:10, 28:12, 28:25, 30:4, 42:17, 42:20, 48:3, 48:15, 48:16, 53:13, 60:9, 61:3
Counts [10] - 5:7, 5:22, 5:25, 7:8, 8:15, 10:11, 10:24, 12:24, 13:3, 42:16
couple [5] - 19:19, 24:5, 27:19, 50:12, 57:16
course [3] - 32:17, 34:3, 61:15
COURT [107] - 1:1, 4:4, 4:7, 4:13, 4:17, 6:2, 7:2, 7:14, 7:18, 8:6, 8:18, 9:13, 9:17, 9:25, 10:4, 10:16, 10:22, 11:3, 11:6, 11:22, 12:5, 12:15, 13:5, 13:8, 13:15, 13:24, 14:3, 14:6, 14:11, 15:1, 15:4, 15:9, 15:17, 16:1, 16:12, 16:16, 16:24, 17:5, 17:16, 18:6, 18:15, 18:17, 18:19, 18:23, 19:1, 20:12, 21:23, 22:7, 22:16, 22:20, 23:3, 23:22, 24:25, 25:5, 25:7, 25:14, 25:20, 26:1, 26:4, 26:24, 28:1, 28:3, 28:6, 28:9, 29:15, 29:18, 30:1, 30:4, 30:6, 32:21, 33:4, 33:8, 34:10, 34:14, 34:20, 34:23, 35:2, 35:4, 35:9, 35:15, 37:10, 44:22, 45:2, 45:20, 46:8, 46:19, 47:6, 47:13, 47:16, 57:11, 57:24, 58:2, 58:14, 58:17, 59:12, 60:23, 61:13, 62:5, 62:14, 63:14, 63:21, 64:10, 64:23, 65:10, 65:18, 65:23, 65:25
court [4] - 4:12, 27:12, 29:17, 64:21
Court [56] - 1:20, 1:24, 3:18, 9:20, 10:10, 11:11, 18:12, 18:16,

18:21, 19:6, 19:8, 19:13, 19:24, 20:15, 21:11, 22:10, 22:18, 24:4, 25:23, 25:24, 27:13, 27:15, 29:20, 29:21, 29:22, 30:11, 31:3, 47:9, 47:10, 50:12, 57:13, 58:5, 59:2, 59:8, 60:15, 60:17, 60:21, 61:6, 61:10, 62:2, 62:17, 62:20, 63:7, 63:8, 63:13, 63:17, 63:19, 64:19, 64:21, 65:14, 65:17, 65:22, 67:6, 67:7
Court's [5] - 15:15, 16:13, 32:22, 64:16, 64:18
Courthouse [1] - 1:21
COURTROOM [2] - 4:9, 36:24
courtroom [6] - 14:8, 27:4, 27:21, 28:10, 62:11, 62:15
create [2] - 9:10, 57:18, 57:23
created [2] - 41:16, 41:17
creating [1] - 31:23
crime [2] - 5:12, 23:16
CROSS [2] - 3:16, 47:18
cross [1] - 32:17
CROSS-EXAMINATION [1] - 47:18
cross-examine [1] - 32:17
curious [1] - 46:9
current [3] - 18:3, 18:13, 29:21
cut [2] - 23:13, 23:14

**D**

Daniel [1] - 2:5
date [5] - 44:3, 44:4, 47:3, 67:11
DATED [1] - 67:13
dated [1] - 4:20
DAVID [1] - 3:7
David [1] - 3:7
david@ deisenbergplc.com [1] - 3:9
DAY [1] - 1:15
days [3] - 17:8, 20:7, 20:8
DC [1] - 2:11

deadlock [1] - 17:4
Deadlocked [2] - 18:14, 19:2
deadlocked [1] - 20:10
deal [2] - 64:14
dealing [2] - 9:15, 62:23
deceive [2] - 23:12, 23:18
decide [1] - 28:17
decided [1] - 28:13
decision [6] - 11:21, 12:18, 24:9, 24:11, 24:12, 64:3
decisions [1] - 8:15
deeply [1] - 48:11
defendant [16] - 4:21, 4:22, 5:7, 6:14, 6:19, 7:10, 7:19, 7:22, 7:25, 8:11, 8:14, 8:24, 10:7, 10:23, 12:24
Defendant [5] - 2:13, 2:17, 3:1, 3:6, 3:10
Defendants [1] - 1:9
defendants [10] - 4:8, 4:17, 5:19, 5:22, 5:25, 7:10, 12:11, 22:3, 33:21, 56:25
defendants' [2] - 32:4, 32:15
defense [15] - 6:3, 13:24, 14:12, 14:13, 16:9, 23:4, 23:8, 26:13, 27:9, 30:12, 32:17, 33:20, 41:20, 49:4, 54:24
defense's [1] - 34:5
defies [1] - 64:24
defines [1] - 16:16
defining [1] - 24:16
definition [23] - 14:19, 14:21, 14:22, 15:3, 15:10, 15:18, 16:19, 22:14, 22:16, 23:6, 23:16, 23:22, 24:7, 24:10, 24:15, 24:20, 26:8, 26:13, 26:25, 30:8, 30:15
definitions [5] - 16:13, 22:11, 24:1, 26:15, 26:19
defraud [2] - 23:12, 23:18
defy [1] - 62:7
Delaware [1] - 2:14
delayed [1] - 27:6
deliberate [1] - 28:15
deliberated [1] - 20:7

UNITED STATES DISTRICT COURT

4

deliberating [2] - 20:17
deliberations [5] - 17:8, 21:1, 28:20, 29:1, 29:10
delineate [1] - 17:18
delivering [1] - 30:8
demean [1] - 62:14
deny [1] - 27:20
DEPARTMENT [1] - 2:10
deposited [1] - 55:13
DEPUTY [2] - 4:9, 36:24
derived [1] - 30:25
detailed [1] - 17:6
determination [1] - 8:14
development [1] - 32:10
DIANE [1] - 1:13
Dictionary [7] - 14:21, 15:3, 15:12, 15:14, 21:25, 23:10, 24:7
dictionary [3] - 14:22, 15:18, 22:11
difference [1] - 47:1
differences [2] - 59:9, 60:16
different [9] - 18:4, 38:23, 43:22, 49:21, 51:20, 58:5, 61:3, 62:3, 62:4
difficult [1] - 44:25
digitize [1] - 53:9
dilemma [1] - 16:17
DIRECT [3] - 3:16, 35:17, 46:21
direct [2] - 9:20, 19:17, 21:20
directed [2] - 19:17, 21:20
directing [1] - 25:5
direction [2] - 21:8, 67:12
directive [1] - 58:3
disagree [2] - 6:5, 32:18
disclosed [4] - 33:16, 33:24, 34:7, 34:8
disclosing [5] - 15:13, 22:2, 24:20, 26:11, 27:1
disclosure [7] - 15:13, 15:18, 15:19, 22:1, 24:19, 26:11, 27:1
discovery [3] - 31:1, 34:2, 34:15
discuss [6] - 16:21, 16:22, 22:22, 28:14, 29:8, 64:12

discussing [1] - 47:8
disguising [2] - 22:13, 22:17
dismissed [1] - 25:23
disrespect [3] - 62:17, 62:20, 63:12
distinct [1] - 59:22
District [5] - 24:12, 24:14, 25:22, 67:7
DISTRICT [2] - 1:1, 1:3
document [53] - 30:22, 31:22, 31:24, 31:25, 32:2, 33:14, 33:24, 34:4, 35:24, 36:1, 36:4, 36:12, 36:14, 36:18, 37:1, 37:5, 37:17, 37:22, 38:8, 38:14, 38:24, 39:10, 39:19, 40:4, 40:23, 41:3, 41:13, 41:17, 41:19, 41:22, 43:4, 43:7, 43:16, 43:19, 43:22, 44:15, 44:20, 44:21, 45:4, 45:6, 45:25, 46:23, 49:24, 50:8, 52:11, 54:3, 57:17, 58:19, 60:25, 61:24, 62:25, 63:23
Document [1] - 46:15
documents [6] - 33:16, 40:6, 41:14, 50:6, 51:10, 51:19
done [2] - 36:21, 63:25
doubt [1] - 5:24
down [5] - 8:7, 13:14, 39:13, 65:11, 65:19
Draft [1] - 46:15
draft [20] - 31:21, 36:21, 37:25, 38:7, 39:21, 40:23, 41:3, 43:3, 43:16, 45:4, 45:25, 46:1, 46:3, 46:5, 49:24, 60:8, 61:7, 61:8, 63:23
drafts [2] - 46:2, 46:4
drew [3] - 42:13, 52:2, 53:19
DROOKS [1] - 3:2
due [2] - 4:25, 62:1
duly [1] - 67:5
duration [2] - 20:15, 20:16
during [3] - 28:19, 50:17, 52:21
duties [1] - 17:13
duty [2] - 26:20, 28:14

E

e-mail [18] - 33:15, 33:25, 35:21, 35:24, 38:3, 38:4, 39:9, 39:13, 40:9, 43:15, 43:20, 43:21, 45:22, 49:3, 49:5, 49:9, 49:22, 64:25
e-mailed [1] - 41:20
e-mails [7] - 49:2, 57:23, 58:5, 58:10, 59:3, 62:4, 62:24
early [1] - 20:19
easier [5] - 37:11, 38:21, 38:22, 53:19
easily [1] - 21:7
East [2] - 2:18
effect [4] - 19:12, 19:23, 21:22, 28:23
effort [1] - 28:15
efforts [1] - 40:4
eight [1] - 39:2
EISENBERG [9] - 3:7, 6:4, 7:4, 7:17, 7:19, 12:22, 13:7, 13:10, 13:25
Eisenberg [4] - 3:7, 9:8, 10:14, 22:11
Eisenberg's [1] - 9:20
either [3] - 13:8, 13:16, 58:11
element [4] - 5:4, 7:4, 7:7, 7:19
elements [3] - 5:23, 7:15, 8:24
Elizabeth [1] - 1:21
emotions [1] - 17:9
emphasizing [1] - 13:12
encourage [1] - 18:12
end [2] - 17:24, 64:24
ensure [2] - 45:9, 52:6, 52:9
entire [1] - 34:4
entitled [1] - 67:10
entity [4] - 55:17, 56:6, 56:11, 57:4
equally [2] - 18:23, 29:4
Eric [1] - 2:21
eric.kesslerlaw@gmail.com [1] - 2:22
errors [3] - 45:10, 54:8, 54:10
escort [1] - 29:12
especially [2] - 15:24, 26:6
Esq [12] - 2:3, 2:4, 2:4, 2:5, 2:5, 2:10, 2:14,

2:18, 2:21, 3:3, 3:7, 3:11
ESQ [1] - 3:11
essential [1] - 9:3
essentially [1] - 10:19
establish [1] - 6:19
et [1] - 1:8
evaluation [1] - 8:13
event [6] - 13:15, 15:9, 19:2, 27:18, 44:12, 65:3
evidence [2] - 9:12, 28:18
evidenced [1] - 60:25
EXAMINATION [4] - 35:17, 45:19, 46:21, 47:18
examination [2] - 31:6, 64:9
examine [6] - 28:20, 31:13, 32:15, 32:17, 32:19, 32:23
examined [1] - 34:14
example [8] - 9:23, 19:11, 22:12, 34:18, 42:6, 54:12, 60:21, 60:22
examples [3] - 61:11, 61:13, 63:18
Excel [1] - 41:9
except [1] - 4:5
exclusively [1] - 61:1
exculpatory [6] - 31:7, 31:17, 58:7, 58:23, 59:11, 60:2
exercise [1] - 63:22
Exhibit [53] - 30:13, 30:22, 33:2, 33:9, 33:10, 33:11, 34:12, 34:19, 34:22, 34:24, 34:25, 35:7, 37:5, 37:10, 37:11, 38:1, 38:4, 39:12, 41:11, 41:19, 43:3, 44:22, 45:4, 46:14, 47:21, 48:20, 49:4, 49:7, 49:18, 49:22, 50:4, 51:6, 51:7, 52:7, 52:10, 52:24, 52:25, 53:5, 53:22, 54:3, 54:9, 54:11, 54:17, 54:20, 54:21, 54:23, 54:25, 56:16, 59:16, 60:13, 61:11, 63:19
exhibit [6] - 31:20, 33:1, 37:12, 41:11, 58:24, 59:14
exhibits [3] - 33:5, 43:1, 47:10, 47:15
expenses [3] - 56:7,

56:12, 56:18
explore [2] - 19:1, 60:1
expounding [1] - 24:1

F

F.3d [1] - 19:9
F.Supp.2d [1] - 24:13
face [3] - 20:24, 21:11
fact [4] - 23:12, 23:19, 56:15, 59:17
facts [1] - 25:16
fairly [1] - 49:18
falls [1] - 30:15
familiar [2] - 36:1, 36:3
far [4] - 48:10, 48:19, 57:12, 59:16
favor [1] - 21:8
favorable [5] - 24:3, 31:7, 31:8, 31:18, 58:7
FCRR [2] - 1:21, 67:18
February [1] - 41:20
FEDER [11] - 2:17, 4:10, 4:14, 10:10, 10:18, 10:25, 11:4, 14:1, 24:24, 25:3, 25:6
Feder [6] - 2:18, 10:17, 11:3, 14:3, 25:2, 64:14
feelings [1] - 17:9
fellow [2] - 28:19, 28:24
Ferrer [4] - 30:18, 55:10, 63:1, 64:14
Ferrer's [1] - 26:22
few [6] - 21:5, 22:14, 28:13, 50:15, 53:2, 63:25
figure [1] - 25:10
file [3] - 42:3, 42:11, 42:13
filed [5] - 27:16, 33:7, 33:20, 34:3, 48:22
files [1] - 47:16
filling [1] - 11:9
final [7] - 26:4, 30:21, 36:18, 36:19, 37:2, 37:17, 48:21
finally [1] - 17:11
financial [6] - 51:9, 51:23, 52:16, 52:17, 53:23, 57:3
fine [2] - 5:17, 61:25
finished [1] - 20:8
first [17] - 6:4, 7:14, 11:1, 12:6, 14:16,

UNITED STATES DISTRICT COURT

ER 15096

16:3, 17:23, 32:15, 32:19, 32:23, 44:6, 49:3, 50:13, 54:14, 61:9
**five** [1] - 22:8
**Floor** [1] - 2:11
**flow** [4] - 39:16, 41:2, 45:11, 49:10
**flowcharts** [2] - 41:15, 49:15
**flowed** [1] - 42:19
**focus** [5] - 50:12, 55:1, 55:20, 55:22, 57:20
**focused** [6] - 30:9, 40:19, 40:22, 43:6, 51:18, 56:3
**focusing** [2] - 10:20, 55:1
**follow** [2] - 10:21, 46:6
**follow-up** [1] - 46:6
**foot** [1] - 12:11
**FOR** [1] - 1:3
**foreclosing** [1] - 59:12
**foregoing** [1] - 67:8
**foreign** [1] - 55:16
**foreperson** [1] - 21:16
**forfeiture** [19] - 36:11, 37:6, 40:22, 40:25, 43:7, 43:9, 43:12, 43:13, 43:16, 47:22, 48:3, 48:15, 51:18, 53:12, 53:24, 53:25, 58:12, 61:2, 62:23
**forfeitures** [1] - 48:16
**format** [3] - 38:13, 41:1, 65:17
**formatted** [2] - 57:25, 63:23
**formatting** [2] - 36:7, 36:9
**forms** [1] - 24:2
**formulate** [1] - 36:7
**forth** [5] - 6:21, 16:15, 20:5, 34:17, 63:9
**forward** [3] - 22:23, 35:11, 59:13
**fought** [1] - 63:8
**foundation** [1] - 32:23
**four** [2] - 55:22, 62:8
**fourth** [2] - 7:19, 20:6
**frame** [1] - 46:1
**frankly** [3] - 27:8, 27:12, 27:15
**fraud** [2] - 25:8, 25:22
**fraudulent** [1] - 23:22
**Friday** [1] - 20:19
**front** [4] - 10:1, 44:2, 47:13, 49:6
**fulfilled** [1] - 7:8

**full** [1] - 67:9
**fully** [1] - 54:3
**fulsome** [1] - 26:13
**function** [1] - 56:25
**functionally** [1] - 57:3
**funds** [2] - 50:20, 57:9
**FURTHER** [1] - 67:8
**fuse** [1] - 64:24
**future** [1] - 40:12

## G

**Gage** [2] - 54:16, 55:5
**garner** [1] - 16:4
**general** [1] - 50:17
**Giglio** [3] - 31:5, 33:12, 34:7
**given** [4] - 19:18, 29:2, 30:25, 47:24
**glincenberg@ birdmarella.com** [1] - 3:5
**goal** [1] - 48:12
**Gopi** [1] - 3:3
**Government** [2] - 2:2, 2:9
**government** [16] - 5:14, 6:19, 9:11, 13:22, 18:1, 25:23, 27:7, 30:20, 31:15, 44:10, 47:11, 49:4, 49:20, 60:24, 61:8
**government's** [10] - 4:18, 14:14, 21:24, 26:22, 41:11, 49:7, 54:23, 60:5, 60:7, 60:18
**gpanchapakesan@ birdmarella.com** [1] - 3:4
**grammatical** [2] - 40:7, 45:10
**GREEN** [1] - 2:13
**guess** [6] - 7:2, 17:22, 21:16, 46:9, 54:2, 61:25
**guidance** [1] - 16:18
**guilty** [9] - 4:21, 4:22, 5:25, 7:10, 8:11, 8:12, 9:9, 12:25
**guys** [1] - 35:1

## H

**half** [1] - 26:10
**hallway** [1] - 22:21
**hand** [1] - 31:23
**handed** [2] - 15:16, 16:11
**hands** [1] - 32:22

**handy** [1] - 50:16
**happy** [1] - 17:5
**hard** [3] - 47:9, 47:12, 47:13
**harmful** [1] - 10:4
**heading** [1] - 43:8
**hear** [2] - 18:1, 32:10
**heard** [5] - 6:2, 11:7, 21:24, 47:8, 59:15
**HEARING** [1] - 1:16
**hearing** [12] - 27:6, 27:18, 30:7, 30:10, 35:11, 37:5, 45:18, 48:21, 60:11, 65:4, 65:5, 65:13
**hello** [1] - 39:15
**help** [2] - 12:9, 20:25
**helped** [4] - 36:7, 36:10, 38:13, 38:15
**helpful** [1] - 57:21
**helping** [1] - 59:6
**hereby** [1] - 67:5
**herein** [1] - 67:10
**herself** [1] - 6:20
**hesitate** [1] - 28:20
**hi** [1] - 47:17
**hiding** [2] - 23:11, 23:18
**HILDA** [2] - 67:5, 67:18
**Hilda** [1] - 1:21
**himself** [1] - 6:20
**historic** [1] - 18:6
**holdout** [1] - 21:12
**holdouts** [7] - 19:7, 19:12, 20:13, 21:7, 21:10, 21:15, 21:18
**holiday** [1] - 20:19
**honest** [2] - 18:24, 28:22
**honestly** [1] - 25:9
**Honor** [58] - 5:16, 6:1, 6:4, 6:5, 6:25, 7:12, 7:17, 8:5, 9:6, 11:7, 12:2, 12:22, 13:7, 13:23, 13:25, 14:25, 15:2, 15:22, 15:23, 16:9, 16:22, 16:23, 18:2, 18:5, 19:5, 22:4, 22:8, 22:25, 23:9, 23:21, 24:6, 24:10, 24:18, 25:9, 25:13, 25:21, 26:17, 29:16, 32:13, 32:20, 32:25, 33:2, 33:13, 34:13, 37:4, 44:24, 45:16, 45:17, 46:7, 46:18, 47:5, 47:7, 60:12, 62:19, 64:8, 65:12

**HONORABLE** [1] - 1:13
**hoping** [1] - 45:17
**hour** [1] - 27:4
**hours** [1] - 33:7
**HUMETEWA** [1] - 1:13
**hung** [2] - 17:12, 19:22
**hurry** [1] - 29:8

## I

**idea** [2] - 7:24, 24:1
**identical** [1] - 49:18
**identification** [2] - 38:4, 39:12
**identified** [11] - 41:8, 41:11, 41:25, 42:1, 42:12, 42:18, 42:19, 50:19, 52:5, 52:17, 56:21
**identifies** [3] - 41:14, 41:25, 42:3
**identify** [5] - 36:17, 46:5, 52:4, 53:6, 54:10
**identity** [2] - 19:8, 21:12
**ignore** [1] - 29:4
**immediate** [1] - 56:22
**impartially** [1] - 28:19
**impeachment** [4] - 31:9, 31:10, 58:7, 59:10
**important** [6] - 22:10, 26:21, 29:5, 33:1, 33:11, 59:10
**improperly** [1] - 10:20
**inapplicable** [1] - 21:13
**inappropriate** [5] - 19:7, 20:5, 26:7, 26:8, 26:15
**inclination** [4] - 11:6, 12:7, 17:5, 17:16
**inclined** [4] - 5:9, 11:24, 15:11, 26:24
**include** [5] - 17:21, 22:16, 24:23, 25:12, 26:3
**included** [6] - 26:23, 29:22, 30:23, 33:14, 34:5, 34:6
**includes** [1] - 25:15
**including** [2] - 29:4, 55:10
**incoming** [1] - 56:21
**incomprehensible** [2] - 11:2, 11:3
**inconsistencies** [1] -

63:18
**inconsistent** [3] - 9:10, 9:22, 60:2
**inconvenient** [1] - 65:14
**incorporated** [1] - 46:16
**incorrect** [3] - 51:8, 60:19, 61:10
**indeed** [2] - 10:24, 27:7
**indentations** [1] - 36:11
**independent** [2] - 52:13, 52:14
**independently** [1] - 52:19
**indicate** [2] - 5:9, 60:17
**indicated** [3] - 4:11, 15:2, 31:15
**indicates** [1] - 63:23
**indicating** [1] - 19:3
**indication** [3] - 21:12, 31:9, 32:5
**indicia** [1] - 20:23
**indictment** [5] - 5:6, 8:19, 41:25, 61:16, 61:20
**individual** [3] - 5:24, 28:17, 45:22
**individuals** [3] - 30:17, 50:19, 59:21
**inference** [1] - 31:23
**inferential** [1] - 21:6
**information** [13] - 30:12, 30:14, 31:6, 31:8, 33:24, 34:8, 37:20, 42:23, 58:15, 58:24, 61:18, 61:23, 63:4
**injurious** [1] - 25:16
**inquire** [1] - 64:20
**inquiring** [1] - 35:6
**inquiry** [4] - 31:1, 32:21, 57:19, 64:19
**insert** [2] - 17:20, 17:23
**Inspector** [17] - 36:4, 36:22, 37:21, 39:6, 39:18, 40:17, 40:21, 43:10, 45:8, 51:17, 51:22, 51:24, 52:21, 53:1, 53:9, 53:11, 54:8
**inspector** [1] - 39:19
**instances** [1] - 34:1
**instead** [2] - 11:11, 41:6
**institutions** [1] - 51:23

6

**instruct** [1] - 27:25
**instruction** [21] - 5:3, 5:21, 6:24, 8:9, 8:10, 9:3, 11:13, 11:23, 11:25, 16:8, 18:3, 18:13, 19:17, 22:10, 27:2, 29:3, 29:17, 29:20, 29:21, 29:25
**instructions** [21] - 8:19, 8:20, 8:22, 10:2, 10:5, 10:21, 11:12, 11:15, 11:19, 11:25, 12:4, 12:9, 12:14, 12:17, 12:19, 13:20, 16:15, 16:16, 20:15, 22:12, 29:2
**instructs** [1] - 20:14
**insurance** [1] - 26:8
**Intelligence** [1] - 39:25
**intend** [3] - 5:8, 31:18, 64:22
**intended** [1] - 10:20, 30:21, 64:18
**intending** [1] - 60:18
**intent** [4] - 6:18, 23:12, 23:16, 23:18
**intentional** [1] - 25:16
**interested** [6] - 31:19, 32:1, 32:3, 32:6, 35:5, 50:20
**international** [1] - 55:21
**interpret** [3] - 19:15, 19:16, 21:20
**interpretation** [2] - 10:21, 10:22
**interpreted** [1] - 13:5
**interrogating** [1] - 25:2
**interviews** [1] - 63:1
**investigating** [1] - 50:21
**investigation** [6] - 40:17, 43:8, 59:24, 61:19, 63:2
**involve** [1] - 9:23
**involved** [1] - 45:22
**involvement** [1] - 32:10
**involving** [2] - 34:18, 55:3
**irrelevant** [3] - 26:15, 34:19, 34:25
**IRS** [1] - 62:22
**issue** [4] - 17:1, 17:4, 24:21, 58:17
**issues** [3] - 25:25, 40:7, 45:11
**item** [4] - 42:4, 42:5,

42:10, 54:18
**items** [1] - 40:9
**itself** [1] - 24:2

## J

**Jane** [5] - 39:15, 39:23, 39:24, 49:10, 53:1
**Jencks** [5] - 30:13, 30:16, 57:21, 59:7, 60:6
**job** [1] - 51:25
**John** [1] - 3:1
**Joint** [1] - 39:24
**jointly** [1] - 21:19
**JOY** [1] - 3:11
**Joy** [1] - 3:11
**joy@joybertrandlaw. com** [1] - 3:13
**Joye** [1] - 3:10
**Jr** [1] - 2:14
**JRIC** [1] - 39:24
**Judge** [3] - 10:10, 18:25, 19:24
**JUDGE** [1] - 1:13
**judgement** [1] - 28:17
**juncture** [1] - 21:1
**Juror** [4] - 5:2, 17:6, 17:14, 23:7
**juror** [4] - 12:23, 18:24, 20:3
**JUROR** [1] - 1:16
**Jurors** [2] - 19:10, 19:11
**jurors** [10] - 17:13, 19:15, 19:21, 19:24, 20:4, 20:6, 21:12, 28:14, 28:19, 28:24
**jury** [35] - 4:19, 5:19, 5:21, 5:23, 6:7, 6:24, 8:19, 9:8, 9:15, 10:1, 11:12, 11:24, 12:19, 13:20, 14:15, 16:7, 16:15, 16:16, 17:4, 17:11, 17:12, 17:19, 19:22, 22:22, 23:5, 26:7, 26:9, 27:24, 28:7, 28:10, 29:9, 29:12, 29:22, 30:9, 65:14
**Jury** [4] - 18:14, 19:3, 28:8, 29:14
**jury's** [2] - 8:14, 9:21
**JUSTICE** [1] - 2:10

## K

**keep** [1] - 53:20
**KESSLER** [1] - 2:20

**Kessler** [6] - 2:21, 4:5, 4:9, 4:10, 4:14, 8:17
**Kevin** [1] - 2:3
**kevin.rapp@usdoj. gov** [1] - 2:7
**key** [3] - 50:19, 52:17
**kind** [3] - 40:7, 43:6, 45:10
**knowing** [2] - 18:9, 64:1
**knowledge** [1] - 46:16
**known** [2] - 19:8, 45:14
**Kozinets** [1] - 2:4

## L

**L.L.C** [1] - 3:11
**L.L.P** [1] - 2:13
**Lacey** [2] - 1:8, 2:13
**language** [13] - 17:2, 18:4, 18:24, 19:21, 23:14, 24:23, 25:12, 25:15, 26:3, 33:16, 40:1, 45:8
**last** [10] - 4:15, 20:17, 30:12, 31:15, 39:4, 39:5, 48:21, 48:22, 53:21, 57:16
**latest** [10] - 31:21, 38:7, 39:3, 44:3, 44:12, 45:25, 46:3, 46:5, 49:24
**laundering** [17] - 25:3, 25:22, 25:23, 33:21, 40:20, 42:15, 43:6, 48:3, 48:15, 53:14, 53:15, 54:1, 60:9, 61:2, 61:15, 61:20, 62:23
**laundry** [1] - 24:24
**Law** [13] - 14:21, 15:3, 15:9, 15:12, 15:14, 15:23, 21:25, 23:10, 23:23, 24:7, 24:15, 24:16, 26:18
**law** [3] - 4:19, 11:16, 19:13
**LAW** [2] - 2:17, 2:20
**lay** [1] - 32:22
**lead** [1] - 62:10
**leading** [1] - 34:11
**leaps** [1] - 21:6
**least** [3] - 27:22, 56:16, 65:7
**leave** [1] - 44:10
**leaves** [1] - 26:17
**led** [1] - 61:19
**left** [2] - 20:18, 33:13
**legal** [1] - 26:19

**legally** [2] - 23:13, 23:19
**lengthy** [1] - 34:16
**liability** [3] - 5:18, 8:8, 9:24
**light** [1] - 64:18
**Liliana** [4] - 35:16, 36:23, 37:13, 37:15
**LINCENBERG** [49] - 3:2, 7:12, 9:6, 9:16, 9:19, 10:3, 14:25, 15:2, 15:8, 16:9, 16:13, 16:21, 17:15, 19:5, 21:14, 22:8, 22:18, 22:25, 26:17, 29:16, 29:19, 30:3, 30:5, 32:18, 34:13, 34:16, 34:21, 34:24, 35:3, 35:8, 37:4, 47:7, 47:14, 47:17, 47:19, 50:5, 50:7, 57:22, 58:1, 58:4, 58:15, 59:2, 60:5, 61:6, 62:1, 62:19, 63:16, 64:8, 64:12
**Lincenberg** [10] - 9:5, 21:5, 22:20, 34:10, 47:6, 57:12, 59:15, 62:5, 62:18, 64:6
**line** [2] - 6:17, 31:20
**lines** [5] - 4:25, 6:7, 6:12, 31:4, 61:15
**link** [2] - 50:24, 65:18
**linkages** [1] - 59:25
**LIPSITZ** [1] - 2:13
**list** [6] - 27:10, 27:13, 41:11, 64:17, 65:2
**listed** [6] - 26:3, 27:9, 30:13, 55:8, 55:9, 61:13
**litigation** [1] - 62:18
**lived** [1] - 20:6
**LLC** [1] - 32:6
**located** [1] - 42:5
**location** [1] - 42:13
**Lockwood** [1] - 24:7
**look** [15] - 7:14, 16:19, 16:20, 17:2, 20:15, 22:9, 22:15, 31:11, 49:7, 50:11, 50:14, 54:11, 58:6, 62:1, 63:25
**looked** [2] - 16:11, 34:17
**looking** [12] - 22:10, 26:19, 38:3, 41:21, 49:2, 51:20, 56:8, 56:20, 57:2, 60:6, 60:25
**looks** [1] - 19:13

**Lopez** [4] - 1:21, 67:17
**LOPEZ** [2] - 67:5, 67:18
**Los** [1] - 3:4
**Lyndon** [12] - 31:22, 33:18, 38:8, 38:12, 38:15, 39:15, 39:17, 39:18, 46:11, 49:10, 49:25, 50:9

## M

**M.G** [1] - 55:5
**ma'am** [2] - 18:18, 46:12
**Machine** [1] - 18:6
**mail** [18] - 33:15, 33:25, 35:21, 35:24, 38:3, 38:4, 39:9, 39:13, 40:9, 43:15, 43:20, 43:21, 45:22, 49:3, 49:5, 49:9, 49:22, 64:25
**mailed** [1] - 41:20
**mails** [7] - 49:2, 57:23, 58:5, 58:10, 59:3, 62:4, 62:24
**main** [1] - 41:24
**manner** [1] - 6:20
**MARELLA** [1] - 3:2
**Margaret** [1] - 2:5
**margaret.perlmeter @usdoj.gov** [1] - 2:8
**margins** [1] - 36:11
**marked** [12] - 37:4, 37:8, 37:10, 38:3, 39:12, 49:4, 49:5, 49:21, 50:3, 50:5, 50:13, 56:8
**master** [1] - 61:24
**Master** [6] - 41:9, 44:21, 46:15, 51:16, 52:4, 52:23
**material** [13] - 23:12, 23:19, 30:13, 30:25, 31:5, 31:9, 41:1, 41:7, 57:15, 59:7, 59:10, 60:2, 60:6
**materials** [1] - 58:7
**matter** [2] - 50:17, 63:3
**matters** [4] - 22:23, 27:14, 52:22, 53:12
**mean** [14] - 8:12, 13:6, 34:21, 36:6, 36:9, 36:20, 38:11, 38:12, 40:2, 40:11, 46:10, 48:5, 56:24, 62:19
**meaning** [1] - 37:25
**means** [3] - 10:19,

16:18, 38:16
**meant** [7] - 5:6, 10:12, 12:25, 13:2, 29:6, 29:23, 37:19
**member** [10] - 5:5, 6:8, 6:14, 7:5, 7:6, 7:10, 7:20, 7:25, 8:1, 8:2
**members** [2] - 17:11, 28:9
**Members** [1] - 17:19
**mentioned** [2] - 25:7, 48:18
**mere** [1] - 28:24
**merely** [1] - 6:11
**Michael** [4] - 1:8, 2:13, 54:16, 55:5
**microphone** [1] - 4:13
**might** [3] - 18:8, 18:9, 58:23
**mind** [2] - 11:23, 29:11
**minute** [1] - 25:19
**minutes** [3] - 22:9, 22:14, 22:20
**misconduct** [1] - 20:3
**missing** [1] - 7:3
**misstatement** [1] - 45:13
**mistakes** [1] - 59:5
**mistrial** [1] - 44:7
**misunderstanding** [1] - 15:6
**Model** [2] - 18:3, 18:13
**modification** [4] - 17:17, 17:25, 19:3, 30:2
**modifications** [1] - 27:3
**modified** [1] - 29:20
**moment** [4] - 16:20, 47:20, 49:2, 55:2
**moments** [1] - 63:25
**money** [20] - 24:24, 25:3, 25:22, 25:23, 33:21, 40:20, 42:15, 43:6, 48:3, 48:15, 53:14, 53:15, 54:1, 57:7, 57:8, 60:9, 61:2, 61:15, 61:20, 62:23
**month** [1] - 53:21
**months** [1] - 53:3
**moot** [1] - 27:20
**morally** [1] - 23:14
**morning** [3] - 20:20, 65:4, 65:19
**most** [8] - 9:2, 17:3, 18:12, 33:1, 33:11, 43:18, 53:23, 65:22
**Motion** [1] - 27:7

**motion** [8] - 27:8, 27:16, 27:20, 32:4, 32:15, 32:18, 34:5, 61:14
**movant** [1] - 32:19
**move** [3] - 21:24, 22:21, 22:23
**moved** [1] - 25:24
**moving** [1] - 8:7
**MR** [116] - 4:10, 4:14, 5:16, 6:4, 7:4, 7:12, 7:17, 7:19, 8:5, 8:7, 9:6, 9:16, 9:19, 10:3, 10:10, 10:18, 10:25, 11:4, 12:2, 12:6, 12:22, 13:7, 13:10, 13:23, 13:25, 14:1, 14:5, 14:24, 14:25, 15:2, 15:5, 15:8, 15:22, 16:2, 16:9, 16:13, 16:21, 17:15, 18:2, 18:8, 18:22, 18:25, 19:5, 21:4, 21:14, 22:8, 22:18, 22:25, 23:9, 23:21, 23:25, 24:22, 24:24, 25:2, 25:3, 25:6, 25:9, 25:11, 25:13, 25:19, 25:21, 26:2, 26:6, 26:17, 29:16, 29:19, 30:3, 30:5, 32:13, 32:18, 32:25, 33:6, 33:10, 34:13, 34:16, 34:21, 34:24, 35:3, 35:8, 35:16, 35:18, 36:23, 36:25, 37:4, 37:8, 37:13, 37:16, 44:24, 45:3, 45:16, 46:6, 46:22, 47:5, 47:7, 47:14, 47:17, 47:19, 50:4, 50:5, 50:7, 57:22, 58:1, 58:4, 58:15, 59:2, 60:5, 61:6, 62:1, 62:12, 62:19, 63:16, 64:8, 64:12, 65:8, 65:12, 65:21
**MS** [12] - 11:7, 15:6, 15:14, 16:23, 16:25, 18:16, 18:18, 18:20, 22:4, 27:25, 28:2, 65:24
**mull** [1] - 5:14
**must** [3] - 6:19, 8:12, 28:17

**N**

**name** [1] - 42:3
**names** [2] - 27:9, 55:9

**narrow** [2] - 30:9, 31:1
**nature** [2] - 25:8, 38:19
**necessarily** [3] - 8:15, 10:4, 57:19
**necessity** [3] - 27:12, 27:16, 35:10
**need** [7] - 5:23, 22:14, 29:8, 32:9, 44:13, 50:14, 64:12
**needed** [1] - 53:7
**NESSIM** [1] - 3:2
**never** [2] - 27:16, 62:6
**new** [2] - 10:21, 44:4
**New** [1] - 2:11
**night** [1] - 4:15
**Ninth** [6] - 14:18, 18:3, 18:13, 19:9, 21:21, 24:9
**nondisclosure** [1] - 25:16
**North** [2] - 2:6, 3:8
**notated** [1] - 44:11
**notation** [3] - 23:23, 37:12, 44:2
**note** [6] - 4:7, 19:10, 19:19, 20:2, 20:10, 20:13, 20:24, 20:25, 21:19, 21:24, 22:17, 24:4, 49:21
**noted** [3] - 14:2, 29:19, 34:24
**notes** [7] - 19:6, 21:17, 39:16, 49:11, 49:15, 54:14, 55:5
**nothing** [2] - 21:10, 47:5
**notice** [1] - 26:12
**noticed** [2] - 18:25, 56:22
**noting** [1] - 20:3
**November** [6] - 1:8, 44:6, 44:14, 48:20, 58:21, 67:13
**number** [11] - 15:23, 25:11, 25:12, 25:15, 26:3, 37:7, 37:12, 42:4, 42:12, 52:5, 54:18
**numerous** [2] - 61:11, 62:6
**Nunez** [2] - 24:13, 25:21
**NW** [1] - 2:11
**NY** [1] - 2:15

**O**

**O'Connor** [1] - 1:21
**oath** [4] - 57:24,

59:20, 63:22, 64:22
**objection** [5] - 11:4, 14:1, 14:2, 16:7, 19:2
**objections** [1] - 14:4
**obligated** [1] - 25:17
**obligations** [1] - 27:10
**obliged** [2] - 26:18
**obvious** [2] - 5:8, 60:22
**obviously** [3] - 5:6, 45:21, 65:15
**occasions** [1] - 62:6
**October** [4] - 33:15, 35:21, 43:15, 44:14
**OF** [3] - 1:3, 1:14, 2:10
**offer** [1] - 9:17
**OFFICE** [3] - 2:3, 2:17, 2:20
**officers** [1] - 27:12
**Official** [2] - 1:20, 67:6
**old** [1] - 29:25
**omitted** [1] - 18:23
**one** [54] - 7:12, 8:3, 8:12, 8:14, 12:7, 14:12, 14:24, 15:23, 16:3, 16:6, 16:11, 17:20, 17:24, 19:3, 20:11, 21:8, 22:3, 22:14, 23:10, 23:13, 23:17, 23:19, 24:3, 24:7, 25:7, 25:11, 25:12, 25:15, 25:17, 26:3, 26:18, 26:20, 28:12, 28:15, 28:25, 29:4, 30:4, 33:18, 39:3, 47:10, 48:18, 50:2, 50:18, 50:23, 51:2, 52:15, 56:1, 57:23, 58:5, 58:8, 59:4, 60:5, 60:21
**ongoing** [1] - 36:21
**operating** [1] - 56:18
**operation** [1] - 55:25
**operators** [1] - 55:10
**opinion** [2] - 28:21, 62:3
**opinions** [1] - 17:9, 20:4, 28:23
**opportunity** [2] - 21:3, 33:3
**organize** [4] - 38:15, 38:16, 38:20, 41:23
**organizing** [1] - 40:7
**original** [1] - 37:10
**otherwise** [2] - 47:12, 65:19
**ought** [1] - 6:11
**outgoing** [2] - 55:23, 56:22

**outlined** [1] - 19:3
**outside** [1] - 55:13
**overlap** [1] - 59:23
**own** [6] - 28:20, 41:9, 51:24, 53:19, 59:24
**owners** [2] - 56:23, 56:24

**P**

**P.A** [1] - 2:17
**P.C** [1] - 3:2
**P.L.C** [1] - 3:7
**p.m** [6] - 14:10, 23:1, 23:2, 28:4, 28:5, 66:1
**P.O** [2] - 3:12, 55:8
**Padilla** [1] - 3:6
**page** [21] - 4:25, 5:3, 5:11, 5:21, 6:16, 8:9, 9:21, 11:25, 12:1, 12:20, 13:20, 31:19, 42:4, 42:7, 42:10, 44:3, 54:12, 55:23, 56:8, 60:7, 60:25
**pages** [4] - 31:8, 42:9, 55:1, 67:8
**Panchapakesan** [2] - 3:3, 62:9
**papers** [1] - 33:6
**paragraph** [6] - 17:23, 17:24, 33:23, 54:14, 55:22
**paragraphs** [4] - 33:13, 59:18, 63:25, 64:1
**Park** [1] - 3:3
**part** [12] - 6:23, 6:24, 7:9, 23:14, 26:7, 29:3, 29:23, 31:17, 49:22, 58:12, 63:1
**particular** [2] - 10:5, 42:11
**parties** [1] - 27:5
**parts** [2] - 34:18, 60:12
**pass** [1] - 59:11
**passed** [1] - 22:11
**past** [2] - 18:9, 38:14
**patience** [1] - 62:5
**Paul** [1] - 2:14
**pay** [3] - 56:7, 56:11, 56:17
**payments** [3] - 55:24, 56:23
**payroll** [5] - 56:7, 56:12, 57:1, 57:3, 57:5
**pcambria@lglaw.com** [1] - 2:15

8

**people** [2] - 52:18, 59:4

**people's** [1] - 17:9

**per** [3] - 8:24, 10:6, 23:23

**percentage** [1] - 55:23

**perfectly** [2] - 5:17, 65:15

**perform** [1] - 17:13

**perhaps** [3] - 12:24, 17:1, 58:25

**period** [2] - 52:22, 61:9

**Perlmeter** [1] - 2:5

**permit** [1] - 12:17

**permitted** [1] - 5:1

**person** [8] - 5:5, 6:8, 7:5, 7:6, 12:25, 22:5, 34:11, 62:18

**personal** [1] - 17:9

**persuade** [1] - 21:9

**persuaded** [1] - 28:21

**pertains** [1] - 23:5

**Peter** [1] - 2:4

**peter.kozinets@ usdoj.gov** [1] - 2:7

**Phoenix** [6] - 1:7, 1:22, 2:6, 2:19, 3:8, 67:13

**phone** [2] - 64:25, 65:21

**phrase** [1] - 23:10

**phrased** [2] - 12:23, 13:17

**pick** [2] - 64:25, 65:7

**picked** [1] - 24:2

**pincite** [1] - 24:13

**pincites** [1] - 31:7

**Pinkerton** [6] - 5:3, 5:18, 8:8, 9:24, 11:12, 11:22

**PLAINTIFF** [1] - 3:16

**Plaintiff** [1] - 1:6

**pleadings** [1] - 61:5

**pluralized** [1] - 17:21

**point** [20] - 5:20, 7:3, 7:13, 9:13, 12:2, 12:3, 12:14, 20:21, 21:4, 22:7, 24:4, 27:20, 34:19, 34:25, 54:5, 54:8, 60:16, 61:6, 61:25, 62:9

**points** [2] - 31:2, 50:15

**portion** [2] - 60:24, 67:9

**portions** [2] - 30:24, 31:14

**position** [4] - 9:20, 12:14, 21:25, 23:8

**possession** [6] - 37:25, 38:1, 38:23, 39:4, 39:5, 48:23

**Posting** [5] - 32:6, 55:3, 55:8, 55:18, 56:18

**potential** [6] - 20:3, 31:10, 37:6, 43:13, 48:16, 61:17

**precedent** [1] - 14:18

**Preclude** [1] - 7:7

**prejudice** [1] - 33:12

**prep** [1] - 43:12

**prepare** [8] - 42:25, 44:17, 58:20, 58:24, 59:3, 59:6, 59:20, 60:11

**prepared** [8] - 52:22, 58:10, 58:11, 59:4, 62:25, 65:6, 67:12

**Prepared** [1] - 1:24

**preparing** [3] - 44:10, 51:9, 59:17

**prepping** [1] - 47:22

**presence** [1] - 14:13

**present** [13] - 4:5, 4:8, 4:18, 8:17, 11:5, 14:12, 14:14, 20:24, 28:8, 29:14, 63:1

**presented** [1] - 9:11

**president** [2] - 54:15, 55:6

**pressure** [1] - 29:7

**presume** [1] - 10:11

**presumes** [1] - 9:21

**pretty** [2] - 19:21, 60:21

**prevent** [2] - 15:18, 15:19

**preventing** [5] - 15:13, 22:1, 24:19, 26:11, 26:25

**previous** [1] - 46:2

**previously** [4] - 33:16, 34:8, 39:15, 49:10, 49:14

**previously- disclosed** [1] - 33:16

**primarily** [4] - 40:6, 40:22, 51:18, 57:1

**print** [1] - 44:25

**printout** [1] - 15:15

**procedurally** [1] - 32:22

**proceed** [6] - 27:2, 30:6, 31:18, 32:8, 32:24, 35:15

**Proceedings** [4] - 1:24, 4:3, 14:10, 23:2, 28:5, 66:1

**PROCEEDINGS** [1] - 1:14

**proceedings** [4] - 14:7, 27:14, 27:23, 67:10

**produced** [7] - 31:14, 33:14, 33:25, 34:1, 34:15, 36:4, 53:5

**product** [3] - 36:18, 36:19, 37:2

**production** [1] - 31:12

**professional** [1] - 62:14

**professionalism** [1] - 64:25

**prohibited** [1] - 7:16

**proof** [1] - 9:22

**proper** [4] - 10:15, 10:18, 11:15, 22:5

**Properties** [2] - 56:6, 56:11

**proposed** [3] - 15:16, 16:13, 18:11

**proposing** [1] - 18:5

**prosecution** [1] - 39:9

**prosecutor** [1] - 59:6

**prosecutors** [1] - 46:24

**Prosperity** [7] - 32:5, 54:12, 54:13, 55:2, 55:20, 55:24, 56:18

**proven** [1] - 5:24

**provide** [3] - 5:1, 28:1, 53:9

**provided** [6] - 4:19, 14:15, 14:20, 15:3, 30:12, 61:24

**providing** [1] - 9:2

**proving** [2] - 6:18, 40:19

**public** [1] - 10:23

**published** [1] - 24:12

**purpose** [2] - 28:24, 36:14

**purposes** [3] - 37:5, 43:5, 48:20

**pursue** [2] - 63:20, 64:4

**put** [25] - 9:11, 21:5, 30:7, 31:22, 32:15, 36:10, 37:15, 38:8, 38:12, 38:18, 39:15, 40:1, 40:4, 41:8, 41:10, 45:8, 46:11, 47:11, 49:10, 49:14, 49:25, 50:9, 58:2, 64:16, 64:22

**puts** [2] - 13:14, 62:4

**putting** [4] - 40:3, 40:5, 63:5, 65:2

**Q**

**qualified** [1] - 67:6

**qualifier** [1] - 32:1

**quarter** [1] - 27:4

**QUESTION/ EVIDENTIARY** [1] - 1:16

**questioned** [1] - 59:19

**questioning** [1] - 64:5

**questionnaire** [1] - 23:5

**questions** [10] - 14:15, 20:21, 27:19, 32:3, 45:17, 57:16, 57:20, 60:16, 64:21, 65:14

**quick** [2] - 25:10, 25:21

**quite** [2] - 27:8, 53:2

**Quoc** [9] - 30:18, 30:20, 30:22, 31:20, 32:9, 32:15, 33:15, 35:10, 59:25

**QUOC** [2] - 3:17, 35:13

**quoted** [2] - 6:7, 61:10

**quotes** [1] - 6:7

**quoting** [2] - 6:25, 19:16

**R**

**ran** [1] - 51:2

**Rapp** [1] - 2:3

**rather** [1] - 65:2

**re** [2] - 24:7, 28:20

**re-examine** [1] - 28:20

**reach** [4] - 9:22, 28:11, 28:15, 53:7

**reaching** [1] - 62:2

**read** [12] - 5:8, 8:18, 8:21, 15:17, 15:19, 17:7, 23:4, 25:21, 26:10, 30:1, 49:6, 56:9

**reading** [1] - 10:23

**reads** [2] - 4:20, 23:6

**ready** [1] - 35:15

**really** [9] - 6:21, 6:23, 12:13, 13:2, 31:16, 32:8, 33:1, 33:10, 64:24

**reason** [2] - 26:18, 58:8

**reasonable** [1] - 5:24

**reasons** [3] - 19:19, 21:18, 63:22

**receive** [1] - 42:2

**received** [4] - 15:15, 34:12, 45:2, 51:10

**receiving** [1] - 51:23

**recent** [1] - 43:18

**recess** [4] - 14:9, 23:1, 28:4, 65:23

**recognition** [2] - 15:18, 15:19

**recommend** [2] - 32:13, 32:14

**reconsideration** [2] - 12:15, 25:24

**reconvene** [2] - 27:3, 27:21

**reconvened** [2] - 23:2, 28:5

**record** [18] - 14:3, 14:13, 17:7, 21:5, 23:3, 23:4, 24:4, 27:5, 27:15, 30:7, 34:3, 42:2, 42:14, 45:11, 45:12, 60:3, 61:4, 65:8

**records** [19] - 41:8, 41:15, 42:4, 42:6, 42:9, 51:23, 52:16, 53:4, 53:6, 53:9, 53:10, 53:15, 53:18, 53:24, 54:18, 55:12, 55:20, 57:3, 57:8

**RECROSS** [1] - 3:16

**REDIRECT** [1] - 3:16

**redirected** [1] - 10:5

**refer** [10] - 8:23, 11:11, 11:24, 12:19, 13:19, 13:20, 14:17, 37:6, 37:11, 40:23

**reference** [5] - 6:18, 32:4, 44:12, 52:3, 54:17

**referenced** [2] - 6:17, 46:11

**referencing** [1] - 43:17

**referral** [1] - 11:15

**referring** [6] - 5:4, 5:11, 6:12, 46:14, 52:23, 54:21

**reflect** [2] - 14:13, 23:3

**reflects** [1] - 41:19

**refraining** [3] - 15:13, 22:1, 24:19, 26:11, 27:1

**regard** [5] - 9:18, 21:13, 34:14, 51:13, 58:23

**regarding** [2] - 31:17, 32:5

**Regional** [1] - 39:24

**relate** [5] - 40:24, 60:8, 60:9, 61:2, 61:8

ER 15100

**related** [10] - 5:12, 25:25, 26:15, 40:25, 49:17, 53:25, 57:17, 57:20, 60:13, 61:18
**relates** [4] - 23:6, 27:8, 35:22, 60:14
**relating** [11] - 15:11, 27:6, 37:20, 53:13, 53:24, 56:7, 56:12, 58:6, 61:11, 61:20
**relationship** [1] - 48:2
**Relativity** [4] - 42:14, 51:13, 52:3, 52:5
**relevant** [3] - 6:23, 6:24, 26:21
**relied** [3] - 32:11, 57:15, 61:23
**rely** [10] - 30:22, 43:3, 44:17, 44:20, 57:1, 58:25, 59:16, 59:20, 61:23, 63:24
**relying** [1] - 63:5
**remember** [1] - 35:21
**remind** [2] - 29:1, 57:12
**removing** [1] - 26:12
**reorganization** [1] - 27:23
**reorganized** [6] - 51:10, 51:13, 52:2, 53:16, 53:19
**report** [11] - 30:22, 47:21, 48:6, 48:20, 48:21, 48:22, 49:23, 52:22, 52:23, 58:9, 59:9
**Reported** [1] - 1:24
**reported** [1] - 28:11
**Reporter** [3] - 1:20, 1:24, 67:6
**REPORTER'S** [1] - 1:14
**reports** [2] - 51:21, 63:5
**repository** [1] - 37:19
**represent** [1] - 33:21
**representation** [1] - 62:10
**reputation** [1] - 62:8
**request** [1] - 18:12
**required** [1] - 17:13
**requiring** [1] - 8:25
**research** [1] - 14:18
**resolve** [1] - 12:1
**resolved** [1] - 12:20
**respect** [6] - 6:16, 7:9, 8:20, 20:10, 34:2, 34:17, 62:1
**respectfully** [4] - 6:5, 7:1, 62:3, 63:2

**respond** [3] - 13:19, 21:14, 23:21
**responding** [1] - 35:3
**response** [2] - 25:14, 60:12
**responsive** [1] - 13:15
**resume** [1] - 65:5
**return** [2] - 23:4, 29:9
**returned** [1] - 20:20
**returning** [1] - 28:24
**reveal** [5] - 23:13, 23:20, 25:17, 26:18, 26:20
**review** [6] - 14:16, 16:14, 38:22, 45:8, 45:11, 48:11
**reviewed** [11] - 45:10, 48:7, 48:9, 48:11, 52:16, 53:17, 54:3, 55:19, 56:16, 59:5
**reviewing** [2] - 40:6, 53:4
**revised** [1] - 30:1
**RHOW** [1] - 3:2
**rise** [1] - 29:12
**RMR** [2] - 1:21, 67:18
**road** [1] - 13:14
**Road** [2] - 2:18, 2:21
**role** [5] - 40:5, 40:6, 40:16, 40:18, 40:19
**room** [3] - 20:4, 22:22, 29:9
**roughly** [1] - 20:18
**rules** [1] - 27:10
**rulings** [1] - 62:15
**running** [2] - 51:5, 51:8
**rush** [2] - 29:6, 29:23

## S

**s/Hilda** [1] - 67:17
**sailed** [1] - 9:25
**Sandra** [1] - 1:21
**saw** [1] - 35:7
**SCIME** [1] - 2:13
**Scott** [1] - 2:17
**Scottsdale** [3] - 2:21, 2:22, 3:12
**scratch** [1] - 41:8
**screen** [2] - 41:10, 47:11
**searches** [3] - 51:2, 51:5, 51:9
**seated** [5] - 4:4, 14:11, 28:6, 28:9, 29:15
**Second** [3] - 5:4, 6:8, 60:7
**second** [14] - 4:24, 5:4, 7:7, 7:14, 9:7,

11:1, 17:22, 19:20, 21:24, 24:11, 30:19, 31:19, 31:20, 54:25
**see** [14] - 4:9, 8:9, 27:9, 27:16, 38:9, 41:10, 49:12, 50:1, 54:5, 54:14, 54:16, 55:6, 55:7, 55:10
**seeking** [1] - 13:19
**seem** [3] - 14:23, 15:10, 21:9
**seizing** [1] - 61:21
**seizure** [9] - 33:17, 33:18, 33:19, 37:23, 39:16, 49:11, 49:15, 61:1, 61:17
**send** [4] - 11:19, 13:11, 42:2, 53:21
**sending** [4] - 35:21, 58:12, 62:24, 63:6
**sense** [8] - 32:22, 62:3, 62:7, 62:21, 62:22, 63:3, 63:11, 65:18
**sent** [12] - 39:9, 43:15, 43:21, 46:23, 47:2, 47:20, 48:6, 48:24, 49:3, 49:9, 51:11, 51:12, 59:5
**sentence** [4] - 17:22, 17:23, 61:3, 61:9
**separate** [15] - 5:12, 5:18, 8:8, 8:13, 8:24, 8:25, 9:4, 10:6, 10:7, 12:10, 51:17, 53:12, 53:17, 59:25
**separately** [2] - 8:21, 55:19
**serve** [1] - 53:8
**SESSION** [1] - 1:15
**seven** [1] - 39:2
**several** [2] - 43:11, 55:9
**share** [4] - 31:21, 38:7, 45:24, 49:24
**sharing** [1] - 63:4
**ship** [1] - 9:25
**shocked** [1] - 27:9
**shoe** [1] - 12:11
**short** [2] - 11:8, 16:19
**show** [4] - 33:23, 57:8, 59:10, 63:11
**showed** [2] - 18:20, 51:6
**shown** [2] - 61:24, 63:13
**sides** [1] - 62:16
**sight** [1] - 26:12
**signal** [1] - 13:11
**signatory** [2] - 54:15,

55:6
**signature** [1] - 42:7
**signed** [6] - 5:2, 17:14, 19:10, 21:19, 23:7, 33:18
**significant** [1] - 6:20
**silence** [1] - 62:11
**silent** [1] - 20:24
**similar** [5] - 18:10, 40:1, 42:23, 46:23, 56:22
**simple** [1] - 23:15
**simpler** [1] - 4:20
**simplest** [1] - 16:4
**simplified** [1] - 16:6
**simply** [4] - 6:5, 11:11, 11:18, 11:24
**single** [2] - 14:19, 29:3
**situation** [1] - 4:12
**situations** [1] - 26:20
**small** [1] - 33:8
**so..** [1] - 57:9
**sole** [2] - 54:15, 55:5
**solely** [1] - 28:23
**Solutions** [5] - 32:6, 55:3, 55:8, 55:18, 56:18
**sometimes** [1] - 23:14
**somewhat** [1] - 34:16
**sorry** [10] - 12:22, 16:24, 17:16, 18:20, 21:3, 25:13, 30:5, 33:17, 33:19, 34:23
**sort** [8] - 14:19, 14:20, 24:1, 26:14, 37:19, 41:14, 42:17, 45:13
**sounds** [2] - 15:22, 49:17
**source** [4] - 15:7, 41:7, 41:14, 53:18
**Southern** [2] - 24:11, 24:14
**Spc** [1] - 1:22
**SPC** [1] - 65:20
**Spear** [1] - 2:17
**specific** [8] - 6:18, 11:12, 11:13, 23:16, 42:1, 42:4, 42:10, 45:12
**specifically** [2] - 24:15, 46:4
**specified** [1] - 67:11
**speculation** [1] - 11:14
**spot** [1] - 23:25
**spots** [1] - 56:22
**spreadsheet** [5] - 41:9, 41:10, 42:23, 42:25, 44:25
**stamped** [1] - 53:16

**stand** [2] - 19:24, 65:23
**standstill** [1] - 17:10
**started** [3] - 41:24, 51:9, 51:22
**starting** [1] - 54:5
**starts** [1] - 12:16
**statement** [8] - 4:24, 11:16, 17:6, 30:16, 57:14, 57:24, 61:7
**statements** [3] - 42:8, 45:12, 57:22
**STATES** [3] - 1:1, 2:3, 2:10
**States** [3] - 1:5, 24:12, 67:7
**stating** [1] - 62:25
**stay** [2] - 28:2, 54:22
**Stenographic** [1] - 1:24
**step** [1] - 65:11
**still** [1] - 8:22
**Stone** [2] - 2:4, 27:8
**stone** [17] - 6:17, 32:6, 34:24, 35:15, 45:23, 46:20, 47:8, 47:21, 48:6, 48:12, 48:25, 49:9, 49:23, 53:21, 58:12, 64:17, 65:1
**STONE** [26] - 5:16, 8:5, 8:7, 12:2, 12:6, 13:23, 14:5, 32:13, 32:25, 33:6, 33:10, 35:16, 35:18, 36:23, 36:25, 37:8, 37:13, 37:16, 44:24, 45:3, 45:16, 46:6, 46:22, 47:5, 50:4, 65:8
**stone's** [1] - 34:25
**stop** [1] - 57:11
**straightforward** [1] - 13:18
**Street** [1] - 1:22
**stretch** [1] - 20:14
**strong** [1] - 19:21
**struggle** [1] - 63:24
**struggling** [1] - 57:17
**stuff** [1] - 36:11
**submitted** [1] - 14:16
**subpoena** [2] - 42:3, 42:12
**subpoenas** [6] - 51:10, 51:11, 51:19, 51:20, 53:7, 53:8
**subquestion** [1] - 30:21
**subsequently** [1] - 42:12
**substantial** [1] - 55:23
**substantive** [2] - 8:4,

UNITED STATES DISTRICT COURT

45:5
**sufficient** [1] - 16:7
**suggest** [9] - 11:11, 18:10, 19:23, 23:15, 25:12, 28:13, 32:16, 62:22, 64:5
**suggested** [1] - 29:20
**suggesting** [9] - 15:23, 15:25, 16:6, 21:6, 24:6, 24:10, 24:18, 25:18, 47:11
**suggestion** [5] - 5:20, 11:8, 16:2, 16:23, 16:25
**suggests** [2] - 12:9, 20:3
**Suite** [7] - 1:21, 2:6, 2:14, 2:18, 2:21, 3:3, 3:8
**summary** [8] - 40:10, 40:11, 40:12, 41:3, 42:8, 43:1, 51:7, 53:23
**summation** [3] - 35:2, 35:4, 35:6
**superseding** [2] - 8:19, 61:19
**supplied** [1] - 47:14
**support** [3] - 9:19, 24:5, 41:15
**supported** [1] - 42:18
**supporting** [2] - 42:18, 61:1
**supports** [1] - 9:7
**suppose** [1] - 13:1
**suppression** [4] - 23:11, 23:18, 25:16, 31:13
**suspect** [2] - 18:8, 21:18
**sworn** [2] - 35:11, 35:12
**Sworn** [1] - 35:14

**T**

**tab** [2] - 41:24, 41:25
**table** [5] - 36:10, 38:18, 38:20, 40:7, 52:5
**Table** [5] - 41:9, 44:21, 51:16, 52:4, 52:23
**talks** [2] - 54:12, 55:12
**tasked** [2] - 51:25, 59:21
**Tech** [3] - 42:7, 56:21, 57:7
**telephonically** [1] - 65:13
**ten** [1] - 22:20

**tend** [1] - 13:10
**term** [2] - 15:12, 24:16
**terms** [6] - 9:25, 13:11, 14:18, 24:20, 58:19, 61:4
**testified** [10] - 37:1, 43:1, 43:3, 45:5, 46:23, 47:20, 52:15, 60:9, 60:20, 61:22
**testify** [2] - 27:11, 44:13
**testifying** [5] - 30:16, 32:9, 38:5, 50:18, 56:5
**testimony** [35] - 26:22, 30:14, 30:23, 31:6, 32:7, 32:12, 43:4, 43:11, 43:13, 44:18, 47:22, 47:24, 48:13, 50:14, 50:18, 52:18, 53:22, 57:16, 57:24, 58:4, 58:16, 59:4, 59:7, 59:9, 59:17, 59:19, 60:8, 60:13, 60:14, 60:19, 61:9, 61:12, 63:18, 63:24
**text** [1] - 51:14
**Thai** [21] - 30:18, 30:20, 30:22, 31:20, 32:9, 32:14, 32:15, 32:19, 35:10, 47:10, 47:17, 47:20, 58:10, 59:25, 60:14, 60:15, 61:22, 62:2, 62:24, 63:1, 63:5
**THAI** [2] - 3:17, 35:13
**Thai's** [6] - 33:15, 33:25, 60:8, 60:19, 61:8, 61:11
**THE** [108] - 1:3, 1:13, 4:4, 4:7, 4:13, 4:17, 6:2, 7:2, 7:14, 7:18, 8:6, 8:18, 9:13, 9:17, 9:25, 10:4, 10:16, 10:22, 11:3, 11:6, 11:22, 12:5, 12:15, 13:5, 13:8, 13:15, 13:24, 14:3, 14:6, 14:11, 15:1, 15:4, 15:9, 15:17, 16:1, 16:12, 16:16, 16:24, 17:5, 17:16, 18:6, 18:15, 18:17, 18:19, 18:23, 19:1, 20:12, 21:23, 22:7, 22:16, 22:20, 23:3, 23:22, 24:25, 25:5, 25:7, 25:14, 25:20, 26:1, 26:4, 26:24, 28:1, 28:3, 28:6, 28:9,

29:15, 29:18, 30:1, 30:4, 30:6, 32:21, 33:4, 33:8, 34:10, 34:14, 34:20, 34:23, 35:2, 35:4, 35:9, 35:15, 37:10, 44:22, 45:2, 45:20, 46:8, 46:19, 47:6, 47:13, 47:16, 57:11, 57:24, 58:2, 58:14, 58:17, 59:12, 60:23, 61:13, 62:5, 62:14, 63:14, 63:21, 64:10, 64:23, 65:10, 65:18, 65:23, 65:25
**theory** [4] - 5:18, 8:8, 9:24
**therefore** [3] - 7:8, 14:21, 31:24
**therein** [1] - 67:11
**they've** [4] - 10:7, 20:9, 20:17, 24:2
**thinking** [1] - 40:12
**third** [1] - 20:2
**thorough** [1] - 43:5
**thoroughly** [1] - 41:23
**thoughtful** [1] - 20:21
**thoughts** [2] - 5:15, 28:13
**three** [2] - 26:8, 33:17
**Thursday** [1] - 20:19
**today** [1] - 4:20
**together** [21] - 7:15, 9:1, 31:22, 36:10, 38:8, 38:12, 38:18, 39:15, 40:1, 40:4, 40:5, 42:17, 46:11, 49:10, 49:14, 49:25, 50:9, 62:24, 63:1, 63:4, 63:5
**tomorrow** [8] - 35:6, 64:7, 64:11, 65:4, 65:7, 65:13, 65:16, 65:24
**took** [1] - 60:24
**total** [1] - 20:15
**towards** [1] - 13:14
**traced** [1] - 61:16
**Tracing** [1] - 46:14
**tracing** [10] - 31:22, 37:20, 38:8, 45:25, 49:24, 52:9, 52:11, 54:12, 54:13, 55:2
**track** [1] - 53:20
**transaction** [1] - 42:2
**transactions** [4] - 42:1, 42:18, 50:24, 52:17
**Transcript** [1] - 1:24
**TRANSCRIPT** [1] -

1:14
**transcript** [5] - 14:4, 50:13, 56:9, 67:9, 67:11
**Transcription** [1] - 1:24
**transfer** [1] - 42:10
**transfers** [3] - 51:21, 55:12, 56:21
**transitioning** [1] - 53:3
**translate** [1] - 48:14
**transmitting** [1] - 49:23
**Travel** [9] - 5:21, 6:16, 7:20, 8:10, 8:23, 9:2, 11:13, 11:25
**tree** [1] - 33:8
**trial** [21] - 20:16, 37:6, 40:13, 41:16, 43:1, 43:4, 43:11, 44:6, 44:18, 50:13, 51:7, 56:5, 58:16, 60:3, 60:8, 60:10, 60:13, 60:14, 61:8, 61:11
**TRIAL** [1] - 1:15
**true** [3] - 49:14, 50:8, 67:9
**try** [4] - 27:22, 36:23, 62:5, 65:18
**trying** [3] - 50:23, 56:1, 63:11
**Tuesday** [1] - 20:17
**twelve** [1] - 49:8
**two** [8] - 6:6, 14:15, 21:17, 33:17, 52:18, 53:17, 59:21
**type** [2] - 25:4, 42:5

**U**

**U.S** [4] - 1:21, 19:9, 27:11, 55:13
**ultimately** [2] - 11:20, 61:20
**umbrage** [2] - 62:7, 62:15
**unable** [2] - 17:19, 28:11
**unanimous** [2] - 28:12, 28:15
**under** [12] - 7:23, 7:24, 10:22, 26:3, 26:8, 30:15, 30:16, 57:24, 59:19, 63:22, 64:22, 67:12
**underlying** [1] - 41:15
**underscores** [1] - 7:24
**understood** [4] - 47:24, 48:10, 54:4,

56:15
**unduly** [1] - 19:12
**unescapable** [1] - 8:1
**unfamiliar** [1] - 59:18
**unfortunate** [1] - 17:7
**UNITED** [3] - 1:1, 2:3, 2:10
**United** [3] - 1:5, 24:12, 67:7
**universe** [1] - 46:4
**unless** [3] - 9:17, 29:24, 45:16
**up** [15] - 5:20, 15:23, 27:24, 40:19, 41:7, 43:8, 46:6, 47:11, 51:6, 51:12, 51:16, 53:8, 62:23, 64:25, 65:7
**uploaded** [2] - 52:3, 53:16
**upstairs** [1] - 14:8
**urgent** [1] - 17:3
**useful** [2] - 57:19, 63:21
**uses** [1] - 24:9
**utilize** [1] - 18:12

**V**

**valuable** [1] - 64:2
**various** [8] - 24:2, 50:24, 51:3, 51:5, 51:23, 52:17, 56:7, 56:12
**Vaught** [1] - 3:10
**verbatim** [1] - 34:1
**verdict** [7] - 9:10, 9:22, 17:20, 28:12, 28:16, 28:24, 29:7
**verdicts** [2] - 17:22, 17:25
**version** [20] - 16:6, 39:3, 39:4, 39:5, 39:10, 43:18, 44:1, 44:3, 44:9, 44:11, 44:12, 46:2, 47:1, 47:2, 49:17, 51:24, 52:1, 52:2
**versions** [5] - 38:23, 39:1, 39:7, 43:22, 48:19
**Versoza** [22] - 33:18, 36:4, 36:22, 37:21, 39:6, 39:18, 40:21, 43:10, 45:8, 45:22, 47:25, 51:17, 51:22, 51:24, 52:21, 53:1, 53:9, 53:11, 54:8, 58:10, 59:24, 64:15
**Versoza's** [2] - 40:18,

UNITED STATES DISTRICT COURT

51:17
**versus** [2] - 22:14, 25:4
**view** [5] - 19:25, 30:7, 47:10, 61:14, 63:3
**views** [1] - 28:21
**vigorously** [1] - 63:7
**violating** [1] - 28:16
**violations** [1] - 34:7
**vs** [3] - 1:7, 19:9, 24:13

## W

**waiting** [1] - 22:22
**walls** [1] - 62:8
**Walter** [1] - 2:21
**wants** [1] - 47:10
**warrants** [6] - 37:23, 39:16, 46:17, 49:11, 49:15, 61:1
**Washington** [2] - 1:22, 2:11
**ways** [1] - 10:16
**Website** [3] - 42:7, 56:21, 57:7
**Webster** [1] - 15:10
**Webster's** [3] - 14:22, 15:17, 16:3
**week** [2] - 30:12, 31:15
**weeks** [2] - 20:7, 43:11
**weight** [1] - 28:23
**welcome** [1] - 28:10
**West** [1] - 1:22
**Westlaw** [1] - 24:8
**whetted** [1] - 9:2
**white** [1] - 19:14
**whole** [1] - 29:2
**willful** [1] - 31:13
**Williams** [4] - 19:9, 19:16, 21:13, 21:21
**wire** [2] - 42:10, 55:12
**wires** [2] - 55:17, 55:21
**wish** [4] - 5:14, 60:1, 63:14, 64:4
**wishes** [1] - 6:2
**witness** [20] - 27:9, 27:13, 30:17, 35:5, 35:9, 35:14, 57:14, 58:18, 58:22, 59:1, 59:14, 63:14, 63:17, 63:20, 63:22, 64:4, 64:9, 64:10, 64:17, 65:2
**WITNESS** [1] - 3:16
**witnesses** [2] - 65:6, 65:9

**WOLPERT** [1] - 3:2
**word** [4] - 10:19, 26:4, 34:6
**wording** [1] - 19:22
**words** [1] - 56:16
**works** [1] - 18:9
**worried** [1] - 16:5
**write** [4] - 36:12, 41:1, 49:23, 53:7
**written** [1] - 38:14
**wrote** [6] - 36:5, 38:7, 38:13, 39:19, 40:9, 50:8
**Wu** [1] - 2:5

## Y

**years** [6] - 31:22, 32:1, 38:8, 46:11, 49:25, 50:9
**yesterday** [3] - 4:11, 33:2, 47:9
**York** [1] - 2:11
**yourself** [2] - 28:18, 62:14

## Z

**Zoom** [1] - 65:18

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 15, 2023 |
| Michael Lacey, et al. | ) | 11:04 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 33 - CONTINUED EVIDENTIARY HEARING AND**

**JURY QUESTIONS**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

```
 1                    A P P E A R A N C E S

 2

     For the Government:
 3       UNITED STATES ATTORNEY'S OFFICE
         By:  Mr. Kevin M. Rapp, Esq.
 4             Mr. Peter S. Kozinets, Esq.
               Mr. Andrew C. Stone, Esq.
 5             Ms. Margaret Wu Perlmeter, Esq.
               Mr. Daniel Boyle, Esq.
 6       40 North Central Avenue, Suite 1200
         Phoenix, Arizona 85004
 7       kevin.rapp@usdoj.gov
         peter.kozinets@usdoj.gov
 8       andrew.stone@usdoj.gov
         margaret.perlmeter@usdoj.gov
 9
     For the Government:
10       UNITED STATES DEPARTMENT OF JUSTICE
         By:  Mr. Austin Berry, Esq.- Appeared telephonically
11       1301 New York Avenue, NW, 11th Floor
         Washington, DC 20005
12       austin.berry2@usdoj.gov

13   For the Defendant Michael Lacey:
         LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
14       By:  Mr. Paul J. Cambria, Jr., Esq.
         42 Delaware Avenue, Suite 120
15       Buffalo, NY 14202
         pcambria@lglaw.com

16

17   For the Defendant Scott Spear:
         FEDER LAW OFFICE, P.A.
18       By:  Mr. Bruce S. Feder, Esq.
         2930 East Camelback Road, Suite 160
19       Phoenix, AZ 85016
         bf@federlawpa.com
20       - and -
         KESSLER LAW OFFICE
21       By:  Mr. Eric Walter Kessler, Esq.
         6720 N. Scottsdale Road, Suite 210
22       Scottsdale, AZ 85253
         eric.kesslerlaw@gmail.com

23

24

25
```

UNITED STATES DISTRICT COURT

3

```
 1
    For the Defendant John Brunst:
 2       BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
         LINCENBERG & RHOW, P.C.
 3       By:  Mr. Gary S. Lincenberg, Esq.
         1875 Century Park E, Suite 2300
 4       Los Angeles, CA 90067
         gpanchapakesan@birdmarella.com
 5       glincenberg@birdmarella.com

 6
    For the Defendant Andrew Padilla:
 7       DAVID EISENBERG, P.L.C.
         By:  Mr. David S. Eisenberg, Esq.
 8       3550 North Central Avenue, Suite 1155
         Phoenix, AZ 85012
 9       david@deisenbergplc.com

10
    For the Defendant Joye Vaught:
11       JOY BERTRAND, ESQ., L.L.C.
         By:  Ms. Joy M. Bertrand, Esq.
12       P.O. Box 2734
         Scottsdale, AZ 85252
13       joy@joybertrandlaw.com

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

4

**P R O C E E D I N G S**

1

2

3          (Proceedings commence at 11:04 a.m.)

4          THE COURT:  All right.  Please be seated.  This is the

5   continuation of the evidentiary hearing from yesterday.  Let me          11:04:58

6   remind those that are in the public seating area, there is a

7   notation outside of my courtroom that no cell phones are to be

8   used.  And so if you feel compelled that you need to use the

9   telephone, please step out.  That includes texting, including

10  looking at social media, so on and so forth, and that's to          11:05:21

11  prevent any recording of this proceeding.  And so if you don't

12  step out, you will see from time to time we have deputy

13  marshals come in.  I have instructed them that if you are on

14  your cell phone, you will be asked to leave.

15          All right.  Let's proceed.          11:05:40

16          MR. STONE:  Your Honor, quickly, just had a thought.

17  Given the limited nature of this evidentiary hearing and the

18  five or six items that Your Honor was hoping to hear from the

19  evidence, I'm not sure we need to hear from any further

20  witnesses on this issue.  The question that is before the Court          11:05:56

21  on this is whether this 91-page document was Jencks of

22  Mr. Thai, and I believe based on his testimony there is

23  sufficient information for the Court to rule on that.

24          There's also an issue that's been raised with Jencks

25  and Mr. Ferrer, but there is clearly no indication that he even          11:06:17

UNITED STATES DISTRICT COURT

5

```
 1    read this document, much less approved it.  If Your Honor is

 2    inclined to hear from further witnesses, and we do have

 3    Inspector Versoza and Carl Ferrer here and available, I'd

 4    really think there is just a couple questions that would need

 5    to be asked of either of them, and Your Honor could do it          11:06:37

 6    yourself.

 7           You know, for Inspector Versoza, I think the questions

 8    are:  Did you write this document?  And was it intended as a

 9    final version?  I think those two questions would help the

10    Court if there is still some questions on those regards or on      11:06:53

11    those particular issues.

12           And for Mr. Ferrer, it would be simply:  Did you see

13    the draft?  And if you saw it, did you adopt it?  I don't think

14    there is any other evidence that is needed for the Court to

15    make this determination.  I think we can move forward with some    11:07:06

16    argument from the parties if the Court is so inclined, but I

17    think in terms of keeping this limited and making useful time

18    of the -- making use of the Court's time, proper use, I don't

19    think we really need to hear from these other witnesses.

20           THE COURT:  Well, I guess I want to just ask you,           11:07:26

21    Mr. Stone, there's an allegation, or somewhat of an allegation

22    that there is also exculpatory material in there, and I -- I am

23    curious about that because I've parsed through the documents.

24           And in looking at exhibit, I think it's 12, or, sorry,

25    Exhibit 8, No. 8, it appears to me that those paragraphs that      11:07:55
```

UNITED STATES DISTRICT COURT

6

```
 1   are in that draft report were included in publicly-filed
 2   forfeiture proceedings, and counsel were representing clients
 3   in those proceedings.
 4           But I think the position that the defendants have put
 5   forth was that there was potential exculpatory material that      11:08:28
 6   could have been gone into in Mr. Ferrer's testimony, and so I'd
 7   like a little bit more of a record developed on that particular
 8   topic.  I asked the defendants to give me pincites to some of
 9   the transcripts in which they thought there could have been
10   additional examination of Mr. Ferrer; for example, what would    11:08:54
11   have been the outcome if they would have had this particular
12   document, and that's what I'm interested in as well.
13           MR. STONE:  Your Honor, I think the papers do a better
14   job of explaining that issue, and I can explain why.  In the
15   defendants' motion, this is Document 1967, they go through a     11:09:14
16   number of paragraphs on page 4 and 5 about these examples of
17   this alleged exculpatory information that would have permitted
18   them to cross-examine Mr. Ferrer differently, and they cite to
19   paragraphs in Exhibit A and they cite to those paragraphs.
20           THE COURT:  Well, I think, though, and I will make the   11:09:47
21   assumption, but I will ask Mr. Lincenberg, I don't take that to
22   be the totality of what you were going to put forward as
23   different evidence, is that correct, those bullet points on
24   page 4?
25           MR. LINCENBERG:  I think page -- pages -- pages 4        11:10:11
```

UNITED STATES DISTRICT COURT

ER 15109

7

```
 1   through 7 cover some of that.  I think it's page 7 that has
 2   footnotes which go into some of the pincites.
 3          And Your Honor, as a general matter, our position is
 4   not whether there were -- there was information that we had.
 5   It's that Mr. Thai was a witness who the government called.  He    11:10:43
 6   was available.  Our defense, mine in particular, was focused on
 7   a lack of credibility of Mr. Ferrer and limits on Mr. Thai's
 8   testimony.
 9          And based upon the fact that we now have what we
10   believe is a prior report from Mr. Thai, and certainly a          11:11:00
11   document he was well aware of and reviewed and agreed with, we
12   could have used him as well to impeach Mr. Ferrer.
13          And so we set out some of those examples -- some of
14   the examples where there is inconsistencies, for example, with
15   Mr. Ferrer's testimony.  Dealing with -- three of the examples    11:11:24
16   that come to mind are Posting Solutions, the role of Michael
17   Gage, and Mr. Ferrer's involvement with foreign entities.  This
18   report lays out, for example, that he was the ultimate business
19   owner of the foreign entities.
20          Some of the pincites on his Posting Solutions              11:11:47
21   testimony are in the footnote.  I can grab the brief.  I think
22   it's footnote 2.  Footnote 2 and 3 deal with, one of them is
23   Ferrer's testimony, and one of them are arguments that Mr. Rapp
24   made in his closing that we dealt with.
25          Some of the other things that are not exact pincites       11:12:07
```

UNITED STATES DISTRICT COURT

8

1   because throughout, you know, part of the debate that the

2   defense and the government were having about a lot of these

3   entities was the government trying to suggest that Mr. Brunst

4   was centrally involved in setting them up and running them and

5   so forth.                                                    11:12:31

6        And here we have a witness who is in court with a

7   report which contains statements of Mr. Ferrer where Mr. Ferrer

8   is making statements to, let's even just assume it's for

9   Versoza.  We know from the reports we've gotten that Mr. Thai

10  was involved in the interviews of Mr. Ferrer, but there's      11:12:52

11  inconsistencies.

12       In the 302s we received, it did not contain much

13  detail about the wires and the tracing.  There was some

14  references to the different accounts and businesses that the

15  government referred to as shell companies.  Much more detail    11:13:13

16  about statements that Ferrer is making to government's agents

17  show up in Exhibit A.  So those are some of the points with

18  inconsistencies with Ferrer.

19       There were other points we were pointing out about

20  inconsistencies between Mr. Thai's testimony and things in his  11:13:31

21  report.  One example that we highlight is the payroll point.

22  Mr. Thai in his examination, frankly on cross-examination, was

23  very much:  I didn't look at the purpose behind any of these

24  wires or anything, so forth and so on.  Even if you just accept

25  what Mr. Thai says in his e-mails, that Exhibit A is a joint     11:13:59

UNITED STATES DISTRICT COURT

9

```
 1   report, or a Versoza report, even if you accept it at that,
 2   there is all of this discussion about purpose and how it
 3   constitutes money laundering and subject to forfeiture and
 4   alike, and there's an inconsistency with regard to payment of
 5   payroll.                                                          11:14:20
 6         Now the government might have an answer to it, but in
 7   the report it talks about this Prosperity Bank account, I think
 8   it was out of the Prosperity Bank account, where they talk
 9   about how that was used to pay Backpage payroll, and Mr. Thai
10   had that testimony about the Cereus Properties account being    11:14:45
11   used to pay Backpage payroll, which we believe was untrue and
12   was one of the things that Mr. Rapp argued in his closing, and
13   we have the pincite to that in our brief.
14         One additional thing that I think Mr. Feder wants to
15   add is we received more Jencks yesterday.  This includes prior  11:15:06
16   e-mails from Mr. Ferrer with Mr. Versoza and the like.
17   Mr. Feder and Mr. Cambria are in a better position to address
18   that, but I think it also expands the issue that we're raising
19   about discovery that wasn't produced that takes it to a whole
20   other level, and this would also, I think, be the subject of    11:15:34
21   the examination that counsel want to do with Mr. Versoza and
22   Mr. Ferrer, and they can address that if the Court wants to go
23   into that in greater detail.
24         THE COURT:  Well, I guess the central question in my
25   mind is as it relates to all of this, is the disclosure.  The   11:15:53
```

UNITED STATES DISTRICT COURT

10

1  Exhibit A material, which is the focus of the hearing, is it

2  your position that none of that material, the substance of it,

3  had been previously produced?

4       MR. LINCENBERG:  No.  The government is correct that a

5  lot of the substance was previously produced.          11:16:28

6       THE COURT:  And so that goes to the next point, how

7  can it then be a surprise to you, either through Mr. Thai's

8  testimony or Mr. Ferrer's, as to how they would testify when

9  you had the material that you could have examined them on?

10      MR. LINCENBERG:  Well, two things.  First, the Court   11:16:53

11 asked me is it your position that none of it was previously

12 produced, and I said, no, a lot of it was.  I don't believe it

13 was all.

14      THE COURT:  The material, the substance.

15      MR. LINCENBERG:  The substance of it.  So for example,  11:17:07

16 Ferrer's statements in there, the fact that Ferrer is making

17 certain statements not produced.  But what's more important to

18 us is the source of the document.  And if you accept our

19 position that this is Jencks, or even if the Court doesn't

20 accept it but accepts that it's relevant material for          11:17:29

21 cross-examination of Mr. Thai, who is the witness they called

22 for all of the wire transfers, not Versoza, that we now have a

23 prior statement of him.

24      I can't just take in the same manner a prior statement

25 of Versoza and cross-examine Thai with it.  It's not that I    11:17:46

UNITED STATES DISTRICT COURT

11

```
1   couldn't try, but my experience, and there were a lot of
2   objections at times by the government, where I would try to do
3   an impeachment, or co-counsel would, and the Court ruled, well,
4   that's not that person's prior statement or something that they
5   are necessarily familiar with.  This is something that clearly,      11:18:07
6   it's either a prior statement or at least it's part of the work
7   that, as Mr. Thai says, you know, I produced the summary charts
8   that went into this if you look at these e-mails and so forth,
9   and it opens up a whole new area where we now have a witness on
10  the stand, who is the only witness they are calling in this          11:18:28
11  case, to go through wires and money, the money laundering
12  counts and so forth, where we can use that document for
13  impeaching him and use that document with him to also impeach
14  Mr. Ferrer.
15        MR. STONE:  Your Honor, if I may, based on                     11:18:48
16  Mr. Lincenberg's argument, it really supports my initial
17  argument is that it hinges on Mr. Thai.  What is important to
18  the defense through Mr. Lincenberg's argument is that is this
19  document tied to Mr. Thai?  Is it his Jencks?  If it's his
20  Jencks, they can cross-examine him on this information despite       11:19:08
21  the fact that all this information was previously produced in
22  other sources, including, I might add, every single statement
23  attributed to Mr. Ferrer, and that's in Exhibit A, and usually
24  they are disclosed in more detail in other documents.
25        But because the defense's whole point here is that            11:19:24
```

UNITED STATES DISTRICT COURT

12

1   this was a document that relates to Mr. Thai, meaning it's his

2   Jencks, there is now evidence in the record for Your Honor to

3   make that determination, and we don't need to have anymore

4   witnesses on this issue since it only relates to Mr. Thai.

5           MR. LINCENBERG:  Well, but again, it's Mr. Thai's --                 11:19:45

6   it's a document that it's either Mr. Thai's report or not.  In

7   the 2019 e-mail from Mr. Thai to Mr. Stone, you know, "Lyndon

8   and I put together flow charts and notes for the seizure

9   warrants."

10          For them to say that, well, we have a seizure warrant,              11:20:05

11  so you already knew this, and it's Versoza who did it, but this

12  is the guy who we now see in an e-mail putting together all

13  this stuff, which that part is consistent with his testimony at

14  trial.  It's inconsistent, I think, with the impression he is

15  leaving in the hearing yet.  Mr. Thai writes:  I thought those             11:20:25

16  items would be good to use as a basis for the summary charts.

17  Then he says, but I wanted to format that material to whatever

18  you think would flow best.  And his testimony yesterday was:  I

19  just did some formatting.  He's basically saying:  I put

20  together all these charts with Lyndon and flow and this and               11:20:43

21  that, and I also wanted to format it.  It's not that all I did

22  was formatting.

23          He also writes a couple weeks ago, again, calling it

24  "the document that Lyndon and I put together years ago."  And

25  Mr. Stone, because he's a man of integrity, which is why I                11:20:58

UNITED STATES DISTRICT COURT

13

```
 1   think there is some inquiries that should be made of Mr. Stone,
 2   and I don't know if Mr. Boyle is relevant or not to this.  It
 3   says:  We're producing the attached e-mail in -- in our
 4   continued efforts to comply with the Jencks.  As we did for
 5   trial, we reviewed our files to determine whether there were        11:21:16
 6   any communications that could be deemed a statement under 3500.
 7   We have determined that the attached e-mail may fit into that
 8   category.
 9          So this is produced to us because of Mr. Stone getting
10   this in front of them and focusing on it and saying:  You know      11:21:31
11   what, I better produce this.  He may say it's potentially
12   Jencks or maybe Jencks, we think it is Jencks, but that's where
13   we are left.
14          MR. STONE:  That further supports where there should
15   be no evidence, no additional evidence for this hearing.  That      11:21:46
16   was just a legal argument.  Your Honor has the e-mails from
17   Mr. Thai, you have his testimony from yesterday, and you can
18   make the determination based on that evidence.  Happy to argue
19   this more, but I think at this point we are just making
20   arguments.                                                          11:22:01
21          MR. LINCENBERG:  Well, I think it's relevant for other
22   counsel to talk about the other e-mails that we also just
23   received.
24          THE COURT:  Well, I haven't seen them and I am not
25   going to take up something blindly.  You certainly can provide      11:22:10
```

UNITED STATES DISTRICT COURT

14

```
 1   it to the Court, give me an argument why you think it's Jencks,

 2   we can be back here again, but I am not going to entertain it

 3   now.

 4        Does anyone have anything further to inquire on

 5   Document 1967, any other counsel?  Mr. Kessler.                    11:22:35

 6        MR. KESSLER:  I do not, but Mr. Feder does.

 7        MR. FEDER:  Judge, as to what's already been before

 8   the Court?

 9        THE COURT:  Yes.

10        MR. FEDER:  No.  We would have asked Mr. Ferrer and          11:22:48

11   Mr. Versoza follow-up questions about whether or not there are

12   other reports, whether or not there are other 302s and things

13   like that, but then the new disclosure that was made last night

14   by the government, number 51, indicates, number one, that

15   there's been Bates numbers, the same Bates number on different    11:23:04

16   documents, which throws into question the entirety of their

17   disclosure, number one.

18        And then number two --

19        THE COURT:  How so?

20        MR. FEDER:  I will give you an example, Judge.  There         11:23:19

21   is an e-mail to Mr. Stone this morning, USABP Bates number

22   0037964, that is on one of these Way Back Machine Backpage that

23   may have been an exhibit in the trial, and then there is

24   another with the exact same page that is an e-mail from

25   Mr. Versoza in 2018 with Ferrer.  So that's one issue.            11:23:44
```

UNITED STATES DISTRICT COURT

15

```
1          The second issue is part of the disclosure last night,
2    disclosure 51, was an e-mail exchange indicating that
3    Mr. Ferrer is sending Versoza listings of retainers paid of all
4    the lawyers for Backpage, one of which is Nanci Clarence to the
5    tune of $4 million.                                              11:24:14
6          Maybe the Court remembers my sterling
7    cross-examination of Mr. Ferrer when I was trying to get him to
8    talk about how much money he had paid Nanci Clarence, whether
9    or not it was Backpage money, et cetera, and he feigned not
10   knowing anything about it, and this e-mail that we are talking  11:24:31
11   about is a 2018 e-mail.  That was what was in the new
12   disclosure last night.  I mean, that's what there would be, and
13   I think --
14          THE COURT:  It's from 2018?
15          MR. FEDER:  Sorry.                                        11:24:44
16          THE COURT:  Did you say it was from 2018?
17          MR. FEDER:  Yes.  So if the Court doesn't want us to
18   get into apples and oranges, that's okay, but Ferrer and
19   Versoza are here.  I am happy to give the Court copies of that
20   and the Court can review it, as can the government, but that's  11:25:00
21   what was in their disclosure last night.  I am not exactly sure
22   of the time, but around 5:00 o'clock.
23          THE COURT:  Was that a document that was previously
24   provided, this 2018 e-mail?
25          MR. RAPP:  No, it hasn't been.                            11:25:16
```

UNITED STATES DISTRICT COURT

16

```
 1          MR. FEDER:  This was just a sampling, but at least to

 2    me the most relevant.

 3          MR. STONE:  Your Honor.

 4          MR. FEDER:  It goes directly to the cross-examination

 5    of Mr. Ferrer when he feigns ignorance.  Obviously had we had      11:25:35

 6    that e-mail, that would have been an impeachment; clearly

 7    Giglio.

 8          THE COURT:  Or it would have been refreshing

 9    recollection.

10          MR. FEDER:  Either one.                                      11:25:47

11          THE COURT:  Yes.

12          MR. STONE:  Your Honor, I think that expands what the

13    evidentiary hearing is for.  I am not saying we shouldn't take

14    it up.  I just think Your Honor should be well informed with

15    what the documents are, and we can provide those to Your Honor.    11:25:59

16    We can take it up at a later date, but I think right now for

17    the issue before Your Honor, we should handle that and --

18          THE COURT:  Well, I think, Mr. Stone, the unresolved

19    question, and the way that I read the defendants' motion is

20    that this Exhibit A, it's also alleged it was adopted or a         11:26:18

21    statement of Mr. Ferrer, and certainly I think they are

22    entitled to ask him to what extent he reviewed the statement,

23    if in fact he contributed it to it, if he was part of the

24    drafting process and so on and so forth.  I'm not going to make

25    any assumptions about what his answers would be, and whether or    11:26:52
```

17

```
 1   not he used it to prepare for his testimony.
 2          I think those are relevant inquiries, but it seems to
 3   me, though, and at bottom with regard to Exhibit A, there
 4   should not have been surprise because from everything that I've
 5   heard, it has not been refuted that the underlying material had    11:27:27
 6   been produced; in other words, you had the capacity to mine the
 7   information, they were in publicly-filed documents in other
 8   cases related to the forfeiture proceedings in California, and
 9   there should not have been any reason that you could not have
10   pulled these documents or the underlying material to examine       11:27:59
11   Mr. Thai, to examine Mr. Ferrer.  I think that's the issue.
12          And I have not heard anything to the contrary.  And so
13   I don't find that there was any sort of purposeful hiding of
14   that material by the government, and I find it difficult to
15   make a prejudicial finding to the defendants because of that.      11:28:39
16          I mean, to be sure, there are millions of reams of
17   documents that you have had to pull through, but certainly when
18   you have the same counsel that are involved in the asset
19   forfeiture proceedings in different courts on which document
20   Exhibit A 1 provides information about, you should have            11:29:02
21   knowledge of it.  You have information about it.  And so you
22   didn't use it, for whatever reason, in your examination.
23          And at least at this juncture without anything more, I
24   don't find that the material in Exhibit A 1 is Jencks material.
25   A witness under oath has testified that he did not write the       11:29:38
```

18

1   document.  He contributed to the formatting, some of the

2   corrections made in it.  It's a document that he obviously left

3   service prior to his testimony, and it was a document, I think,

4   that he had from back in November of 2021, which was the

5   version that he submitted.  He didn't adopt the document as his     11:30:07

6   own.

7           In fact, when Mr. Lincenberg questioned him about

8   paragraphs in the document, he seemed confused, unaware of what

9   the content was, so that tells me even more that he didn't

10  participate in the drafting of it.                                   11:30:27

11          The government produced a, I think what he

12  characterized as the spreadsheet from which he developed his

13  testimony and his, which was developed throughout the course of

14  his investigation.  And I also think it's relevant here that

15  these are -- there seem to be two different responsibilities by     11:30:54

16  these two different individuals.  Mr. Thai was looking at the

17  claims in the superseding indictment for its development, and

18  then we have this other part two, where are the assets being

19  used, which is somewhat related, but also very different.

20          And so I do make the finding that Exhibit A does not        11:31:21

21  include Jencks material.  I'll look at the motion and the parts

22  of the document and the exhibits a little bit closer again as

23  to this other issue about exculpatory information, but at

24  bottom, I think the character of the argument is, for example,

25  for Mr. Lincenberg that Mr. Brunst wasn't a signatory to many       11:31:50

UNITED STATES DISTRICT COURT

19

```
 1   of these items, but those points were made.  They were made
 2   over and over and over again.  They were made in closing
 3   arguments.  And so it's -- it would have been cumulative if it
 4   was something of a different statement.  That's the question
 5   that I have to look at in terms of any sort of exculpatory or      11:32:15
 6   favorable information.
 7          And so that's my preliminary ruling at least as to the
 8   question about whether it constitutes Jencks material.  I'll go
 9   back and examine the exhibits further in terms of whether or
10   not it's Bradio -- Bradio -- mixing the two together -- Brady      11:32:41
11   or Giglio, although I learned long ago that it's Giglio, you
12   know that, Mr. Cambria.
13          MR. CAMBRIA:  I do.
14          THE COURT:  And so I will look at it further and make
15   that determination.  But in that regard, is there any            11:33:01
16   further -- I will let defendants because it was their motion
17   make a final argument or if you have final points that you wish
18   to direct me to in your exhibits, I will take a look at those.
19          MR. LINCENBERG:  Just one further point that
20   Mr. Cambria has a point.  Just in terms of citations, if the     11:33:20
21   Court is going to go back and look at it, from the Quoc Thai
22   direct examination, the citation dealing with payroll was
23   October 13th, which is Day 17, and it's page 136, lines 18
24   through 20, for example, was one of the citations that I don't
25   believe was in the brief.  At page 138, Mr. Thai talks about     11:33:49
```

UNITED STATES DISTRICT COURT

20

  1    Posting Solutions at the top of the page.  I think those are

  2    the two I was going to bring to the Court's attention.

  3            THE COURT:  So page 136 and 138?

  4            MR. LINCENBERG:  136 and 138, and then I'd also bring

  5    to the Court's attention, it's a little more tangential, but on          11:34:18

  6    the cross-examination, which the Court may recall was two days

  7    later, it was Day 19, page 34 through 36, has some testimony

  8    dealing with loan payments, which I think is also inconsistent

  9    with the report.

 10            THE COURT:  All right.  Mr. Cambria.                              11:34:49

 11            MR. CAMBRIA:  Thank you.  Two things on two subjects.

 12    On the current subject, there clearly were several versions of

 13    this exhibit.  And under the *Bibbero* case, which is Ninth

 14    Circuit case, 749 F.2d 581, we're entitled to all those

 15    versions.  In fact, in that case there were several versions of         11:35:16

 16    a DEA report not turned over, and the Court reversed the

 17    conviction.

 18            So we would like to have those versions so that we can

 19    fully examine the statements or potential statements that would

 20    have been available to us for cross.                                     11:35:37

 21            THE COURT:  Let me stop you right there because I -- I

 22    don't want to lose the question to Mr. Stone.  Was the -- I'm

 23    operating on the understanding that this financial account

 24    tracing document, was this the version used for the search, the

 25    search warrant applications on the seizure case?                        11:36:11

21

```
 1        MR. STONE:  Well, this, I think the testimony from
 2   Mr. Thai was this document seemed to grow over time, but what
 3   Your Honor will be able to determine is when comparing the
 4   language from Exhibit A to the search warrant, is that does
 5   change a little bit, and often times it expands in the warrant      11:36:33
 6   affidavit because they are taking this draft document and then
 7   expanding it or modifying it slightly to put it into the
 8   affidavits.
 9        And so, yeah, it's often times verbatim, but there are
10   modifications, for example, with the Ferrer statements in          11:36:54
11   looking at, I think there is 23 Ferrer statements cited in
12   Exhibit A, which are all in the affidavits for the warrants.
13   There is about half of them more information provided that
14   supports the Ferrer's statements.
15        THE COURT:  So as to the versions that Mr. Cambria is         11:37:13
16   referring to, are those prior versions, and would they also
17   have been included in those affidavits?
18        MR. STONE:  I think Mr. Thai testified that the last
19   two versions that he had have now been turned over to the
20   defense, and there was only one change in it and it was like a     11:37:36
21   date that he put on the first page.  The -- in 2018 there are
22   two affidavits that are attached to our motion.  One earlier in
23   2018 and one, I think, October or November of 2018.  So that
24   includes a lot of the exact information from these documents,
25   but then you look at the civil seizure, sorry, the civil          11:37:59
```

UNITED STATES DISTRICT COURT

22

1    complaint supporting forfeiture in CDCA, which was filed in

2    June of 2020, which I believe is Exhibit 2 to our motion, and

3    that would, you know, reflect information that had been

4    developed between 2018 and 2020.

5          So between those three, they are going to have all the    11:38:19

6    information that derives from or comes from Exhibit A.

7          THE COURT:  All right.

8          MR. CAMBRIA:  Our position on that, Your Honor is a

9    couple of different things.  Number one, we don't know any of

10   that unless we see all the versions.  And to the Court's point    11:38:37

11   about, well, all this information was in another document,

12   there's a difference between another document not authored by

13   the person who is on the stand who could simply say:  Well, I

14   don't know, or I haven't seen it, or whatever.  And we wouldn't

15   know that unless we examined them as opposed to:  You made this    11:38:58

16   statement.  Here it is.

17         So without all the versions, and there's several

18   versions, it's obvious from looking at this, what was sent.  In

19   fact, there was even one referred to as a future version one

20   that they were supposed to get.  So we need to see all the    11:39:22

21   versions before you can make a determination as to whether all

22   the information was provided.  Even if all the information was

23   provided, it's a much different situation to impeach someone

24   with something they said as opposed to referring them to

25   something someone else said.  So that's why that would be    11:39:39

UNITED STATES DISTRICT COURT

ER 15125

23

1  important.

2        The other thing is we did make a discovery request for

3  any communications between Versoza, Thai, Ferrer, relating to

4  this report, and we haven't had any response on that.

5        The other issue that I wanted to include is yesterday   11:39:56

6  we got this Jencks material.  We are now specifically including

7  that in our motion with regard to Jencks, and the reason is --

8        THE COURT:  Mr. Cambria, I just said that I'd like it

9  in a separate matter.

10        MR. CAMBRIA:  That would be fine, but can I just give   11:40:17

11  an intro to this?

12        THE COURT:  You can highlight it, yes.

13        MR. CAMBRIA:  We have indicated that it's

14  Exhibit 6273, which we have given you a copy of.  What is

15  important about this is it is, it is an e-mail from Carl Ferrer 11:40:33

16  to Versoza and Baum, his attorney, with several attachments.

17  It's July 13th of 2018.  All right.  So clearly before he was a

18  witness.

19        What's critical about this is that one of the things

20  that it demonstrates is a subject matter that was attempted to  11:40:58

21  be covered in cross-examination, which was benefits that he

22  would have received as a result of his plea bargain, and one of

23  them would be the utilization of otherwise seized or seizable

24  money for his legal defense.  At the time there were a number

25  of questions asked of him about trying to pin down how much    11:41:27

UNITED STATES DISTRICT COURT

ER 15126

24

```
 1   that was, and he indicated repeatedly he couldn't remember,

 2   couldn't remember, couldn't remember.

 3        Well, this particular e-mail from him attaches a

 4   schedule, and in that schedule is a $4 million payment to his

 5   lawyer, and so that would clearly have been something very        11:41:51

 6   important to cross-examine him on, to confront him with when he

 7   indicated he couldn't recall.  Do you recall the questions was

 8   like:  Was it 100,000?  Was it 200?  And this:  I don't

 9   remember.  I don't remember.  It's hard to believe that a jury

10   would think he wouldn't remember $4 million.  And obviously the   11:42:14

11   jury could weigh that $4 million benefit that he got as a

12   result of his plea bargain in determining his credibility, a

13   witness very, very critical to the prosecution's case.

14        So with regard to this exhibit, which a copy of which

15   you can review, it clearly is a statement of Mr. Ferrer because  11:42:36

16   it is sent by Mr. Ferrer, and it includes this financial

17   information with it and indicates that it includes this

18   financial information.

19        So here is a very critical piece that could have been

20   used for cross-examination on a very major witness.  There's no  11:43:00

21   doubt it's a statement.  This is absolute self-authenticating

22   as a statement.  There is no doubt that it relates to his

23   testimony, which is what you need for Jencks, because he was

24   asked specifically about monies to his lawyers, and there is no

25   doubt that it would have an impact, reasonably speaking, on any  11:43:19
```

25

1    juror that part of his deal was to get $4 million plus.

2         So we have this to hand up.  They just gave it to us

3    yesterday.  We asked them if they claim that it was previously

4    disclosed.  Mr. Rapp indicated today the answer to that is no,

5    and so here it is.                                              11:43:43

6         MR. LINCENBERG:  I'm advised by the paralegal that

7    these documents were provided to the Court this morning, so the

8    Court has them, and it's a number of e-mails.  Some of them

9    also deal with payroll, which relates to one of the issues I

10   had raised earlier about Exhibit A where Mr. Versoza is going   11:43:59

11   back and forth with Ferrer about what company is doing payroll

12   for Backpage.

13        THE COURT:  Well, I haven't seen them, so I am sure

14   they are somewhere.

15        But in any event, yes, Ms. Bertrand.                       11:44:14

16        MS. BERTRAND:  Thank you, Your Honor.  May I approach?

17        THE COURT:  Yes, please do.

18        MS. BERTRAND:  I have two comments to make sure there

19   is a clear record here.  The first is regarding the Central

20   District of California matters.  I don't believe my client is   11:44:37

21   party to those.  I don't believe I have been recipient of any

22   discovery as to that.  I obviously had discovery in this

23   matter.  I'm not sure if Mr. Padilla is named in that Central

24   District of California matter.  I don't believe he is.  But I

25   think that that -- that is an important distinction here with   11:45:00

UNITED STATES DISTRICT COURT

```
 1    regards to at least two defendants that whatever has gone on in
 2    those matters, we have not been party to.
 3         I acknowledge we are in a JDA, so we share a lot of
 4    different information, but that doesn't mean we share -- there
 5    is no guarantee that Mr. Eisenberg and I have the same universe      11:45:22
 6    of information regarding that seizure and forfeiture litigation
 7    that the other defendants do.  I don't -- I don't recall in the
 8    case file I received from Mr. Weiss four-plus years ago that
 9    there was any indication that that would pertain to my client.
10    So I just want to make that record clear.                           11:45:46
11         And the second --
12         THE COURT:  To be clear, it's because your client was
13    not charged with any of the forfeiture counts.
14         MS. BERTRAND:  Right.  Yes, ma'am.
15         THE COURT:  All right.                                         11:45:59
16         MS. BERTRAND:  The second, it's more of just a
17    comment, Your Honor, that the Court might want to entertain or
18    not, but I'm troubled that there was even the delay in these
19    new disclosures, and the government hasn't given a reason why.
20    Why don't just give it to us?  Why not give it to us,               11:46:17
21    especially stuff predating 2019?  Why not give it to us with
22    these initial Jencks deadline?
23         Related to that, why now resist us talking to these
24    witnesses again to see what happened and to see what really,
25    and flesh this out?  This issue with Ferrer is very troubling       11:46:39
```

UNITED STATES DISTRICT COURT

27

```
 1   because we now have -- we had Mr. Ferrer on the stand saying, I
 2   am going to round numbers here, but I think he said more
 3   than -- he met with the government more than 30 times.  When we
 4   pressed him about communication with the government, he would
 5   get mealymouthed and said things like:  Well, my lawyer was the      11:47:00
 6   one doing that.
 7          We now know Mr. Ferrer was communicating directly with
 8   these agents.  Whether his lawyer was cc'd on those e-mails or
 9   not is irrelevant.  We didn't receive those e-mails.  There is
10   nothing about this that could possibly be excused.                   11:47:23
11          And it would have greatly impacted my ability to
12   cross-examination whether Ferrer.  Imagine, Your Honor, if
13   there is an e-mail where he says:  I don't know why Joye Vaught
14   is in this.  Why do you keep bringing her up?  Or she was a
15   minor player.  She didn't have any control.  Maybe there is,       11:47:44
16   maybe there isn't, but I don't know because we never received
17   those e-mails.
18          So I think that this idea that we can just write this
19   off as not prejudicial, or that, you know, Joy, you had all the
20   information anyway; you did a great job with him.  If any of my    11:48:02
21   cross-examination of Mr. Ferrer could have been different
22   because of these e-mails, it's material, and I should have
23   received it.  That's all I have, Your Honor.  Thank you.
24          THE COURT:  Final word.
25          MR. STONE:  Just quickly, and just on the first issue      11:48:19
```

28

```
 1    that Ms. Bertrand raised.
 2            The only potential issue with Exhibit A that could
 3    apply to Ms. Vaught or Mr. Padilla were the Ferrer statements.
 4    There is 23 statements, as I said before.  Each one of those
 5    was contained in more detail in the affidavits.  The affidavits    11:48:35
 6    were produced in this case in 2018, and that's Exhibit 6 and 7
 7    to our motion.  So that was -- that was in the discovery, and
 8    Ms. Bertrand and Mr. Eisenberg had that.  Thank you, Your
 9    Honor.
10            THE COURT:  Well, you know, the -- my observation is    11:49:05
11    this, just with regard to Exhibit A:  Having made my
12    determination, I don't find it to qualify as Jencks material,
13    and as such, arguably the government didn't have to disclose
14    it, but in any event, the material related to it had been
15    disclosed.  I'll look at the other matter with regard to the    11:49:30
16    Thai testimony in the transcript as well as Mr. Ferrer's when I
17    examine this late disclosure.
18            And is there anything further then from the
19    government?
20            MR. STONE:  No, Your Honor.  Thank you.    11:49:51
21            THE COURT:  Anything further from defendants?
22            MR. CAMBRIA:  I'd still like to get the versions if we
23    could, Your Honor.
24            THE COURT:  I will look at the case you cited and
25    determine that.    11:50:05
```

UNITED STATES DISTRICT COURT

29

```
 1              Mr. Eisenberg, you're standing.

 2              MR. EISENBERG:  I am, Your Honor.  May I address the

 3    Court?

 4              THE COURT:  Yes.

 5              MR. EISENBERG:  Your Honor, I think the point has been    11:50:12

 6    well made, and I am not going to rehash it.  I would

 7    appreciate, of course, the Court looking at what was disclosed

 8    by us, I think, last night.

 9              The bottom line for me is whatever cross-examination

10    there could have been of Mr. Ferrer that was not undertaken      11:50:25

11    because we didn't have all of the material could very well have

12    caused this jury, which is only, as far as I can tell, come

13    back with a guilty -- I am sorry -- a verdict on one count, it

14    may have had an impact.  Obviously the jury has the case now,

15    but I find this really very important with respect to the        11:50:48

16    failure to disclose how much money was paid to Mr. Ferrer's

17    attorney at a time when he was on the stand and he could not

18    recall.

19              His credibility is essentially the whole case against

20    at least my client, Your Honor, and I know the Court is going    11:51:07

21    to consider this, so I just thought I would echo what my

22    colleagues have said.  Thank you, Your Honor.

23              THE COURT:  All right.  Thank you.  There being

24    nothing further, then I will take that other matter under

25    advisement as it relates to Exhibit A and whether or not it      11:51:21
```

UNITED STATES DISTRICT COURT

30

```
 1    includes exculpatory or impeachment material, and then I'll
 2    look at the other late disclosures and we will proceed.
 3              MR. FEDER:  Judge, as to the other disclosure, does
 4    the Court want some kind of pleading to point out the various
 5    ways those disclosures are relevant?                          11:51:46
 6              THE COURT:  That would be helpful, but if you can, do
 7    so soon.  Time is of the essence.  When can you have that to
 8    me, Mr. Feder?
 9              MR. FEDER:  I will do my best.
10              MR. CAMBRIA:  We haven't withdrawn our request to     11:52:00
11    examine the witnesses, Your Honor.
12              THE COURT:  I'm sorry.
13              MR. CAMBRIA:  I said we have not withdrawn our request
14    to examine the witnesses.  I would like to have the other
15    versions before that happens.                                 11:52:10
16              THE COURT:  I will consider that as well.
17              MR. CAMBRIA:  Appreciate that.  Thank you.
18         (Proceedings concluded at 11:52 a.m.)
19         (Proceedings reconvened at 1:53 p.m.)
20              THE COURT:  Please be seated.  And I know my law clerk 13:53:28
21    has handed out copies of the juror's question, and the juror's
22    question is, "Page 47 in the instructions covers good faith.
23    Can good faith be applied to all counts or is good faith tied
24    to a particular charge?"
25              It is signed Juror No. 2.                            13:53:56
```

UNITED STATES DISTRICT COURT

31

```
 1            My review of the instructions are indeed that the
 2   good-faith instruction covers all counts.  What is the
 3   government's position?
 4            MR. STONE:  We agree, Your Honor.
 5            THE COURT:  Who wishes to speak from defense?          13:54:28
 6            MS. BERTRAND:  Hi.  Good afternoon.  We agree as well.
 7            THE COURT:  All right.  And so the Court will simply
 8   answer the question that the good-faith instruction can be
 9   applied to all counts.
10            MR. CAMBRIA:  Thank you.                               13:54:48
11            THE COURT:  All right.  We are adjourned.
12       (Proceedings concluded at 1:54 p.m.)
13       (Proceedings reconvened at 3:32 p.m.)
14            THE COURT:  All right.  Please be seated.  Has the
15   government had an opportunity to review the question?          15:32:28
16            MR. STONE:  Yes, Your Honor.
17            THE COURT:  Have the defendants' counsel reviewed the
18   question?
19            MS. BERTRAND:  Yes.
20            MR. EISENBERG:  We have, Your Honor.                   15:32:39
21            THE COURT:  The question reads, "If a defendant is
22   found not guilty in charge one per page 27 lines 14 and 15, can
23   the same defendant be found guilty of charges 2-51?  If they
24   were not found to be a member of the conspiracy?"
25            And it's signed by Juror No. 2.                        15:33:17
```

UNITED STATES DISTRICT COURT

32

```
 1          The reference to page 27, that is the Pinkerton
 2   instruction, line 14 through 15 are the fourth -- is the fourth
 3   element, and that reads:  Fourth, a defendant was a member of
 4   the same conspiracy at the time the Travel Act offense was
 5   committed.                                                         15:33:48
 6          And I just want to remind counsel that this is
 7   actually a version of what the jury asked yesterday.  In fact,
 8   it's almost, not quite identical, but it's -- the only
 9   difference is that in that question, which was, "If a defendant
10   is found not guilty in charge #1, but found guilty in charges    15:34:21
11   #2-51, can the defendant be charged in Counts 2-51?"  And then
12   they go forward to say, "The question was a concern due to
13   page 27, lines 10-11."
14          Lines 10 through 11, as you will recall, are the
15   second element.  And my recollection is that the Court answered  15:34:47
16   that question "Yes" and referred them back to instruction,
17   separate crime is charged in a separate count and separate
18   consideration of the individual counts at page 16.  It also
19   referred them back to the substantive Travel Act instruction.
20          And so because the two are very similar, I'm inclined     15:35:32
21   to do the same, but only refer them back to the deciding the
22   case as to each crime charged separately.
23          MR. STONE:  Your Honor, I agree it's a similar
24   question, but they point to a different part of the Pinkerton
25   instruction on page 27.  I think they point to the fourth        15:36:05
```

UNITED STATES DISTRICT COURT

33

1    element, rather than the second element.  So I think we -- the

2    Court could be a little bit more helpful in clarifying this

3    issue for the jury, and so a response to be something like,

4    "Yes, pursuant to or in accordance with or under the

5    instructions starting on page 30."                                15:36:32

6         Because these are alternative theories of liability,

7    the question is a good one in the sense that if they find that

8    one of the individual defendants is not a member of the

9    conspiracy, they can't be found guilty under a *Pinkerton*

10   theory, but they certainly can be found guilty under the         15:36:49

11   substantive Travel Act charge, which is starts on page 30.

12        So we don't know what the jury, where they are in

13   their deliberations, but the answer to this question is clearly

14   "Yes," but it would have to be under the instruction that

15   starts on page 30.  And so I think if we fashion an answer in    15:37:13

16   that regard, that would be the most helpful.

17        THE COURT:  Who wishes to speak?

18        MR. EISENBERG:  We both, Your Honor.  Thank you.

19        Ms. Bertrand can go first, Your Honor.

20        MS. BERTRAND:  Thanks.  Good afternoon.  Your Honor, I      15:38:00

21   would suggest to the Court that we not go beyond the specific

22   language of the question, which is applying lines 14 and 15 of

23   page 27:  Can a defendant be found guilty if they are not part

24   of the conspiracy?  The answer to that is "No."  Per that -- if

25   that is the line that they have a question about, the answer is  15:38:35

UNITED STATES DISTRICT COURT

34

| | |
|---|---|
| 1 | "No." They have not come back and said: Well, what if we go |
| 2 | to page 30 and apply this and that and the other, they have |
| 3 | those instructions. That has never been a sticking point, and |
| 4 | they were referred to this instruction yesterday. The sticking |
| 5 | point is this *Pinkerton* instruction. And the literal answer to |
| 6 | that is if this person is not a member of the conspiracy, you |
| 7 | cannot use this instruction to find them guilty. |
| 8 | And as I suggested yesterday, we either do not give a |
| 9 | "Yes" or a "No," or here the answer is "No." Applying those |
| 10 | two lines, nothing else. If they have another question, they |
| 11 | know how to ask it. They've been very clear about that. I |
| 12 | don't think it's appropriate to jump ahead and guess what their |
| 13 | next question would be. |
| 14 | So my suggestion, Your Honor, would be to simply say, |
| 15 | "No" or to simply say, "The instruction on page 27 is your |
| 16 | guide." I don't know if Mr. Eisenberg has more to add, but |
| 17 | that's my portion of this argument. |
| 18 | MR. EISENBERG: Your Honor, if it may please the |
| 19 | Court, the other thing I would add is that, I remember the |
| 20 | question from the other day centered on lines 10 and 11. The |
| 21 | difference between the question yesterday and the one today is |
| 22 | on line 10 it talks about a person was a member of the |
| 23 | conspiracy, and that could have included Mr. Ferrer. Doesn't |
| 24 | require that a defendant be a member in the second element. |
| 25 | But the fourth element clearly says, "A defendant was a member |

15:38:52

15:39:19

15:39:37

15:40:00

15:40:27

UNITED STATES DISTRICT COURT

35

1  of the same conspiracy."

2        I think in addition to, direct them to another charge

3  in the indictment by the Court does -- it would champion, if

4  you will, Your Honor, a different approach because it comes

5  from the Court, and I think that is not really what, A, it        15:40:50

6  isn't what they've asked for; and B, I think it overbears what

7  the jury is entitled to do, which is decide the matter

8  themselves.

9        They have the instructions with the Travel Act and I

10 am sure that they have considered them.  So I agree with my       15:41:07

11 colleague.  The answer to this question is "Yes."  The

12 defendant had to have been --

13        MS. BERTRAND:  The answer would be "No."

14        MR. EISENBERG:  No.  The way they worded it.  Okay.

15 No.                                                                15:41:21

16        MS. BERTRAND:  The answer would be "No."

17        MR. EISENBERG:  I get my no's and yeses mixed up.

18        THE COURT:  Mr. Stone.

19        MR. STONE:  Well, look, we can't just say "No" and not

20 say "Yes" under instruction 30 'cause that's misleading.  I       15:41:47

21 have no issue doing both.  Under the theory on page 27, if the

22 defendant was found not to be a member of the conspiracy, he or

23 she could not be found guilty of the charges 2 through 51, but

24 the same defendant could be found guilty under the theory

25 that's articulated starting on page 30.                           15:42:10

UNITED STATES DISTRICT COURT

ER 15138

36

```
 1          MS. BERTRAND:  Your Honor, I think if they want to ask
 2    questions about an alternative theory of liability, they have
 3    more question forms and pens in the back.
 4          MR. STONE:  It's just a misleading answer, Your Honor.
 5          MR. EISENBERG:  Well --                                    15:42:27
 6          THE COURT:  It's not helpful.  I mean, you've made
 7    that point, and it's not helpful.  It's just a response to what
 8    Mr. Stone said.  It is an interesting choice of words now that
 9    I look at it, why is -- can somebody opine on why the
10    distinction between reference to the person versus a defendant  15:43:02
11    in the second and third lines that says, "that person."  The
12    fourth line then says, "a defendant"?
13          MR. STONE:  Of course.  I would be happy to.  The
14    Pinkerton theory, let me just make sure I am tracking what your
15    question was, see, first, a member of the conspiracy, this is   15:43:28
16    the first element, committed the Travel Act offense.  It just
17    needs to be a member of the conspiracy.  Doesn't need to be a
18    named defendant in this action.  We've litigated this issue
19    numerous times in this matter.
20          And the second element tracks the first.  That person   15:43:43
21    was a member of the conspiracy charged in Count 1 of the
22    indictment.
23          Third, that person committed the Travel Act offense in
24    furtherance of the conspiracy.
25          And then fourth goes to the individual defendant who     15:43:55
```

UNITED STATES DISTRICT COURT

37

```
1    they would be finding guilty through this theory.
2           Fourth, a defendant was a member of the same
3    conspiracy as the person who committed the actual Travel Act
4    offense.
5           So that's why the language is a little bit different.    15:44:08
6           THE COURT:  Thank you for reminding me of that.
7           MS. BERTRAND:  And Your Honor, I think that's why it
8    is important to stick with the question that they asked and not
9    expound on other theories.  The jury has for two days struggled
10   with Pinkerton --                                               15:44:26
11          THE COURT:  Let me stop you there.  The question does
12   refer to charges 2 through 51.
13          MS. BERTRAND:  Yes.
14          THE COURT:  And so I don't know how you're saying that
15   they are not considering that.                                  15:44:35
16          MS. BERTRAND:  Your Honor, what I'm saying is the
17   hang-up is with this Pinkerton instruction at lines 14 and 15.
18   And the answer is, if applying lines 14 and 15, if they are not
19   part of the conspiracy, they cannot be found guilty applying
20   lines 14 and 15.                                                15:45:05
21          MR. STONE:  Your Honor, we agree with that.  It just
22   needs to be complete that they could find him under the
23   substantive count.
24          MS. BERTRAND:  That's where the defense objects.  It
25   is not appropriate when answering jury questions to go beyond   15:45:26
```

UNITED STATES DISTRICT COURT

38

```
 1    the question.  And while, yes, it is addressing charges 2
 2    through 51, but so is the Pinkerton instruction, and that is --
 3    that is where their process is.  I don't think it's appropriate
 4    for us to jump ahead in the process for them.  It is
 5    appropriate to stick with the question and the instruction          15:45:47
 6    about which they have a question.
 7            MR. STONE:  Your Honor, our job is to clarify, not to
 8    hide the ball by not giving the full answer here.
 9            MR. FEDER:  Do not advocate.
10            MS. BERTRAND:  There is nothing about hiding the ball        15:46:04
11    about answering their question directly.  What we also cannot
12    do is suggest to them that there's a different way to convict
13    on this case when we don't know if they already addressed that.
14    The question is this specific instruction, and that only.
15            MR. STONE:  Well, if they have addressed it then it         15:46:26
16    will be an easy deliberation for them.  They can just disregard
17    that part of the --
18            MS. BERTRAND:  We cannot assume that.
19            THE COURT:  Well, I do think answering the question
20    reference to the Travel Act instruction is appropriate because     15:46:43
21    they are asking the question whether or not someone can be
22    convicted of a Travel Act offense.  It clearly says that.  Can
23    the same defendant be found guilty of charges 2 through 51,
24    which are the Travel Act offenses.
25            MS. BERTRAND:  However --                                    15:47:13
```

39

```
 1            THE COURT:  That's the end of the question.

 2            MS. BERTRAND:  But the beginning of the question, the

 3     first phrase of that question is, "Per page 27 lines 14 and

 4     15." So the call of the question, which also --

 5            THE COURT:  Which also refers to the Travel Act, lines      15:47:30

 6     14 and 15.

 7            MS. BERTRAND:  They certainly do.  The call of the

 8     question from the jury is, how do we apply lines 14 and 15?

 9     Nothing further.

10            THE COURT:  I do think the response, at a minimum,          15:47:54

11     should refer them back to separate consideration of the

12     individual counts.  That's what we've asked them to do in the

13     instruction.

14            MS. BERTRAND:  The struggle is, Your Honor, that they

15     received that yesterday and they have the same question.  So      15:48:22

16     they've gotten that answer before.  That doesn't seem to be

17     where the struggle for this jury lies.  And I think going

18     beyond and trying to guess is overbroad.  They were told

19     yesterday to consider these counts separately, to consider the

20     defendants separately.  They referred back to the Travel Act     15:48:52

21     specific elements.  That did not answer their question, and now

22     they are simply asking, can we under these two lines on

23     page 27, find someone guilty?  The answer is "No" if the person

24     is not a member of the conspiracy.

25            MR. STONE:  Your Honor, we answered this very similar       15:49:23
```

UNITED STATES DISTRICT COURT

40

1   question yesterday.  To answer it "No" today will be extremely

2   confusing for this jury.  If we're going to add "No," then we

3   need to just make it clear that there is a "Yes" here and it is

4   the substantive instruction on page 30.

5        THE COURT:  And really that is the -- that is the          15:49:42

6   concern is the consistency, and that's why I pulled out the

7   last question because it's extraordinarily similar, and I think

8   that the appropriate response should be at least similar to the

9   manner which the Court answered the latter question.

10        MS. BERTRAND:  Any of my colleagues want to comment?       15:50:17

11   I just want to make sure none of my colleagues are being frozen

12   out here.

13        Your Honor, we tried that approach yesterday.  The

14   jury is indicating that's not the answer they need help with.

15        THE COURT:  Well, that wasn't the question.  It's a        15:50:48

16   similar question.  It's not the same.

17        MS. BERTRAND:  Similar question regarding the same set

18   of instructions on page 27, but as we've noted discrete.  As

19   the Court noted, there is a discrete difference in the

20   language.  And I would also note defense objected yesterday to   15:51:11

21   the answering of the question "Yes."  I think here what is

22   critical is that the jury be told applying page 27 lines 14 and

23   15, the answer is "No."

24        THE COURT:  Well, it may be more concise to answer the

25   question that a defendant who you find not guilty in what they   15:51:52

UNITED STATES DISTRICT COURT

41

```
 1    refer to as charge 1, can be found guilty of charges in Count 2
 2    through 51 even if not a member of the conspiracy.
 3              MS. BERTRAND:  Your Honor, I think that that goes
 4    beyond the question, and I also think it directs them basically
 5    to find the defendant guilty, and that's far more direction        15:52:37
 6    than is proper.
 7              Here, if the Court were going to point out an
 8    alternative theory, it should be something to the effect of:
 9    Applying lines 14 and 15 at page 27 --
10              THE COURT:  Well, I can't single -- well, no, you         15:53:12
11    can't parse out the instruction that way.  You have to read it
12    in total.
13              MS. BERTRAND:  But they did.
14              THE COURT:  I understand that.
15              MS. BERTRAND:  And so the answer is "No" applying         15:53:22
16    that.  There are alternatives that are possible, but applying
17    the strict language of this, the answer is "No."  The jury has
18    also been directed to look at page, I believe it's 30 that has
19    the Travel Act instructions, but the answer to this question is
20    "No."                                                              15:53:55
21              THE COURT:  Well, I actually think an explanation that
22    relates back to the Travel Act is, again, important or at least
23    the way they referred to it as charges 2 through 51, and it
24    really is related to the instruction that reads, "You must
25    decide the case of each defendant on each crime charged against    15:54:55
```

UNITED STATES DISTRICT COURT

42

1    that defendant separately.  Your verdict on one count as to any

2    defendant should not control your verdict on any other count."

3    And therefore, answering the question in the way that you

4    suggest would be misleading and it would not be in harmony with

5    the prior instructions.                                          15:55:27

6            MS. BERTRAND:  Your Honor, the question pertains to

7    *Pinkerton* liability.

8            THE COURT:  I understand that, Ms. Bertrand.  Give me

9    a moment.

10           The Court proposes this:  If a defendant is found not    15:59:22

11   guilty in Count 1, you are to consider the remaining charges as

12   to each defendant separately.

13           MS. BERTRAND:  That's fine.

14           THE COURT:  Mr. Stone.

15           MR. STONE:  I think we can provide more clarification     15:59:50

16   and drop the reference to the substantive instruction or the

17   Travel Act on page 30, because there's a chance that they are

18   confused, as maybe they think that the United States had to

19   prove up both.

20           THE COURT:  Well, I think the reason that I included      16:00:13

21   the remaining charges separately is because it doesn't single

22   out the Travel Act charges, which obviously they are concerned

23   about, but it directs them that they are to separately consider

24   each individual count as to each defendant, and I think it's a

25   broader way of getting to answer their question.                 16:00:43

UNITED STATES DISTRICT COURT

43

```
 1          MR. STONE:  I understand that, Your Honor.  My concern
 2   is if they think that the United States still needs to prove up
 3   the Pinkerton theory in conjunction or in addition to the
 4   substantive Travel Act.  There isn't really a part of the
 5   instruction that says these are separate theories of liability.   16:01:02
 6   You can go under one theory, you can go under the other, and
 7   clearly they are struggling with this Pinkerton instruction,
 8   and so I was -- we think that to clarify and point them to
 9   instruction 30 or the instruction that begins on page 30 would
10   be helpful.                                                        16:01:22
11          MS. BERTRAND:  Your Honor --
12          THE COURT:  Well, I am going to have the final word.
13   I'm going to answer the question in the way that I propose, so
14   the answer will be:  If a defendant is found not guilty in
15   Count 1, you are to consider the remaining charges as to each      16:01:36
16   defendant separately.
17          It incorporates and encompasses all of the counts,
18   including the Travel Act, and that's how I will resolve it.
19          MR. STONE:  Your Honor, I'm sorry, I just missed it,
20   is it to each of the remaining charges?                            16:01:59
21          THE COURT:  As to each.  I'm sorry.  It reads:  You
22   are to consider the remaining charges as to each defendant
23   separately.
24          MR. STONE:  Would it be okay, we offer that it would
25   be each of the remaining charges as to each of the defendants      16:02:19
```

UNITED STATES DISTRICT COURT

44

```
 1    separately?

 2              THE COURT:  Yes.

 3              MS. BERTRAND:  Sorry, what did Mr. Stone just say?

 4              THE COURT:  It will read:  If a defendant is found not

 5    guilty in Count 1, you are to consider each of the remaining        16:02:31

 6    charges as to each defendant separately.

 7              MR. LINCENBERG:  Your Honor, may I make just a record

 8    of our objection?

 9              THE COURT:  Yes.

10              MR. LINCENBERG:  We object.  We don't think that that     16:02:48

11    answers the question.  This question is dealing with element

12    four of the conspiracy count.  It's not dealing with each

13    defendant or anything.  It's asking specifically about if a

14    defendant that they may have in mind is found not guilty in

15    Count 1, and they are asking about element four and nothing        16:03:08

16    further.  And the answer should only be -- it should be "No"

17    and it should be restricted to -- the answer should be

18    restricted to element four.

19              MS. BERTRAND:  I concur with my colleague, Your Honor.

20    I think the danger of the government's interpretation is that      16:03:29

21    we don't know that they haven't already gone through page 30

22    and decided that that doesn't apply here.  It is --

23              THE COURT:  I am not putting any reference into

24    page 30.

25              MS. BERTRAND:  Then my suggestion would be, Your         16:03:45
```

UNITED STATES DISTRICT COURT

45

1   Honor, that in addition to the language the Court has included,

2   the answer still "No."

3            MR. CAMBRIA:  Still "No."

4            MS. BERTRAND:  The exact answer to:  Can we convict if

5   they weren't a member of the conspiracy?  Not applying that          16:04:00

6   rule they can't.

7            THE COURT:  All right.  I will answer the question in

8   the way that I outlined, and please return the question to my

9   law clerk.

10           MR. CAMBRIA:  We join in that too, Your Honor.            16:04:14

11           THE COURT:  Sorry, what was that?

12           MR. CAMBRIA:  We all join in that, in our objections.

13       (Proceedings concluded at 4:04 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

46

**C E R T I F I C A T E**

1

2

3

4       I, HILDA E. LOPEZ, do hereby certify that I am duly

5  appointed and qualified to act as Official Court Reporter for

6  the United States District Court for the District of Arizona.

7       I FURTHER CERTIFY that the foregoing pages constitute

8  a full, true, and accurate transcript of all of that portion of

9  the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12       DATED at Phoenix, Arizona, this 16th day of November,

13  2023.

14

15

16

                      s/Hilda E. Lopez_____

17                      HILDA E. LOPEZ, RMR, FCRR

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

## #

**#2-51** [1] - 32:11

## 0

**0037964** [1] - 14:22

## 1

**1** [9] - 17:20, 17:24, 32:10, 36:21, 41:1, 42:11, 43:15, 44:5, 44:15
**10** [3] - 32:14, 34:20, 34:22
**10-11** [1] - 32:13
**100,000** [1] - 24:8
**11** [2] - 32:14, 34:20
**1155** [1] - 3:8
**11:04** [2] - 1:8, 4:3
**11:52** [1] - 30:18
**11th** [1] - 2:11
**12** [1] - 5:24
**120** [1] - 2:14
**1200** [1] - 2:6
**1301** [1] - 2:11
**136** [3] - 19:23, 20:3, 20:4
**138** [2] - 19:25, 20:3, 20:4
**13th** [2] - 19:23, 23:17
**14** [11] - 31:22, 32:2, 33:22, 37:17, 37:18, 37:20, 39:3, 39:6, 39:8, 40:22, 41:9
**14202** [1] - 2:15
**15** [12] - 1:8, 31:22, 32:2, 33:22, 37:17, 37:18, 37:20, 39:4, 39:6, 39:8, 40:23, 41:9
**16** [1] - 32:18
**160** [1] - 2:18
**16th** [1] - 46:12
**17** [1] - 19:23
**18** [1] - 19:23
**1875** [1] - 3:3
**19** [1] - 20:7
**1967** [2] - 6:15, 14:5
**1:53** [1] - 30:19
**1:54** [1] - 31:12

## 2

**2** [11] - 7:22, 22:2, 30:25, 31:25, 35:23, 37:12, 38:1, 38:23, 41:1, 41:23
**2-51** [2] - 31:23, 32:11

**20** [1] - 19:24
**200** [1] - 24:8
**20005** [1] - 2:11
**2018** [11] - 14:25, 15:11, 15:14, 15:16, 15:24, 21:21, 21:23, 22:4, 23:17, 28:6
**2019** [2] - 12:7, 26:21
**2020** [2] - 22:2, 22:4
**2021** [1] - 18:4
**2023** [2] - 1:8, 46:13
**210** [1] - 2:21
**23** [2] - 21:11, 28:4
**2300** [1] - 3:3
**27** [12] - 31:22, 32:1, 32:13, 32:25, 33:23, 34:15, 35:21, 39:3, 39:23, 40:18, 40:22, 41:9
**2734** [1] - 3:12
**2930** [1] - 2:18
**2:18-cr-00422-DJH** [1] - 1:6

## 3

**3** [1] - 7:22
**30** [15] - 1:22, 27:3, 33:5, 33:11, 33:15, 34:2, 35:20, 35:25, 40:4, 41:18, 42:17, 43:9, 44:21, 44:24
**302s** [2] - 8:12, 14:12
**312** [1] - 1:21
**322-7256** [1] - 1:23
**33** [1] - 1:15
**34** [1] - 20:7
**3500** [1] - 13:6
**3550** [1] - 3:8
**36** [1] - 20:7
**3:32** [1] - 31:13

## 4

**4** [8] - 6:16, 6:24, 6:25, 15:5, 24:4, 24:10, 24:11, 25:1
**40** [1] - 2:6
**401** [1] - 1:22
**42** [1] - 2:14
**47** [1] - 30:22
**4:04** [1] - 45:13

## 5

**5** [1] - 6:16
**51** [8] - 14:14, 15:2, 35:23, 37:12, 38:2, 38:23, 41:2, 41:23
**581** [1] - 20:14

**5:00** [1] - 15:22

## 6

**6** [1] - 28:6
**602** [1] - 1:23
**6273** [1] - 23:14
**6720** [1] - 2:21

## 7

**7** [3] - 7:1, 28:6
**749** [1] - 20:14

## 8

**8** [2] - 5:25
**85003-2151** [1] - 1:22
**85004** [1] - 2:6
**85012** [1] - 3:8
**85016** [1] - 2:19
**85252** [1] - 3:12
**85253** [1] - 2:22

## 9

**90067** [1] - 3:4
**91-page** [1] - 4:21

## A

**a.m** [3] - 1:8, 4:3, 30:18
**ability** [1] - 27:11
**able** [1] - 21:3
**above-entitled** [1] - 46:9
**absolute** [1] - 24:21
**accept** [4] - 8:24, 9:1, 10:18, 10:20
**accepts** [1] - 10:20
**accordance** [1] - 33:4
**account** [4] - 9:7, 9:8, 9:10, 20:23
**accounts** [1] - 8:14
**accurate** [1] - 46:8
**acknowledge** [1] - 26:3
**Act** [18] - 32:4, 32:19, 33:11, 35:9, 36:16, 36:23, 37:3, 38:20, 38:22, 38:24, 39:5, 39:20, 41:19, 41:22, 42:17, 42:22, 43:4, 43:18
**act** [1] - 46:5
**action** [1] - 36:18
**actual** [1] - 37:3
**add** [5] - 9:15, 11:22, 34:16, 34:19, 40:2

**addition** [3] - 35:2, 43:3, 45:1
**additional** [3] - 6:10, 9:14, 13:15
**address** [3] - 9:17, 9:22, 29:2
**addressed** [2] - 38:13, 38:15
**addressing** [1] - 38:1
**adjourned** [1] - 31:11
**adopt** [2] - 5:13, 18:5
**adopted** [1] - 16:20
**advised** [1] - 25:6
**advisement** [1] - 29:25
**advocate** [1] - 38:9
**affidavit** [1] - 21:6
**affidavits** [6] - 21:8, 21:12, 21:17, 21:22, 28:5
**afternoon** [2] - 31:6, 33:20
**agents** [2] - 8:16, 27:8
**ago** [4] - 12:23, 12:24, 19:11, 26:8
**agree** [5] - 31:4, 31:6, 32:23, 35:10, 37:21
**agreed** [1] - 7:11
**ahead** [2] - 34:12, 38:4
**Aided** [1] - 1:24
**al** [1] - 1:8
**alike** [1] - 9:4
**allegation** [1] - 5:21
**alleged** [2] - 6:17, 16:20
**almost** [1] - 32:8
**alternative** [3] - 33:6, 36:2, 41:8
**alternatives** [1] - 41:16
**America** [1] - 1:5
**AND** [1] - 1:15
**Andrew** [2] - 2:4, 3:6
**andrew.stone@ usdoj.gov** [1] - 2:8
**Angeles** [1] - 3:4
**answer** [33] - 9:6, 25:4, 31:8, 33:13, 33:15, 33:24, 33:25, 34:5, 34:9, 35:11, 35:13, 35:16, 36:4, 37:18, 38:8, 39:16, 39:21, 39:23, 40:1, 40:14, 40:23, 40:24, 41:15, 41:17, 41:19, 42:25, 43:13, 43:14, 44:16, 44:17, 45:2, 45:4, 45:7
**answered** [2] - 32:15, 39:25, 40:9

**answering** [5] - 37:25, 38:11, 38:19, 40:21, 42:3
**answers** [2] - 16:25, 44:11
**anyway** [1] - 27:20
**Appeared** [1] - 2:10
**apples** [1] - 15:18
**applications** [1] - 20:25
**applied** [2] - 30:23, 31:9
**apply** [4] - 28:3, 34:2, 39:8, 44:22
**applying** [9] - 33:22, 34:9, 37:18, 37:19, 40:22, 41:9, 41:15, 41:16, 45:5
**appointed** [1] - 46:5
**appreciate** [2] - 29:7, 30:17
**approach** [3] - 25:16, 35:4, 40:13
**appropriate** [6] - 34:12, 37:25, 38:3, 38:5, 38:20, 40:8
**approved** [1] - 5:1
**area** [2] - 4:6, 11:9
**arguably** [1] - 28:13
**argue** [1] - 13:18
**argued** [1] - 9:12
**argument** [5] - 5:16, 11:16, 11:17, 11:18, 13:16, 14:1, 18:24, 19:17, 34:17
**arguments** [3] - 7:23, 13:20, 19:3
**ARIZONA** [1] - 1:3
**Arizona** [5] - 1:7, 1:22, 2:6, 46:6, 46:12
**articulated** [1] - 35:25
**asset** [1] - 17:18
**assets** [1] - 18:18
**assume** [2] - 8:8, 38:18
**assumption** [1] - 6:21
**assumptions** [1] - 16:25
**attached** [3] - 13:3, 13:7, 21:22
**attaches** [1] - 24:3
**attachments** [1] - 23:16
**attempted** [1] - 23:20
**attention** [2] - 20:2, 20:5
**attorney** [2] - 23:16, 29:17
**ATTORNEY'S** [1] - 2:3
**attributed** [1] - 11:23

**Austin** [1] - 2:10
**austin.berry2@ usdoj.gov** [1] - 2:12
**authenticating** [1] - 24:21
**authored** [1] - 22:12
**available** [3] - 5:3, 7:6, 20:20
**Avenue** [4] - 2:6, 2:11, 2:14, 3:8
**aware** [1] - 7:11
**AZ** [4] - 2:19, 2:22, 3:8, 3:12

### B

**Backpage** [6] - 9:9, 9:11, 14:22, 15:4, 15:9, 25:12
**ball** [2] - 38:8, 38:10
**Bank** [2] - 9:7, 9:8
**bargain** [2] - 23:22, 24:12
**based** [4] - 4:22, 7:9, 11:15, 13:18
**basis** [1] - 12:16
**Bates** [3] - 14:15, 14:21
**Baum** [1] - 23:16
**BEFORE** [1] - 1:13
**beginning** [1] - 39:2
**begins** [1] - 43:9
**behind** [1] - 8:23
**benefit** [1] - 24:11
**benefits** [1] - 23:21
**Berry** [1] - 2:10
**Bertrand** [6] - 3:11, 25:15, 28:1, 28:8, 33:19, 42:8
**BERTRAND** [33] - 3:11, 25:16, 25:18, 26:14, 26:16, 31:6, 31:19, 33:20, 35:13, 35:16, 36:1, 37:7, 37:13, 37:16, 37:24, 38:10, 38:18, 38:25, 39:2, 39:7, 39:14, 40:10, 40:17, 41:3, 41:13, 41:15, 42:6, 42:13, 43:11, 44:3, 44:19, 44:25, 45:4
**best** [2] - 12:18, 30:9
**better** [3] - 6:13, 9:17, 13:11
**between** [7] - 8:20, 22:4, 22:5, 22:12, 23:3, 34:21, 36:10
**beyond** [4] - 33:21, 37:25, 39:18, 41:4
**bf@federlawpa.com**

[1] - 2:19
**Bibbero** [1] - 20:13
**BIRD** [1] - 3:2
**bit** [5] - 6:7, 18:22, 21:5, 33:2, 37:5
**blindly** [1] - 13:25
**bottom** [4] - 17:3, 18:24, 29:9
**Box** [1] - 3:12
**BOXER** [1] - 3:2
**Boyle** [2] - 2:5, 13:2
**Bradio** [1] - 19:10
**Brady** [1] - 19:10
**brief** [3] - 7:21, 9:13, 19:25
**bring** [2] - 20:2, 20:4
**bringing** [1] - 27:14
**broader** [1] - 42:25
**Bruce** [1] - 2:18
**Brunst** [3] - 3:1, 8:3, 18:25
**Buffalo** [1] - 2:15
**bullet** [1] - 6:23
**business** [1] - 7:18
**businesses** [1] - 8:14

### C

**CA** [1] - 3:4
**California** [3] - 17:8, 25:20, 25:24
**CAMBRIA** [14] - 2:13, 19:13, 20:11, 22:8, 23:10, 23:13, 28:22, 30:10, 30:13, 30:17, 31:10, 45:3, 45:10, 45:12
**Cambria** [7] - 2:14, 9:17, 19:12, 19:20, 20:10, 21:15, 23:8
**Camelback** [1] - 2:18
**cannot** [4] - 34:7, 37:19, 38:11, 38:18
**capacity** [1] - 17:6
**Carl** [2] - 5:3, 23:15
**case** [14] - 11:11, 20:13, 20:14, 20:15, 20:25, 24:13, 26:8, 28:6, 28:24, 29:14, 29:19, 32:22, 38:13, 41:25
**cases** [1] - 17:8
**category** [1] - 13:8
**caused** [1] - 29:12
**cc'd** [1] - 27:8
**CDCA** [1] - 22:1
**cell** [2] - 4:7, 4:14
**centered** [1] - 34:20
**Central** [2] - 2:6, 3:8, 25:19, 25:23

**central** [1] - 9:24
**centrally** [1] - 8:4
**Century** [1] - 3:3
**Cereus** [1] - 9:10
**certain** [1] - 10:17
**certainly** [6] - 7:10, 13:25, 16:21, 17:17, 33:10, 39:7
**certify** [1] - 46:4
**CERTIFY** [1] - 46:7
**cetera** [1] - 15:9
**champion** [1] - 35:3
**chance** [1] - 42:17
**change** [2] - 21:5, 21:20
**character** [1] - 18:24
**characterized** [1] - 18:12
**charge** [6] - 30:24, 31:22, 32:10, 33:11, 35:2, 41:1
**charged** [6] - 26:13, 32:11, 32:17, 32:22, 36:21, 41:25
**charges** [16] - 31:23, 32:10, 35:23, 37:12, 38:1, 38:23, 41:1, 41:23, 42:11, 42:21, 42:22, 43:15, 43:20, 43:22, 43:25, 44:6
**charts** [4] - 11:7, 12:8, 12:16, 12:20
**choice** [1] - 36:8
**Circuit** [1] - 20:14
**citation** [1] - 19:22
**citations** [2] - 19:20, 19:24
**cite** [2] - 6:18, 6:19
**cited** [2] - 21:11, 28:24
**civil** [1] - 21:25
**claim** [1] - 25:3
**claims** [1] - 18:17
**Clarence** [2] - 15:4, 15:8
**clarification** [1] - 42:15
**clarify** [2] - 38:7, 43:8
**clarifying** [1] - 33:2
**clear** [5] - 25:19, 26:10, 26:12, 34:11, 40:3
**clearly** [11] - 4:25, 11:5, 16:6, 20:12, 23:17, 24:5, 24:15, 33:13, 34:25, 38:22, 43:7
**clerk** [2] - 30:20, 45:9
**client** [4] - 25:20, 26:9, 26:12, 29:20
**clients** [1] - 6:2

**closer** [1] - 18:22
**closing** [3] - 7:24, 9:12, 19:2
**co** [1] - 11:3
**co-counsel** [1] - 11:3
**colleague** [2] - 35:11, 44:19
**colleagues** [3] - 29:22, 40:10, 40:11
**commence** [1] - 4:3
**comment** [2] - 26:17, 40:10
**comments** [1] - 25:18
**committed** [4] - 32:5, 36:16, 36:23, 37:3
**communicating** [1] - 27:7
**communication** [1] - 27:4
**communications** [2] - 13:6, 23:3
**companies** [1] - 8:15
**company** [1] - 25:11
**comparing** [1] - 21:3
**compelled** [1] - 4:8
**complaint** [1] - 22:1
**complete** [1] - 37:22
**comply** [1] - 13:4
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**concern** [2] - 32:12, 40:6, 43:1
**concerned** [1] - 42:22
**concise** [1] - 40:24
**concluded** [2] - 30:18, 31:12, 45:13
**concur** [1] - 44:19
**confront** [1] - 24:6
**confused** [2] - 18:8, 42:18
**confusing** [1] - 40:2
**conjunction** [1] - 43:3
**consider** [9] - 29:21, 30:16, 39:19, 42:11, 42:23, 43:15, 43:22, 44:5
**consideration** [2] - 32:18, 39:11
**considered** [1] - 35:10
**considering** [1] - 37:15
**consistency** [1] - 40:6
**consistent** [1] - 12:13
**conspiracy** [18] - 31:24, 32:4, 33:9, 33:24, 34:6, 34:23, 35:1, 35:22, 36:15, 36:17, 36:21, 36:24, 37:3, 37:19, 39:24,

41:2, 44:12, 45:5
**constitute** [1] - 46:7
**constitutes** [2] - 9:3, 19:8
**contain** [1] - 8:12
**contained** [2] - 28:5, 46:9
**contains** [1] - 8:7
**content** [1] - 18:9
**continuation** [1] - 4:5
**CONTINUED** [1] - 1:15
**continued** [1] - 13:4
**contrary** [1] - 17:12
**contributed** [2] - 16:23, 18:1
**control** [3] - 27:15, 42:2, 46:11
**convict** [2] - 38:12, 45:4
**convicted** [1] - 38:22
**conviction** [1] - 20:17
**copies** [2] - 15:19, 30:21
**copy** [2] - 23:14, 24:14
**correct** [2] - 6:23, 10:4
**corrections** [1] - 18:2
**counsel** [8] - 6:2, 9:21, 11:3, 13:22, 14:5, 17:18, 31:17, 32:6
**count** [2] - 29:13, 32:17, 37:23, 42:1, 42:2, 42:24, 44:12
**Count** [6] - 36:21, 41:1, 42:11, 43:15, 44:5, 44:15
**counts** [9] - 11:12, 26:13, 30:23, 31:2, 31:9, 32:18, 39:12, 39:19, 43:17
**Counts** [1] - 32:11
**couple** [3] - 5:4, 12:23, 22:9
**course** [3] - 18:13, 29:7, 36:13
**court** [1] - 8:6
**COURT** [71] - 1:1, 4:4, 5:20, 6:20, 9:24, 10:6, 10:14, 13:24, 14:9, 14:19, 15:14, 15:16, 15:23, 16:8, 16:11, 16:18, 19:14, 20:3, 20:10, 20:21, 21:15, 22:7, 23:8, 23:12, 25:13, 25:17, 26:12, 26:15, 27:24, 28:10, 28:21, 28:24, 29:4, 29:23, 30:6, 30:12, 30:16, 30:20, 31:5, 31:7, 31:11,

31:14, 31:17, 31:21, 33:17, 35:18, 36:6, 37:6, 37:11, 37:14, 38:19, 39:1, 39:5, 39:10, 40:5, 40:15, 40:24, 41:10, 41:14, 41:21, 42:8, 42:14, 42:20, 43:12, 43:21, 44:2, 44:4, 44:9, 44:23, 45:7, 45:11
**Court** [41] - 1:20, 1:24, 4:20, 4:23, 5:10, 5:14, 5:16, 9:22, 10:10, 10:19, 11:3, 14:1, 14:8, 15:6, 15:17, 15:19, 15:20, 19:21, 20:6, 20:16, 25:7, 25:8, 26:17, 29:3, 29:7, 29:20, 30:4, 31:7, 32:15, 33:2, 33:21, 34:19, 35:3, 35:5, 40:9, 40:19, 41:7, 42:10, 45:1, 46:5, 46:6
**Court's** [4] - 5:18, 20:2, 20:5, 22:10
**Courthouse** [1] - 1:21
**courtroom** [1] - 4:7
**courts** [1] - 17:19
**cover** [1] - 7:1
**covered** [1] - 23:21
**covers** [2] - 30:22, 31:2
**credibility** [3] - 7:7, 24:12, 29:19
**crime** [3] - 32:17, 32:22, 41:25
**critical** [4] - 23:19, 24:13, 24:19, 40:22
**cross** [15] - 6:18, 8:22, 10:21, 10:25, 11:20, 15:7, 16:4, 20:6, 20:20, 23:21, 24:6, 24:20, 27:12, 27:21, 29:9
**cross-examination** [10] - 8:22, 10:21, 15:7, 16:4, 20:6, 23:21, 24:20, 27:12, 27:21, 29:9
**cross-examine** [4] - 6:18, 10:25, 11:20, 24:6
**cumulative** [1] - 19:3
**curious** [1] - 5:23
**current** [1] - 20:12

### D

**danger** [1] - 44:20

**Daniel** [1] - 2:5
**date** [3] - 16:16, 21:21, 46:10
**DATED** [1] - 46:12
**DAVID** [1] - 3:7
**David** [1] - 3:7
**david@**
  **deisenbergplc.com**
  [1] - 3:9
**DAY** [1] - 1:15
**days** [2] - 20:6, 37:9
**DC** [1] - 2:11
**DEA** [1] - 20:16
**deadline** [1] - 26:22
**deal** [3] - 7:22, 25:1, 25:9
**dealing** [5] - 7:15, 19:22, 20:8, 44:11, 44:12
**dealt** [1] - 7:24
**debate** [1] - 8:1
**decide** [2] - 35:7, 41:25
**decided** [1] - 44:22
**deciding** [1] - 32:21
**deemed** [1] - 13:6
**defendant** [32] - 31:21, 31:23, 32:3, 32:9, 32:11, 33:23, 34:24, 34:25, 35:12, 35:22, 35:24, 36:10, 36:12, 36:18, 36:25, 37:2, 38:23, 40:25, 41:5, 41:25, 42:1, 42:2, 42:10, 42:12, 42:24, 43:14, 43:16, 43:22, 44:4, 44:6, 44:13, 44:14
**Defendant** [5] - 2:13, 2:17, 3:1, 3:6, 3:10
**defendants** [10] - 6:4, 6:8, 17:15, 19:16, 26:1, 26:7, 28:21, 33:8, 39:20, 43:25
**Defendants** [1] - 1:9
**defendants'** [3] - 6:15, 16:19, 31:17
**defense** [8] - 7:6, 8:2, 11:18, 21:20, 23:24, 31:5, 37:24, 40:20
**defense's** [1] - 11:25
**Delaware** [1] - 2:14
**delay** [1] - 26:18
**deliberation** [1] - 38:16
**deliberations** [1] - 33:13
**demonstrates** [1] - 23:20
**DEPARTMENT** [1] -

2:10
**deputy** [1] - 4:12
**derives** [1] - 22:6
**despite** [1] - 11:20
**detail** [5] - 8:13, 8:15, 9:23, 11:24, 28:5
**determination** [6] - 5:15, 12:3, 13:18, 19:15, 22:21, 28:12
**determine** [3] - 13:5, 21:3, 28:25
**determined** [1] - 13:7
**determining** [1] - 24:12
**developed** [4] - 6:7, 18:12, 18:13, 22:4
**development** [1] - 18:17
**DIANE** [1] - 1:13
**difference** [4] - 22:12, 32:9, 34:21, 40:19
**different** [16] - 6:23, 8:14, 14:15, 17:19, 18:15, 18:16, 18:19, 19:4, 22:9, 22:23, 26:4, 27:21, 32:24, 35:4, 37:5, 38:12
**differently** [1] - 6:18
**difficult** [1] - 17:14
**direct** [3] - 19:18, 19:22, 35:2
**directed** [1] - 41:18
**direction** [2] - 41:5, 46:11
**directly** [3] - 16:4, 27:7, 38:11
**directs** [2] - 41:4, 42:23
**disclose** [2] - 28:13, 29:16
**disclosed** [4] - 11:24, 25:4, 28:15, 29:7
**disclosure** [9] - 9:25, 14:13, 14:17, 15:1, 15:2, 15:12, 15:21, 28:17, 30:3
**disclosures** [3] - 26:19, 30:2, 30:5
**discovery** [5] - 9:19, 23:2, 25:22, 28:7
**discrete** [2] - 40:18, 40:19
**discussion** [1] - 9:2
**disregard** [1] - 38:16
**distinction** [2] - 25:25, 36:10
**DISTRICT** [2] - 1:1, 1:3
**District** [5] - 25:20, 25:24, 46:6
**Document** [2] - 6:15,

14:5
**document** [25] - 4:21, 5:1, 5:8, 6:12, 7:11, 10:18, 11:12, 11:13, 11:19, 12:1, 12:6, 12:24, 15:23, 17:19, 18:1, 18:2, 18:3, 18:5, 18:8, 18:22, 20:24, 21:2, 21:6, 22:11, 22:12
**documents** [9] - 5:23, 11:24, 14:16, 16:15, 17:7, 17:10, 17:17, 21:24, 25:7
**doubt** [3] - 24:21, 24:22, 24:25
**down** [1] - 23:25
**draft** [3] - 5:13, 6:1, 21:6
**drafting** [2] - 16:24, 18:10
**DROOKS** [1] - 3:2
**drop** [1] - 42:16
**due** [1] - 32:12
**duly** [1] - 46:4

### E

**e-mail** [14] - 12:7, 12:12, 13:3, 13:7, 14:21, 14:24, 15:2, 15:10, 15:11, 15:24, 16:6, 23:15, 24:3, 27:13
**e-mails** [10] - 8:25, 9:16, 11:8, 13:16, 13:22, 25:8, 27:8, 27:9, 27:17, 27:22
**East** [2] - 2:18
**easy** [1] - 38:16
**echo** [1] - 29:21
**effect** [1] - 41:8
**efforts** [1] - 13:4
**EISENBERG** [9] - 3:7, 29:2, 29:5, 31:20, 33:18, 34:18, 35:14, 35:17, 36:5
**Eisenberg** [5] - 3:7, 26:5, 28:8, 29:1, 34:16
**either** [6] - 5:5, 10:7, 11:6, 12:6, 16:10, 34:8
**element** [11] - 32:3, 32:15, 33:1, 34:24, 34:25, 36:16, 36:20, 44:11, 44:15, 44:18
**elements** [1] - 39:21
**Elizabeth** [1] - 1:21
**encompasses** [1] -

43:17
**end** [1] - 39:1
**entertain** [2] - 14:2, 26:17
**entirety** [1] - 14:16
**entities** [3] - 7:17, 7:19, 8:3
**entitled** [4] - 16:22, 20:14, 35:7, 46:9
**Eric** [1] - 2:21
**eric.kesslerlaw@**
  **gmail.com** [1] - 2:22
**especially** [1] - 26:21
**ESQ** [1] - 3:11
**Esq** [12] - 2:3, 2:4, 2:4, 2:5, 2:5, 2:10, 2:14, 2:18, 2:21, 3:3, 3:7, 3:11
**essence** [1] - 30:7
**essentially** [1] - 29:19
**et** [2] - 1:8, 15:9
**event** [2] - 25:15, 28:14
**evidence** [7] - 4:19, 5:14, 6:23, 12:2, 13:15, 13:18
**EVIDENTIARY** [1] - 1:15
**evidentiary** [3] - 4:5, 4:17, 16:13
**exact** [4] - 7:25, 14:24, 21:24, 45:4
**exactly** [1] - 15:21
**examination** [15] - 6:10, 8:22, 9:21, 10:21, 15:7, 16:4, 17:22, 19:22, 20:6, 23:21, 24:20, 27:12, 27:21, 29:9
**examine** [11] - 6:18, 10:25, 11:20, 17:10, 17:11, 19:9, 20:19, 24:6, 28:17, 30:11, 30:14
**examined** [2] - 10:9, 22:15
**example** [9] - 6:10, 7:14, 7:18, 8:21, 10:15, 14:20, 18:24, 19:24, 21:10
**examples** [4] - 6:16, 7:13, 7:14, 7:15
**exchange** [1] - 15:2
**exculpatory** [6] - 5:22, 6:5, 6:17, 18:23, 19:5, 30:1
**excused** [1] - 27:10
**exhibit** [4] - 5:24, 14:23, 20:13, 24:14
**Exhibit** [21] - 5:25,

4

6:19, 8:17, 8:25,
10:1, 11:23, 16:20,
17:3, 17:20, 17:24,
18:20, 21:4, 21:12,
22:2, 22:6, 23:14,
25:10, 28:2, 28:6,
28:11, 29:25
**exhibits** [3] - 18:22,
19:9, 19:18
**expanding** [1] - 21:7
**expands** [3] - 9:18,
16:12, 21:5
**experience** [1] - 11:1
**explain** [1] - 6:14
**explaining** [1] - 6:14
**explanation** [1] -
41:21
**expound** [1] - 37:9
**extent** [1] - 16:22
**extraordinarily** [1] -
40:7
**extremely** [1] - 40:1

## F

**F.2d** [1] - 20:14
**fact** [8] - 7:9, 10:16,
11:21, 16:23, 18:7,
20:15, 22:19, 32:7
**failure** [1] - 29:16
**faith** [5] - 30:22,
30:23, 31:2, 31:8
**familiar** [1] - 11:5
**far** [2] - 29:12, 41:5
**fashion** [1] - 33:15
**favorable** [1] - 19:6
**FCRR** [2] - 1:21, 46:17
**FEDER** [12] - 2:17,
14:7, 14:10, 14:20,
15:15, 15:17, 16:1,
16:4, 16:10, 30:3,
30:9, 38:9
**Feder** [5] - 2:18, 9:14,
9:17, 14:6, 30:8
**feigned** [1] - 15:9
**feigns** [1] - 16:5
**Ferrer** [40] - 4:25, 5:3,
5:12, 6:10, 6:18, 7:7,
7:12, 8:7, 8:10, 8:16,
8:18, 9:16, 9:22,
10:16, 11:14, 11:23,
14:10, 14:25, 15:3,
15:7, 15:18, 16:5,
16:21, 17:11, 21:10,
21:11, 23:3, 23:15,
24:15, 24:16, 25:11,
26:25, 27:1, 27:7,
27:12, 27:21, 28:3,
29:10, 34:23
**Ferrer's** [9] - 6:6, 7:15,

7:17, 7:23, 10:8,
10:16, 21:14, 28:16,
29:16
**file** [1] - 26:8
**filed** [3] - 6:1, 17:7,
22:1
**files** [1] - 13:5
**final** [5] - 5:9, 19:17,
27:24, 43:12
**financial** [3] - 20:23,
24:16, 24:18
**fine** [2] - 23:10, 42:13
**first** [9] - 10:10, 21:21,
25:19, 27:25, 33:19,
36:15, 36:16, 36:20,
39:3
**fit** [1] - 13:7
**five** [1] - 4:18
**flesh** [1] - 26:25
**Floor** [1] - 2:11
**flow** [3] - 12:8, 12:18,
12:20
**focus** [1] - 10:1
**focused** [1] - 7:6
**focusing** [1] - 13:10
**follow** [1] - 14:11
**follow-up** [1] - 14:11
**footnote** [3] - 7:21,
7:22
**footnotes** [1] - 7:2
**FOR** [1] - 1:3
**foregoing** [1] - 46:7
**foreign** [2] - 7:17, 7:19
**forfeiture** [7] - 6:2,
9:3, 17:8, 17:19,
22:1, 26:6, 26:13
**format** [2] - 12:17,
12:21
**formatting** [3] - 12:19,
12:22, 18:1
**forms** [1] - 36:3
**forth** [8] - 4:10, 6:5,
8:5, 8:24, 11:8,
11:12, 16:24, 25:11
**forward** [3] - 5:15,
6:22, 32:12
**four** [4] - 26:8, 44:12,
44:15, 44:18
**four-plus** [1] - 26:8
**fourth** [8] - 32:2, 32:3,
32:25, 34:25, 36:12,
36:25, 37:2
**frankly** [1] - 8:22
**front** [1] - 13:10
**frozen** [1] - 40:11
**full** [2] - 38:8, 46:8
**fully** [1] - 20:19
**FURTHER** [1] - 46:7
**furtherance** [1] -
36:24

**future** [1] - 22:19

## G

**Gage** [1] - 7:17
**gary** [1] - 3:3
**general** [1] - 7:3
**Giglio** [3] - 16:7, 19:11
**given** [3] - 4:17, 23:14,
26:19
**glincenberg@**
**birdmarella.com** [1]
- 3:5
**good-faith** [2] - 31:2,
31:8
**Government** [2] - 2:2,
2:9
**government** [17] - 7:5,
8:2, 8:3, 8:15, 9:6,
10:4, 11:2, 14:14,
15:20, 17:14, 18:11,
26:19, 27:3, 27:4,
28:13, 28:19, 31:15
**government's** [3] -
8:16, 31:3, 44:20
**gpanchapakesan@**
**birdmarella.com** [1]
- 3:4
**grab** [1] - 7:21
**great** [1] - 27:20
**greater** [1] - 9:23
**greatly** [1] - 27:11
**GREEN** [1] - 2:13
**grow** [1] - 21:2
**guarantee** [1] - 26:5
**guess** [4] - 5:20, 9:24,
34:12, 39:18
**guide** [1] - 34:16
**guilty** [22] - 29:13,
31:22, 31:23, 32:10,
33:9, 33:10, 33:23,
34:7, 35:23, 35:24,
37:1, 37:19, 38:23,
39:23, 40:25, 41:1,
41:5, 42:11, 43:14,
43:16, 44:14
**guy** [1] - 12:12

## H

**half** [1] - 21:13
**hand** [1] - 25:2
**handed** [1] - 30:21
**handle** [1] - 16:17
**hang** [1] - 37:17
**hang-up** [1] - 37:17
**happy** [3] - 13:18,
15:19, 36:13
**hard** [1] - 24:9
**harmony** [1] - 42:4

**hear** [4] - 4:18, 4:19,
5:2, 5:19
**heard** [2] - 17:5, 17:12
**HEARING** [1] - 1:15
**hearing** [6] - 4:5, 4:17,
10:1, 12:15, 13:15,
16:13
**help** [2] - 5:9, 40:14
**helpful** [6] - 30:6,
33:2, 33:16, 36:6,
36:7, 43:10
**hereby** [1] - 46:4
**herein** [1] - 46:9
**hi** [1] - 31:6
**hide** [1] - 38:8
**hiding** [2] - 17:13,
38:10
**highlight** [2] - 8:21,
23:12
**HILDA** [2] - 46:4,
46:17
**Hilda** [1] - 1:21
**hinges** [1] - 11:17
**Honor** [56] - 4:16,
4:18, 5:1, 5:5, 6:13,
7:3, 11:15, 12:2,
13:16, 16:3, 16:12,
16:14, 16:15, 16:17,
21:3, 22:8, 25:16,
26:17, 27:12, 27:23,
28:9, 28:20, 28:23,
29:2, 29:5, 29:20,
29:22, 30:11, 31:4,
31:16, 31:20, 32:23,
33:18, 33:19, 33:20,
34:14, 34:18, 35:4,
36:1, 36:4, 37:7,
37:16, 37:21, 38:7,
39:14, 39:25, 40:13,
41:3, 42:6, 43:1,
43:11, 43:19, 44:7,
44:19, 45:1, 45:10
**HONORABLE** [1] -
1:13
**hoping** [1] - 4:18
**HUMETEWA** [1] - 1:13

## I

**idea** [1] - 27:18
**identical** [1] - 32:8
**ignorance** [1] - 16:5
**imagine** [1] - 27:12
**impact** [2] - 24:25,
29:14
**impacted** [1] - 27:11
**impeach** [3] - 7:12,
11:13, 22:23
**impeaching** [1] -
11:13

**impeachment** [3] -
11:3, 16:6, 30:1
**important** [9] - 10:17,
11:17, 23:1, 23:15,
24:6, 25:25, 29:15,
37:8, 41:22
**impression** [1] - 12:14
**inclined** [3] - 5:2,
5:16, 32:20
**include** [2] - 18:21,
23:5
**included** [5] - 6:1,
21:17, 34:23, 42:20,
45:1
**includes** [6] - 4:9,
9:15, 21:24, 24:16,
24:17, 30:1
**including** [4] - 4:9,
11:22, 23:6, 43:18
**inconsistencies** [4] -
7:14, 8:11, 8:18,
8:20
**inconsistency** [1] -
9:4
**inconsistent** [2] -
12:14, 20:8
**incorporates** [1] -
43:17
**indeed** [1] - 31:1
**indicated** [4] - 23:13,
24:1, 24:7, 25:4
**indicates** [2] - 14:14,
24:17
**indicating** [2] - 15:2,
40:14
**indication** [2] - 4:25,
26:9
**indictment** [3] - 18:17,
35:3, 36:22
**individual** [5] - 32:18,
33:8, 36:25, 39:12,
42:24
**individuals** [1] - 18:16
**information** [22] -
4:23, 6:17, 7:4,
11:20, 11:21, 17:7,
17:20, 17:21, 18:23,
19:6, 21:13, 21:24,
22:3, 22:6, 22:11,
22:22, 24:17, 24:18,
26:4, 26:6, 27:20
**informed** [1] - 16:14
**initial** [2] - 11:16,
26:22
**inquire** [1] - 14:4
**inquiries** [2] - 13:1,
17:2
**Inspector** [2] - 5:3, 5:7
**instructed** [1] - 4:13
**instruction** [26] - 31:2,

31:8, 32:2, 32:16, 32:19, 32:25, 33:14, 34:4, 34:5, 34:7, 34:15, 35:20, 37:17, 38:2, 38:5, 38:14, 38:20, 39:13, 40:4, 41:11, 41:24, 42:16, 43:5, 43:7, 43:9

**instructions** [8] - 30:22, 31:1, 33:5, 34:3, 35:9, 40:18, 41:19, 42:5

**integrity** [1] - 12:25

**intended** [1] - 5:8

**interested** [1] - 6:12

**interesting** [1] - 36:8

**interpretation** [1] - 44:20

**interviews** [1] - 8:10

**intro** [1] - 23:11

**investigation** [1] - 18:14

**involved** [3] - 8:4, 8:10, 17:18

**involvement** [1] - 7:17

**irrelevant** [1] - 27:9

**issue** [17] - 4:20, 4:24, 6:14, 9:18, 12:4, 14:25, 15:1, 16:17, 17:11, 18:23, 23:5, 26:25, 27:25, 28:2, 33:3, 35:21, 36:18

**issues** [2] - 5:11, 25:9

**items** [3] - 4:18, 12:16, 19:1

### J

**JDA** [1] - 26:3

**Jencks** [20] - 4:21, 4:24, 9:15, 10:19, 11:19, 11:20, 12:2, 13:4, 13:12, 14:1, 17:24, 18:21, 19:8, 23:6, 23:7, 24:23, 26:22, 28:12

**job** [3] - 6:14, 27:20, 38:7

**John** [1] - 3:1

**join** [2] - 45:10, 45:12

**joint** [1] - 8:25

**JOY** [1] - 3:11

**Joy** [2] - 3:11, 27:19

**joy@joybertrandlaw.com** [1] - 3:13

**Joye** [2] - 3:10, 27:13

**Jr** [1] - 2:14

**Judge** [3] - 14:7, 14:20, 30:3

**JUDGE** [1] - 1:13

**July** [1] - 23:17

**jump** [2] - 34:12, 38:4

**juncture** [1] - 17:23

**June** [1] - 22:2

**juror** [1] - 25:1

**Juror** [2] - 30:25, 31:25

**juror's** [2] - 30:21

**JURY** [1] - 1:16

**jury** [16] - 24:9, 24:11, 29:12, 29:14, 32:7, 33:3, 33:12, 35:7, 37:9, 37:25, 39:8, 39:17, 40:2, 40:14, 40:22, 41:17

**JUSTICE** [1] - 2:10

### K

**keep** [1] - 27:14

**keeping** [1] - 5:17

**KESSLER** [2] - 2:20, 14:6

**Kessler** [2] - 2:21, 14:5

**Kevin** [1] - 2:3

**kevin.rapp@usdoj.gov** [1] - 2:7

**kind** [1] - 30:4

**knowing** [1] - 15:10

**knowledge** [1] - 17:21

**Kozinets** [1] - 2:4

### L

**L.L.C** [1] - 3:11

**L.L.P** [1] - 2:13

**Lacey** [2] - 1:8, 2:13

**lack** [1] - 7:7

**language** [6] - 21:4, 33:22, 37:5, 40:20, 41:17, 45:1

**last** [7] - 14:13, 15:1, 15:12, 15:21, 21:18, 29:8, 40:7

**late** [2] - 28:17, 30:2

**latter** [1] - 40:9

**laundering** [2] - 9:3, 11:11

**LAW** [2] - 2:17, 2:20

**law** [2] - 30:20, 45:9

**lawyer** [3] - 24:5, 27:5, 27:8

**lawyers** [2] - 15:4, 24:24

**lays** [1] - 7:18

**learned** [1] - 19:11

**least** [8] - 11:6, 16:1, 17:23, 19:7, 26:1, 29:20, 40:8, 41:22

**leave** [1] - 4:14

**leaving** [1] - 12:15

**left** [2] - 13:13, 18:2

**legal** [2] - 13:16, 23:24

**less** [1] - 5:1

**level** [1] - 9:20

**liability** [4] - 33:6, 36:2, 42:7, 43:5

**lies** [1] - 39:17

**limited** [2] - 4:17, 5:17

**limits** [1] - 7:7

**LINCENBERG** [12] - 3:2, 6:25, 10:4, 10:10, 10:15, 12:5, 13:21, 19:19, 20:4, 25:6, 44:7, 44:10

**Lincenberg** [4] - 3:3, 6:21, 18:7, 18:25

**Lincenberg's** [2] - 11:16, 11:18

**line** [5] - 29:9, 32:2, 33:25, 34:22, 36:12

**lines** [17] - 19:23, 31:22, 32:13, 32:14, 33:22, 34:10, 34:20, 36:11, 37:17, 37:18, 37:20, 39:3, 39:5, 39:8, 39:22, 40:22, 41:9

**LIPSITZ** [1] - 2:13

**listings** [1] - 15:3

**literal** [1] - 34:5

**litigated** [1] - 36:18

**litigation** [1] - 26:6

**loan** [1] - 20:8

**look** [14] - 8:23, 11:8, 18:21, 19:5, 19:14, 19:18, 19:21, 21:25, 28:15, 28:24, 30:2, 35:19, 36:9, 41:18

**looking** [6] - 4:10, 5:24, 18:16, 21:11, 22:18, 29:7

**Lopez** [2] - 1:21, 46:16

**LOPEZ** [2] - 46:4, 46:17

**Los** [1] - 3:4

**lose** [1] - 20:22

**Lyndon** [3] - 12:7, 12:20, 12:24

### M

**ma'am** [1] - 26:14

**Machine** [1] - 14:22

**mail** [14] - 12:7, 12:12, 13:3, 13:7, 14:21, 14:24, 15:2, 15:10, 15:11, 15:24, 16:6, 23:15, 24:3, 27:13

**mails** [10] - 8:25, 9:16, 11:8, 13:16, 13:22, 25:8, 27:8, 27:9, 27:17, 27:22

**major** [1] - 24:20

**man** [1] - 12:25

**manner** [2] - 10:24, 40:9

**MARELLA** [1] - 3:2

**Margaret** [1] - 2:5

**margaret.perlmeter@usdoj.gov** [1] - 2:8

**marshals** [1] - 4:13

**material** [21] - 5:22, 6:5, 10:1, 10:2, 10:9, 10:14, 10:20, 12:17, 17:5, 17:10, 17:14, 17:24, 18:21, 19:8, 23:6, 27:22, 28:12, 28:14, 29:11, 30:1

**matter** [9] - 7:3, 23:9, 23:20, 25:23, 25:24, 28:15, 29:24, 35:7, 36:19

**matters** [2] - 25:20, 26:2

**mealymouthed** [1] - 27:5

**mean** [4] - 15:12, 17:16, 26:4, 36:6

**meaning** [1] - 12:1

**media** [1] - 4:10

**member** [15] - 31:24, 32:3, 33:8, 34:6, 34:22, 34:24, 34:25, 35:22, 36:15, 36:17, 36:21, 37:2, 39:24, 41:2, 45:5

**met** [1] - 27:3

**Michael** [3] - 1:8, 2:13, 7:16

**might** [3] - 9:6, 11:22, 26:17

**million** [5] - 15:5, 24:4, 24:10, 24:11, 25:1

**millions** [1] - 17:16

**mind** [3] - 7:16, 9:25, 44:14

**mine** [2] - 7:6, 17:6

**minimum** [1] - 39:10

**minor** [1] - 27:15

**misleading** [3] - 35:20, 36:4, 42:4

**missed** [1] - 43:19

**mixed** [1] - 35:17

**mixing** [1] - 19:10

**modifications** [1] - 21:10

**modifying** [1] - 21:7

**moment** [1] - 42:9

**money** [7] - 9:3, 11:11, 15:8, 15:9, 23:24, 29:16

**monies** [1] - 24:24

**morning** [2] - 14:21, 25:7

**most** [2] - 16:2, 33:16

**motion** [8] - 6:15, 16:19, 18:21, 19:16, 21:22, 22:2, 23:7, 28:7

**move** [1] - 5:15

**MR** [69] - 4:16, 6:13, 6:25, 10:4, 10:10, 10:15, 11:15, 12:5, 13:14, 13:21, 14:6, 14:7, 14:10, 14:20, 15:15, 15:17, 15:25, 16:1, 16:3, 16:4, 16:10, 16:12, 19:13, 19:19, 20:4, 20:11, 21:1, 21:18, 22:8, 23:10, 23:13, 25:6, 27:25, 28:20, 28:22, 29:2, 29:5, 30:3, 30:9, 30:10, 30:13, 30:17, 31:4, 31:10, 31:16, 31:20, 32:23, 33:18, 34:18, 35:14, 35:17, 35:19, 36:4, 36:5, 36:13, 37:21, 38:7, 38:9, 38:15, 39:25, 42:15, 43:1, 43:19, 43:24, 44:7, 44:10, 45:3, 45:10, 45:12

**MS** [32] - 25:16, 25:18, 26:14, 26:16, 31:6, 31:19, 33:20, 35:13, 35:16, 36:1, 37:7, 37:13, 37:16, 37:24, 38:10, 38:18, 38:25, 39:2, 39:7, 39:14, 40:10, 40:17, 41:3, 41:13, 41:15, 42:6, 42:13, 43:11, 44:3, 44:19, 44:25, 45:4

**must** [1] - 41:24

### N

**named** [2] - 25:23, 36:18

**Nanci** [2] - 15:4, 15:8

**nature** [1] - 4:17

**necessarily** [1] - 11:5

**need** [10] - 4:8, 4:19, 5:4, 5:19, 12:3, 22:20, 24:23, 36:17,

40:3, 40:14
**needed** [1] - 5:14
**needs** [3] - 36:17, 37:22, 43:2
**NESSIM** [1] - 3:2
**never** [2] - 27:16, 34:3
**New** [1] - 2:11
**new** [4] - 11:9, 14:13, 15:11, 26:19
**next** [2] - 10:6, 34:13
**night** [5] - 14:13, 15:1, 15:12, 15:21, 29:8
**Ninth** [1] - 20:13
**no's** [1] - 35:17
**none** [3] - 10:2, 10:11, 40:11
**North** [2] - 2:6, 3:8
**notation** [1] - 4:7
**note** [1] - 40:20
**noted** [2] - 40:18, 40:19
**notes** [1] - 12:8
**nothing** [6] - 27:10, 29:24, 34:10, 38:10, 39:9, 44:15
**November** [4] - 1:8, 18:4, 21:23, 46:12
**number** [10] - 6:16, 14:14, 14:15, 14:17, 14:18, 14:21, 22:9, 23:24, 25:8
**numbers** [2] - 14:15, 27:2
**numerous** [1] - 36:19
**NW** [1] - 2:11
**NY** [1] - 2:15

**O**

**o'clock** [1] - 15:22
**O'Connor** [1] - 1:21
**oath** [1] - 17:25
**object** [1] - 44:10
**objected** [1] - 40:20
**objection** [1] - 44:8
**objections** [2] - 11:2, 45:12
**objects** [1] - 37:24
**observation** [1] - 28:10
**obvious** [1] - 22:18
**obviously** [6] - 16:5, 18:2, 24:10, 25:22, 29:14, 42:22
**October** [2] - 19:23, 21:23
**OF** [3] - 1:3, 1:14, 2:10
**offense** [5] - 32:4, 36:16, 36:23, 37:4, 38:22

**offenses** [1] - 38:24
**offer** [1] - 43:24
**OFFICE** [3] - 2:3, 2:17, 2:20
**Official** [2] - 1:20, 46:5
**often** [2] - 21:5, 21:9
**one** [31] - 7:22, 7:23, 8:21, 9:12, 9:14, 14:14, 14:17, 14:22, 14:25, 15:4, 16:10, 19:19, 19:24, 21:20, 21:22, 21:23, 22:9, 22:19, 23:19, 23:22, 25:9, 27:6, 28:4, 29:13, 31:22, 33:7, 33:8, 34:21, 42:1, 43:6
**opens** [1] - 11:9
**operating** [1] - 20:23
**opine** [1] - 36:9
**opportunity** [1] - 31:15
**opposed** [2] - 22:15, 22:24
**oranges** [1] - 15:18
**otherwise** [1] - 23:23
**outcome** [1] - 6:11
**outlined** [1] - 45:8
**outside** [1] - 4:7
**overbears** [1] - 35:6
**overbroad** [1] - 39:18
**own** [1] - 18:6
**owner** [1] - 7:19

**P**

**P.A** [1] - 2:17
**P.C** [1] - 3:2
**P.L.C** [1] - 3:7
**p.m** [4] - 30:19, 31:12, 31:13, 45:13
**P.O** [1] - 3:12
**Padilla** [3] - 3:6, 25:23, 28:3
**page** [35] - 6:16, 6:24, 6:25, 7:1, 14:24, 19:23, 19:25, 20:1, 20:3, 20:7, 21:21, 31:22, 32:1, 32:13, 32:18, 32:25, 33:5, 33:11, 33:15, 33:23, 34:2, 34:15, 35:21, 35:25, 39:3, 39:23, 40:4, 40:18, 40:22, 41:9, 41:18, 42:17, 43:9, 44:21, 44:24
**Page** [1] - 30:22
**pages** [3] - 6:25, 46:7
**paid** [3] - 15:3, 15:8, 29:16

**papers** [1] - 6:13
**paragraphs** [5] - 5:25, 6:16, 6:19, 18:8
**paralegal** [1] - 25:6
**Park** [1] - 3:3
**parse** [1] - 41:11
**parsed** [1] - 5:23
**part** [12] - 8:1, 11:6, 12:13, 15:1, 16:23, 18:18, 25:1, 32:24, 33:23, 37:19, 38:17, 43:4
**participate** [1] - 18:10
**particular** [6] - 5:11, 6:7, 6:11, 7:6, 24:3, 30:24
**parties** [1] - 5:16
**parts** [1] - 18:21
**party** [2] - 25:21, 26:2
**Paul** [1] - 2:14
**pay** [2] - 9:9, 9:11
**payment** [2] - 9:4, 24:4
**payments** [1] - 20:8
**payroll** [7] - 8:21, 9:5, 9:9, 9:11, 19:22, 25:9, 25:11
**pcambria@lglaw. com** [1] - 2:15
**pens** [1] - 36:3
**Per** [1] - 39:3
**per** [2] - 31:22, 33:24
**Perlmeter** [1] - 2:5
**permitted** [1] - 6:17
**person** [9] - 22:13, 34:6, 34:22, 36:10, 36:11, 36:20, 36:23, 37:3, 39:23
**person's** [1] - 11:4
**pertain** [1] - 26:9
**pertains** [1] - 42:6
**Peter** [1] - 2:4
**peter.kozinets@ usdoj.gov** [1] - 2:7
**Phoenix** [6] - 1:7, 1:22, 2:6, 2:19, 3:8, 46:12
**phone** [1] - 4:14
**phones** [1] - 4:7
**phrase** [1] - 39:3
**piece** [1] - 24:19
**pin** [1] - 23:25
**pincite** [1] - 9:13
**pincites** [6] - 6:8, 7:2, 7:20, 7:25
**Pinkerton** [11] - 32:1, 32:24, 33:9, 34:5, 36:14, 37:10, 37:17, 38:2, 42:7, 43:3, 43:7

**Plaintiff** [1] - 1:6
**player** [1] - 27:15
**plea** [2] - 23:22, 24:12
**pleading** [1] - 30:4
**plus** [2] - 25:1, 26:8
**point** [16] - 8:21, 10:6, 11:25, 13:19, 19:19, 19:20, 22:10, 29:5, 30:4, 32:24, 32:25, 34:3, 34:5, 36:7, 41:7, 43:8
**pointing** [1] - 8:19
**points** [5] - 6:23, 8:17, 8:19, 19:1, 19:17
**portion** [2] - 34:17, 46:8
**position** [8] - 6:4, 7:3, 9:17, 10:2, 10:11, 10:19, 22:8, 31:3
**possible** [1] - 41:16
**possibly** [1] - 27:10
**Posting** [3] - 7:16, 7:20, 20:1
**potential** [3] - 6:5, 20:19, 28:2
**potentially** [1] - 13:11
**predating** [1] - 26:21
**prejudicial** [2] - 17:15, 27:19
**preliminary** [1] - 19:7
**prepare** [1] - 17:1
**prepared** [1] - 46:11
**Prepared** [1] - 1:24
**pressed** [1] - 27:4
**prevent** [1] - 4:11
**previously** [6] - 10:3, 10:5, 10:11, 11:21, 15:23, 25:3
**proceed** [2] - 4:15, 30:2
**proceeding** [1] - 4:11
**PROCEEDINGS** [1] - 1:14
**Proceedings** [7] - 1:24, 4:3, 30:18, 30:19, 31:12, 31:13, 45:13
**proceedings** [5] - 6:2, 6:3, 17:8, 17:19, 46:9
**process** [3] - 16:24, 38:3, 38:4
**produce** [1] - 13:11
**produced** [9] - 9:19, 10:3, 10:5, 10:12, 10:17, 11:7, 11:21, 13:9, 17:6, 18:11, 28:6
**producing** [1] - 13:3
**proper** [2] - 5:18, 41:6

**Properties** [1] - 9:10
**propose** [1] - 43:13
**proposes** [1] - 42:10
**prosecution's** [1] - 24:13
**Prosperity** [2] - 9:7, 9:8
**prove** [2] - 42:19, 43:2
**provide** [3] - 13:25, 16:15, 42:15
**provided** [5] - 15:24, 21:13, 22:22, 22:23, 25:7
**provides** [1] - 17:20
**public** [1] - 4:6
**publicly** [2] - 6:1, 17:7
**publicly-filed** [2] - 6:1, 17:7
**pull** [1] - 17:17
**pulled** [2] - 17:10, 40:6
**purpose** [2] - 8:23, 9:2
**purposeful** [1] - 17:13
**pursuant** [1] - 33:4
**put** [7] - 6:4, 6:22, 12:8, 12:19, 12:24, 21:7, 21:21
**putting** [2] - 12:12, 44:23

**Q**

**qualified** [1] - 46:5
**qualify** [1] - 28:12
**questioned** [1] - 18:7
**QUESTIONS** [1] - 1:16
**questions** [9] - 5:4, 5:7, 5:9, 5:10, 14:11, 23:25, 24:7, 36:2, 37:25
**quickly** [2] - 4:16, 27:25
**quite** [1] - 32:8
**Quoc** [1] - 19:21

**R**

**raised** [3] - 4:24, 25:10, 28:1
**raising** [1] - 9:18
**RAPP** [1] - 15:25
**Rapp** [4] - 2:3, 7:23, 9:12, 25:4
**rather** [1] - 33:1
**read** [4] - 5:1, 16:19, 41:11, 44:4
**reads** [4] - 31:21, 32:3, 41:24, 43:21
**really** [5] - 5:4, 5:19, 11:16, 26:24, 29:15,

UNITED STATES DISTRICT COURT

**reams** [1] - 17:16
**reason** [5] - 17:9, 17:22, 23:7, 26:19, 42:20
**reasonably** [1] - 24:25
**receive** [1] - 27:9
**received** [8] - 8:12, 9:15, 13:23, 23:22, 26:8, 27:16, 27:23, 39:15
**recipient** [1] - 25:21
**recollection** [2] - 16:9, 32:15
**reconvened** [2] - 30:19, 31:13
**record** [5] - 6:7, 12:2, 25:19, 26:10, 44:7
**recording** [1] - 4:11
**refer** [4] - 32:21, 37:12, 39:11, 41:1
**reference** [5] - 32:1, 36:10, 38:20, 42:16, 44:23
**references** [1] - 8:14
**referred** [7] - 8:15, 22:19, 32:16, 32:19, 34:4, 39:20, 41:23
**referring** [2] - 21:16, 22:24
**refers** [1] - 39:5
**reflect** [1] - 22:3
**refreshing** [1] - 16:8
**refuted** [1] - 17:5
**regard** [8] - 9:4, 17:3, 19:15, 23:7, 24:14, 28:11, 28:15, 33:16
**regarding** [3] - 25:19, 26:6, 40:17
**regards** [2] - 5:10, 26:1
**rehash** [1] - 29:6
**related** [5] - 17:8, 18:19, 26:23, 28:14, 41:24
**relates** [7] - 9:25, 12:1, 12:4, 24:22, 25:9, 29:25, 41:22
**relating** [1] - 23:3
**relevant** [7] - 10:20, 13:2, 13:21, 16:2, 17:2, 18:14, 30:5
**remaining** [7] - 42:11, 42:21, 43:15, 43:20, 43:22, 43:25, 44:5
**remember** [7] - 24:1, 24:2, 24:9, 24:10, 34:19
**remembers** [1] - 15:6
35:5, 40:5, 41:24, 43:4

**remind** [2] - 4:6, 32:6
**reminding** [1] - 37:6
**repeatedly** [1] - 24:1
**report** [12] - 6:1, 7:10, 7:18, 8:7, 8:21, 9:1, 9:7, 12:6, 20:9, 20:16, 23:4
**Reported** [1] - 1:24
**Reporter** [3] - 1:20, 1:24, 46:5
**REPORTER'S** [1] - 1:14
**reports** [2] - 8:9, 14:12
**representing** [1] - 6:2
**request** [3] - 23:2, 30:10, 30:13
**require** [1] - 34:24
**resist** [1] - 26:23
**resolve** [1] - 43:18
**respect** [1] - 29:15
**response** [5] - 23:4, 33:3, 36:7, 39:10, 40:8
**responsibilities** [1] - 18:15
**restricted** [2] - 44:17, 44:18
**result** [2] - 23:22, 24:12
**retainers** [1] - 15:3
**return** [1] - 45:8
**reversed** [1] - 20:16
**review** [4] - 15:20, 24:15, 31:1, 31:15
**reviewed** [4] - 7:11, 13:5, 16:22, 31:17
**RHOW** [1] - 3:2
**RMR** [2] - 1:21, 46:17
**Road** [2] - 2:18, 2:21
**role** [1] - 7:16
**round** [1] - 27:2
**rule** [2] - 4:23, 45:6
**ruled** [1] - 11:3
**ruling** [1] - 19:7
**running** [1] - 8:4

## S

**s/Hilda** [1] - 46:16
**sampling** [1] - 16:1
**Sandra** [1] - 1:21
**saw** [1] - 5:13
**schedule** [2] - 24:4
**SCIME** [1] - 2:13
**Scott** [1] - 2:17
**Scottsdale** [3] - 2:21, 2:22, 3:12
**search** [3] - 20:24, 20:25, 21:4
**seated** [3] - 4:4, 30:20,
31:14

**seating** [1] - 4:6
**second** [8] - 15:1, 26:11, 26:16, 32:15, 33:1, 34:24, 36:11, 36:20
**see** [8] - 4:12, 5:12, 12:12, 22:10, 22:20, 26:24, 36:15
**seem** [2] - 18:15, 39:16
**seizable** [1] - 23:23
**seized** [1] - 23:23
**seizure** [5] - 12:8, 12:10, 20:25, 21:25, 26:6
**self** [1] - 24:21
**self-authenticating** [1] - 24:21
**sending** [1] - 15:3
**sense** [1] - 33:7
**sent** [2] - 22:18, 24:16
**separate** [6] - 23:9, 32:17, 39:11, 43:5
**separately** [11] - 32:22, 39:19, 39:20, 42:1, 42:12, 42:21, 42:23, 43:16, 43:23, 44:1, 44:6
**service** [1] - 18:3
**set** [2] - 7:13, 40:17
**setting** [1] - 8:4
**several** [4] - 20:12, 20:15, 22:17, 23:16
**share** [2] - 26:3, 26:4
**shell** [1] - 8:15
**show** [1] - 8:17
**signatory** [1] - 18:25
**signed** [2] - 30:25, 31:25
**similar** [7] - 32:20, 32:23, 39:25, 40:7, 40:8, 40:16, 40:17
**simply** [6] - 5:12, 22:13, 31:7, 34:14, 34:15, 39:22
**single** [3] - 11:22, 41:10, 42:21
**situation** [1] - 22:23
**six** [1] - 4:18
**slightly** [1] - 21:7
**social** [1] - 4:10
**Solutions** [3] - 7:16, 7:20, 20:1
**someone** [4] - 22:23, 22:25, 38:21, 39:23
**somewhat** [2] - 5:21, 18:19
**somewhere** [1] - 25:14

**soon** [1] - 30:7
**sorry** [9] - 5:24, 15:15, 21:25, 29:13, 30:12, 43:19, 43:21, 44:3, 45:11
**sort** [2] - 17:13, 19:5
**source** [1] - 10:18
**sources** [1] - 11:22
**Spc** [1] - 1:22
**speaking** [1] - 24:25
**Spear** [1] - 2:17
**specific** [3] - 33:21, 38:14, 39:21
**specifically** [3] - 23:6, 24:24, 44:13
**specified** [1] - 46:10
**spreadsheet** [1] - 18:12
**stand** [4] - 11:10, 22:13, 27:1, 29:17
**standing** [1] - 29:17
**starting** [2] - 33:5, 35:25
**starts** [2] - 33:11, 33:15
**statement** [13] - 10:23, 10:24, 11:4, 11:6, 11:22, 13:6, 16:21, 16:22, 19:4, 22:16, 24:15, 24:21, 24:22
**statements** [12] - 8:7, 8:8, 8:16, 10:16, 10:17, 20:19, 21:10, 21:11, 21:14, 28:3, 28:4
**STATES** [3] - 1:1, 2:3, 2:10
**States** [4] - 1:5, 42:18, 43:2, 46:6
**Stenographic** [1] - 1:24
**step** [2] - 4:9, 4:12
**sterling** [1] - 15:6
**stick** [2] - 37:8, 38:5
**sticking** [2] - 34:3, 34:4
**still** [5] - 5:10, 28:22, 43:2, 45:2, 45:3
**STONE** [24] - 4:16, 6:13, 11:15, 13:14, 16:3, 16:12, 21:1, 21:18, 27:25, 28:20, 31:4, 31:16, 32:23, 35:19, 36:4, 36:13, 37:21, 38:7, 38:15, 39:25, 42:15, 43:1, 43:19, 43:24
**stone** [12] - 5:21, 12:7, 12:25, 13:1, 13:9, 14:21, 16:18, 20:22,

35:18, 36:8, 42:14, 44:3
**Stone** [1] - 2:4
**stop** [2] - 20:21, 37:11
**Street** [1] - 1:22
**strict** [1] - 41:17
**struggle** [2] - 39:14, 39:17
**struggled** [1] - 37:9
**struggling** [1] - 43:7
**stuff** [2] - 12:13, 26:21
**subject** [4] - 9:3, 9:20, 20:12, 23:20
**subjects** [1] - 20:11
**submitted** [1] - 18:5
**substance** [4] - 10:2, 10:5, 10:14, 10:15
**substantive** [6] - 32:19, 33:11, 37:23, 40:4, 42:16, 43:4
**sufficient** [1] - 4:23
**suggest** [4] - 8:3, 33:21, 38:12, 42:4
**suggested** [1] - 34:8
**suggestion** [2] - 34:14, 44:25
**Suite** [7] - 1:21, 2:6, 2:14, 2:18, 2:21, 3:3, 3:8
**summary** [2] - 11:7, 12:16
**superseding** [1] - 18:17
**supporting** [1] - 22:1
**supports** [3] - 11:16, 13:14, 21:14
**supposed** [1] - 22:20
**surprise** [2] - 10:7, 17:4

## T

**talks** [3] - 9:7, 19:25, 34:22
**tangential** [1] - 20:5
**telephone** [1] - 4:9
**telephonically** [1] - 2:10
**terms** [4] - 5:17, 19:5, 19:9, 19:20
**testified** [2] - 17:25, 21:18
**testify** [1] - 10:8
**testimony** [19] - 4:22, 6:6, 7:8, 7:15, 7:21, 7:23, 8:20, 9:10, 10:8, 12:13, 12:18, 13:17, 17:1, 18:3, 18:13, 20:7, 21:1, 24:23, 28:16

UNITED STATES DISTRICT COURT

8

texting [1] - 4:9
Thai [25] - 4:22, 7:5, 7:10, 8:9, 8:22, 8:25, 9:9, 10:21, 10:25, 11:7, 11:17, 11:19, 12:1, 12:4, 12:7, 12:15, 13:17, 17:11, 18:16, 19:21, 19:25, 21:2, 21:18, 23:3, 28:16
Thai's [5] - 7:7, 8:20, 10:7, 12:5, 12:6
THE [72] - 1:3, 1:13, 4:4, 5:20, 6:20, 9:24, 10:6, 10:14, 13:24, 14:9, 14:19, 15:14, 15:16, 15:23, 16:8, 16:11, 16:18, 19:14, 20:3, 20:10, 20:21, 21:15, 22:7, 23:8, 23:12, 25:13, 25:17, 26:12, 26:15, 27:24, 28:10, 28:21, 28:24, 29:4, 29:23, 30:6, 30:12, 30:16, 30:20, 31:5, 31:7, 31:11, 31:14, 31:17, 31:21, 33:17, 35:18, 36:6, 37:6, 37:11, 37:14, 38:19, 39:1, 39:5, 39:10, 40:5, 40:15, 40:24, 41:10, 41:14, 41:21, 42:8, 42:14, 42:20, 43:12, 43:21, 44:2, 44:4, 44:9, 44:23, 45:7, 45:11
themselves [1] - 35:8
theories [3] - 33:6, 37:9, 43:5
theory [9] - 33:10, 35:21, 35:24, 36:2, 36:14, 37:1, 41:8, 43:3, 43:6
therefore [1] - 42:3
therein [1] - 46:10
they've [3] - 34:11, 35:6, 39:16
third [2] - 36:11, 36:23
three [2] - 7:15, 22:5
throughout [2] - 8:1, 18:13
throws [1] - 14:16
tied [2] - 11:19, 10:23
today [3] - 25:4, 34:21, 40:1
together [5] - 12:8, 12:12, 12:20, 12:24, 19:10
top [1] - 20:1
topic [1] - 6:8

total [1] - 41:12
totality [1] - 6:22
tracing [2] - 8:13, 20:24
tracking [1] - 36:14
tracks [1] - 36:20
TRANSCRIPT [1] - 1:14
Transcript [1] - 1:24
transcript [3] - 28:16, 46:8, 46:10
Transcription [1] - 1:24
transcripts [1] - 6:9
transfers [1] - 10:22
Travel [18] - 32:4, 32:19, 33:11, 35:9, 36:16, 36:23, 37:3, 38:20, 38:22, 38:24, 39:5, 39:20, 41:19, 41:22, 42:17, 42:22, 43:4, 43:18
TRIAL [1] - 1:15
trial [3] - 12:14, 13:5, 14:23
tried [1] - 40:13
troubled [1] - 26:18
troubling [1] - 26:25
true [1] - 46:8
try [2] - 11:1, 11:2
trying [4] - 8:3, 15:7, 23:25, 39:18
tune [1] - 15:5
turned [2] - 20:16, 21:19
two [19] - 5:9, 10:10, 14:18, 18:15, 18:16, 18:18, 19:10, 20:2, 20:6, 20:11, 21:19, 21:22, 25:18, 26:1, 32:20, 34:10, 37:9, 39:22

## U

U.S [1] - 1:21
ultimate [1] - 7:18
unaware [1] - 18:8
under [16] - 13:6, 17:25, 20:13, 29:24, 33:4, 33:9, 33:10, 33:14, 35:20, 35:21, 35:24, 37:22, 39:22, 43:6, 46:11
underlying [2] - 17:5, 17:10
undertaken [1] - 29:10
UNITED [3] - 1:1, 2:3, 2:10
United [4] - 1:5, 42:18,

43:2, 46:6
universe [1] - 26:5
unless [2] - 22:10, 22:15
unresolved [1] - 16:18
untrue [1] - 9:11
up [13] - 8:4, 8:17, 11:9, 13:25, 14:11, 16:14, 16:16, 25:2, 27:14, 35:17, 37:17, 42:19, 43:2
USABP [1] - 14:21
useful [1] - 5:17
utilization [1] - 23:23

## V

various [1] - 30:4
Vaught [3] - 3:10, 27:13, 28:3
verbatim [1] - 21:9
verdict [3] - 29:13, 42:1, 42:2
version [5] - 5:9, 18:5, 20:24, 22:19, 32:7
versions [13] - 20:12, 20:15, 20:18, 21:15, 21:16, 21:19, 22:10, 22:17, 22:18, 22:21, 28:22, 30:15
Versoza [16] - 5:3, 5:7, 8:9, 9:1, 9:16, 9:21, 10:22, 10:25, 12:11, 14:11, 14:25, 15:3, 15:19, 23:3, 23:16, 25:10
versus [1] - 36:10
vs [1] - 1:7

## W

Walter [1] - 2:21
wants [2] - 9:14, 9:22
warrant [4] - 12:10, 20:25, 21:4, 21:5
warrants [2] - 12:9, 21:12
Washington [2] - 1:22, 2:11
ways [1] - 30:5
weeks [1] - 12:23
weigh [1] - 24:11
Weiss [1] - 26:8
West [1] - 1:22
whole [4] - 9:19, 11:9, 11:25, 29:19
wire [1] - 10:22
wires [3] - 8:13, 8:24, 11:11
wish [1] - 19:17

wishes [2] - 31:5, 33:17
withdrawn [2] - 30:10, 30:13
witness [9] - 7:5, 8:6, 10:21, 11:9, 11:10, 17:25, 23:18, 24:13, 24:20
witnesses [7] - 4:20, 5:2, 5:19, 12:4, 26:24, 30:11, 30:14
WOLPERT [1] - 3:2
word [2] - 27:24, 43:12
worded [1] - 35:14
words [2] - 17:6, 36:8
write [3] - 5:8, 17:25, 27:18
writes [2] - 12:15, 12:23
Wu [1] - 2:5

## Y

years [2] - 12:24, 26:8
yeses [1] - 35:17
yesterday [15] - 4:5, 9:15, 12:18, 13:17, 23:5, 25:3, 32:7, 34:4, 34:8, 34:21, 39:15, 39:19, 40:1, 40:13, 40:20
York [1] - 2:11
yourself [1] - 5:6

UNITED STATES DISTRICT COURT

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

United States of America,       )
                                )   No. 2:18-cr-00422-DJH
            Plaintiff,          )
                                )
        vs.                     )       Phoenix, Arizona
                                )       November 16, 2023
Michael Lacey, et al.           )       11:04 a.m.
                                )
        Defendants.             )   **AMENDED TRANSCRIPT**
_____    )   **TITLE PAGE - DATE**

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 34**

**(JURY QUESTION/VERDICT)**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

```
1                          A P P E A R A N C E S

2

    For the Government:
3       UNITED STATES ATTORNEY'S OFFICE
        By:  Mr. Kevin M. Rapp, Esq.
4            Mr. Peter S. Kozinets, Esq.
             Mr. Andrew C. Stone, Esq.
5            Ms. Margaret Wu Perlmeter, Esq.
             Mr. Daniel Boyle, Esq.
6       40 North Central Avenue, Suite 1200
        Phoenix, Arizona 85004
7       kevin.rapp@usdoj.gov
        peter.kozinets@usdoj.gov
8       andrew.stone@usdoj.gov
        margaret.perlmeter@usdoj.gov
9
    For the Government:
10      UNITED STATES DEPARTMENT OF JUSTICE
        By:  Mr. Austin Berry, Esq.
11      1301 New York Avenue, NW, 11th Floor
        Washington, DC 20005
12      austin.berry2@usdoj.gov

13  For the Defendant Michael Lacey:
        LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
14      By:  Mr. Paul J. Cambria, Jr., Esq.
        42 Delaware Avenue, Suite 120
15      Buffalo, NY 14202
        pcambria@lglaw.com
16

17  For the Defendant Scott Spear:
        FEDER LAW OFFICE, P.A.
18      By:  Mr. Bruce S. Feder, Esq.
        2930 East Camelback Road, Suite 160
19      Phoenix, AZ 85016
        bf@federlawpa.com
20      - and -
        KESSLER LAW OFFICE
21      By:  Mr. Eric Walter Kessler, Esq.
        6720 N. Scottsdale Road, Suite 210
22      Scottsdale, AZ 85253
        eric.kesslerlaw@gmail.com
23

24

25
```

UNITED STATES DISTRICT COURT

3

```
 1
      For the Defendant John Brunst:
 2        BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
          LINCENBERG & RHOW, P.C.
 3        By:  Mr. Gopi K. Panchapakesan, Esq. (Telephonic)
               Mr. Gary S. Lincenberg, Esq.
 4        1875 Century Park E, Suite 2300
          Los Angeles, CA 90067
 5        gpanchapakesan@birdmarella.com
          glincenberg@birdmarella.com
 6
      For the Defendant Andrew Padilla:
 7        DAVID EISENBERG, P.L.C.
          By:  Mr. David S. Eisenberg, Esq.
 8        3550 North Central Avenue, Suite 1155
          Phoenix, AZ 85012
 9        david@deisenbergplc.com

10    For the Defendant Joye Vaught:
          JOY BERTRAND, ESQ., L.L.C.
11        By:  Ms. Joy M. Bertrand, Esq.
          P.O. Box 2734
12        Scottsdale, AZ 85252
          joy@joybertrandlaw.com
13

14

15    *** AMENDED TITLE PAGE TO REFLECT CORRECT DATE ***

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

4

<u>**P R O C E E D I N G S**</u>

(Proceedings commence at 11:04 a.m.)

THE COURT:  Please be seated.  All right.  The record
will reflect we have all counsel here, all defendants.
Government's counsel is present.  We do have a question this
morning from the jury.  The question reads -- the question
reads, "Per the Court, each count stands on its own merit for
each" -- I think it's supposed to be "defendant."  "If a
defendant fails to meet an element of Count 1, they should be
found not guilty; correct?  Therefore, by being not guilty to
Count 1," and in parentheses -- I may have misread that.  Oh,
parentheses, "(not part of the conspiracy)" and it looks like
an attempt to a closed parentheses, "can they still satisfy the
element #4 in Counts 2-51; a defendant was a member of the same
conspiracy," and there's a reference to page 27.  And it's
signed by Juror No. 5.

Did the government have an opportunity to review?

MR. STONE:  Yes, Your Honor.

THE COURT:  Did the defendants?

MS. BERTRAND:  Yes, ma'am.

THE COURT:  And on consideration of the question, I'm
inclined to answer the question in the following way:  "If a
defendant does not meet an element of Count 1, they cannot be
found guilty of Count 1.  If you find a defendant is not guilty

11:04:32

11:05:16

11:05:49

11:06:09

11:06:43

UNITED STATES DISTRICT COURT

ER 15161

5

```
 1    of Count 1, that defendant cannot satisfy element 4 on page 27

 2    of the jury instructions."

 3          And I think adding, "because that defendant cannot be

 4    held responsible for the acts of a co-conspirator," is

 5    clarifying.  I'll read that again.  In answer to the first          11:07:26

 6    question, which is a question and a statement related to Count

 7    1, I would say, "If a defendant does not meet an element of

 8    Count 1, they cannot be found guilty of Count 1."

 9          In attempt to read the second portion, I would answer,

10    "If you find a defendant is not guilty of Count 1, that            11:08:10

11    defendant cannot satisfy element 4 on page 27 of the jury

12    instructions because that defendant cannot be held responsible

13    for the acts of a co-conspirator."

14          Mr. Stone.

15          MR. STONE:  First part, no issue, Your Honor.                11:08:37

16          Second part, I think is clarifying and I think is

17    appropriate, but I do think we need a third part here because

18    we are, I think, risking confusing the jury about these

19    instructions.

20          In the preliminary instructions, Your Honor, when you       11:09:01

21    instructed this jury, we gave the substantive Travel Act count

22    first, which is the instruction that's now on page 30, and then

23    the instructions read, "And further, you may find a given

24    defendant guilty if," and then you laid out the *Pinkerton*

25    instructions.  So it made it clear that these were alternative    11:09:22
```

UNITED STATES DISTRICT COURT

6

| | |
|---|---|
| 1 | theories of liability.  The way the instructions read now you |
| 2 | have on page 27, the *Pinkerton* theory without, we don't have |
| 3 | any explanation that it's an alternative theory.  They very |
| 4 | well could be thinking the government needs to prove beyond a |
| 5 | reasonable doubt *Pinkerton* and page 30. |

11:09:41

6    And it's confusing because the question here:  Can a
7 defendant be found guilty of Counts 2 through 51 if they are
8 not guilty on Count 1?  No, they cannot under a *Pinkerton*
9 theory, and we absolutely should tell the jury that, so we have
10 no disagreement there.

11:10:01

11    But I think we need to clarify for the jury so there
12 is no confusion that there are -- that there's a separate
13 theory of criminal liability for Counts 2 through 51, and point
14 them back to instruction 30.  What I would recommend for a
15 starting point, Your Honor, is what you had offered yesterday

11:10:20

16 afternoon initially, and you stated that it may be more concise
17 to answer the question that a defendant who you find not guilty
18 in Count 1 can be found guilty in charges, or in Counts 2
19 through 51 if not a member of the conspiracy, and then point
20 them to the instruction on page 30.

11:10:44

21    So I think what you've read would be perfectly
22 acceptable for the government.  We just need to be -- 'cause
23 this is the third question on this exact same issue, and I
24 think we need to do our best to clarify as best we can for the
25 jury and letting them know that there is another theory that

11:11:02

UNITED STATES DISTRICT COURT

7

```
 1   they should evaluate for these defendants is perfectly
 2   acceptable when they continue to ask questions in this regard.
 3   So that would be -- I just think we need a little more language
 4   on this, Your Honor.
 5            THE COURT:  And what was your proposed language?        11:11:23
 6            MR. STONE:  I think what you said yesterday would be a
 7   good way to go.
 8            THE COURT:  I said lots of things yesterday.
 9            MR. STONE:  Well, I am going to read back what you
10   said.  We think would be a good way to go:                      11:11:35
11        "A defendant who you find not guilty in Count 1 can be
12   found guilty in Counts 2 through 51 even if not a member of the
13   conspiracy under the elements listed on page 30."
14            THE COURT:  All right.  I'll hear from Ms. Bertrand.
15            MS. BERTRAND:  Thank you, Your Honor.  Good morning,    11:12:55
16   Your Honor.
17            THE COURT:  Good morning.
18            MS. BERTRAND:  The language that the Court proposes is
19   appropriate without any amendment proposed by the government.
20   The jury has told us the sticking point is page 27.  They have  11:13:21
21   never referenced page 30.  They've been referred to 30 before.
22   The government is asking the Court to presume that the jury
23   hasn't done its job over the past two weeks in reviewing the
24   other jury instructions.
25            And what is highly likely is that initially they did   11:13:45
```

UNITED STATES DISTRICT COURT

8

```
1    go through page 30, which is the specific intent theory, and
2    they've rejected it because there is no evidence that supports
3    it.  And that leaves the Pinkerton liability, which is frankly
4    the case both parties have tried.  And their sticking point is
5    simply, does element four mean that if you're not a member of      11:14:08
6    the conspiracy element four has not been meant?  The answer is
7    correct.  It hasn't been met.
8          And to accept the government's suggestion is to take
9    this exercise from simply asking the question that's asked into
10   leading the jury by the nose and pushing them into a theory        11:14:43
11   that they haven't asked about that has never been presented as
12   an issue.  So I'd suggest the safest way to approach this is to
13   answer the specific question only.
14         So as to their first question, they are correct.  So
15   the answer to the first question would be "Correct" or "Yes."      11:15:10
16   The answer to the second question would be, "Element four is
17   not satisfied if the defendant was not a member of the
18   conspiracy," or the language that the Court used.  I was
19   working off of my notes.
20         What I'm reading from this, and this comes from a            11:15:30
21   different jury than has written to us before, this juror is
22   getting frustrated that they are not getting an answer to their
23   question, and so I'd respectfully ask that we simply limit the
24   answer to what they are asking.  They have asked it three times
25   now.  And if they need more help, we will be there to help         11:15:49
```

UNITED STATES DISTRICT COURT

9

```
 1    them.
 2            I don't think -- I don't know if my colleagues have
 3    anything to add, but those are my comments about this.
 4            MR. EISENBERG:  Your Honor, I would.  Respectfully, I
 5    would add to this that it appears that the government wants to      11:16:06
 6    send the jury back to the charge on page 30.  May I approach
 7    the lectern, Your Honor?  And that is the Travel Act charge as
 8    it is concede without Pinkerton.
 9            It appears to me, and I am not going to conjecture
10    what the jury has done, but it appears to me that they have        11:16:35
11    considered that.  And the more, a way for them to approach the
12    issue of guilt or innocence, is to then go to the Pinkerton
13    charge, which is 27, page 27, and it appears as though they
14    have a problem with the fourth element in the Pinkerton charge.
15            So sending them back to the more difficult chore that      11:17:03
16    they would have in parsing through the elements of the Travel
17    Act makes -- it doesn't make any sense, and I will echo my
18    colleague's concern that continuing to force them back there
19    is -- puts pressure on them that I think is not necessary, and
20    certainly is -- that's not where they're at.  Thank you, Your     11:17:29
21    Honor.
22            MR. LINCENBERG:  Your Honor, just to add to what
23    Mr. Eisenberg is stating, I think it's also relevant to
24    consider that we are in a post-Allen environment, and so I
25    think the Court has to be -- I think that the government's        11:17:53
```

UNITED STATES DISTRICT COURT

10

| | |
|---|---|
| 1 | recommendation could send a coercive suggestion that for the |
| 2 | second time in two days they've asked about page 27, element |
| 3 | four, and the government is saying:  Send them to page 30. |
| 4 | That's better for us.  And I think that's, I think, in the |
| 5 | current environment it even makes Mr. Eisenberg's argument |
| 6 | stronger. |
| 7 | MR. STONE:  It's not coercive.  It's one of the |
| 8 | instructions that they were given that would allow them to find |
| 9 | the defendants guilty of Counts 2 through 51 outside or after |
| 10 | finding them not guilty of Count 1.  It's direct answer to |
| 11 | their question. |
| 12 | And if the jury has, as Ms. Bertrand and Mr. Eisenberg |
| 13 | conjectured, already considered the instruction on page 30, |
| 14 | then they can disregard the response.  Then it would be very |
| 15 | easy for them to move on.  But if they are confused as to what |
| 16 | the elements are for what they would need to find the |
| 17 | defendants guilty of on the Travel Act, it could be helpful and |
| 18 | clarifying, and that's the position we are in right now is |
| 19 | trying to help them figure this out after their third question. |
| 20 | THE COURT:  I hope they are not disregarding the |
| 21 | answer.  But in any event, I think the very first line tells me |
| 22 | that they've gotten the point that every count stands alone, |
| 23 | and I think that that statement then negates the necessity to |
| 24 | point them back to the Travel Act instruction, and so -- |
| 25 | silence the phones, please. |

11:18:17

11:18:35

11:18:56

11:19:13

11:19:52

UNITED STATES DISTRICT COURT

ER 15167

11

```
 1            So I'm think, in my way of thinking, the Court's
 2    original reaction would answer the question.
 3            Again, please, whomever has their phone on, please
 4    step out of the courtroom or silence your phone.  It is a
 5    simple request.                                              11:20:35
 6            So I do think they have been previously referred to
 7    the Travel Act charge in a previous answer.  They now
 8    understand that they are to view each count independently, and
 9    I do think it's a way to clarify and directly respond to the
10    question.                                                    11:21:21
11            And so let me reread what I intend to give to them,
12    which I do think relates back to element four.  "If a defendant
13    does not meet an element of Count 1, they cannot be found
14    guilty of Count 1."  That's in response to the second question
15    that they, or the second sentence.                           11:22:12
16            "If you find a defendant is not guilty under Count
17    1" -- I'm sorry -- "If you find a defendant is not guilty of
18    Count 1, that defendant cannot satisfy element 4 on page 27 of
19    the jury instruction because that defendant cannot be held
20    responsible for the acts of a co-conspirator."               11:22:44
21            And that is how the Court will respond.  Before I
22    conclude the proceeding, let me just verify, does the
23    government intend to respond to what Mr. Feder filed last
24    evening?
25            MR. RAPP:  Yes.                                      11:23:12
```

UNITED STATES DISTRICT COURT

12

```
 1              THE COURT:  And if so, when do you think you'll have
 2     that?
 3              MR. RAPP:  When would the Court want it?
 4              THE COURT:  Sooner rather than later.
 5              MR. RAPP:  Okay.                                    11:23:21
 6              THE COURT:  I think he filed his within 24 hours.  I
 7     think I can give you to the end of today or this evening.
 8              MR. RAPP:  Very well.
 9              THE COURT:  Thank you.  And I want to make sure that
10     you answer the question as to why the late disclosure, and do   11:23:33
11     be very specific in terms of your answer.
12              All right.  Is there anything further from the
13     government?
14              MR. STONE:  No, Your Honor.
15              THE COURT:  Anything further from the defendants?      11:23:51
16              MS. BERTRAND:  Yes --
17              MR. LINCENBERG:  Your Honor, with regard to our motion
18     regarding Exhibit A, that 2021 Quoc Thai report, the Court was
19     still taking under consideration -- the Court made a ruling
20     that it wasn't Jencks.  The Court was going to then further     11:24:12
21     consider whether there was impeachment material and the like
22     that would have required disclosure.  I know that the Court has
23     a lot of hearings.  It's not the only thing on the Court's
24     plate, but I want to remind the Court that that is also still
25     pending.                                                        11:24:32
```

13

```
 1              THE COURT:  Yes, I know.  Thank you.

 2          Ms. Bertrand, were you going to say something?

 3          MS. BERTRAND:  I said, "Thank you."

 4          THE COURT:  If there is nothing further, then we are

 5  adjourned.                                            11:24:41

 6      (Proceedings concluded at 11:24 a.m.)

 7      (Proceedings reconvened at 4:06 p.m.)

 8          THE COURT:  Please be seated.  All right.  The record

 9  will reflect the presence of all government counsel.

10  Defendants are all present with their counsel.  I understand  16:06:59

11  Mr. Panchapakesan is on the telephone.

12          This afternoon we did receive the following

13  communication:  "We the jury have come to a unanimous agreement

14  on the majority of the counts, however, we are unable to reach

15  a consensus on the remaining counts."                 16:07:27

16          And it is signed Juror No. 2.

17          And so having received that communication and having

18  previously read the Allen charge to the jury, is there any

19  objection to having the jury come in by the government?

20          MR. RAPP:  There is no objection.             16:07:56

21          THE COURT:  Any objection from the defendants,

22  Mr. Eisenberg?

23          MR. EISENBERG:  No, Your Honor.

24          THE COURT:  Mr. Kessler?

25          MR. KESSLER:  No, Your Honor.                 16:08:05
```

UNITED STATES DISTRICT COURT

14

```
 1              THE COURT:  Mr. Lincenberg?
 2              MR. LINCENBERG:  No, Your Honor.
 3              THE COURT:  Ms. Bertrand?
 4              MS. BERTRAND:  No.
 5              THE COURT:  Mr. Cambria?                    16:08:12
 6              MR. CAMBRIA:  No, Your Honor.
 7              THE COURT:  All right.  Let's have the jury in.
 8              All rise for the jury.
 9                        (Jury is present)
10              THE COURT:  Please be seated.  By juror number, who is  16:09:28
11  the foreperson of this jury?  What is your juror number?
12              THE FOREPERSON:  Number 2.
13              THE COURT:  Juror No. 2, in your opinion, is the jury
14  unable to agree on a verdict as to one or more counts?
15              THE FOREPERSON:  Yes.                        16:09:57
16              THE COURT:  I pose this question to all jurors:  If
17  any of you disagree with the foreperson's answer, please tell
18  me now.
19              Foreperson No. 2, is there a reasonable probability
20  that the jury can reach a unanimous verdict if sent back to the  16:10:21
21  jury room for further deliberations?
22              THE FOREPERSON:  No.
23              THE COURT:  And again, to all jurors, without stating
24  where any juror stands, do any of you believe there is a
25  reasonable probability that the jury can reach a unanimous  16:10:41
```

UNITED STATES DISTRICT COURT

15

```
 1   verdict if sent back to the jury room for further
 2   deliberations?
 3          And Foreperson No. 2, has the jury been able to reach
 4   a verdict on some of the counts?
 5          THE FOREPERSON:  Yes.                              16:11:05
 6          THE COURT:  And I'd like the Courtroom Deputy, if you
 7   could retrieve the form of verdict to -- retrieve that from
 8   Juror No. 2.
 9          I will ask my Courtroom Deputy to publish the verdict.
10          COURTROOM DEPUTY:  We, the jury, find the defendants,  16:14:16
11   Michael Lacey, Scott Spear, John Jed Brunst, Andrew Padilla and
12   Joye Vaught, as to the charges of the indictment, Count 1:
13   Conspiracy
14          Michael Lacey, no verdict.
15          Scott Spear, guilty.                               16:14:46
16          John Jed Brunst, guilty.
17          Andrew Padilla, not guilty.
18          Joye Vaught, not guilty.
19          Count 2:  Michael Lacey, no verdict.
20          Scott Spear, guilty.                               16:15:07
21          John Jed Brunst, not guilty.
22          Andrew Padilla, not guilty.
23          Joye Vaught, not guilty.
24          Count 3:  Michael Lacey, no verdict.
25          Scott Spear, guilty.                               16:15:23
```

16

```
 1              John Jed Brunst, not guilty.

 2              Andrew Padilla, not guilty.

 3              Joye Vaught, not guilty.

 4              Count 4:  Michael Lacey, no verdict.

 5              Scott Spear, guilty.                          16:15:41

 6              John Jed Brunst, not guilty.

 7              Andrew Padilla, not guilty.

 8              Joye Vaught, not guilty.

 9              Count 5:  Michael Lacey, no verdict.

10              Scott Spear, guilty.                          16:15:57

11              John Jed Brunst, not guilty.

12              Andrew Padilla, not guilty.

13              Joye Vaught, not guilty.

14              Count 6:  Michael Lacey, no verdict.

15              Scott Spear, guilty.                          16:16:13

16              John Jed Brunst, not guilty.

17              Andrew Padilla, not guilty.

18              Joye Vaught, not guilty.

19              Count 7:  Michael Lacey, no verdict.

20              Scott Spear, guilty.                          16:16:28

21              Jot Jed Brunst, not guilty.

22              Andrew Padilla, not guilty.

23              Joye Vaught, not guilty.

24              Count 8:  Michael Lacey, no verdict.

25              Scott Spear, guilty.                          16:16:43
```

UNITED STATES DISTRICT COURT

17

```
 1              John Jed Brunst, not guilty.

 2              Andrew Padilla, not guilty.

 3              Joye Vaught, not guilty.

 4              Count 9:  Michael Lacey, no verdict.

 5              Scott Spear, guilty.                        16:16:57

 6              John Jed Brunst, not guilty.

 7              Andrew Padilla, not guilty.

 8              Joye Vaught, not guilty.

 9              Count 10:  Michael Lacey, no verdict.

10              Scott Spear, guilty.                        16:17:12

11              John Jed Brunst, not guilty.

12              Andrew Padilla, not guilty.

13              Joye Vaught, not guilty.

14              Count 11:  Michael Lacey, no verdict.

15              Scott Spear, guilty.                        16:17:24

16              John Jed Brunst, not guilty.

17              Andrew Padilla, not guilty.

18              Joye Vaught, not guilty.

19              Count 12:  Michael Lacey, no verdict.

20              Scott Spear, guilty.                        16:17:38

21              John Jed Brunst, not guilty.

22              Andrew Padilla, not guilty.

23              Joye Vaught, not guilty.

24              Count 13:  Michael Lacey, no verdict.

25              Scott Spear, guilty.                        16:17:51
```

UNITED STATES DISTRICT COURT

18

```
 1              John Jed Brunst, not guilty.

 2              Andrew Padilla, not guilty.

 3              Joye Vaught, not guilty.

 4              Count 14:  Michael Lacey, no verdict.

 5              Scott Spear, guilty.                          16:18:05

 6              John Jed Brunst, not guilty.

 7              Andrew Padilla, not guilty.

 8              Joye Vaught, not guilty.

 9              Count 15:  Michael Lacey, no verdict.

10              Scott Spear, guilty.                          16:18:19

11              John Jed Brunst, not guilty.

12              Andrew Padilla, not guilty.

13              Joye Vaught, not guilty.

14              Count 16:  Michael Lacey, no verdict.

15              Scott Spear, guilty.                          16:18:32

16              John Jed Brunst, not guilty.

17              Andrew Padilla, not guilty.

18              Joye Vaught, not guilty.

19              Count 17:  Michael Lacey, no verdict.

20              Scott Spear, guilty.                          16:18:46

21              John Jed Brunst, not guilty.

22              Andrew Padilla, not guilty.

23              Joye Vaught, not guilty.

24              Count 18:  Michael Lacey, no verdict.

25              Scott Spear, guilty.                          16:19:00
```

UNITED STATES DISTRICT COURT

19

```
1              John Jed Brunst, not guilty.

2              Andrew Padilla, not guilty.

3              Joye Vaught, not guilty.

4              Count 19:  Michael Lacey, no verdict.

5              Scott Spear, not guilty.                    16:19:15

6              John Jed Brunst, not guilty.

7              Andrew Padilla, not guilty.

8              Joye Vaught, not guilty.

9              Count 20:  Michael Lacey, no verdict.

10             Scott Spear, not guilty.                    16:19:29

11             John Jed Brunst, not guilty.

12             Andrew Padilla, not guilty.

13             Joye Vaught, not guilty.

14             Count 21:  Michael Lacey, no verdict.

15             Scott Spear, not guilty.                    16:19:43

16             John Jed Brunst, not guilty.

17             Andrew Padilla, not guilty.

18             Joye Vaught, not guilty.

19             Count 22:  Michael Lacey, no verdict.

20             Scott Spear, not guilty.                    16:19:57

21             John Jed Brunst, not guilty.

22             Andrew Padilla, not guilty.

23             Joye Vaught, not guilty.

24             Count 23:  Michael Lacey, no verdict.

25             Scott Spear, not guilty.                    16:20:11
```

UNITED STATES DISTRICT COURT

20

```
 1              John Jed Brunst, not guilty.

 2              Andrew Padilla, not guilty.

 3              Joye Vaught, not guilty.

 4              Count 24:  Michael Lacey, no verdict.

 5              Scott Spear, not guilty.                    16:20:24

 6              John Jed Brunst, not guilty.

 7              Andrew Padilla, not guilty.

 8              Joye Vaught, not guilty.

 9              Count 25:  Michael Lacey, no verdict.

10              Scott Spear, not guilty.                    16:20:36

11              John Jed Brunst, not guilty.

12              Andrew Padilla, not guilty.

13              Joye Vaught, not guilty.

14              Count 26:  Michael Lacey, no verdict.

15              Scott Spear, not guilty.                    16:20:51

16              John Jed Brunst, not guilty.

17              Andrew Padilla, not guilty.

18              Joye Vaught, not guilty.

19              Count 27:  Michael Lacey, no verdict.

20              Scott Spear, not guilty.                    16:21:04

21              John Jed Brunst, not guilty.

22              Andrew Padilla, not guilty.

23              Joye Vaught, not guilty.

24              Count 28:  Michael Lacey, no verdict.

25              Scott Spear, not guilty.                    16:21:17
```

UNITED STATES DISTRICT COURT

21

```
1            John Jed Brunst, not guilty.
2            Andrew Padilla, not guilty.
3            Joye Vaught, not guilty.
4            Count 29:  Michael Lacey, no verdict.
5            Scott Spear, not guilty.                16:21:31
6            John Jed Brunst, not guilty.
7            Andrew Padilla, not guilty.
8            Joye Vaught, not guilty.
9            Count 30:  Michael Lacey, no verdict.
10           Scott Spear, not guilty.                16:21:43
11           John Jed Brunst, not guilty.
12           Andrew Padilla, not guilty.
13           Joye Vaught, not guilty.
14           Count 31:  Michael Lacey, no verdict.
15           Scott Spear, not guilty.                16:21:55
16           John Jed Brunst, not guilty.
17           Andrew Padilla, not guilty.
18           Joye Vaught, not guilty.
19           Count 32:  Michael Lacey, no verdict.
20           Scott Spear, not guilty.                16:22:08
21           John Jed Brunst, not guilty.
22           Andrew Padilla, not guilty.
23           Joye Vaught, not guilty.
24           Count 33:  Michael Lacey, no verdict.
25           Scott Spear, not guilty.                16:22:22
```

UNITED STATES DISTRICT COURT

ER 15178

22

```
 1            John Jed Brunst, not guilty.

 2            Andrew Padilla, not guilty.

 3            Joye Vaught, not guilty.

 4            Count 34:  Michael Lacey, no verdict.

 5            Scott Spear, not guilty.                16:22:34

 6            John Jed Brunst, not guilty.

 7            Andrew Padilla, not guilty.

 8            Joye Vaught, not guilty.

 9            Count 35:  Michael Lacey, no verdict.

10            Scott Spear, not guilty.                16:22:48

11            John Brunst, not guilty.

12            Andrew Padilla, not guilty.

13            Joye Vaught, not guilty.

14            Count 36:  Michael Lacey, no verdict.

15            Scott Spear, not guilty.                16:23:01

16            John Jed Brunst, not guilty.

17            Andrew Padilla, not guilty.

18            Joye Vaught, not guilty.

19            Count 37:  Michael Lacey, no verdict.

20            Scott Spear, not guilty.                16:23:14

21            John Jed Brunst, not guilty.

22            Andrew Padilla, not guilty.

23            Joye Vaught, not guilty.

24            Count 38:  Michael Lacey, no verdict.

25            Scott Spear, not guilty.                16:23:28
```

UNITED STATES DISTRICT COURT

23

```
 1              John Jed Brunst, not guilty.

 2              Andrew Padilla, not guilty.

 3              Joye Vaught, not guilty.

 4              Count 39:  Michael Lacey, no verdict.

 5              Scott Spear, not guilty.                    16:23:40

 6              John Jed Brunst, not guilty.

 7              Andrew Padilla, not guilty.

 8              Joye Vaught, not guilty.

 9              Count 40:  Michael Lacey, no verdict.

10              Scott Spear, not guilty.                    16:23:55

11              John Jed Brunst, not guilty.

12              Andrew Padilla, not guilty.

13              Joye Vaught, not guilty.

14              Count 41:  Michael Lacey, no verdict.

15              Scott Spear, not guilty.                    16:24:05

16              John Jed Brunst, not guilty.

17              Andrew Padilla, not guilty.

18              Joye Vaught, not guilty.

19              Count 42:  Michael Lacey, no verdict.

20              Scott Spear, not guilty.                    16:24:19

21              John Jed Brunst, not guilty.

22              Andrew Padilla, not guilty.

23              Joye Vaught, not guilty.

24              Count 43:  Michael Lacey, no verdict.

25              Scott Spear, not guilty.                    16:24:32
```

UNITED STATES DISTRICT COURT

24

```
 1            John Jed Brunst, not guilty.
 2            Andrew Padilla, not guilty.
 3            Joye Vaught, not guilty.
 4            Count 44:  Michael Lacey, no verdict.
 5            Scott Spear, not guilty.                    16:24:46
 6            John Jed Brunst, not guilty.
 7            Andrew Padilla, not guilty.
 8            Joye Vaught, not guilty.
 9            Count 45:  Michael Lacey, no verdict.
10            Scott Spear, not guilty.                    16:24:58
11            John Jed Brunst, not guilty.
12            Andrew Padilla, not guilty.
13            Joye Vaught, not guilty.
14            Count 46:  Michael Lacey, no verdict.
15            Scott Spear, not guilty.                    16:25:12
16            John Jed Brunst, not guilty.
17            Andrew Padilla, not guilty.
18            Joye Vaught, not guilty.
19            Count 47:  Michael Lacey, no verdict.
20            Scott Spear, not guilty.                    16:25:25
21            John Jed Brunst, not guilty.
22            Andrew Padilla, not guilty.
23            Joye Vaught, not guilty.
24            Count 48:  Michael Lacey, not -- no verdict.
25            Scott Spear, not guilty.                    16:25:41
```

25

```
 1            John Jed Brunst, not guilty.

 2            Andrew Padilla, not guilty.

 3            Joye Vaught, not guilty.

 4            Count 49:  Michael Lacey, no verdict.

 5            Scott Spear, not guilty.                    16:25:53

 6            John Jed Brunst, not guilty.

 7            Andrew Padilla, not guilty.

 8            Joye Vaught, not guilty.

 9            Count 50:  Michael Lacey, no verdict.

10            Scott Spear, not guilty.                    16:26:08

11            John Jed Brunst, not guilty.

12            Andrew Padilla, not guilty.

13            Joye Vaught, not guilty.

14            Count 51:  Michael Lacey, no verdict.

15            Scott Spear, not guilty.                    16:26:22

16            John Jed Brunst, not guilty.

17            Andrew Padilla, not guilty.

18            Joye Vaught, not guilty.

19            As to Count 52:

20   Conspiracy to Commit Money Laundering               16:26:34

21            Michael Lacey, no verdict.

22            Scott Spear, guilty.

23            John Jed Brunst, guilty.

24            Count 53:

25   Concealment Money Laundering                        16:26:47
```

UNITED STATES DISTRICT COURT

ER 15182

26

```
 1            Michael Lacey, no verdict.

 2            Scott Spear, guilty.

 3            John Jed Brunst, guilty.

 4            Count 54:  Michael Lacey, no verdict.

 5            Scott Spear, guilty.                        16:26:59

 6            John Jed Brunst, guilty.

 7            Count 55:  Michael Lacey, no verdict.

 8            Scott Spear, guilty.

 9            John Jed Brunst, guilty.

10            Count 56:  Michael Lacey, no verdict.      16:27:15

11            Scott Spear, guilty.

12            John Jed Brunst, guilty.

13            Count 57:  Michael Lacey, no verdict.

14            Scott Spear, guilty.

15            John Jed Brunst, guilty.                    16:27:30

16            Count 58:  Michael Lacey, no verdict.

17            Scott Spear, guilty.

18            John Jed Brunst, guilty.

19            Count 59:  Michael Lacey, no verdict.

20            Scott Spear, guilty.                        16:27:46

21            John Jed Brunst, guilty.

22            Count 60:  Michael Lacey, no verdict.

23            Scott Spear, guilty.

24            John Jed Brunst, guilty.

25            Count 61:  Michael Lacey, no verdict.      16:27:58
```

UNITED STATES DISTRICT COURT

27

```
 1              Scott Spear, guilty.

 2              John Jed Brunst, guilty.

 3              Count 62:  Michael Lacey, no verdict.

 4              Scott Spear, guilty.

 5              John Jed Brunst, guilty.                    16:28:13

 6    International Promotional Money Laundering, Counts 63 through

 7    68.

 8              Count 63:  Michael Lacey, not guilty.

 9              Scott Spear, not guilty.

10              John Jed Brunst, not guilty.               16:28:27

11              Count 64:  Michael Lacey, no verdict.

12              Scott Spear, not guilty.

13              John Jed Brunst, guilty.

14              Count 65:  Michael Lacey, no verdict.

15              Scott Spear, not guilty.                    16:28:44

16              John Jed Brunst, guilty.

17              Count 66:  Michael Lacey, no verdict.

18              Scott Spear, not guilty.

19              John Jed Brunst, guilty.

20              Count 67:  Michael Lacey, no verdict.      16:28:59

21              Scott Spear, not guilty.

22              John Jed Brunst, guilty.

23              Count 68:  Michael Lacey, no verdict.

24              Scott Spear, not guilty.

25              John Jed Brunst, guilty.                    16:29:13
```

UNITED STATES DISTRICT COURT

28

Transactional Money Laundering, Count 69 through 99.

Count 69:  Michael Lacey, no verdict.

John Jed Brunst, guilty.

Count 70:  Michael Lacey, no verdict.

John Jed Brunst, guilty.                              16:29:30

Count 71:  Scott Spear, guilty.

Count 72:  Scott Spear, guilty.

Count 73:  Scott Spear, guilty.

Count 74:  Scott Spear, guilty.

Count 75:  Scott Spear, guilty.                       16:29:48

Count 76:  Scott Spear, guilty.

Count 77:  Scott Spear, guilty.

Count 78:  Scott Spear, guilty.

John Jed Brunst, guilty.

Count 79:  John Jed Brunst, guilty.                   16:30:06

Count 80:  John Jed Brunst, guilty.

Count 81:  Michael Lacey, no verdict.

John Jed Brunst, guilty.

Count 82:  John Jed Brunst, guilty.

Count 83:  Michael Lacey, no verdict.                 16:30:27

John Jed Brunst, guilty.

Count 84:  Michael Lacey, no verdict.

John Jed Brunst, guilty.

Count 85:  Scott Spear, guilty.

Count 86:  Michael Lacey, no verdict.                 16:30:45

UNITED STATES DISTRICT COURT

ER 15185

29

```
 1              John Jed Brunst, guilty.

 2         Count 87:  John Jed Brunst, guilty.

 3         Count 88:  Michael Lacey, no verdict.

 4              John Jed Brunst, guilty.

 5         Count 89:  Michael Lacey, no verdict.        16:31:02

 6              John Jed Brunst, guilty.

 7         Count 90:  Michael Lacey, no verdict.

 8              John Jed Brunst, guilty.

 9         Count 91:  Michael Lacey, no verdict.

10              John Jed Brunst, guilty.               16:31:19

11         Count 92:  Michael Lacey, no verdict.

12              John Jed Brunst, guilty.

13         Count 93:  Scott Spear, guilty.

14              John Jed Brunst, guilty.

15         Count 94:  Michael Lacey, no verdict.       16:31:36

16         Count 95:  Michael Lacey, no verdict.

17         Count 96:  Michael Lacey, no verdict.

18         Count 97:  Michael Lacey, no verdict.

19         Count 98:  Michael Lacey, no verdict.

20         Count 99:  Michael Lacey, no verdict.       16:31:57

21  International Concealment Money Laundering

22         Count 100:  Michael Lacey, guilty.

23         THE COURT:  Thank you.  Does the government wish to

24  have the jury polled?

25         MR. RAPP:  No, Your Honor.                  16:32:24
```

UNITED STATES DISTRICT COURT

30

```
 1              THE COURT:  Mr. Eisenberg, do you wish to have the
 2   jury polled?
 3              MR. EISENBERG:  No, Your Honor.
 4              THE COURT:  Mr. Kessler, do you wish to have the jury
 5   polled?                                                              16:32:31
 6              MR. KESSLER:  Yes, Your Honor.
 7              THE COURT:  Mr. Lincenberg, do you wish to have the
 8   jury polled?
 9              MR. LINCENBERG:  Yes, Your Honor.
10              THE COURT:  Ms. Bertrand, do you wish to have the jury   16:32:38
11   polled?
12              MS. BERTRAND:  No.  Thank you.
13              THE COURT:  Mr. Cambria, do you wish to have the jury
14   polled?
15              MR. CAMBRIA:  Yes.                                        16:32:45
16              THE COURT:  The Courtroom Deputy will poll the jury.
17              COURTROOM DEPUTY:  Members of the jury, this will be
18   asked of all of you:  Is this your true and correct verdict,
19   Juror No. 1?
20              JUROR NO. 1:  Yes, ma'am.                                 16:32:59
21              COURTROOM DEPUTY:  Juror No. 2?
22              JUROR NO. 2:  Yes.
23              COURTROOM DEPUTY:  Juror No. 3?
24              JUROR NO. 3:  Yes.
25              COURTROOM DEPUTY:  Juror No. 5?                           16:33:02
```

UNITED STATES DISTRICT COURT

31

```
 1              JUROR NO. 5:  Yes.
 2          COURTROOM DEPUTY:  Juror No. 6?
 3              JUROR NO. 6:  Yes.
 4          COURTROOM DEPUTY:  Juror No. 7?
 5              JUROR NO. 7:  Yes.                          16:33:06
 6          COURTROOM DEPUTY:  Juror No. 8?
 7              JUROR NO. 8:  Yes.
 8          COURTROOM DEPUTY:  Juror No. 10?
 9              JUROR NO. 10:  Yes.
10          COURTROOM DEPUTY:  11?                          16:33:13
11              JUROR NO. 11:  Yes.
12          COURTROOM DEPUTY:  13?
13              JUROR NO. 13:  Yes.  Yes.
14          COURTROOM DEPUTY:  14?
15              JUROR NO. 14:  Yes.                         16:33:22
16          COURTROOM DEPUTY:  15?
17              JUROR NO. 15:  Yes.
18          THE COURT:  Members of the jury, I want to thank you
19     for an incredible service.  When I reflect upon when your
20     service began, it began in earnest when some of you received  16:33:48
21     very voluminous jury questionnaire early in the summer.  Some
22     of you, I recognize, took days to fill out, resubmitted to our
23     court.  Some of you came in mid-August and sat in the jury
24     assembly room and completed that questionnaire.  In any event,
25     you showed up and that was the first critical part.           16:34:25
```

UNITED STATES DISTRICT COURT

32

```
1         And I say that because we are unique in the United
2    States in that we wholly rely on our citizens to participate to
3    ensure that our system of justice works.  And here you have
4    given remarkable service because you were not only sworn in as
5    potential jurors, but as the jury on August the 29th.              16:35:00
6         You have shown up every morning, you have paid close
7    attention, you have taken notes, and it was obvious to me that
8    the oath that you took you adhered to everyday.  You withstood
9    many urgent matters that we had to discuss out of your
10   presence, you endured delays, and you endured disruption to       16:35:41
11   your work, your family, everything that you are used to
12   serve, and you have indeed served diligently through your
13   attention during the trial and importantly during your daily
14   deliberations.  We could not ask more.
15        And at this time I will release you from the                 16:36:22
16   admonition not to discuss the matters that you've heard, the
17   matters that you've been deliberating on.  You may discuss them
18   with whomever you wish, but I want you to leave with the
19   understanding that your service has been remarkable.  This
20   Court could not ask for more.                                     16:36:52
21        And I will at this time release the jury, but I want
22   to ask you if you would just stay just for a few minutes
23   longer.  I'd like to come in and just briefly visit with you
24   before you depart to your daily lives.
25        With that, please all rise for the jury.                     16:37:12
```

33

```
 1                    (Jury is not present.)
 2           THE COURT:  All right.  Please be seated.  Counsel,
 3    there are a number of matters that I do need to confer with you
 4    on.  It is the Court's obligation at this time to declare a
 5    mistrial as to those counts upon which the jury was not able to    16:38:03
 6    return a verdict.
 7           And as to any of the counts of conviction, I do want
 8    to just state and remind the defendants as appropriate that you
 9    remain under the conditions of the Court that have been
10    previously set.                                                    16:38:29
11           When I return from speaking with the jury, I'd like to
12    just put a couple of matters on the record and then we would
13    necessarily have to set a calendar going forward, and I'd like
14    to do that.  So I will return certainly within ten minutes of
15    time.  And in the meantime, we will stand at recess.              16:38:51
16                (Recess was taken at 4:38 p.m.)
17            (Proceedings reconvened at 4:56 p.m.)
18           THE COURT:  Can I see the form of verdict?
19           COURTROOM DEPUTY:  Yes.
20           THE COURT:  All right.  Please be seated.                  16:56:51
21           Mr. Cambria, is your client present?
22           MR. CAMBRIA:  Yes.  Well, he was.
23           THE COURT:  As to Mr. Padilla and Ms. Vaught, as a
24    result of the jury verdict on Count 1 through 51, the Court
25    will enter a judgment of acquittal.  They are released from any   16:58:26
```

UNITED STATES DISTRICT COURT

34

```
 1    further conditions, although I think as a technical matter they
 2    may need to check in with the supervising officer just to
 3    resolve some likely paperwork issues, but make sure that the
 4    officers reach out to Mr. Padilla and Ms. Vaught with respect
 5    to that.                                                              16:58:58
 6          MS. BERTRAND:  Your Honor, would it -- could the Court
 7    please order that Ms. Vaught and Mr. Padilla's passports be
 8    returned?  I believe they had to be surrendered as a condition
 9    of their release.
10          THE COURT:  Yes, I will do that.  But as I said, there         16:59:18
11    might be other matters that the supervising officer will have
12    to take up with them separately, and we will reach out to them,
13    and I am sure they will be contacting you as soon as possible
14    to arrange whatever needs to be done with regard to that.
15          MS. BERTRAND:  Okay.  Thank you.                                16:59:36
16          THE COURT:  With regard to the counts of conviction,
17    as I mentioned, there is the Motion for Judgment of Acquittal
18    that is still pending that the Court left for later
19    consideration.  I would suggest -- I think we should reconvene
20    on Tuesday the 28th at 2:30 for the purposes of that motion as    17:00:43
21    to the defendants who received counts of conviction.
22          Is there any objection to that date?  Beyond that, I
23    won't be able to take anything up until after the following
24    week or the entirety of the remainder of that week, I should
25    say.  I'm out of state.  So it would have to then -- it would    17:01:29
```

UNITED STATES DISTRICT COURT

```
 1   have to occur some time after the 5th of December, and I'd
 2   rather not put it off, and so 2:30 on the 28th we will
 3   reconvene in my sixth floor courtroom.
 4          And at that time I would hope that the government
 5   would have a position in terms of the counts in which the jury      17:02:08
 6   could not reach a verdict and would let me know at least
 7   preliminarily what you intend to do because, of course, that's
 8   a scheduling issue that we would have to take up, and so that's
 9   how we will proceed on that.
10          All right.  Is there anything further from the               17:02:38
11   government?
12          MR. RAPP:  Judge, there's an outstanding motion that's
13   due this evening.
14          THE COURT:  Tonight, yes.
15          MR. RAPP:  We would ask if we could have an extension        17:02:49
16   until 12:00 o'clock tomorrow?
17          THE COURT:  Yes, you may.  I guess let me just ask the
18   defendants, given the schedule that we've been under, I haven't
19   necessarily seen a lot of replies, do you wish to have leave to
20   file a reply?                                                       17:03:11
21          MR. CAMBRIA:  Yes, we do.  The other question I have
22   is under 29(c) post verdict.  We have 14 days to make the
23   motion.  Now, we did make one motion, obviously this is a
24   little bit different because of the actual count of conviction,
25   would you -- I keep doing this.  Here.  Try that -- would you       17:03:37
```

36

```
 1   give us a date within that 14 days to file any supplemental 29?
 2   According to the rule, we have to file within 14 days of
 3   verdict.
 4          THE COURT:  Okay.  So as I understand it, this will be
 5   a supplement to the already oral motion for judgment of          17:04:07
 6   acquittal.
 7          MR. CAMBRIA:  Yes.  We have a record, an evidentiary
 8   record we can refer to.
 9          THE COURT:  Do you need the full 14 days?
10          MR. CAMBRIA:  No, but with --                             17:04:22
11          THE COURT:  And --
12          MR. CAMBRIA:  -- Thanksgiving and all that.
13          THE COURT:  By necessity then that's going to end up
14   delaying the hearing that I set, and so do you think ten days?
15          MR. CAMBRIA:  That would be fine.  Absolutely.            17:04:47
16          THE COURT:  All right.  So within ten days you will
17   file your supplement.  The government will have the time to
18   respond, or I guess in this case reply, and I'm going to review
19   the form of verdict because I may have -- in my head I had
20   formulated a question that I think Mr. Eisenberg raised at the   17:05:18
21   very last hearing in which he made an additional argument, and
22   I think it was related to the -- it was related to the overt
23   act in the Travel Act count, and it's related to the conspiracy
24   count as it pertains to the Travel Act count.
25          I say that only because there are counts of conviction   17:06:03
```

UNITED STATES DISTRICT COURT

37

1   in the Travel Act counts, and I don't quite recall how

2   Mr. Eisenberg formulated the statement, but I would suggest the

3   government go back and look at his supplemental argument.  It

4   was made, I think, on the last day of the oral motions, and

5   take a close look at his statement because I don't think you          17:06:35

6   had an opportunity to respond to it, at least by my

7   recollection, and that's why I had a question in my head as to

8   what your response is or would be.  And so if you look at the

9   record and you can't examine it, I'll do the same because I

10  know that it prompted a question in my head --                        17:07:06

11          MR. STONE:  Your Honor.  Sorry for interrupting.

12  Point of clarification, are you talking about the Rule 29

13  argument?

14          THE COURT:  Yes, the Rule 29 argument.  To be clear,

15  because I am going to give the defendants ten days to file           17:07:24

16  their supplement, I'll give you, can you file something within

17  a five-day response time, do you think?

18          MR. KOZINETS:  Your Honor, I think it depends on the

19  timing.  I think ten days from today -- I'm sorry.  So just to

20  be clear, when would the defense supplement be due?                   17:07:50

21          MR. CAMBRIA:  Ten days from today.

22          MR. LINCENBERG:  Your Honor, ten days would be the day

23  after, I guess, the Thanksgiving weekend.  Perhaps we could

24  have until November 29th.

25          THE COURT:  Yes.  Why don't you set the 29th as your         17:08:18

38

```
 1    deadline, and I will give the government --
 2            MR. KOZINETS:  Your Honor, I may need more than five
 3    days.
 4            THE COURT:  I was going to suggest by the 8th, the end
 5    of the business day on the 8th.  Does that sound reasonable?      17:08:44
 6            MR. KOZINETS:  Okay.
 7            THE COURT:  In that interim period, I will set then a
 8    time for the hearing on that motion and the response, and that
 9    will obviously be probably the next week toward the latter part
10    of the week, the week after that being the holidays, and so      17:09:06
11    I'll look at the calendar and see what we can do with regard to
12    setting the hearing.
13            And I think the Court does still have the pending
14    issue related to Exhibit A, and as well as the most recent
15    filing that the government will respond to tomorrow.             17:09:40
16            MR. CAMBRIA:  Jencks.
17            THE COURT:  Whatever deadline I said.
18            MR. STONE:  Your Honor, just to clarify, sounded like
19    they wanted a reply for that.  If they want a reply, I would
20    suggest that we set it out more so that we have a little more     17:09:55
21    time to really do our best to respond to the original motion.
22    So maybe ours could be due next Wednesday or Thursday and they
23    could have a week on the reply.
24            THE COURT:  Next Wednesday -- next Thursday is
25    Thanksgiving, so you can have that if you want.                  17:10:12
```

UNITED STATES DISTRICT COURT

39

```
 1           MR. STONE:  We'll file it before then.

 2           THE COURT:  Aim for Wednesday.

 3           MR. STONE:  Thanks, Your Honor.

 4           THE COURT:  All right.  And so that's how we will

 5   proceed.                                                        17:10:22

 6           Is there anything further from the government?

 7           MR. BERRY:  Only thing, Your Honor, is we filed a

 8   Motion For Protective Order regarding some exhibits, and I

 9   don't know if the defense intends to respond to that, and then

10   I know that there was a Motion to Intervene by one of the      17:10:38

11   journalists, and I am not sure how the Court wants to handle

12   that.

13           THE COURT:  Well, I was aware of the pending motion

14   and I had intended today to issue an order directing an

15   expedited response so I can get to that, and I will probably do 17:10:52

16   that if I can by tomorrow.  So if anybody wishes to respond to

17   it, the response will be expedited and the Court will not delay

18   in getting that done.  And so yes, I am aware of it.

19           Anything further from the government?

20           MR. RAPP:  No, Your Honor.  Thank you.                 17:11:24

21           MR. CAMBRIA:  Yes.  I want to try to make sure I know

22   the date.  Within ten days?

23           THE COURT:  Yes.

24           MR. CAMBRIA:  All right.  Thank you.

25           THE COURT:  It can be tomorrow or it could be five    17:11:35
```

UNITED STATES DISTRICT COURT

ER 15196

40

| | |
|---|---|
| 1 | days. |
| 2 | MR. CAMBRIA:  And we're still meeting on the 28th at |
| 3 | 2:30? |
| 4 | THE COURT:  No, because of the timing of your filing |
| 5 | and the government's response, I will set that hearing out. |
| 6 | MR. CAMBRIA:  Okay. |
| 7 | MR. LINCENBERG:  As I understand it, Mr. Cambria, Your |
| 8 | Honor, the date is November 29th.  I don't know if that's |
| 9 | within ten days, but the date for our filing is November 29th? |
| 10 | THE COURT:  No.  Mr. Cambria asked for at least ten |
| 11 | days in which to file a supplement Rule 29 motion. |
| 12 | MR. LINCENBERG:  Right. |
| 13 | THE COURT:  I gave him that grace period and he will |
| 14 | file something within that time frame, therefore, we are not |
| 15 | going to have a hearing on the 29th. |
| 16 | MR. LINCENBERG:  I will -- |
| 17 | THE COURT:  I will set that out at a later time |
| 18 | because there's also the government's -- I want them to file a |
| 19 | reply because there's a particular issue that I want them to |
| 20 | look at with regard to Mr. Eisenberg's argument, and so I'm |
| 21 | going to permit them to do that.  It will help me in the |
| 22 | decisional process.  So there is no hearing on the 29th. |
| 23 | MR. LINCENBERG:  I understand there is no hearing on |
| 24 | the 28th, I think the Court said, but what I'm confused about |
| 25 | was when Mr. Cambria asked for ten days, and I mentioned that |

17:11:45

17:12:07

17:12:25

17:12:44

17:13:01

UNITED STATES DISTRICT COURT

ER 15197

41

```
 1   that sort of runs into the Sunday of Thanksgiving weekend.  Can
 2   we have until I think the 29th, and Your Honor said that would
 3   be fine.  So in terms of the date for this filing, I am
 4   confused as to that date.
 5        THE COURT:  Well, Mr. Cambria said he could have              17:13:19
 6   something filed within ten days, so...
 7        MR. LINCENBERG:  That would be Sunday the 28th, I
 8   think, of Thanksgiving, so we may also file something
 9   supplemental.  I would just request that that date be set for
10   the 29th.                                                          17:13:38
11        THE COURT:  So 11-29 is your deadline.  The government
12   has until December the 8th.  And at this juncture I don't
13   necessarily think I need a reply, but I certainly will let you
14   know if that's going to help me.
15        All right.  And so, and then you will look forward to        17:14:16
16   a hearing being set by the Court in the interim period sometime
17   the following week.
18        Anything further from you, Mr. Cambria?
19        MR. CAMBRIA:  No except -- no except to thank you for
20   your courtesies during my visit here, Your Honor, and your       17:14:34
21   staff.
22        THE COURT:  Well, I appreciate that, Mr. Cambria.  I
23   have the hardest working staff, I think, in the courthouse, and
24   they have shown remarkable patience with me and with you and so
25   I appreciate your recognition.                                    17:14:55
```

UNITED STATES DISTRICT COURT

42

```
 1              Ms. Bertrand.

 2              MS. BERTRAND:  I am just sitting here being quiet.

 3    Thank you.

 4              THE COURT:  Mr. Lincenberg.

 5              MR. LINCENBERG:  Your Honor, I would echo with what    17:15:04

 6    Mr. Cambria said.  I have gratitude to you and your staff.

 7              THE COURT:  And I appreciate that, Mr. Lincenberg, and

 8    convey my appreciation as well to Mr. Panchapakesan, and my

 9    sympathies to him.

10              All right.  Anything further from you, Mr. Feder?     17:15:20

11              MR. FEDER:  The same thank-yous, and nothing further.

12              THE COURT:  Thank you.  Mr. Kessler.

13              MR. KESSLER:  I think Mr. Feder speaks for me

14    sometimes and that was one of those times.

15              THE COURT:  Is that possible?  All right.  Well, thank 17:15:38

16    you.

17              Mr. Eisenberg?

18              MR. EISENBERG:  Thank you, Your Honor, for all of your

19    courtesies.

20              MS. BERTRAND:  Agreed, Your Honor.  I got caught off   17:15:47

21    guard.  I was a little tired.  Thank you so much.

22              THE COURT:  All right.  Well, with that, we will stand

23    in recess, and have a good evening everyone.

24              COURTROOM DEPUTY:  All rise.

25          (Proceedings concluded at 5:16 p.m.)                      17:16:04
```

UNITED STATES DISTRICT COURT

43

```
 1
 2
 3
 4
 5                    C E R T I F I C A T E
 6
 7          I, HILDA E. LOPEZ, do hereby certify that I am duly
 8   appointed and qualified to act as Official Court Reporter for
 9   the United States District Court for the District of Arizona.
10          I FURTHER CERTIFY that the foregoing pages constitute
11   a full, true, and accurate transcript of all of that portion of
12   the proceedings contained herein, had in the above-entitled
13   cause on the date specified therein, and that said transcript
14   was prepared under my direction and control.
15          DATED at Phoenix, Arizona, this 17th day of November,
16   2023.
17
18
19                          s/Hilda E. Lopez_____
20                          HILDA E. LOPEZ, RMR, FCRR
21
22
23
24
25
```

UNITED STATES DISTRICT COURT

ER 15200

1

**1** [21] - 4:10, 4:12, 4:24, 4:25, 5:1, 5:7, 5:8, 5:10, 6:8, 6:18, 7:11, 10:10, 11:13, 11:14, 11:17, 11:18, 15:12, 30:19, 30:20, 33:24
**10** [3] - 17:9, 31:8, 31:9
**100** [1] - 29:22
**11** [3] - 17:14, 31:10, 31:11
**11-29** [1] - 41:11
**1155** [1] - 3:8
**11:04** [2] - 1:8, 4:3
**11:24** [1] - 13:6
**11th** [1] - 2:11
**12** [1] - 17:19
**120** [1] - 2:14
**1200** [1] - 2:6
**12:00** [1] - 35:16
**13** [3] - 17:24, 31:12, 31:13
**1301** [1] - 2:11
**14** [7] - 18:4, 31:14, 31:15, 35:22, 36:1, 36:2, 36:9
**14202** [1] - 2:15
**15** [3] - 18:9, 31:16, 31:17
**16** [1] - 18:14
**160** [1] - 2:18
**17** [2] - 1:8, 18:19
**17th** [1] - 43:15
**18** [1] - 18:24
**1875** [1] - 3:4
**19** [1] - 19:4

2

**2** [14] - 6:7, 6:13, 6:18, 7:12, 10:9, 13:16, 14:12, 14:13, 14:19, 15:3, 15:8, 15:19, 30:21, 30:22
**2-51** [1] - 4:15
**20** [1] - 19:9
**20005** [1] - 2:11
**2021** [1] - 12:18
**2023** [2] - 1:8, 43:16
**21** [1] - 19:14
**210** [1] - 2:21
**22** [1] - 19:19
**23** [1] - 19:24
**2300** [1] - 3:4
**24** [2] - 12:6, 20:4
**25** [1] - 20:9
**26** [1] - 20:14

**27** [10] - 4:16, 5:1, 5:11, 6:2, 7:20, 9:13, 10:2, 11:18, 20:19
**2734** [1] - 3:11
**28** [1] - 20:24
**28th** [5] - 34:20, 35:2, 40:2, 40:24, 41:7
**29** [5] - 21:4, 36:1, 37:12, 37:14, 40:11
**29(c** [1] - 35:22
**2930** [1] - 2:18
**29th** [9] - 32:5, 37:24, 37:25, 40:8, 40:9, 40:15, 40:22, 41:2, 41:10
**2:18-cr-00422-DJH** [1] - 1:6
**2:30** [3] - 34:20, 35:2, 40:3

3

**3** [3] - 15:24, 30:23, 30:24
**30** [13] - 1:22, 5:22, 6:5, 6:14, 6:20, 7:13, 7:21, 8:1, 9:6, 10:3, 10:13, 21:9
**31** [1] - 21:14
**312** [1] - 1:21
**32** [1] - 21:19
**322-7256** [1] - 1:23
**33** [1] - 21:24
**34** [2] - 1:15, 22:4
**35** [1] - 22:9
**3550** [1] - 3:8
**36** [1] - 22:14
**37** [1] - 22:19
**38** [1] - 22:24
**39** [1] - 23:4

4

**4** [5] - 4:15, 5:1, 5:11, 11:18, 16:4
**40** [2] - 2:6, 23:9
**401** [1] - 1:22
**41** [1] - 23:14
**42** [2] - 2:14, 23:19
**43** [1] - 23:24
**44** [1] - 24:4
**45** [1] - 24:9
**46** [1] - 24:14
**47** [1] - 24:19
**48** [1] - 24:24
**49** [1] - 25:4
**4:06** [1] - 13:7
**4:38** [1] - 33:16
**4:56** [1] - 33:17

5

**5** [4] - 4:17, 16:9, 30:25, 31:1
**50** [1] - 25:9
**51** [7] - 6:7, 6:13, 6:19, 7:12, 10:9, 25:14, 33:24
**52** [1] - 25:19
**53** [1] - 25:24
**54** [1] - 26:4
**55** [1] - 26:7
**56** [1] - 26:10
**57** [1] - 26:13
**58** [1] - 26:16
**59** [1] - 26:19
**5:16** [1] - 42:25
**5th** [1] - 35:1

6

**6** [3] - 16:14, 31:2, 31:3
**60** [1] - 26:22
**602** [1] - 1:23
**61** [1] - 26:25
**62** [1] - 27:3
**63** [2] - 27:6, 27:8
**64** [1] - 27:11
**65** [1] - 27:14
**66** [1] - 27:17
**67** [1] - 27:20
**6720** [1] - 2:21
**68** [2] - 27:7, 27:23
**69** [2] - 28:1, 28:2

7

**7** [3] - 16:19, 31:4, 31:5
**70** [1] - 28:4
**71** [1] - 28:6
**72** [1] - 28:7
**73** [1] - 28:8
**74** [1] - 28:9
**75** [1] - 28:10
**76** [1] - 28:11
**77** [1] - 28:12
**78** [1] - 28:13
**79** [1] - 28:15

8

**8** [3] - 16:24, 31:6, 31:7
**80** [1] - 28:16
**81** [1] - 28:17
**82** [1] - 28:19
**83** [1] - 28:20
**84** [1] - 28:22

**85** [1] - 28:24
**85003-2151** [1] - 1:22
**85004** [1] - 2:6
**85012** [1] - 3:8
**85016** [1] - 2:19
**85252** [1] - 3:12
**85253** [1] - 2:22
**86** [1] - 28:25
**87** [1] - 29:2
**88** [1] - 29:3
**89** [1] - 29:5
**8th** [3] - 38:4, 38:5, 41:12

9

**9** [1] - 17:4
**90** [1] - 29:7
**90067** [1] - 3:4
**91** [1] - 29:9
**92** [1] - 29:11
**93** [1] - 29:13
**94** [1] - 29:15
**95** [1] - 29:16
**96** [1] - 29:17
**97** [1] - 29:18
**98** [1] - 29:19
**99** [2] - 28:1, 29:20

A

**a.m** [3] - 1:8, 4:3, 13:6
**able** [3] - 15:3, 33:5, 34:23
**above-entitled** [1] - 43:12
**absolutely** [2] - 6:9, 36:15
**accept** [1] - 8:8
**acceptable** [2] - 6:22, 7:2
**according** [1] - 36:2
**accurate** [1] - 43:11
**acquittal** [2] - 33:25, 36:6
**Acquittal** [1] - 34:17
**act** [2] - 36:23, 43:8
**Act** [9] - 5:21, 9:7, 9:17, 10:17, 10:24, 11:7, 36:23, 36:24, 37:1
**acts** [3] - 5:4, 5:13, 11:20
**actual** [1] - 35:24
**add** [3] - 9:3, 9:5, 9:22
**adding** [1] - 5:3
**additional** [1] - 36:21
**adhered** [1] - 32:8
**adjourned** [1] - 13:5
**admonition** [1] - 32:16

afternoon [2] - 6:16, 13:12
agree [1] - 14:14
agreed [1] - 42:20
agreement [1] - 13:13
Aided [1] - 1:24
aim [1] - 39:2
al [1] - 1:8
Allen [2] - 9:24, 13:18
allow [1] - 10:8
alone [1] - 10:22
alternative [2] - 5:25, 6:3
amendment [1] - 7:19
America [1] - 1:5
Andrew [54] - 2:4, 3:6, 15:11, 15:17, 15:22, 16:2, 16:7, 16:12, 16:17, 16:22, 17:2, 17:7, 17:12, 17:17, 17:22, 18:2, 18:7, 18:12, 18:17, 18:22, 19:2, 19:7, 19:12, 19:17, 19:22, 20:2, 20:7, 20:12, 20:17, 20:22, 21:2, 21:7, 21:12, 21:17, 21:22, 22:2, 22:7, 22:12, 22:17, 22:22, 23:2, 23:7, 23:12, 23:17, 23:22, 24:2, 24:7, 24:12, 24:17, 24:22, 25:2, 25:7, 25:12, 25:17
andrew.stone@ usdoj.gov [1] - 2:8
Angeles [1] - 3:4
answer [17] - 4:23, 5:5, 5:9, 6:17, 8:6, 8:13, 8:15, 8:16, 8:22, 8:24, 10:10, 10:21, 11:2, 11:7, 12:10, 12:11, 14:17
appointed [1] - 43:8
appreciate [3] - 41:22, 41:25, 42:7
appreciation [1] - 42:8
approach [3] - 8:12, 9:6, 9:11
appropriate [3] - 5:17, 7:19, 33:8
argument [6] - 10:5, 36:21, 37:3, 37:13, 37:14, 40:20
ARIZONA [1] - 1:3
Arizona [5] - 1:7, 1:22, 2:6, 43:9, 43:15
arrange [1] - 34:14
assembly [1] - 31:24
attempt [2] - 4:14, 5:9

**attention** [2] - 32:7, 32:13
**ATTORNEY'S** [1] - 2:3
**August** [2] - 31:23, 32:5
**Austin** [1] - 2:10
**austin.berry2@ usdoj.gov** [1] - 2:12
**Avenue** [4] - 2:6, 2:11, 2:14, 3:8
**aware** [2] - 39:13, 39:18
**AZ** [4] - 2:19, 2:22, 3:8, 3:12

## B

**BEFORE** [1] - 1:13
**began** [1] - 31:20
**BERRY** [1] - 39:7
**Berry** [1] - 2:10
**Bertrand** [7] - 3:11, 7:14, 10:12, 13:2, 14:3; 30:10, 42:1
**BERTRAND** [12] - 3:10, 4:21, 7:15, 7:18, 12:16, 13:3, 14:4, 30:12, 34:6, 34:15, 42:2, 42:20
**best** [3] - 6:24, 38:21
**better** [1] - 10:4
**beyond** [2] - 6:4, 34:22
**bf@federlawpa.com** [1] - 2:19
**BIRD** [1] - 3:2
**bit** [1] - 35:24
**Box** [1] - 3:11
**BOXER** [1] - 3:2
**Boyle** [1] - 2:5
**briefly** [1] - 32:23
**Bruce** [1] - 2:18
**Brunst** [87] - 3:1, 15:11, 15:16, 15:21, 16:1, 16:6, 16:11, 16:16, 16:21, 17:1, 17:6, 17:11, 17:16, 17:21, 18:1, 18:6, 18:11, 18:16, 18:21, 19:1, 19:6, 19:11, 19:16, 19:21, 20:1, 20:6, 20:11, 20:16, 20:21, 21:1, 21:6, 21:11, 21:16, 21:21, 22:1, 22:6, 22:11, 22:16, 22:21, 23:1, 23:6, 23:11, 23:16, 23:21, 24:1, 24:6, 24:11, 24:16, 24:21, 25:1, 25:6, 25:11,

25:16, 25:23, 26:3, 26:6, 26:9, 26:12, 26:15, 26:18, 26:21, 26:24, 27:2, 27:5, 27:10, 27:13, 27:16, 27:19, 27:22, 27:25, 28:3, 28:5, 28:14, 28:15, 28:16, 28:18, 28:19, 28:21, 28:23, 29:1, 29:2, 29:4, 29:6, 29:8, 29:10, 29:12, 29:14
**Buffalo** [1] - 2:15
**business** [1] - 38:5

## C

**CA** [1] - 3:4
**calendar** [2] - 33:13, 38:11
**CAMBRIA** [16] - 2:13, 14:6, 30:15, 33:22, 35:21, 36:7, 36:10, 36:12, 36:15, 37:21, 38:16, 39:21, 39:24, 40:2, 40:6, 41:19
**Cambria** [11] - 2:14, 14:5, 30:13, 33:21, 40:7, 40:10, 40:25, 41:5, 41:18, 41:22, 42:6
**Camelback** [1] - 2:18
**cannot** [10] - 4:24, 5:1, 5:3, 5:8, 5:11, 5:12, 6:8, 11:13, 11:18, 11:19
**case** [2] - 8:4, 36:18
**caught** [1] - 42:20
**Central** [2] - 2:6, 3:8
**Century** [1] - 3:4
**certainly** [3] - 9:20, 33:14, 41:13
**certify** [1] - 43:7
**CERTIFY** [1] - 43:10
**charge** [6] - 9:6, 9:7, 9:13, 9:14, 11:7, 13:18
**charges** [2] - 6:18, 15:12
**check** [1] - 34:2
**chore** [1] - 9:15
**citizens** [1] - 32:2
**clarification** [1] - 37:12
**clarify** [4] - 6:11, 6:24, 11:9, 38:18
**clarifying** [3] - 5:5, 5:16, 10:18
**clear** [3] - 5:25, 37:14, 37:20

**client** [1] - 33:21
**close** [2] - 32:6, 37:5
**closed** [1] - 4:14
**co** [3] - 5:4, 5:13, 11:20
**co-conspirator** [3] - 5:4, 5:13, 11:20
**coercive** [2] - 10:1, 10:7
**colleague's** [1] - 9:18
**colleagues** [1] - 9:2
**commence** [1] - 4:3
**comments** [1] - 9:3
**Commit** [1] - 25:20
**communication** [2] - 13:13, 13:17
**completed** [1] - 31:24
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**concealment** [1] - 25:25
**Concealment** [1] - 29:21
**concede** [1] - 9:8
**concern** [1] - 9:18
**concise** [1] - 6:16
**conclude** [1] - 11:22
**concluded** [2] - 13:6, 42:25
**condition** [1] - 34:8
**conditions** [2] - 33:9, 34:1
**confer** [1] - 33:3
**confused** [3] - 10:15, 40:24, 41:4
**confusing** [2] - 5:18, 6:6
**confusion** [1] - 6:12
**conjecture** [1] - 9:9
**conjectured** [1] - 10:13
**consensus** [1] - 13:15
**consider** [2] - 9:24, 12:21
**consideration** [3] - 4:22, 12:19, 34:19
**considered** [2] - 9:11, 10:13
**conspiracy** [9] - 4:13, 4:16, 6:19, 7:13, 8:6, 8:18, 15:13, 25:20, 36:23
**conspirator** [3] - 5:4, 5:13, 11:20
**constitute** [1] - 43:10
**contacting** [1] - 34:13
**contained** [1] - 43:12
**continue** [1] - 7:2

**continuing** [1] - 9:18
**control** [1] - 43:14
**convey** [1] - 42:8
**conviction** [5] - 33:7, 34:16, 34:21, 35:24, 36:25
**correct** [4] - 4:11, 8:7, 8:14, 30:18
**Correct** [1] - 8:15
**counsel** [5] - 4:5, 4:6, 13:9, 13:10, 33:2
**count** [93] - 4:8, 5:21, 10:22, 11:8, 17:14, 17:19, 17:24, 18:4, 18:9, 18:14, 18:19, 18:24, 19:4, 19:9, 19:14, 19:19, 19:24, 20:4, 20:9, 20:14, 20:19, 20:24, 21:4, 21:9, 21:19, 21:24, 22:4, 22:9, 22:14, 22:19, 22:24, 23:4, 23:9, 23:14, 23:19, 23:24, 24:4, 24:9, 24:14, 24:19, 24:24, 25:4, 25:9, 25:14, 25:24, 26:4, 26:7, 26:10, 26:13, 26:16, 26:19, 26:22, 26:25, 27:3, 27:8, 27:11, 27:14, 27:17, 27:20, 27:23, 28:2, 28:7, 28:8, 28:9, 28:10, 28:11, 28:12, 28:13, 28:15, 28:16, 28:17, 28:19, 28:20, 28:22, 28:24, 28:25, 29:2, 29:3, 29:5, 29:7, 29:9, 29:11, 29:13, 29:15, 29:16, 29:17, 29:18, 29:19, 29:20, 35:24, 36:23, 36:24
**Count** [34] - 4:10, 4:12, 4:24, 4:25, 5:1, 5:6, 5:8, 5:10, 6:8, 6:18, 7:11, 10:10, 11:13, 11:14, 11:16, 11:18, 15:12, 15:19, 15:24, 16:4, 16:9, 16:14, 16:19, 16:24, 17:4, 17:9, 21:14, 25:19, 28:1, 28:4, 28:6, 29:22, 33:24
**counts** [11] - 13:14, 13:15, 14:14, 15:4, 33:5, 33:7, 34:16, 34:21, 35:5, 36:25, 37:1
**Counts** [7] - 4:15, 6:7, 6:13, 6:18, 7:12,

10:9, 27:6
**couple** [1] - 33:12
**course** [1] - 35:7
**court** [1] - 31:23
**COURT** [72] - 1:1, 4:4, 4:20, 4:22, 7:5, 7:8, 7:14, 7:17, 10:20, 12:1, 12:4, 12:6, 12:9, 12:15, 13:1, 13:4, 13:8, 13:21, 13:24, 14:1, 14:3, 14:5, 14:7, 14:10, 14:13, 14:16, 14:23, 15:6, 29:23, 30:1, 30:4, 30:7, 30:10, 30:13, 30:16, 31:18, 33:2, 33:18, 33:20, 33:23, 34:10, 34:16, 35:14, 35:17, 36:4, 36:9, 36:11, 36:13, 36:16, 37:14, 37:25, 38:4, 38:7, 38:17, 38:24, 39:2, 39:4, 39:13, 39:23, 39:25, 40:4, 40:10, 40:13, 40:17, 41:5, 41:11, 41:22, 42:4, 42:7, 42:12, 42:15, 42:22
**Court** [26] - 1:20, 1:24, 4:8, 7:18, 7:22, 8:18, 9:25, 11:21, 12:3, 12:18, 12:19, 12:20, 12:22, 12:24, 32:20, 33:9, 33:24, 34:6, 34:18, 38:13, 39:11, 39:17, 40:24, 41:16, 43:8, 43:9
**Court's** [3] - 11:1, 12:23, 33:4
**courtesies** [2] - 41:20, 42:19
**Courthouse** [1] - 1:21
**courthouse** [1] - 41:23
**Courtroom** [2] - 15:6, 15:9, 30:16
**courtroom** [2] - 11:4, 35:3
**COURTROOM** [15] - 15:10, 30:17, 30:21, 30:23, 30:25, 31:2, 31:4, 31:6, 31:8, 31:10, 31:12, 31:14, 31:16, 33:19, 42:24
**criminal** [1] - 6:13
**critical** [1] - 31:25
**current** [1] - 10:5

## D

**daily** [2] - 32:13, 32:24
**Daniel** [1] - 2:5
**date** [9] - 34:22, 36:1, 39:22, 40:8, 40:9, 41:3, 41:4, 41:9, 43:13
**DATED** [1] - 43:15
**DAVID** [1] - 3:7
**David** [1] - 3:7
**david@ deisenbergplc.com** [1] - 3:9
**DAY** [1] - 1:15
**days** [19] - 10:2, 31:22, 35:22, 36:1, 36:2, 36:9, 36:14, 36:16, 37:15, 37:19, 37:21, 37:22, 38:3, 39:22, 40:1, 40:9, 40:11, 40:25, 41:6
**DC** [1] - 2:11
**deadline** [3] - 38:1, 38:17, 41:11
**December** [2] - 35:1, 41:12
**decisional** [1] - 40:22
**declare** [1] - 33:4
**defendant** [21] - 4:9, 4:10, 4:15, 4:24, 4:25, 5:1, 5:3, 5:7, 5:10, 5:11, 5:12, 5:24, 6:7, 6:17, 7:11, 8:17, 11:12, 11:16, 11:17, 11:18, 11:19
**Defendant** [5] - 2:13, 2:17, 3:1, 3:6, 3:9
**Defendants** [1] - 1:9
**defendants** [13] - 4:5, 4:20, 7:1, 10:9, 10:17, 12:15, 13:10, 13:21, 15:10, 33:8, 34:21, 35:18, 37:15
**defense** [2] - 37:20, 39:9
**Delaware** [1] - 2:14
**delay** [1] - 39:17
**delaying** [1] - 36:14
**delays** [1] - 32:10
**deliberating** [1] - 32:17
**deliberations** [3] - 14:21, 15:2, 32:14
**depart** [1] - 32:24
**DEPARTMENT** [1] - 2:10
**Deputy** [3] - 15:6, 15:9, 30:16
**DEPUTY** [15] - 15:10,

30:17, 30:21, 30:23, 30:25, 31:2, 31:4, 31:6, 31:8, 31:10, 31:12, 31:14, 31:16, 33:19, 42:24
**DIANE** [1] - 1:13
**different** [2] - 8:21, 35:24
**difficult** [1] - 9:15
**diligently** [1] - 32:12
**direct** [1] - 10:10
**directing** [1] - 39:14
**direction** [1] - 43:14
**directly** [1] - 11:9
**disagree** [1] - 14:17
**disagreement** [1] - 6:10
**disclosure** [2] - 12:10, 12:22
**discuss** [3] - 32:9, 32:16, 32:17
**disregard** [1] - 10:14
**disregarding** [1] - 10:20
**disruption** [1] - 32:10
**District** [2] - 43:9
**DISTRICT** [2] - 1:1, 1:3
**done** [4] - 7:23, 9:10, 34:14, 39:18
**doubt** [1] - 6:5
**DROOKS** [1] - 3:2
**due** [3] - 35:13, 37:20, 38:22
**duly** [1] - 43:7
**during** [3] - 32:13, 41:20

## E

**early** [1] - 31:21
**earnest** [1] - 31:20
**East** [1] - 2:18
**easy** [1] - 10:15
**echo** [2] - 9:17, 42:5
**EISENBERG** [5] - 3:7, 9:4, 13:23, 30:3, 42:18
**Eisenberg** [8] - 3:7, 9:23, 10:12, 13:22, 30:1, 36:20, 37:2, 42:17
**Eisenberg's** [2] - 10:5, 40:20
**element** [13] - 4:10, 4:15, 4:24, 5:1, 5:7, 5:11, 8:5, 8:6, 9:14, 10:2, 11:12, 11:13, 11:18
**Element** [1] - 8:16
**elements** [3] - 7:13,

9:16, 10:16
**Elizabeth** [1] - 1:21
**end** [3] - 12:7, 36:13, 38:4
**endured** [2] - 32:10
**ensure** [1] - 32:3
**enter** [1] - 33:25
**entirety** [1] - 34:24
**entitled** [1] - 43:12
**environment** [2] - 9:24, 10:5
**Eric** [1] - 2:21
**eric.kesslerlaw@ gmail.com** [1] - 2:22
**Esq** [12] - 2:3, 2:4, 2:4, 2:5, 2:5, 2:10, 2:14, 2:18, 2:21, 3:3, 3:3, 3:7, 3:11
**ESQ** [1] - 3:10
**et** [1] - 1:8
**evaluate** [1] - 7:1
**evening** [4] - 11:24, 12:7, 35:13, 42:23
**event** [2] - 10:21, 31:24
**everyday** [1] - 32:8
**evidence** [1] - 8:2
**evidentiary** [1] - 36:7
**exact** [1] - 6:23
**examine** [1] - 37:9
**except** [2] - 41:19
**exercise** [1] - 8:9
**Exhibit** [2] - 12:18, 38:14
**exhibits** [1] - 39:8
**expedited** [2] - 39:15, 39:17
**explanation** [1] - 6:3
**extension** [1] - 35:15

## F

**fails** [1] - 4:10
**family** [1] - 32:11
**FCRR** [2] - 1:21, 43:20
**FEDER** [2] - 2:17, 42:11
**Feder** [4] - 2:18, 11:23, 42:10, 42:13
**few** [1] - 32:22
**figure** [1] - 10:19
**file** [11] - 35:20, 36:1, 36:2, 36:17, 37:15, 37:16, 39:1, 40:11, 40:14, 40:18, 41:8
**filed** [4] - 11:23, 12:6, 39:7, 41:6
**filing** [4] - 38:15, 40:4, 40:9, 41:3
**fill** [1] - 31:22

**fine** [2] - 36:15, 41:3
**first** [7] - 5:5, 5:15, 5:22, 8:14, 8:15, 10:21, 31:25
**five** [3] - 37:17, 38:2, 39:25
**five-day** [1] - 37:17
**Floor** [1] - 2:11
**floor** [1] - 35:3
**following** [4] - 4:23, 13:12, 34:23, 41:17
**FOR** [1] - 1:3
**force** [1] - 9:18
**foregoing** [1] - 43:10
**foreperson** [2] - 14:11, 14:19
**FOREPERSON** [4] - 14:12, 14:15, 14:22, 15:5
**Foreperson** [1] - 15:3
**foreperson's** [1] - 14:17
**form** [3] - 15:7, 33:18, 36:19
**formulated** [2] - 36:20, 37:2
**forward** [2] - 33:13, 41:15
**four** [5] - 8:5, 8:6, 8:16, 10:3, 11:12
**fourth** [1] - 9:14
**frame** [1] - 40:14
**frankly** [1] - 8:3
**frustrated** [1] - 8:22
**full** [2] - 36:9, 43:11
**FURTHER** [1] - 43:10

## G

**Gary** [1] - 3:3
**given** [4] - 5:23, 10:8, 32:4, 35:18
**glincenberg@ birdmarella.com** [1] - 3:5
**Gopi** [1] - 3:3
**government** [21] - 4:18, 6:4, 6:22, 7:19, 7:22, 9:5, 10:3, 11:23, 12:13, 13:9, 13:19, 29:23, 35:4, 35:11, 36:17, 37:3, 38:1, 38:15, 39:6, 39:19, 41:11
**Government** [2] - 2:2, 2:9
**government's** [5] - 4:6, 8:8, 9:25, 40:5, 40:18
**gpanchapakesan@**

**birdmarella.com** [1] - 3:5
**grace** [1] - 40:13
**gratitude** [1] - 42:6
**GREEN** [1] - 2:13
**guard** [1] - 42:21
**guess** [3] - 35:17, 36:18, 37:23
**guilt** [1] - 9:12
**guilty** [286] - 4:11, 4:25, 5:8, 5:10, 5:24, 6:7, 6:8, 6:17, 6:18, 7:11, 7:12, 10:9, 10:10, 10:17, 11:14, 11:16, 11:17, 15:15, 15:16, 15:17, 15:18, 15:20, 15:21, 15:22, 15:23, 15:25, 16:1, 16:2, 16:3, 16:5, 16:6, 16:7, 16:8, 16:10, 16:11, 16:12, 16:13, 16:15, 16:16, 16:17, 16:18, 16:20, 16:21, 16:22, 16:23, 16:25, 17:1, 17:2, 17:3, 17:5, 17:6, 17:7, 17:8, 17:10, 17:11, 17:12, 17:13, 17:15, 17:16, 17:17, 17:18, 17:20, 17:21, 17:22, 17:23, 17:25, 18:1, 18:2, 18:3, 18:5, 18:6, 18:7, 18:8, 18:10, 18:11, 18:12, 18:13, 18:15, 18:16, 18:17, 18:18, 18:20, 18:21, 18:22, 18:23, 18:25, 19:1, 19:2, 19:3, 19:5, 19:6, 19:7, 19:8, 19:10, 19:11, 19:12, 19:13, 19:15, 19:16, 19:17, 19:18, 19:20, 19:21, 19:22, 19:23, 19:25, 20:1, 20:2, 20:3, 20:5, 20:6, 20:7, 20:8, 20:10, 20:11, 20:12, 20:13, 20:15, 20:16, 20:17, 20:18, 20:20, 20:21, 20:22, 20:23, 20:25, 21:1, 21:2, 21:3, 21:5, 21:6, 21:7, 21:8, 21:10, 21:11, 21:12, 21:13, 21:15, 21:16, 21:17, 21:18, 21:20, 21:21, 21:22, 21:23, 21:25, 22:1, 22:2, 22:3, 22:5, 22:6, 22:7, 22:8,

22:10, 22:11, 22:12, 22:13, 22:15, 22:16, 22:17, 22:18, 22:20, 22:21, 22:22, 22:23, 22:25, 23:1, 23:2, 23:3, 23:5, 23:6, 23:7, 23:8, 23:10, 23:11, 23:12, 23:13, 23:15, 23:16, 23:17, 23:18, 23:20, 23:21, 23:22, 23:23, 23:25, 24:1, 24:2, 24:3, 24:5, 24:6, 24:7, 24:8, 24:10, 24:11, 24:12, 24:13, 24:15, 24:16, 24:17, 24:18, 24:20, 24:21, 24:22, 24:23, 24:25, 25:1, 25:2, 25:3, 25:5, 25:6, 25:7, 25:8, 25:10, 25:11, 25:12, 25:13, 25:15, 25:16, 25:17, 25:18, 25:22, 25:23, 26:2, 26:3, 26:5, 26:6, 26:8, 26:9, 26:11, 26:12, 26:14, 26:15, 26:17, 26:18, 26:20, 26:21, 26:23, 26:24, 27:1, 27:2, 27:4, 27:5, 27:8, 27:9, 27:10, 27:12, 27:13, 27:15, 27:16, 27:18, 27:19, 27:21, 27:22, 27:24, 27:25, 28:3, 28:5, 28:6, 28:7, 28:8, 28:9, 28:10, 28:11, 28:12, 28:13, 28:14, 28:15, 28:16, 28:18, 28:19, 28:21, 28:23, 28:24, 29:1, 29:2, 29:4, 29:6, 29:8, 29:10, 29:12, 29:13, 29:14, 29:22

## H

**handle** [1] - 39:11
**hardest** [1] - 41:23
**head** [3] - 36:19, 37:7, 37:10
**hear** [1] - 7:14
**heard** [1] - 32:16
**hearing** [9] - 36:14, 36:21, 38:8, 38:12, 40:5, 40:15, 40:22, 40:23, 41:16
**hearings** [1] - 12:23
**held** [3] - 5:4, 5:12, 11:19

**help** [5] - 8:25, 10:19, 40:21, 41:14
**helpful** [1] - 10:17
**hereby** [1] - 43:7
**herein** [1] - 43:12
**highly** [1] - 7:25
**HILDA** [2] - 43:7, 43:20
**Hilda** [1] - 1:21
**holidays** [1] - 38:10
**Honor** [36] - 4:19, 5:15, 5:20, 6:15, 7:4, 7:15, 7:16, 9:4, 9:7, 9:21, 9:22, 12:14, 12:17, 13:23, 13:25, 14:2, 14:6, 29:25, 30:3, 30:6, 30:9, 34:6, 37:11, 37:18, 37:22, 38:2, 38:18, 39:3, 39:7, 39:20, 40:8, 41:2, 41:20, 42:5, 42:18, 42:20
**HONORABLE** [1] - 1:13
**hope** [2] - 10:20, 35:4
**hours** [1] - 12:6
**HUMETEWA** [1] - 1:13

## I

**impeachment** [1] - 12:21
**importantly** [1] - 32:13
**inclined** [1] - 4:23
**incredible** [1] - 31:19
**indeed** [1] - 32:12
**independently** [1] - 11:8
**indictment** [1] - 15:12
**innocence** [1] - 9:12
**instructed** [1] - 5:21
**instruction** [6] - 5:22, 6:14, 6:20, 10:13, 10:24, 11:19
**instructions** [9] - 5:2, 5:12, 5:19, 5:20, 5:23, 5:25, 6:1, 7:24, 10:8
**intend** [3] - 11:11, 11:23, 35:7
**intended** [1] - 39:14
**intends** [1] - 39:9
**intent** [1] - 8:1
**interim** [2] - 38:7, 41:16
**International** [1] - 29:21
**international** [1] - 27:6
**interrupting** [1] -

37:11
**Intervene** [1] - 39:10
**issue** [8] - 5:15, 6:23, 8:12, 9:12, 35:8, 38:14, 39:14, 40:19
**issues** [1] - 34:3

## J

**Jed** [85] - 15:11, 15:16, 15:21, 16:1, 16:6, 16:11, 16:16, 16:21, 17:1, 17:6, 17:11, 17:16, 17:21, 18:1, 18:6, 18:11, 18:16, 18:21, 19:1, 19:6, 19:11, 19:16, 19:21, 20:1, 20:6, 20:11, 20:16, 20:21, 21:1, 21:6, 21:11, 21:16, 21:21, 22:1, 22:6, 22:16, 22:21, 23:1, 23:6, 23:11, 23:16, 23:21, 24:1, 24:6, 24:11, 24:16, 24:21, 25:1, 25:6, 25:11, 25:16, 25:23, 26:3, 26:6, 26:9, 26:12, 26:15, 26:18, 26:21, 26:24, 27:2, 27:5, 27:10, 27:13, 27:16, 27:19, 27:22, 27:25, 28:3, 28:5, 28:14, 28:15, 28:16, 28:18, 28:19, 28:21, 28:23, 29:1, 29:2, 29:4, 29:6, 29:8, 29:10, 29:12, 29:14
**Jencks** [2] - 12:20, 38:16
**job** [1] - 7:23
**John** [86] - 3:1, 15:11, 15:16, 15:21, 16:1, 16:6, 16:11, 16:16, 17:1, 17:6, 17:11, 17:16, 17:21, 18:1, 18:6, 18:11, 18:16, 18:21, 19:1, 19:6, 19:11, 19:16, 19:21, 20:1, 20:6, 20:11, 20:16, 20:21, 21:1, 21:6, 21:11, 21:16, 21:21, 22:1, 22:6, 22:11, 22:16, 22:21, 23:1, 23:6, 23:11, 23:16, 23:21, 24:1, 24:6, 24:11, 24:16, 24:21, 25:1, 25:6, 25:11, 25:16, 25:23, 26:3, 26:6, 26:9, 26:12, 26:15, 26:18,

26:21, 26:24, 27:2, 27:5, 27:10, 27:13, 27:16, 27:19, 27:22, 27:25, 28:3, 28:5, 28:14, 28:15, 28:16, 28:18, 28:19, 29:1, 29:2, 29:4, 29:6, 29:8, 29:10, 29:12, 29:14
**jot** [1] - 16:21
**journalists** [1] - 39:11
**JOY** [1] - 3:10
**Joy** [1] - 3:11
**joy@joybertrandlaw.com** [1] - 3:12
**Joye** [52] - 3:10, 15:12, 15:18, 15:23, 16:3, 16:8, 16:13, 16:18, 16:23, 17:3, 17:8, 17:13, 17:18, 17:23, 18:3, 18:8, 18:13, 18:18, 18:23, 19:3, 19:8, 19:13, 19:18, 19:23, 20:3, 20:8, 20:13, 20:18, 20:23, 21:3, 21:8, 21:13, 21:23, 22:3, 22:8, 22:13, 22:18, 22:23, 23:3, 23:8, 23:13, 23:18, 23:23, 24:3, 24:8, 24:13, 24:18, 24:23, 25:3, 25:8, 25:13, 25:18
**joye** [1] - 21:18
**Jr** [1] - 2:14
**JUDGE** [1] - 1:13
**Judge** [1] - 35:12
**judgment** [2] - 33:25, 36:5
**Judgment** [1] - 34:17
**juncture** [1] - 41:12
**juror** [4] - 8:21, 14:10, 14:11, 14:24
**Juror** [12] - 4:17, 13:16, 14:13, 15:8, 30:19, 30:21, 30:23, 30:25, 31:2, 31:4, 31:6, 31:8
**JUROR** [12] - 30:20, 30:22, 30:24, 31:1, 31:3, 31:5, 31:7, 31:9, 31:11, 31:13, 31:15, 31:17
**jurors** [3] - 14:16, 14:23, 32:5
**JURY** [1] - 1:16
**jury** [48] - 4:7, 5:2, 5:11, 5:18, 5:21, 6:9, 6:11, 6:25, 7:20, 7:22, 7:24, 8:10,

26:21, 26:24, 27:2, 27:5, 27:10, 27:13, 27:16, 27:19, 27:22, 27:25, 28:3, 28:5, 28:14, 28:15, 28:16, 28:18, 28:19, 28:21, 28:23, 29:1, 29:2, 29:4, 29:6, 29:8, 29:10, 29:12, 29:14
**jot** [1] - 16:21
**journalists** [1] - 39:11
**JOY** [1] - 3:10
**Joy** [1] - 3:11
**joy@joybertrandlaw.com** [1] - 3:12
**Joye** [52] - 3:10, 15:12, 15:18, 15:23, 16:3, 16:8, 16:13, 16:18, 16:23, 17:3, 17:8, 17:13, 17:18, 17:23, 18:3, 18:8, 18:13, 18:18, 18:23, 19:3, 19:8, 19:13, 19:18, 19:23, 20:3, 20:8, 20:13, 20:18, 20:23, 21:3, 21:8, 21:13, 21:23, 22:3, 22:8, 22:13, 22:18, 22:23, 23:3, 23:8, 23:13, 23:18, 23:23, 24:3, 24:8, 24:13, 24:18, 24:23, 25:3, 25:8, 25:13, 25:18
**joye** [1] - 21:18
**Jr** [1] - 2:14
**JUDGE** [1] - 1:13
**Judge** [1] - 35:12
**judgment** [2] - 33:25, 36:5
**Judgment** [1] - 34:17
**juncture** [1] - 41:12
**juror** [4] - 8:21, 14:10, 14:11, 14:24
**Juror** [12] - 4:17, 13:16, 14:13, 15:8, 30:19, 30:21, 30:23, 30:25, 31:2, 31:4, 31:6, 31:8
**JUROR** [12] - 30:20, 30:22, 30:24, 31:1, 31:3, 31:5, 31:7, 31:9, 31:11, 31:13, 31:15, 31:17
**jurors** [3] - 14:16, 14:23, 32:5
**JURY** [1] - 1:16
**jury** [48] - 4:7, 5:2, 5:11, 5:18, 5:21, 6:9, 6:11, 6:25, 7:20, 7:22, 7:24, 8:10,

8:21, 9:6, 9:10, 10:12, 11:19, 13:13, 13:18, 13:19, 14:7, 14:8, 14:11, 14:13, 14:20, 14:21, 14:25, 15:1, 15:3, 15:10, 29:24, 30:2, 30:4, 30:8, 30:10, 30:13, 30:16, 30:17, 31:18, 31:21, 31:23, 32:5, 32:21, 32:25, 33:5, 33:11, 33:24, 35:5
**Jury** [2] - 14:9, 33:1
**JUSTICE** [1] - 2:10
**justice** [1] - 32:3

## K

**keep** [1] - 35:25
**KESSLER** [4] - 2:20, 13:25, 30:6, 42:13
**Kessler** [1] - 2:21, 13:24, 30:4, 42:12
**Kevin** [1] - 2:3
**kevin.rapp@usdoj.gov** [1] - 2:7
**KOZINETS** [3] - 37:18, 38:2, 38:6
**Kozinets** [1] - 2:4

## L

**L.L.C** [1] - 3:10
**L.L.P** [1] - 2:13
**Lacey** [89] - 1:8, 2:13, 15:11, 15:14, 15:19, 15:24, 16:4, 16:9, 16:14, 16:19, 16:24, 17:4, 17:9, 17:14, 17:19, 17:24, 18:4, 18:9, 18:14, 18:19, 18:24, 19:4, 19:9, 19:14, 19:19, 19:24, 20:4, 20:9, 20:14, 20:19, 20:24, 21:4, 21:9, 21:14, 21:19, 21:24, 22:4, 22:9, 22:14, 22:19, 22:24, 23:4, 23:9, 23:14, 23:19, 23:24, 24:4, 24:9, 24:14, 24:19, 24:24, 25:4, 25:9, 25:14, 25:21, 26:1, 26:4, 26:7, 26:10, 26:13, 26:16, 26:19, 26:22, 26:25, 27:3, 27:8, 27:11, 27:14, 27:17, 27:20, 27:23, 28:2, 28:4, 28:17, 28:20, 28:22, 28:25,

29:3, 29:5, 29:7, 29:9, 29:11, 29:15, 29:16, 29:17, 29:18, 29:19, 29:20, 29:22
**laid** [1] - 5:24
**language** [4] - 7:3, 7:5, 7:18, 8:18
**last** [3] - 11:23, 36:21, 37:4
**late** [1] - 12:10
**latter** [1] - 38:9
**Laundering** [5] - 25:20, 25:25, 27:6, 28:1, 29:21
**LAW** [2] - 2:17, 2:20
**leading** [1] - 8:10
**least** [3] - 35:6, 37:6, 40:10
**leave** [2] - 32:18, 35:19
**leaves** [1] - 8:3
**lectern** [1] - 9:7
**left** [1] - 34:18
**letting** [1] - 6:25
**liability** [3] - 6:1, 6:13, 8:3
**likely** [2] - 7:25, 34:3
**limit** [1] - 8:23
**LINCENBERG** [12] - 3:2, 9:22, 12:17, 14:2, 30:9, 37:22, 40:7, 40:12, 40:16, 40:23, 41:7, 42:5
**Lincenberg** [5] - 3:3, 14:1, 30:7, 42:4, 42:7
**line** [1] - 10:21
**LIPSITZ** [1] - 2:13
**listed** [1] - 7:13
**lives** [1] - 32:24
**look** [6] - 37:3, 37:5, 37:8, 38:11, 40:20, 41:15
**looks** [1] - 4:13
**LOPEZ** [2] - 43:7, 43:20
**Lopez** [2] - 1:21, 43:19
**Los** [1] - 3:4

## M

**ma'am** [2] - 4:21, 30:20
**majority** [1] - 13:14
**MARELLA** [1] - 3:2
**Margaret** [1] - 2:5
**margaret.perlmeter @usdoj.gov** [1] - 2:8
**material** [1] - 12:21
**matter** [1] - 34:1

**matters** [6] - 32:9, 32:16, 32:17, 33:3, 33:12, 34:11
**mean** [1] - 8:5
**meant** [1] - 8:6
**meantime** [1] - 33:15
**meet** [4] - 4:10, 4:24, 5:7, 11:13
**meeting** [1] - 40:2
**member** [5] - 4:15, 6:19, 7:12, 8:5, 8:17
**members** [2] - 30:17, 31:18
**mentioned** [2] - 34:17, 40:25
**merit** [1] - 4:8
**met** [1] - 8:7
**Michael** [89] - 1:8, 2:13, 15:11, 15:14, 15:19, 15:24, 16:4, 16:9, 16:14, 16:19, 16:24, 17:4, 17:9, 17:14, 17:19, 17:24, 18:4, 18:9, 18:14, 18:19, 18:24, 19:4, 19:9, 19:14, 19:19, 19:24, 20:4, 20:9, 20:14, 20:19, 20:24, 21:4, 21:9, 21:14, 21:19, 21:24, 22:4, 22:9, 22:14, 22:19, 22:24, 23:4, 23:9, 23:14, 23:19, 23:24, 24:4, 24:9, 24:14, 24:19, 24:24, 25:4, 25:9, 25:14, 25:21, 26:1, 26:4, 26:7, 26:10, 26:13, 26:16, 26:19, 26:22, 26:25, 27:3, 27:8, 27:11, 27:14, 27:17, 27:20, 27:23, 28:2, 28:4, 28:17, 28:20, 28:22, 28:25, 29:3, 29:5, 29:7, 29:9, 29:11, 29:15, 29:16, 29:17, 29:18, 29:19, 29:20, 29:22
**mid** [1] - 31:23
**mid-August** [1] - 31:23
**might** [1] - 34:11
**minutes** [2] - 32:22, 33:14
**misread** [1] - 4:12
**mistrial** [1] - 33:5
**Money** [5] - 25:20, 25:25, 27:6, 28:1, 29:21
**morning** [4] - 4:7,

7:15, 7:17, 32:6
**most** [1] - 38:14
**Motion** [3] - 34:17, 39:8, 39:10
**motion** [10] - 12:17, 34:20, 35:12, 35:23, 36:5, 38:8, 38:21, 39:13, 40:11
**motions** [1] - 37:4
**move** [1] - 10:15
**MR** [57] - 4:19, 5:15, 7:6, 7:9, 9:4, 9:22, 10:7, 11:25, 12:3, 12:5, 12:8, 12:14, 12:17, 13:20, 13:23, 13:25, 14:2, 14:6, 29:25, 30:3, 30:6, 30:9, 30:15, 33:22, 35:12, 35:15, 35:21, 36:7, 36:10, 36:12, 36:15, 37:17, 37:18, 37:21, 37:22, 38:2, 38:6, 38:16, 38:18, 39:1, 39:3, 39:7, 39:20, 39:21, 39:24, 40:2, 40:6, 40:7, 40:12, 40:16, 40:23, 41:7, 41:19, 42:5, 42:11, 42:13, 42:18
**MS** [11] - 4:21, 7:15, 7:18, 12:16, 13:3, 14:4, 30:12, 34:6, 34:15, 42:2, 42:20

## N

**necessarily** [3] - 33:13, 35:19, 41:13
**necessary** [1] - 9:19
**necessity** [2] - 10:23, 36:13
**need** [12] - 5:17, 6:11, 6:22, 6:24, 7:3, 8:25, 10:16, 33:3, 34:2, 36:9, 38:2, 41:13
**needs** [2] - 6:4, 34:14
**negates** [1] - 10:23
**NESSIM** [1] - 3:2
**never** [2] - 7:21, 8:11
**New** [1] - 2:11
**next** [4] - 38:9, 38:22, 38:24
**NO** [12] - 30:20, 30:22, 30:24, 31:1, 31:3, 31:5, 31:7, 31:9, 31:11, 31:13, 31:15, 31:17
**North** [2] - 2:6, 3:8
**nose** [1] - 8:10
**notes** [2] - 8:19, 32:7

**nothing** [2] - 13:4, 42:11
**November** [5] - 1:8, 37:24, 40:8, 40:9, 43:15
**number** [4] - 14:10, 14:11, 14:12, 33:3
**NW** [1] - 2:11
**NY** [1] - 2:15

## O

**o'clock** [1] - 35:16
**O'Connor** [1] - 1:21
**oath** [1] - 32:8
**objection** [4] - 13:19, 13:20, 13:21, 34:22
**obligation** [1] - 33:4
**obvious** [1] - 32:7
**obviously** [2] - 35:23, 38:9
**occur** [1] - 35:1
**OF** [3] - 1:3, 1:14, 2:10
**offered** [1] - 6:15
**OFFICE** [3] - 2:3, 2:17, 2:20
**officer** [2] - 34:2, 34:11
**officers** [1] - 34:4
**Official** [2] - 1:20, 43:8
**one** [5] - 10:7, 14:14, 35:23, 39:10, 42:14
**opinion** [1] - 14:13
**opportunity** [2] - 4:18, 37:6
**oral** [2] - 36:5, 37:4
**order** [2] - 34:7, 39:14
**Order** [1] - 39:8
**original** [2] - 11:2, 38:21
**outside** [1] - 10:9
**outstanding** [1] - 35:12
**overt** [1] - 36:22
**own** [1] - 4:8

## P

**P.A** [1] - 2:17
**P.C** [1] - 3:2
**P.L.C** [1] - 3:7
**p.m** [4] - 13:7, 33:16, 33:17, 42:25
**P.O** [1] - 3:11
**Padilla** [55] - 3:6, 15:11, 15:17, 15:22, 16:2, 16:7, 16:12, 16:17, 16:22, 17:2, 17:7, 17:12, 17:17, 17:22, 18:2, 18:7,

18:12, 18:17, 18:22, 19:2, 19:7, 19:12, 19:17, 19:22, 20:2, 20:7, 20:12, 20:17, 20:22, 21:2, 21:7, 21:12, 21:17, 21:22, 22:2, 22:7, 22:12, 22:17, 22:22, 23:2, 23:7, 23:12, 23:17, 23:22, 24:2, 24:7, 24:12, 24:17, 24:22, 25:2, 25:7, 25:12, 25:17, 33:23, 34:4
**Padilla's** [1] - 34:7
**page** [17] - 4:16, 5:1, 5:11, 5:22, 6:2, 6:5, 6:20, 7:13, 7:20, 7:21, 8:1, 9:6, 9:13, 10:2, 10:3, 10:13, 11:18
**pages** [1] - 43:10
**paid** [1] - 32:6
**Panchapakesan** [3] - 3:3, 13:11, 42:8
**paperwork** [1] - 34:3
**parentheses** [3] - 4:12, 4:13, 4:14
**Park** [1] - 3:4
**parsing** [1] - 9:16
**part** [6] - 4:13, 5:15, 5:16, 5:17, 31:25, 38:9
**participate** [1] - 32:2
**particular** [1] - 40:19
**parties** [1] - 8:4
**passports** [1] - 34:7
**past** [1] - 7:23
**patience** [1] - 41:24
**Paul** [1] - 2:14
**pcambria@lglaw. com** [1] - 2:15
**pending** [4] - 12:25, 34:18, 38:13, 39:13
**Per** [1] - 4:8
**perfectly** [2] - 6:21, 7:1
**perhaps** [1] - 37:23
**period** [3] - 38:7, 40:13, 41:16
**Perlmeter** [1] - 2:5
**permit** [1] - 40:21
**pertains** [1] - 36:24
**Peter** [1] - 2:4
**peter.kozinets@ usdoj.gov** [1] - 2:7
**Phoenix** [6] - 1:7, 1:22, 2:6, 2:19, 3:8, 43:15
**phone** [2] - 11:3, 11:4
**phones** [1] - 10:25

**Pinkerton** [8] - 5:24, 6:2, 6:5, 6:8, 8:3, 9:8, 9:12, 9:14
**Plaintiff** [1] - 1:6
**plate** [1] - 12:24
**point** [8] - 6:13, 6:15, 6:19, 7:20, 8:4, 10:22, 10:24, 37:12
**poll** [1] - 30:16
**polled** [6] - 29:24, 30:2, 30:5, 30:8, 30:11, 30:14
**portion** [2] - 9:3, 43:11
**pose** [1] - 14:16
**position** [2] - 10:18, 35:5
**possible** [2] - 34:13, 42:15
**post** [2] - 9:24, 35:22
**post-Allen** [1] - 9:24
**potential** [1] - 32:5
**preliminarily** [1] - 35:7
**preliminary** [1] - 5:20
**Prepared** [1] - 1:24
**prepared** [1] - 43:14
**presence** [2] - 13:9, 32:10
**present** [5] - 4:6, 13:10, 14:9, 33:1, 33:21
**presented** [1] - 8:11
**pressure** [1] - 9:19
**presume** [1] - 7:22
**previous** [1] - 11:7
**previously** [3] - 11:6, 13:18, 33:10
**probability** [2] - 14:19, 14:25
**problem** [1] - 9:14
**proceed** [2] - 35:9, 39:5
**proceeding** [1] - 11:22
**PROCEEDINGS** [1] - 1:14
**proceedings** [1] - 43:12
**Proceedings** [6] - 1:24, 4:3, 13:6, 13:7, 33:17, 42:25
**process** [1] - 40:22
**Promotional** [1] - 27:6
**prompted** [1] - 37:10
**proposed** [2] - 7:5, 7:19
**proposes** [1] - 7:18
**Protective** [1] - 39:8
**prove** [1] - 6:4
**publish** [1] - 15:9
**purposes** [1] - 34:20

**pushing** [1] - 8:10
**put** [2] - 33:12, 35:2
**puts** [1] - 9:19

**Q**

**qualified** [1] - 43:8
**QUESTION/**
**VERDICT** [1] - 1:16
**questionnaire** [2] - 31:21, 31:24
**questions** [1] - 7:2
**quiet** [1] - 42:2
**quite** [1] - 37:1
**Quoc** [1] - 12:18

**R**

**raised** [1] - 36:20
**Rapp** [1] - 2:3
**RAPP** [9] - 11:25, 12:3, 12:5, 12:8, 13:20, 29:25, 35:12, 35:15, 39:20
**rather** [2] - 12:4, 35:2
**reach** [7] - 13:14, 14:20, 14:25, 15:3, 34:4, 34:12, 35:6
**reaction** [1] - 11:2
**read** [7] - 5:5, 5:9, 5:23, 6:1, 6:21, 7:9, 13:18
**reading** [1] - 8:20
**reads** [2] - 4:7, 4:8
**really** [1] - 38:21
**reasonable** [4] - 6:5, 14:19, 14:25, 38:5
**receive** [1] - 13:12
**received** [3] - 13:17, 31:20, 34:21
**recent** [1] - 38:14
**recess** [3] - 33:15, 33:16, 42:23
**recognition** [1] - 41:25
**recognize** [1] - 31:22
**recollection** [1] - 37:7
**recommend** [1] - 6:14
**recommendation** [1] - 10:1
**reconvene** [2] - 34:19, 35:3
**reconvened** [2] - 13:7, 33:17
**record** [6] - 4:4, 13:8, 33:12, 36:7, 36:8, 37:9
**refer** [1] - 36:8
**reference** [1] - 4:16
**referenced** [1] - 7:21

**referred** [2] - 7:21, 11:6
**reflect** [3] - 4:5, 13:9, 31:19
**regard** [6] - 7:2, 12:17, 34:14, 34:16, 38:11, 40:20
**regarding** [2] - 12:18, 39:8
**rejected** [1] - 8:2
**related** [5] - 5:6, 36:22, 36:23, 38:14
**relates** [1] - 11:12
**release** [3] - 32:15, 32:21, 34:9
**released** [1] - 33:25
**relevant** [1] - 9:23
**rely** [1] - 32:2
**remain** [1] - 33:9
**remainder** [1] - 34:24
**remaining** [1] - 13:15
**remarkable** [3] - 32:4, 32:19, 41:24
**remind** [2] - 12:24, 33:8
**replies** [1] - 35:19
**reply** [7] - 35:20, 36:18, 38:19, 38:23, 40:19, 41:13
**report** [1] - 12:18
**Reported** [1] - 1:24
**Reporter** [3] - 1:20, 1:24, 43:8
**REPORTER'S** [1] - 1:14
**request** [2] - 11:5, 41:9
**required** [1] - 12:22
**reread** [1] - 11:11
**resolve** [1] - 34:3
**respect** [1] - 34:4
**respectfully** [2] - 8:23, 9:4
**respond** [9] - 11:9, 11:21, 11:23, 36:18, 37:6, 38:15, 38:21, 39:9, 39:16
**response** [8] - 10:14, 11:14, 37:8, 37:17, 38:8, 39:15, 39:17, 40:5
**responsible** [3] - 5:4, 5:12, 11:20
**resubmitted** [1] - 31:22
**result** [1] - 33:24
**retrieve** [2] - 15:7
**return** [3] - 33:6, 33:11, 33:14
**returned** [1] - 34:8

**review** [2] - 4:18, 36:18
**reviewing** [1] - 7:23
**RHOW** [1] - 3:2
**rise** [3] - 14:8, 32:25, 42:24
**risking** [1] - 5:18
**RMR** [2] - 1:21, 43:20
**Road** [2] - 2:18, 2:21
**room** [3] - 14:21, 15:1, 31:24
**rule** [1] - 36:2
**Rule** [3] - 37:12, 37:14, 40:11
**ruling** [1] - 12:19
**runs** [1] - 41:1

**S**

**s/Hilda** [1] - 43:19
**safest** [1] - 8:12
**Sandra** [1] - 1:21
**sat** [1] - 31:23
**satisfied** [1] - 8:17
**satisfy** [4] - 4:14, 5:1, 5:11, 11:18
**schedule** [1] - 35:18
**scheduling** [1] - 35:8
**SCIME** [1] - 2:13
**Scott** [80] - 2:17, 15:11, 15:15, 15:20, 15:25, 16:5, 16:10, 16:15, 16:20, 16:25, 17:5, 17:10, 17:15, 17:20, 17:25, 18:5, 18:10, 18:15, 18:20, 18:25, 19:5, 19:10, 19:15, 19:20, 19:25, 20:5, 20:10, 20:15, 20:20, 20:25, 21:5, 21:10, 21:15, 21:20, 21:25, 22:5, 22:10, 22:15, 22:20, 22:25, 23:5, 23:10, 23:15, 23:20, 23:25, 24:5, 24:10, 24:15, 24:20, 24:25, 25:5, 25:10, 25:15, 25:22, 26:2, 26:5, 26:8, 26:11, 26:14, 26:17, 26:20, 26:23, 27:1, 27:4, 27:9, 27:12, 27:15, 27:18, 27:21, 27:24, 28:6, 28:7, 28:8, 28:9, 28:10, 28:11, 28:12, 28:13, 28:24, 29:13
**Scottsdale** [3] - 2:21, 2:22, 3:12
**seated** [5] - 4:4, 13:8,

14:10, 33:2, 33:20
**second** [6] - 5:9, 5:16, 8:16, 10:2, 11:14, 11:15
**see** [2] - 33:18, 38:11
**send** [3] - 9:6, 10:1, 10:3
**sending** [1] - 9:15
**sense** [1] - 9:17
**sent** [2] - 14:20, 15:1
**sentence** [1] - 11:15
**separate** [1] - 6:12
**separately** [1] - 34:12
**serve** [1] - 32:12
**served** [1] - 32:12
**service** [4] - 31:19, 31:20, 32:4, 32:19
**set** [10] - 33:10, 33:13, 36:14, 37:25, 38:7, 38:20, 40:5, 40:17, 41:9, 41:16
**setting** [1] - 38:12
**showed** [1] - 31:25
**shown** [2] - 32:6, 41:24
**signed** [2] - 4:17, 13:16
**silence** [2] - 10:25, 11:4
**simple** [1] - 11:5
**simply** [3] - 8:5, 8:9, 8:23
**sitting** [1] - 42:2
**sixth** [1] - 35:3
**so..** [1] - 41:6
**sometime** [1] - 41:16
**sometimes** [1] - 42:14
**soon** [1] - 34:13
**sooner** [1] - 12:4
**sorry** [3] - 11:17, 37:11, 37:19
**sort** [1] - 41:1
**sound** [1] - 38:5
**sounded** [1] - 38:18
**Spc** [1] - 1:22
**speaking** [1] - 33:11
**speaks** [1] - 42:13
**Spear** [80] - 2:17, 15:11, 15:15, 15:20, 15:25, 16:5, 16:10, 16:15, 16:20, 16:25, 17:5, 17:10, 17:15, 17:20, 17:25, 18:5, 18:10, 18:15, 18:20, 18:25, 19:5, 19:10, 19:15, 19:20, 19:25, 20:5, 20:10, 20:15, 20:20, 20:25, 21:5, 21:10, 21:15, 21:20, 21:25, 22:5, 22:10,

22:15, 22:20, 22:25, 23:5, 23:10, 23:15, 23:20, 23:25, 24:5, 24:10, 24:15, 24:20, 24:25, 25:5, 25:10, 25:15, 25:22, 26:2, 26:5, 26:8, 26:11, 26:14, 26:17, 26:20, 26:23, 27:1, 27:4, 27:9, 27:12, 27:15, 27:18, 27:21, 27:24, 28:6, 28:7, 28:8, 28:9, 28:10, 28:11, 28:12, 28:13, 28:24, 29:13
**specific** [3] - 8:1, 8:13, 12:11
**specified** [1] - 43:13
**staff** [3] - 41:21, 41:23, 42:6
**stand** [2] - 33:15, 42:22
**stands** [3] - 4:8, 10:22, 14:24
**starting** [1] - 6:15
**state** [2] - 33:8, 34:25
**statement** [4] - 5:6, 10:23, 37:2, 37:5
**STATES** [3] - 1:1, 2:3, 2:10
**States** [3] - 1:5, 32:2, 43:9
**stating** [2] - 9:23, 14:23
**stay** [1] - 32:22
**Stenographic** [1] - 1:24
**step** [1] - 11:4
**sticking** [2] - 7:20, 8:4
**still** [6] - 4:14, 12:19, 12:24, 34:18, 38:13, 40:2
**stone** [1] - 5:14
**Stone** [1] - 2:4
**STONE** [10] - 4:19, 5:15, 7:6, 7:9, 10:7, 12:14, 37:11, 38:18, 39:1, 39:3
**Street** [1] - 1:22
**stronger** [1] - 10:6
**substantive** [1] - 5:21
**suggest** [5] - 8:12, 34:19, 37:2, 38:4, 38:20
**suggestion** [2] - 8:8, 10:1
**Suite** [7] - 1:21, 2:6, 2:14, 2:18, 2:21, 3:4, 3:8
**summer** [1] - 31:21

**Sunday** [2] - 41:1, 41:7
**supervising** [2] - 34:2, 34:11
**supplement** [5] - 36:5, 36:17, 37:16, 37:20, 40:11
**supplemental** [3] - 36:1, 37:3, 41:9
**supports** [1] - 8:2
**supposed** [1] - 4:9
**surrendered** [1] - 34:8
**sworn** [1] - 32:4
**sympathies** [1] - 42:9
**system** [1] - 32:3

## T

**technical** [1] - 34:1
**telephone** [1] - 13:11
**telephonic** [1] - 3:3
**ten** [12] - 33:14, 36:14, 36:16, 37:15, 37:19, 37:21, 37:22, 39:22, 40:9, 40:10, 40:25, 41:6
**terms** [3] - 12:11, 34:23, 34:25
**Thai** [1] - 12:18
**thank-yous** [1] - 42:11
**Thanksgiving** [5] - 36:12, 37:23, 38:25, 41:1, 41:8
**THE** [77] - 1:3, 1:13, 4:4, 4:20, 4:22, 7:5, 7:8, 7:14, 7:17, 10:20, 12:1, 12:4, 12:6, 12:9, 12:15, 13:1, 13:4, 13:8, 13:21, 13:24, 14:1, 14:3, 14:5, 14:7, 14:10, 14:12, 14:13, 14:15, 14:16, 14:22, 14:23, 15:5, 15:6, 29:23, 30:1, 30:4, 30:7, 30:10, 30:13, 30:16, 31:18, 33:2, 33:18, 33:20, 33:23, 34:10, 34:16, 35:14, 35:17, 36:4, 36:9, 36:11, 36:13, 36:16, 37:14, 37:25, 38:4, 38:7, 38:17, 38:24, 39:2, 39:4, 39:13, 39:23, 39:25, 40:4, 40:10, 40:13, 40:17, 41:5, 41:11, 41:22, 42:4, 42:7, 42:12, 42:15, 42:22
**theories** [1] - 6:1

**theory** [7] - 6:2, 6:3, 6:9, 6:13, 6:25, 8:1, 8:10
**therefore** [2] - 4:11, 40:14
**therein** [1] - 43:13
**they've** [4] - 7:21, 8:2, 10:2, 10:22
**thinking** [2] - 6:4, 11:1
**third** [3] - 5:17, 6:23, 10:19
**three** [1] - 8:24
**Thursday** [2] - 38:22, 38:24
**timing** [2] - 37:19, 40:4
**tired** [1] - 42:21
**today** [4] - 12:7, 37:19, 37:21, 39:14
**tomorrow** [4] - 35:16, 38:15, 39:16, 39:25
**tonight** [1] - 35:14
**took** [2] - 31:22, 32:8
**toward** [1] - 38:9
**transactional** [1] - 28:1
**TRANSCRIPT** [1] - 1:14
**transcript** [2] - 43:11, 43:13
**Transcript** [1] - 1:24
**Transcription** [1] - 1:24
**Travel** [9] - 5:21, 9:7, 9:16, 10:17, 10:24, 11:7, 36:23, 36:24, 37:1
**TRIAL** [1] - 1:15
**trial** [1] - 32:13
**tried** [1] - 8:4
**true** [2] - 30:18, 43:11
**try** [2] - 35:25, 39:21
**trying** [1] - 10:19
**Tuesday** [1] - 34:20
**two** [2] - 7:23, 10:2

## U

**U.S** [1] - 1:21
**unable** [2] - 13:14, 14:14
**unanimous** [3] - 13:13, 14:20, 14:25
**under** [8] - 6:8, 7:13, 11:16, 12:19, 33:9, 35:18, 35:22, 43:14
**unique** [1] - 32:1
**UNITED** [3] - 1:1, 2:3, 2:10
**United** [3] - 1:5, 32:1,

43:9
**up** [6] - 31:25, 32:6, 34:12, 34:23, 35:8, 36:13
**urgent** [1] - 32:9

## V

**Vaught** [56] - 3:10, 15:12, 15:18, 15:23, 16:3, 16:8, 16:13, 16:18, 16:23, 17:3, 17:8, 17:13, 17:18, 17:23, 18:3, 18:8, 18:13, 18:18, 18:23, 19:3, 19:8, 19:13, 19:18, 19:23, 20:3, 20:8, 20:13, 20:18, 20:23, 21:3, 21:8, 21:13, 21:18, 21:23, 22:3, 22:8, 22:13, 22:18, 22:23, 23:3, 23:8, 23:13, 23:18, 23:23, 24:3, 24:8, 24:13, 24:18, 24:23, 25:3, 25:8, 25:13, 25:18, 33:23, 34:4, 34:7
**verdict** [98] - 14:14, 14:20, 15:1, 15:4, 15:7, 15:9, 15:14, 15:19, 15:24, 16:4, 16:9, 16:14, 16:19, 16:24, 17:4, 17:9, 17:14, 17:19, 17:24, 18:4, 18:9, 18:14, 18:19, 18:24, 19:4, 19:9, 19:14, 19:19, 19:24, 20:4, 20:9, 20:14, 20:19, 20:24, 21:4, 21:9, 21:14, 21:19, 21:24, 22:4, 22:9, 22:14, 22:19, 22:24, 23:4, 23:9, 23:14, 23:19, 23:24, 24:4, 24:9, 24:14, 24:19, 24:24, 25:4, 25:9, 25:14, 25:21, 26:1, 26:4, 26:7, 26:10, 26:13, 26:16, 26:19, 26:22, 26:25, 27:3, 27:11, 27:14, 27:17, 27:20, 27:23, 28:2, 28:4, 28:17, 28:20, 28:22, 28:25, 29:3, 29:5, 29:7, 29:9, 29:11, 29:15, 29:16, 29:17, 29:18, 29:19, 29:20, 30:18, 33:6, 33:18, 33:24, 35:6, 35:22, 36:3,

36:19
**verify** [1] - 11:22
**view** [1] - 11:8
**visit** [2] - 32:23, 41:20
**voluminous** [1] - 31:21
**vs** [1] - 1:7

## W

**Walter** [1] - 2:21
**wants** [2] - 9:5, 39:11
**Washington** [2] - 1:22, 2:11
**Wednesday** [3] - 38:22, 38:24, 39:2
**week** [7] - 34:24, 38:9, 38:10, 38:23, 41:17
**weekend** [2] - 37:23, 41:1
**weeks** [1] - 7:23
**West** [1] - 1:22
**wholly** [1] - 32:2
**wish** [8] - 29:23, 30:1, 30:4, 30:7, 30:10, 30:13, 32:18, 35:19
**wishes** [1] - 39:16
**withstood** [1] - 32:8
**WOLPERT** [1] - 3:2
**works** [1] - 32:3
**written** [1] - 8:21
**Wu** [1] - 2:5

## Y

**yesterday** [3] - 6:15, 7:6, 7:8
**York** [1] - 2:11
**yous** [1] - 42:11